# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS,<br>1025 Connecticut Avenue NW, Suite 701<br>Washington, DC 20036;<br><br>AMERICAN GATEWAYS,<br>314 East Highland Mall Boulevard, #501<br>Austin, TX 78752;<br><br>ESTRELLA DEL PASO,<br>2400A E. Yandell Drive<br>El Paso, TX 79903;<br><br>FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT,<br>PO Box 654<br>Florence, AZ 85132;<br><br>IMMIGRATION SERVICES AND LEGAL ADVOCACY,<br>3801 Canal Street, Suite 210<br>New Orleans, LA 70119;<br><br>NATIONAL IMMIGRANT JUSTICE CENTER,<br>111 W. Jackson Boulevard, Suite 800<br>Chicago, IL 60604;<br><br>NORTHWEST IMMIGRANT RIGHTS PROJECT,<br>615 Second Avenue, Suite 400<br>Seattle, WA 98104;<br><br>PENNSYLVANIA IMMIGRATION RESOURCE CENTER,<br>PO Box 20339<br>112 Pleasant Acres Road, Suite I<br>York, PA 17402;<br><br>ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, | Case No. 1:25-cv-00298<br><br>**DECLARATION OF LISA KOOP IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

7301 Federal Boulevard, Suite 300
Westminster, CO 80030,

                *Plaintiffs,*

v.

UNITED STATES DEPARTMENT OF
JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530;

EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,
5107 Leesburg Pike, Suite 1902
Falls Church, VA 22041;

DEPARTMENT OF HOMELAND
SECURITY,
245 Murray Lane SW
Washington, DC 20528;

JAMES R. McHENRY III, in his official
capacity as Acting Attorney General of the
United States,
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530;

SIRCE E. OWEN, in her official capacity as
Acting Director of the Executive Office for
Immigration Review,
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 1902
Falls Church, VA 22041;

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security,
Department of Homeland Security
245 Murray Lane, SW
Washington, DC 20528,

                *Defendants.*

# DECLARATION OF LISA KOOP
# NATIONAL DIRECTOR OF LEGAL SERVICES FOR
# THE NATIONAL IMMIGRANT JUSTICE CENTER

*I, Lisa Koop, make the following statements on behalf of the National Immigrant Justice Center. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. My name is Lisa Koop. I am the national direct of legal services at the National Immigrant Justice Center ("NIJC"), registered as a nonprofit organization under the name NIJC, NFP. NIJC's mission is to establish and defend the legal rights of immigrants and to transform the immigration system into one that affords equal opportunity for all. NIJC is a national organization headquartered in Chicago, Illinois. NIJC is the primary organization dedicated to providing legal orientation, consultations, and application support to unrepresented individuals appearing before the Chicago Immigration Court through NIJC's Immigration Court Helpdesk ("ICH"). NIJC also provides services in a small number of cases through the Counsel for Children Initiative ("CCI").

2. The ICH was developed to provide high volume legal services to unrepresented immigrants in a cost-effective manner. After NIJC piloted a privately funded ICH program and demonstrated success at the individual case level and in court efficiency, Congress appropriated funding for 14 help desks across the country. NIJC was in the first cohort of ICH providers. NIJC's federally funded ICH program began in 2016.

3. Without warning, on January 22, 2025, the Department of Justice issued a national contract stop work order, pursuant to Section 19 of the January 20, 2025, Executive Order titled "Protecting the American People Against Invasion." The national contract stop work order, which took effect immediately, extended to the following programs: the general Legal Orientation Program ("LOP"), the Immigration Court Helpdesk ("ICH"), the Counsel for Children Initiative ("CCI"), and Family Group Legal Orientation Program ("FGLOP") and stated that these programs were being paused while they undergo an audit.

4. NIJC learned of the stop work order through an email from the Acacia Center for Justice. At the time, an NIJC ICH attorney was at the Chicago Immigration Court providing services to unrepresented individuals. That attorney was promptly instructed to terminate her ICH work and return to NIJC's office. The NIJC ICH team had dozens of remote individual consultations scheduled, some of which involved matters with imminent filing deadlines. The NIJC ICH team had a pro se asylum workshop scheduled for January 24, 2025, the Friday of that same week.

1

5. Until the ICH program was suspended on January 22, 2025, NIJC provided legal services in person at the Chicago Immigration Court and/or remote services through a telephone hotline five days a week. During calendar year 2024, NIJC's ICH team provided approximately 3500 unique legal services to approximately 2000 different individuals or families. The services included individual information sessions to discuss case-specific questions, document preparation, group information sessions, self-help workshops for specific forms of relief, and Friend of the Court assistance. The ICH also assisted with motions to change venue. Suspending this program will cause significant harm to individuals who are seeking to exercise their legal rights in a complicated immigration system.

