IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, <br> 1025 Connecticut Avenue NW, Suite 701 <br> Washington, DC 20036; <br><br> AMERICAN GATEWAYS, <br> 314 East Highland Mall Boulevard, #501 <br> Austin, TX 78752; <br><br> ESTRELLA DEL PASO, <br> 2400A E. Yandell Drive <br> El Paso, TX 79903; <br><br> FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, <br> PO Box 654 <br> Florence, AZ 85132; <br><br> IMMIGRATION SERVICES AND LEGAL ADVOCACY, <br> 3801 Canal Street, Suite 210 <br> New Orleans, LA 70119; <br><br> NATIONAL IMMIGRANT JUSTICE CENTER, <br> 111 W. Jackson Boulevard, Suite 800 <br> Chicago, IL 60604; <br><br> NORTHWEST IMMIGRANT RIGHTS PROJECT, <br> 615 Second Avenue, Suite 400 <br> Seattle, WA 98104; <br><br> PENNSYLVANIA IMMIGRATION RESOURCE CENTER, <br> PO Box 20339 <br> 112 Pleasant Acres Road, Suite I <br> York, PA 17402; <br><br> ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, | Case No. 1:25-cv-00298 <br><br> **DECLARATION OF MONIQUE R. SHERMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

7301 Federal Boulevard, Suite 300
Westminster, CO 80030,

     *Plaintiffs,*

v.

UNITED STATES DEPARTMENT OF
JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530;

EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,
5107 Leesburg Pike, Suite 1902
Falls Church, VA 22041;

DEPARTMENT OF HOMELAND
SECURITY,
245 Murray Lane SW
Washington, DC 20528;

JAMES R. McHENRY III, in his official
capacity as Acting Attorney General of the
United States,
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530;

SIRCE E. OWEN, in her official capacity as
Acting Director of the Executive Office for
Immigration Review,
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 1902
Falls Church, VA 22041;

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security,
Department of Homeland Security
245 Murray Lane, SW
Washington, DC 20528,

     *Defendants.*

## DECLARATION OF MONIQUE R. SHERMAN, DETENTION PROGRAM MANAGING ATTORNEY FOR THE ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK

*I, Monique R. Sherman, make the following statements on behalf of the Rocky Mountain Immigrant Advocacy Network. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. My name is Monique Sherman, and I am the Managing Attorney of the Detention Program at the Rocky Mountain Immigrant Advocacy Network (RMIAN. RMIAN is the only organization dedicated to providing legal services to indigent immigrant adults who are detained by the Immigration Customs Enforcement ("ICE") agency under the Department of Homeland Security ("DHS") at the Aurora Contract Detention Facility ("Aurora facility") located in Aurora, Colorado.

2. RMIAN is a Colorado-based nonprofit organization that provides free immigration legal services to individuals in civil immigration detention, as well as to immigrant children who have suffered from abuse, neglect, or violence. Through its staff of over 40 people including attorneys, paralegals, social workers, and a network of over 400 *pro bono* attorneys, RMIAN provides legal education and free legal representation to low-income immigrants who otherwise would not be able to afford an attorney.

3. In order to carry out this mission, RMIAN's Detention Program has several main work components: (1) through the Legal Orientation Program ("LOP"), providing educational and pro se services to all unrepresented detained noncitizen adults in the custody of ICE at the Aurora Contract Detention Facility in Aurora, Colorado in the form of legal education "know your rights" ("KYR") presentations, conducting individual consultations (intakes), and conducting pro se workshops; (2) connecting unrepresented detained noncitizens who cannot afford a lawyer with pro bono attorneys, for cases at both the trial and appellate court levels; and (3) providing in-house representation for a small number of clients.

