IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS,<br>1025 Connecticut Avenue NW, Suite 701<br>Washington, DC 20036;<br><br>AMERICAN GATEWAYS,<br>314 East Highland Mall Boulevard, #501<br>Austin, TX 78752;<br><br>ESTRELLA DEL PASO,<br>2400A E. Yandell Drive<br>El Paso, TX 79903;<br><br>FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT,<br>PO Box 654<br>Florence, AZ 85132;<br><br>IMMIGRATION SERVICES AND LEGAL ADVOCACY,<br>3801 Canal Street, Suite 210<br>New Orleans, LA 70119;<br><br>NATIONAL IMMIGRANT JUSTICE CENTER,<br>111 W. Jackson Boulevard, Suite 800<br>Chicago, IL 60604;<br><br>NORTHWEST IMMIGRANT RIGHTS PROJECT,<br>615 Second Avenue, Suite 400<br>Seattle, WA 98104;<br><br>PENNSYLVANIA IMMIGRATION RESOURCE CENTER,<br>PO Box 20339<br>112 Pleasant Acres Road, Suite I<br>York, PA 17402;<br><br>ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, | Case No. 1:25-cv-00298<br><br>**DECLARATION OF VANESSA GUTIERREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

7301 Federal Boulevard, Suite 300
Westminster, CO 80030,

            *Plaintiffs,*

v.

UNITED STATES DEPARTMENT OF
JUSTICE,
950 Pennsylvania Avenue, NW
Washington, DC 20530;

EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,
5107 Leesburg Pike, Suite 1902
Falls Church, VA 22041;

DEPARTMENT OF HOMELAND
SECURITY,
245 Murray Lane SW
Washington, DC 20528;

JAMES R. McHENRY III, in his official
capacity as Acting Attorney General of the
United States,
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530;

SIRCE E. OWEN, in her official capacity as
Acting Director of the Executive Office for
Immigration Review,
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 1902
Falls Church, VA 22041;

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security,
Department of Homeland Security
245 Murray Lane, SW
Washington, DC 20528,

            *Defendants.*

# DECLARATION OF VANESSA GUTIERREZ
# DEPUTY DIRECTOR FOR NORTHWEST IMMIGRANT RIGHTS PROJECT

*I, Vanessa Gutierrez, make the following statements on behalf of Northwest Immigrant Rights Project. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. My name is Vanessa Gutierrez, and I am the Deputy Director at Northwest Immigrant Rights Project ("NWIRP") who oversees NWIRP's Tacoma office and its work with detained individuals at the Northwest ICE Processing Center ("NWIPC"), one of the largest immigration detention facilities in the country. NWIRP is the primary organization dedicated to providing legal services to immigrant adults who are detained by the Immigration and Customs Enforcement ("ICE") agency under the Department of Homeland Security ("DHS") throughout Washington State and the surrounding region.

2. NWIRP is a not-for-profit organization in Washington State that promotes justice by defending and advancing the rights of immigrants through direct legal services, systemic advocacy, and community education. Through its staff attorneys, legal advocates, and a network of pro bono attorneys, NWIRP provides free legal education and legal services and representation to immigrants with low or no income, including detained individuals.

3. To carry out its mission, NWIRP provides educational and pro se services in the form of legal education "know your rights" ("KYR") presentations, individual consultations (intakes), and pro se workshops through the Legal Orientation Program ("LOP") to all unrepresented people in removal proceedings who are detained in the custody of ICE at the NWIPC, and we connect unrepresented people who cannot afford a lawyer with pro bono attorneys from our various pro bono firm partners, for cases at both the trial and appellate court levels. Using non-LOP funding, NWIRP also provides in-house representation to a limited number of detained individuals.

4. NWIRP has been operating a LOP since the program's inception in 2003. The combined detained population, on average, at the NWIPC is currently approximately 800-1,000 people at any given time. The NWIPC currently has capacity to detain up to 1,575 people, and given the federal government's stated intentions to conduct mass deportations, we fully expect the NWIPC to be at capacity soon. People detained by ICE at the NWIPC can request NWIRP services, including LOP services.

5. With LOP funding, NWIRP currently has hired 3.83 full-time equivalent staff positions (FTEs) dedicated to providing LOP services. Specifically, the 3.83 FTEs are spread over a unit of nine full-time staff members who dedicate part of their time to LOP services. They include four attorneys, two legal advocates, and two Department of Justice accredited representatives who are fully accredited. Staff under LOP regularly travel to the NWIPC in person, four to five days per week, to provide legal education KYR presentations, individual consultations, and pro se workshops to people who are detained and do not have counsel. NWIRP also provides a dedicated telephone voicemail box for people at the

1

NWIPC to contact LOP staff directly to request an LOP consultation. Through the LOP program, NWIRP was added to the pro bono platform on the Talton tablets located in the detention facility's housing units. The Talton system on the tablets allow the LOP team to have back and forth communication with people who speak a wide variety of languages. The back and forth nature of the tablet conversations in someone's native language and alphabet allows for quick response to general questions or concerns that the voicemail box does not.

6. NWIRP's LOP program is integral to providing education to unrepresented individuals as they navigate removal proceedings. Through LOP, many individuals have a better understanding of their immigration proceedings, receive assistance filling out applications for relief, and are better prepared for their hearings. NWIRP is the only not-for-profit organization providing workshops and presentations to those detained at the NWIPC. Through its LOP work, NWIRP provides crucial services to the vulnerable populations in the NWIPC, including to people who are unable to read or write, speak uncommon languages, and who lack proficiency in English.

