UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, *et al.*, <br><br>　　　　Plaintiffs, <br><br>　　v. <br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*, <br><br>　　　　Defendants. | Civil Action No. 1:25-cv-298-RDM |

**DEFENDANTS' STATUS REPORT**

On March 17, 2025, the Court held a hearing on Plaintiffs' pending Motion for Preliminary Injunction ("PI Motion"), which Defendants oppose. *See* Dkt. 2; Dkt. 2-1; Dkt. 35 ("Opposition"). After the hearing ("PI hearing"), the Court ordered Defendants to file a status report addressing certain issues raised by the Court. *See* March 17, 2025 Minute Entry. Defendants respectfully submit this Status Report in response to the Court's order and address those issues in turn.

**I.    Required Notice Before Any Future Funding Pauses Involving the Programs**

As Defendants explained in their Opposition and reiterated at the PI hearing, the January 22, 2025 Stop Work Order that Plaintiffs challenge in their Complaint was rescinded on February 2, 2025, *see* AR 167, and funding for the four legal access programs at issue in this case ("the Programs") has remained ongoing since that rescission. Opposition at 9-10. The Court accordingly indicated at the hearing that, because there is presently no pause in Program funding for the Court to address, it was inclined to hold Plaintiffs' PI Motion under consideration pending any future funding pause issued by Defendants. Although Defendants believe Plaintiffs' PI Motion should be denied for the reasons set forth in their Opposition, Defendants do not object to the approach proposed by the Court. In accordance with the Minute Order issued by the Court following the PI hearing, Defendants also acknowledge that they "shall provide Plaintiffs with at

1

least three business days' notice before suspending or terminating any funding or issuing any further stop-work orders for any of the programs at issue, until otherwise ordered by the Court."

## II.    Contractual Obligations Involving Program Funds

The Court asked Defendants to provide additional explanation about the status of the funds that have been obligated to the Programs.

As explained in Defendants' Opposition, funding for the Programs is disbursed through yearly task orders that the Executive Office for Immigration Review ("EOIR") issues to non-party the Acacia Center for Justice, the prime contractor for the Programs.  Opposition at 5-6.  Acacia then disburses that funding to the various subcontractors—including Plaintiffs—that deliver Program services at covered immigration facilities throughout the country.  *Id.* at 6-7.

In March 2024, Congress enacted a regular appropriations act that appropriated $844 million "[f]or expenses necessary for the administration of immigration-related activities" of EOIR, "of which not less than $28,000,000 shall be available for services and activities provided by the Legal Orientation Program."  Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138 Stat. 25, 133.  Before the end of FY 2024, EOIR accordingly issued task orders to Acacia that allocated more than $29 million to the four Programs at issue in this case, *see* AR 110, 126, 142, 145, and more than $31 million to the legal access programs that are subject to the $28 million "floor" set by Congress, *see* AR 110, 126.[1]  Those allocated FY 2024 funds are currently being used to cover Program services delivered through the end of July or August 2025 (depending on the specific task order).  *See, e.g.*, AR 87 (providing that the period of performance for the current

---

[1] The $28 million minimum earmarked for "the Legal Orientation Program" in the 2024 Consolidated Appropriations Act, 138 Stat. at 133, applies to funding for three legal access programs administered by EOIR: (1) the Legal Orientation Program ("LOP"), which provides legal information and services to individuals who are in Department of Homeland Security custody, *see* AR 87; (2) the Immigration Court Helpdesk ("ICH"), which provides legal information and services to non-detained individuals placed in immigration proceedings, *see* AR 116; and (3) the Legal Orientation Program for Custodians of Unaccompanied Children ("LOPC"), which provides legal orientations to the adult caregivers of unaccompanied children in immigration proceedings, *see* AR 97.  *See, e.g.*, S. Rep. No. 118-62, at 84-85 (2023); *see also* Dkt. 1 at 3 (¶ 1), 35 (¶ 105). Only LOP and ICH are at issue in this case.

LOP task order is September 1, 2024 to August 31, 2025); AR 151 (providing that the period of performance for the current Counsel for Children Initiative task order is August 1, 2024 to July 31, 2025).

Once executed, the annual Program task orders constitute contractual obligations of the federal government. *See* Gov't Accountability Off., *A Glossary of Terms Used in the Federal Budget Process*, GAO-05-734SP (Sept. 2005), at 70 (defining "obligation" as "[a] definite commitment that creates a legal liability of the government for the payment of goods and services ordered or received . . . ."); *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 307-08 (2020) (noting that the federal government "may incur an obligation by contract"). Thus, as relevant here, so long as the current task orders between EOIR and Acacia remain operative, the FY 2024 funds allocated under those task orders remain "obligated" in appropriations law parlance. *See* Gov't Accountability Off., *Principles of Federal Appropriations Law*, GAO-06-382 (3d ed. Feb. 2006), at 7-4 ("[A]n obligation arises when the definite commitment is made, even though the actual payment may not take place until a future fiscal year.").