6. With ICH funding, NIJC employed nine staff members who provided ICH services. These included: two directors, a legal supervisor, two senior attorneys, two staff attorneys, a paralegal and a coordinator.

7. Before the January 2025 stop-work order, staff working on the ICH regularly went to the Chicago Immigration Court to provide legal education and individual consultations to noncitizens without counsel. NIJC ICH staff members were present at the Chicago Immigration Court three days per week. The NIJC ICH team staffed a hotline for ICH participants that was open at all times to receive calls and texts from participants. The NIJC ICH team assigned staff members to respond to calls and messages to the hotline four days a week.

8. In 2023 the Chicago Immigration Court's caseload tripled to about 270,000. The number of people appearing before immigration court who need help understanding the basics of their proceedings, their rights and options, and their eligibility for relief is much higher than the capacity of low-cost or pro bono legal service providers. Court staff are unable to respond to phone calls from immigrants appearing before the court. Mail filings routinely take six weeks or longer to be entered into the court's system, and the line at the filing window often has a several-hour wait. As a result, ICH staff are often the only source of information available to unrepresented people facing deportation.

9. Judges frequently referred individuals to the ICH because NIJC's ICH provided services that improved the efficiency of the court. For example, ICH staff explained documents and proceedings so that judges could spend less time with each individual respondent. Court staff at the filing window frequently directed unrepresented immigrants to NIJC's ICH to ask questions. NIJC's ICH staff also affirmatively sought out people in the filing window line to screen for anyone who was there for something with which court staff could not assist; like filings with other agencies, questions about cases pending before United States Citizenship and Immigration Services cases, Immigration and Customs

2

Enforcement appointments, filings for other immigration court locations, and issues that must be addressed by an immigration judge through a written motion and cannot be resolved verbally by a court clerk. The filing window clerks often rely on google translate to communicate with non-English speakers, which leads to additional confusion that NIJC's ICH staff members were able to address when participants were directed by the court to speak with them.

10. NIJC's ICH team has regularly identified viable asylum claims and referred such cases to pro bono attorneys or other NIJC programs for full representation. In 2024, about 100 people received pro bono representation services after their cases were identified and referred for representation by NIJC's ICH. Without NIJC's services, individuals who are fleeing persecution would be denied access to legal protections.

11. Thus far, NIJC has been permitted to access the Chicago Immigration Court and provide services that are not funded through the DOJ ICH program. During the week of January 27, NIJC attorneys were initially told by court staff they could not provide services. A security guard told an immigrant at the court they could not access NIJC services because there was "no more pro bono." NIJC later confirmed with the Chicago Immigration Court that NIJC attorneys could provide services not funded or supported by the court. For example, NIJC was informed judges are no longer allowed to hand out flyers directing unrepresented immigrants to NIJC for (no-cost) services.

12. Without continued funding, NIJC's ability to continue services for unrepresented immigrants before the Chicago Immigration Court is at imminent risk. NIJC has already allocated approximately 25 percent of the ICH staff to other funding sources and hopes to limit further adjustments in order to sustain the important work of the ICH.

13. Pursuant to a contract with the Acacia Center for Justice, NIJC's annual contract for ICH services was in the amount of $475,676 per year. This has historically been paid based on periodic reporting of time spent on ICH activities. If this funding is not restored, NIJC will be compelled to scale back services and potentially staff. Although NIJC is seeking private funding from individual donors or foundations to maintain this work, in the absence of funding, NIJC will have to reduce services and potentially layoff staff or reallocate them to different otherwise funded work.

14. Even if NIJC is able to identify a private funder to support the ICH, the stop work order will continue to frustrate NIJC's mission of providing education and legal assistance to immigrants, refugees, and asylum seekers. That is because, in addition to the halting of federal funding, the stop-work order is already impeding access to the individuals that NIJC seeks to serve, and immigration court staff have already changed their practices for

making referrals to the ICH, meaning that fewer people will know that NIJC's ICH is there and fewer people will be given the opportunity to speak to NIJC before speaking to a judge.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 30th of January 2025, in Goshen, Indiana.

S/ Lisa Koop
Lisa Koop, National Director of Legal Services
National Immigrant Justice Center
110 E. Washington St.
Goshen, IN 46528
Tel. 312-660-1321 Fax. 312-660-150