4. To address the first programmatic focus area, RMIAN has been operating a LOP in Colorado since 2003. RMIAN was selected by the Department of Justice in 2003 as one of six pilot programs nationwide to implement the LOP and has been providing services since that time. The Aurora facility has capacity to hold up to 1,532 individuals and in recent months has housed 1100-1200 people each day. Representative Jason Crow, ICE Accountability Report (available at https://crow.house.gov/transparency/ice-accountability-report). RMIAN provides LOP services for the entire immigrant population detained by ICE whose cases are heard before the Aurora Immigration Court, the only detained immigration court in Colorado.

1

5. With LOP funding, RMIAN currently has six full-time equivalent staff members dedicated to providing LOP services. Specifically, a supervising attorney and several staff attorneys and legal assistants work together to provide in person KYR presentations 4 days a week, and to provide individualized consultations, in person and over the phone, 5 days a week. Staff also conduct pro se workshops as needed and appear for pro se individuals as friend of the court from time to time as the situation warrants. Most days, at least one RMIAN LOP staff member is at the facility for at least 4 hours. Additionally, RMIAN LOP staff dedicated to referring cases to pro bono attorneys visit pro se individuals regularly to track the continued need for pro bono referral. RMIAN LOP staff also operates a hotline specifically for individuals who are detained to contact us and request services.

6. The LOP is crucial to RMIAN's ability to provide accurate and expert legal information to pro se noncitizens about their options and responsibilities in their removal proceedings. Additionally, the LOP is a vital resource that allows RMIAN to connect individuals in immigration detention who cannot afford an attorney with pro bono counsel.

7. RMIAN is the only nonprofit legal services organization providing free legal services and offering pro bono legal referrals to noncitizens in immigration detention in Colorado. Individuals who are held in detention are unable to work while detained and therefore in most cases are unable to hire paid counsel. Additionally, most detained noncitizens are not fluent in English and are therefore unable to access legal information on their own. RMIAN's LOP offers every individual detained in the Aurora facility access to legal information *without regard to the language they speak*. In addition to information, RMIAN can sometimes offer assistance with translation of legal applications that respondents must submit to the court as well as evidence critical to individual's legal claims. Without this support, many people in immigration proceedings who do not speak or write fluently in English are unable to meaningfully participate in their immigration proceedings.

8. Immigration judges at the Aurora immigration court consistently refer pro se individuals to RMIAN for pro se assistance, particularly when it appears the person has a hard time understanding the immigration court process, and when the immigration judge identifies a tricky legal issue that on which the person could use advice. Historically, RMIAN LOP has worked in tandem with immigration judges to identify gaps in information or misinformation that may be prevalent among people housed in the facility and to provide the appropriate, accurate legal information to many people at one time. Through the LOP, for instance, RMIAN can provide accurate information about eligibility for bond to up to thirty people at a time, when they are confused by court paperwork and incorrect information provided by ICE. Immigration judges have also welcomed LOP friend of the court appearances, as these appearances can help the judge to identify issues that pro se litigants are unable to fully express themselves.

9. Moreover, in individual consultations, RMIAN LOP staff identify potential avenues for relief for participants, *and* situations in which there are not viable options for the participant to remain in the United States. In many of these cases, participants appreciate being informed about their chances of success because it helps them decide to accept a removal order rather than draw out proceedings over many court hearings.

10. RMIAN has also worked together with ICE ERO to ensure that LOP participants have access to interpretation and appropriate medical and mental healthcare. RMIAN LOP staff often identify gaps in those services among LOP participants, and ICE ERO officials have expressed appreciation for receiving that information in order that they may effectively meet their obligations.

11. As part of LOP, RMIAN partners with and trains volunteer translators to develop and maintain resources for interpretation in any language. These volunteers also provide interpretation to enable us to place cases with pro bono counsel. This creates a more equitable framework that affords people free attorneys, no matter what language they speak. Without the LOP to provide these essential services, access to counsel at the Aurora facility will be decimated, particularly for the majority of people who do not speak English.