7. These services are especially critical because the overwhelming majority of persons detained at the NWIPC are unrepresented and have access to no other legal assistance.

8. During stakeholder meetings between NWIRP's LOP team and the Tacoma Immigration Court, NWIRP received positive feedback about the services provided and a desire for NWIRP LOP to provide more assistance to the detained population at the NWIPC. Similarly, LOP staff have received positive feedback from ICE's Office of the Principal Legal Advisor ("OPLA") staff, appreciating LOP's assistance with filling out applications. OPLA has stated that LOP work allows the court hearings to move more smoothly and they see a difference when the individual has met with NWIRP's LOP staff prior to their hearing. In addition, GEO Group staff members (the corporation that operates the NWIPC on behalf of ICE) and ICE Deportation Officers, who receive many messages and questions from detained individuals on a regular basis, have stated to NWIRP staff that having the LOP team provide group and individual orientations helps keep the individuals detained informed and fewer questions directed to the officers. Multiple stakeholders have referred individuals to NWIRP's LOP to receive services, as a trusted resource for those detained at the NWIPC.

9. Throughout 2024, NWIRP LOP met with over 1,100 people detained at the NWIPC, including over 800 who were provided individual consultations. From those orientations, NWIRP LOP provided brief pro bono services and placed 97 cases with pro bono attorneys. Without the LOP individual orientations, NWIRP LOP is unable to identify and talk to as many people, and thus unable to refer as many cases for pro bono services for the vulnerable detained population.

10. Without warning, on January 22, 2025, the Department of Justice issued a national contract stop work order, pursuant to Section 19 of the January 20, 2025, Executive Order titled "Protecting the American People Against Invasion." The national contract stop work order,

which took effect immediately, extended to the following programs: the general LOP program, the Immigration Court Helpdesk ("ICH"), the Counsel for Children Initiative ("CCI"), and Family Group Legal Orientation Program ("FGLOP") and stated that these programs were being paused while they undergo an audit. NWIRP's LOP program received a brief email from Acacia Center for Justice (the agency who oversees LOP programs nationwide) informing NWIRP of the issuance of the stop work order.

11. Since the issuance of the stop work order, NWIRP's LOP team lost access to daily rosters of individuals detained at the NWIPC and bi-weekly reports on upcoming court dates for those individuals. The NWIRP LOP team was informed by detained individuals via phone that ICE issued a message on the Talton tablets that LOP is no longer conducting services. We are unaware of the exact wording of the message; however, this messaging led many detained individuals to panic about how they will get any legal information, whether NWIRP will continue to represent them on pro bono cases, and how to contact NWIRP given the tablets were their main way to contact the LOP team. NWIRP was also informed by detained individuals that posters with NWIRP's contact information were taken down inside the housing pods at the NWIPC.

12. After receiving the stop work order, NWIRP's LOP team sent emails to ICE and GEO Group staff to clarify whether NWIRP's LOP team could continue to enter the facility for both individual visits and KYR presentations. At this time, NWIRP has not heard any response about continuing to provide KYR presentations. Within the last week, NWIRP's LOP team received pushback from GEO Group staff about continuing to meet with people individually. NWIRP's team encountered challenges, including detention center staff being unwilling to call the same number of detained people out to the attorney rooms for intakes and consulations NWIRP LOP previously saw, based on guidance from their superiors.

13. The stop work order immediately impacted NWIRP's ability to advance two of the three critical pillars of its mission of providing direct legal services and community education in the form of legal education KYR presentations and intakes for individuals detained at the NWIPC. Even a "pause" of LOP work, as the stop work order purports to be, is extremely detrimental to individuals in ICE custody at the NWIPC who are facing removal proceedings unrepresented. Detained removal proceedings at the Tacoma Immigration Court are typically completed at a much faster rate than non-detained removal cases before other immigration courts. Therefore, timely access to KYR presentations is critical to ensuring that those detained individuals have a working understanding of the immigration process, if they qualify for any immigration benefits, and how to apply for any such relief from removal. Increasing information about legal access to detained people in removal proceedings is consistent with ICE's Access to Due Process guidance and its Facility Legal Resource Guide.

14. NWIRP's ability to meet with detained individuals through its LOP team is a critical aspect of ensuring that those in detention receive the legal resources, representation, and rights they are entitled to, particularly when they may not otherwise have access to counsel. In these cases, even a few missed LOP sessions could significantly alter the trajectory of an

3

individual's case. Without timely access to legal counsel, detained individuals might not be informed of their rights, which could lead them to inadvertently waive important legal protections or miss critical opportunities to contest their detention or removal. NWIRP's non-LOP funded attorneys, across all four of its offices, represent detained individuals, and they rely on the LOP intakes and referrals to identify cases for direct representation. The impact of abruptly halting the LOP work has a far-reaching effect on access to legal services beyond the educational and pro se services provided through the LOP.

15. At this time, NWIRP's detention defense work, which LOP is a critical part of, can only continue in a limited form through alternative funding sources. In 2024, NWIRP's overall annual budget included approximately 28% federal funding, which is now also at risk given the recent attempts to freeze federal dollars in congressionally appropriated funding. In addition to restricted federal funding, much of the other funding NWIRP receives is also restricted and cannot be shifted to cover the gaps in services that would result should LOP funding end long-term.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 29th of January 2025, in Wenatchee, Washington.

*Vanessa D. Gutierrez*

Vanessa Gutierrez
Deputy Director
NORTHWEST IMMIGRANT RIGHTS PROJECT