The obligation of appropriated funds via a contract does not, however, create an inalterable commitment by the government to disburse the full amount of money allocated under the contract. Indeed, government contracts, including the Acacia Contract at issue here, typically give the government the authority to stop work temporarily or to terminate the contract in its entirety pursuant to standard Federal Acquisition Regulation ("FAR") provisions incorporated by reference into the contract. *See* AR 25 (incorporating FAR 52.242-15, Stop-Work Order); AR 53 (incorporating FAR 52.249-2, Termination for Convenience of the Government (Fixed Priced)). When the government exercises its rights under those provisions, the FAR allows for certain payments to the contractors, such as "reasonable costs resulting from [a] stop-work order," FAR 52.242-15(c), or "[t]he contract price for completed supplies or services accepted by the Government . . . not previously paid for," FAR 52.249-2(g)(1). Thus, as a general matter, government contractors are paid only for work they actually perform and the expenses they incur.

3

Here, the Program tasks orders under which Plaintiffs are currently delivering Program services all remain in effect.

Since September 2024, EOIR has been funded through continuing appropriations legislation that has maintained the agency's funding at FY 2024 levels. *See* American Relief Act, 2025, Pub. L. No. 118-158, 138 Stat. 1722, 1723 (2024) (extending FY 2024 funding levels to March 14, 2025); Full-Year Continuing Appropriations and Extensions Act, 2025, H.R. 1968 at 1 (2025) (extending FY 2024 funding levels to September 30, 2025). None of these FY 2025 funds have been obligated to the Programs at this point, as the Programs are still being funded under the task orders executed in FY 2024 that provide for periods of performance through July 31 or August 31, 2025 (depending on the specific task order).

### III.    Status of EOIR's Review of the Programs

The Court also asked Defendants to confirm whether EOIR is currently reviewing the Programs. EOIR has advised that it is currently compiling and reviewing certain information from recipients of Department of Justice funding in accordance with part II.(2)-(3) of the February 5, 2025 memorandum issued by the Attorney General titled "Sanctuary Jurisdiction Directives, *see* Dkt. 30-1 at 3. EOIR has also advised that it is conducting an ongoing review of contracts, grants, and other agreements providing federal funding to certain non-governmental organizations in accordance with § 19(a) of Executive Order 14159, "Protecting the American People Against Invasion," *see* AR 5.

### IV.    Keeping the Court Apprised of Developments in Other Cases

Finally, the Court asked the parties to keep it apprised of developments in certain other cases, especially ones in which a court order might potentially affect Defendants' ability to pause Program funding. During the PI hearing, the Court inquired about the scope of preliminary injunctions that have been entered in two other cases—*New York v. Trump*, No. 1:25-cv-39 (D.R.I.), and *National Council of Nonprofits v. Office of Management and Budget*, No. 1:25-cv-239 (D.D.C.). Defendants explained that they do not read either of those preliminary injunctions as precluding EOIR from issuing a future stop work order under the Acacia Contract. *See* Mem.

4

& Order at 44-45, *New York v. Trump*, No. 1:25-cv-39 (D.R.I. Mar. 6, 2025), ECF No. 161; Order, *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. 1:25-cv-239 (D.D.C. Feb. 25, 2025), ECF No. 52.

    Defendants will continue to keep the Court apprised of material developments in both of these cases. Defendants will likewise continue to consult with Plaintiffs regarding developments in other cases that either party believes should be brought to the Court's attention.

DATED: March 19, 2025                               Respectfully submitted,

                                                          YAAKOV M. ROTH
                                                          Acting Assistant Attorney General

                                                          ANDREW I. WARDEN
                                                          Assistant Director
                                                          Federal Programs Branch

                                                          */s/ Zachary W. Sherwood*
                                                          ZACHARY W. SHERWOOD
                                                         Indiana Bar No. 37147-49
                                                          Trial Attorney
                                                          United States Department of Justice
                                                          Civil Division, Federal Programs Branch
                                                          1100 L Street NW
                                                          Washington, DC 20005
                                                          Phone: (202) 616-8467
                                                          Fax: (202) 616-8470
                                                          Email: zachary.w.sherwood@usdoj.gov

                                                          *Counsel for Defendant*