12. RMIAN's LOP facilitates pro bono referrals for individuals who are detained in two ways: the program funds professional staff who coordinate the referrals, and the group presentations and subsequent consultations are the entry point for detained individuals to be placed on a waiting list for pro bono counsel. LOP presentations and consultations are also the entry point for RMIAN to identify individuals in need of representation by in-house attorneys.

13. Without warning, on January 22, 2025, the Department of Justice issued a national contract stop work order, pursuant to Section 19 of the January 20, 2025, Executive Order titled "Protecting the American People Against Invasion." The national contract stop work order, which took effect immediately, extended to the following programs: the general LOP program, the Immigration Court Helpdesk ("ICH"), the Counsel for Children Initiative ("CCI"), and Family Group Legal Orientation Program ("FGLOP") and stated that these programs were being paused while they undergo an audit. When I received the communication about the stop work order, RMIAN LOP staff were at the Aurora facility, in the middle of providing a group orientation in Spanish. The initial communication did not indicate whether currently ongoing services needed to cease immediately. In any case, cell phone reception is mostly nonexistent in the facility, so it took hours for me to contact LOP staff.

14. Although RMIAN immediately followed the stop work order, we expressed our intention to continue providing KYR and consultation services and requested a group to be seen for that purpose on January 24, 2025. However, we were informed over email by facility staff that they would not bring a group. ICE ERO staff confirmed this via telephone the same

3

day. ICE ERO and facility staff informed RMIAN that we would no longer have access to groups of noncitizens to provide presentations, and that we also could not provide a list of individuals for individual consultations as we had done for years.

15. Currently, ICE is requiring RMIAN attorneys to request to see one noncitizen at a time, conduct the consultation, then exit the secure area within the Aurora facility and request to see the next noncitizen, re-enter security, wait for guards to take us back to the legal visitation area, and so on. Because there are noncitizens who speak so many different languages at the facility (not just English and Spanish) these consultations often take at least twice as long as a conversation without interpretation would take. The additional wait time between consultations caused by the refusal to bring groups has meant that we often can see two people in a four-hour period. In addition, because of a requirement at the facility to stop movement for "count" between approximately 1:30 and 3:30, we have had several situations in which we were unable to see even two people in that period of time.

16. On January 29, 2025, RMIAN again requested access to a group for a KYR under the Performance Based National Detention Standards (2011). While this request was not denied outright, we were informed we needed to make a special request for a KYR presentation to ICE ERO, with ten days' notice.

17. Even a short lapse in funding under the LOP has devastating effects on our resources and ability to reach any substantial number of people in the facility. Given recent rates of detention of approximately 1100-1200 people per day at the facility, providing legal information on a one-by-one basis is simply untenable. Even if ICE ERO grants our request to provide group KYRs with ten days advance notice, we cannot effectively accomplish our mission using that process. ICE releases, transfers, and deports people from the facility every day, so a group of people who may be in the facility today are likely not to be in the facility in ten days. In addition, we cannot ensure that we are able to see people before their first hearing under this model because we often do not learn about a scheduled hearing ten days in advance. Finally, with the expansion of expedited removal, a ten-day waiting period will likely ensure that many people are deported without ever having access to legal information.

18. Moreover, the LOP, FGLOP, and ICH programs collectively make up approximately 25% of RMIAN's budget. With this funding stripped away without any notice, we have to immediately attempt to find other sources of funding to continue to pay our staff. Even if we did have sufficient funding to bridge this shortfall, much of our other funding cannot be used to provide KYR services. Moreover, many members of our LOP team applied specifically to assist pro se individuals at the detention facility, rather than the other services we offer. They are dedicated to providing KYR and pro se assistance, as it is the only opportunity that the majority of detained individuals have to learn information about the legal process they are in. As a result, morale on the team has been negatively impacted,

      which in turn may cause staff members to experience mission drift and depart the organization.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 30th day of January 2025, in Westminster, Colorado.

      Respectfully submitted,

      */s/ Monique R. Sherman*
      Monique R. Sherman
      Detention Program Managing Attorney
      ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK