UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Amica Center for Immigrant Rights, et al., | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 1:25-cv-00298-RDM |
| United States Department of Justice, et al., | ) |
| *Defendants.* | ) |

***AMICUS CURIAE*** **BRIEF OF FORMER IMMIGRATION JUDGES &**
**FORMER MEMBERS OF THE BOARD OF IMMIGRATION APPEALS**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

John R. Jacob
D.C. Bar No. 444412
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street, N.W.
Washington, D.C. 20006
Tel: (202) 887-4000
Fax: (202) 887-4288
Email: jjacob@akingump.com

*Counsel to Amici Former Immigration Judges & Former Members of the Board of Immigration Appeals*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................3

    *1.    Commencement of Proceedings via Notice to Appear* ............................................. 5

    *2.    The Master Calendar Hearing* ................................................................................ 6

    *3.    The Merits Hearing* ................................................................................................. 8

ARGUMENT .........................................................................................................................9

    *1.    The Programs Help Immigration Judges Fulfill their Statutory Duties* .................. 9

    *2.    The Programs are Efficient* .................................................................................. 11

    *3.    The Programs Promote Due Process* .................................................................... 12

CONCLUSION....................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agyeman v. INS*,
  296 F.3d 871 (9th Cir. 2002) ..................................................................................................10

*Barragan-Ojeda v. Sessions*,
  853 F.3d 374 (7th Cir. 2017) ....................................................................................................9

*Castro-O'Ryan v. INS*,
  847 F.2d 1307 (9th Cir. 1988) ..................................................................................................4

*Diop v. Lynch*,
  807 F.3d 70 (4th Cir. 2015) ................................................................................................3, 10

*Jacinto v. INS*,
  207 F.3d 725 (9th Cir. 2000) ..................................................................................................10

*Quintero v. Garland*,
  998 F.3d 612 (4th Cir. 2021) ...............................................................................3, 4, 10, 12

*Matter of S-M-J-*,
  21 I. & N. Dec. 722 (B.I.A. 1997) ............................................................................................4

*Yang v. McElroy*,
  277 F.3d 158 (2d Cir. 2002) .....................................................................................................3

**Statutes**

8 U.S.C.

  § 1229a(b)(1) ...........................................................................................................................3

  §1362 ........................................................................................................................................4

**Other Authorities**

8 C.F.R. § 1240 ................................................................................................................................6

EOIR, *Master Calendar Checklist for the Immigration Judge/The Pro Se
  Respondent* ..............................................................................................................................7

*Federal Judicial Caseload Statistics 2024*, U.S. COURTS ............................................................12

Holly Straut-Eppsteiner, CONG. RSCH. SERV., IN12463, IMMIGRATION COURTS:
  DECLINE IN NEW CASES AT THE END OF FY2024 (2024) ........................................................10

*Immigration Court Legal Representation Dashboard*, Vera Inst. of Just. ..............................2, 4

*Immigration Court Helpdesks*, EOIR, U.S. Dep't of Just. ...........................................................6

*Respondent Access*, EOIR, U.S. Dep't of Just. .............................................................................8

S. Rep. No. 118-198 (2024) ............................................................................................................6

Vera Inst. of Just., *LOP Case Time Analysis, Fiscal Years 2013-2017* (Sept. 14, 2018) ..................................................................................................................................11

**IDENTITY AND INTEREST OF AMICUS CURIAE[1]**

*Amici curiae* are former immigration judges and former members of the Board of Immigration Appeals ("BIA" or the "Board"), listed in Appendix A, with substantial, combined years of service and intimate knowledge of the U.S. immigration system. *Amici* submit this brief to illuminate for this Court the role of orientation and legal help programs for unrepresented respondents (*i.e.*, those charged with removability) in the immigration court system, most particularly the Congressionally-appropriated Legal Orientation Program ("LOP") and Immigration Court Helpdesk ("ICH"), and the EOIR[2]-funded Family Group Legal Orientation Program ("FGLOP") and Counsel for Children Initiative ("CCI"), collectively the "Programs." These programs have been critical to the fair and efficient functioning of the courts. Terminating them will inevitably make the immigration courts less fair and less efficient.

*Amici* are invested in the issues presented by Plaintiffs because they have dedicated their careers to improving the fairness and efficiency of the U.S. immigration system, even after departing from the bench. Given *amici*'s familiarity with the procedures and realities of the immigration adjudication system, *amici* respectfully submit that this Court should enjoin the actions taken by the Defendants to abruptly terminate these important programs without review—or apparent understanding—of their need and efficacy.

**INTRODUCTION**

As former immigration judges and former members of the Board of Immigration Appeals, *amici* have centuries of collective experience impartially administering justice in removal hearings

---

[1] No party's counsel authored this brief in whole or in part, and no person other than *amici* and their counsel contributed money that was intended to fund the preparation or submission of this brief.

[2] Executive Office for Immigration Review ("EOIR").

and on appeal. One of our primary responsibilities in court and on appeal was to ensure that unrepresented respondents—who represent about two-thirds of all respondents in immigration court[3]—are treated fairly in the immigration court system.

We thus submit this *amicus* brief to ask this Court to enjoin the termination of these programs that provide important aid to respondents in immigration court and thus lighten the burden on the immigration courts to orient and educate unrepresented individuals who appear before their courts. As explained below, the LOP, ICH, and FGLOP allow respondents to gain a basic understanding of the functioning of the immigration court system and of their role and rights within that system. Orientation programs also help respondents understand what relief, if any, they may have to contest removal. In our experience, unrepresented respondents who have been provided this basic information require far less guidance from immigration judges, are more likely to proceed without continuances, and more appropriately articulate their claims for relief from removal (or understand that they have none). Accordingly, these orientation programs are vital components of a fair and effective immigration court system, not just helping to provide due process to unrepresented respondents but also lightening the burden on immigration judges and the appellate review system. Even a brief interruption in these programs will disrupt the efficient and fair functioning of the immigration courts.

This brief explains the role of orientation programs in the proper functioning of the immigration court system that is increasingly accessed by unrepresented respondents who are forced to defend their rights in an unfamiliar system against a sophisticated opponent, a lawyer representing the Department of Homeland Security. Judges are tasked with ensuring that this

---

[3] *See Immigration Court Legal Representation Dashboard*, VERA INST. OF JUST., https://www.vera.org/ending-mass-incarceration/reducing-incarceration/detention-of-immigrants/advancing-universal-representation-initiative/immigration-court-legal-representation-dashboard (data through December 2024).

unlevel playing field does not violate due process by educating unrepresented respondents and allowing valid claims for relief to be adequately presented to the court.

We further note that this brief is written at a time when the immigration system is under daily attack, with changes both actual and proposed that promise to degrade the capacity of the immigration courts to provide due process. Accordingly, the Programs will serve an even more important role in the preservation of basic rights for respondents.

## **BACKGROUND**

The immigration court system is the due process provided to individuals who are charged with removability from the United States (*i.e.*, deportation) by the Department of Homeland Security ("DHS"). The immigration judge, an employee of the Department of Justice appointed by the Attorney General and operating within the Executive Office for Immigration Review, presides over removal proceedings, and is responsible for ensuring their fairness and efficiency. As of the end of 2024, there were approximately 700 immigration judges located in 71 immigration courts and three remote-only adjudications centers across the United States and its territories. Immigration judges play a unique role in the immigration court system, different from Article III judges; as the Second Circuit has observed, an immigration judge "is not merely the fact finder and adjudicator but also has an obligation to establish the record." *Yang v. McElroy*, 277 F.3d 158, 162 (2d Cir. 2002) (citing 8 U.S.C. § 1229a(b)(1)). Accordingly, immigration judges have a duty to interact deliberately with noncitizens who appear before them to ensure a full and fair hearing. *Quintero v. Garland*, 998 F.3d 612, 624–25 (4th Cir. 2021) (explaining at length the duty of immigration judges to develop the record). Indeed, a fair hearing requires "adequate assistance from the immigration judge." *Id.* at 628 (citing *Diop v. Lynch*, 807 F.3d 70, 76 (4th Cir. 2015)). This is particularly true for those who are seeking asylum or other protections; as the Board of

3

Immigration Appeals has held, immigration judges and Board members "bear the responsibility of ensuring that refugee protection is provided where such protection is warranted by the circumstances of an asylum applicant's claim." *Matter of S-M-J-*, 21 I. & N. Dec. 722, 723 (B.I.A. 1997). Thus, "a cooperative approach in Immigration Court is particularly appropriate[,]" giving immigration judges "a role in introducing [relevant] evidence into the record." *Id.* at 724, 726. In summary, immigration judges "have an affirmative duty to assist and work with" those who appear before them seeking relief. *Quintero*, 998 F.3d at 626.

These duties of the immigration judge extend to all cases, including where the respondent is represented by counsel, *id.* at 627, but obviously require far more intervention by the immigration judge where the respondent is unrepresented. As the federal courts have long recognized, immigration law is extremely complicated and often unintelligible to those without legal training. *Castro-O'Ryan v. U.S. Dep't of Immigr. & Naturalization* ("INS"), 847 F.2d 1307, 1312 (9th Cir. 1988) ("With only a small degree of hyperbole, the immigration laws have been termed 'second only to the Internal Revenue Code in complexity.' A lawyer is often the only person who could thread the labyrinth." (citation omitted)). Sadly, despite this complexity, the clear majority of respondents have no lawyer to thread the labyrinth. U.S. law does provide that a respondent has a right to be represented, but not at government expense.[4] Not surprisingly, then, as of December 2024, 67% of respondents were not represented in immigration court.[5] Unrepresented respondents require the most assistance from immigration judges—and benefit the most from LOP, ICH, and other programs.

---

[4] 8 U.S.C. §1362: Right to Counsel ("In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.").

[5] *See Immigration Court Legal Representation Dashboard*, *supra* note 3.

With that in mind, let us explain how immigration court proceedings work (primarily from the perspective of an unrepresented respondent), and the judge's role in those proceedings, highlighting the important role of LOP, ICH, and similar programs.

### 1. *Commencement of Proceedings via Notice to Appear*

Immigration court removal proceedings are commenced by DHS with the service and filing of a Notice to Appear ("NTA"), a legal document that contains factual allegations supporting the stated legal bases for the charges of removability under the Immigration & Nationality Act ("INA"). The NTA, like a civil or criminal complaint, is not proof of removability; its allegations and charges must be proven by DHS and may be contested by the respondent.

Respondents—including recently-arrived asylum seekers who recently entered, permanent residents with families in the U.S., and undocumented individuals who have lived in our country for decades—must then prepare to answer the allegations and charges leveled against them in the NTA and assert any claims for relief from removal. For many unrepresented respondents, the only way to prepare for this task is to access a Legal Orientation Program in detention or the Immigration Court Helpdesk (or similar program). With the broad unavailability of legal representation, for the past decades LOP has played a critical role in detention centers, educating detained respondents on the immigration court process, helping them understand their role and rights, the allegations and charges in the NTA served on them, and any claims for relief they may have. When Defendants ordered an abrupt stop to LOP, in-person LOP programs were operating in 35 different detention centers, with the LOP Information Line available to detainee respondents in 70 detention centers. Likewise, ICH plays a similar role for non-detained respondents where it

is available (at last count, 24 immigration courts had ICH, and another 5 had a virtual ICH program).[6]

Congress recognizes the value of LOP and ICH. In 2024, the Senate subcommittee responsible for the EOIR appropriation directed "the Department to continue all LOP services and activities, including that of the ICH, without interruption, including during any review of the program, and ensure continuity of staffing and service regardless of fluctuations in the immigration court docket or in the population in the detention centers served. The Committee further direct[ed] that all component parts of the LOP program, including the ICH, be operated by non-profit NGOs with demonstrated immigration law expertise."[7]

### 2. The Master Calendar Hearing

After the NTA is served and lodged with the immigration court, the first hearing for any respondent is the master calendar hearing, where the respondent is asked to plead to the charges in the NTA, state any claims for relief, and set a date for trial (also known as an individual, or merits, hearing). Any single master calendar hearing session is scheduled to address the cases of well more than a dozen respondents, one by one. The immigration judge must ensure that each respondent fully understands the proceedings—*i.e.*, why they are there and what the process will entail. The immigration judge must also ensure that each respondent understands the contents of the NTA, and available claims for relief.[8] The immigration judge does this by directly questioning the respondent, often through an interpreter, and gauging whether they understand the proceedings and, in particular, the NTA. This can be a lengthy colloquy with the respondent; EOIR master

---

[6] *See Immigration Court Helpdesks*, EOIR, U.S. DEP'T OF JUST., https://www.justice.gov/eoir/olap/ich (last updated Feb. 3, 2025).

[7] S. Rep. No. 118-198, at 92 (2024).

[8] *See* 8 C.F.R. § 1240.10(a) (listing requirements of immigration judge to advise respondent); 8 C.F.R. § 1240.11(a)(2) ("The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter . . . .").

calendar hearing guidance for questioning *pro se* respondents runs seven pages.[9] As an example, one of our members recently witnessed a master calendar hearing where the immigration judge needed 30 minutes to address a single respondent, an unrepresented Creole speaker. This discussion proceeds much more smoothly when the respondent has already had LOP or ICH orientation, as in our experience those respondents are familiar enough with the process to need relatively limited guidance from the immigration judge.

In cases where the respondent has no relief, and the immigration judge is satisfied that they understand the consequences of pleading, the proceedings end quickly, sometimes at the first master calendar hearing. In our experience, unrepresented respondents who have already had the opportunity to access LOP or ICH (or similar programs), are more likely to understand the proceedings and plead to the NTA at the first master calendar hearing.

Often, though, the first master calendar hearing will not resolve the proceedings. In cases where the immigration judge observes that the respondent does not fully understand the charges and allegations in the NTA or does not know whether they may be eligible for relief, the immigration judge will often order a continuance with direction to the respondent to find a lawyer or other source of guidance (which may be LOP or ICH, if the respondent has not yet availed themselves of that resource). Sometimes, master calendar hearings are simply continued to allow for the respondent to find counsel, without any further discussion of the NTA (LOP and ICH can be effective in connecting respondents with pro bono counsel). Of course, if the respondent is detained, these continuances lengthen the time in detention and increase the cost to the government.

---

[9] *See* EOIR, *Master Calendar Checklist for the Immigration Judge/The Pro Se Respondent*, *available at* https://www.justice.gov/sites/default/files/eoir/legacy/2014/08/15/Script_MC_Checklist.pdf (last accessed Mar. 10, 2025).

After a number of continuances, even if they do not find counsel, the respondent will plead to the NTA. Again, the immigration judge must ensure that the respondent understands pleadings and their available relief. When a respondent requests relief from removal, the immigration judge may set yet another master calendar hearing for filing the application, unless the respondent is able to use the electronic filing system known as the "Respondent Access Portal."[10] Here, LOP and ICH help unrepresented respondents by providing assistance with completing forms (like the I-589 asylum application) and accessing and filing materials on the Respondent Access Portal.

When the preliminary process of the master calendar hearing has been completed, the immigration court will schedule the merits hearing to adjudicate any remaining issues, typically the claims for relief.

### 3. The Merits Hearing

The merits hearing is a multi-hour adversarial hearing where the Department of Homeland Security is represented by an Assistant Chief Counsel ("ACC") working for the Office of Principal Legal Advisor in Immigration and Customs Enforcement. Most respondents have no counsel. An interpreter is provided for respondents who do not speak English fluently. The judge, as discussed above, is duty-bound to help develop the record and ensure that the respondent is able to articulate her claims for relief.

Even before the hearing commences, though, it is the respondent's burden to present evidence to substantiate their claims. If they have no attorney then they must collect relevant documents and file them with the court. At this point, LOP and ICH provide self-help workshops where respondents can receive in-depth guidance on specific topics, including how to submit documents to the court, which witnesses to call, and how to present one's own testimony. These

---

[10] *See Respondent Access*, EOIR, U.S. DEP'T OF JUST., https://respondentaccess.eoir.justice.gov/en/ (last visited Mar. 10, 2025).

8

workshops, staffed by immigration attorneys, fully accredited representatives, or paralegals, also help respondents practice legal advocacy skills to aid their presentation to the immigration court.

In our time on the bench, we noticed that unrepresented respondents who were prepared for court by programs like LOP and ICH were better able to present their cases and articulate their claims for relief. For sure, most still needed guidance from the court, but they were more likely to be comfortable speaking through the interpreter, addressing the court, and responding to questions from the ACC. Respondents prepared by LOP and ICH are also more likely to understand the court's decision. Indeed, once a decision is rendered, the role of LOP and ICH is not over: these programs can help the respondent review the decision and determine whether appeal is appropriate.

## **ARGUMENT**

We are concerned that the Department of Justice, in quickly moving to terminate the Programs, did not take time to understand the value they provide. In our experience, LOP, ICH and other Programs are essential elements of a well-functioning immigration court system that requires immigration judges to be active participants in hearings, particularly with unrepresented respondents. The system is not only more efficient but is more fair when respondents access these programs. Indeed, in order for the system to function well, these Programs should be supported and expanded, not terminated. Even a temporary suspension of these Programs would be disruptive to immigration court proceedings and only increase the backlog.

### *1. The Programs Help Immigration Judges Fulfill their Statutory Duties*

As discussed at more length above, federal circuit courts have repeatedly held that immigration judges have a statutory obligation to help unrepresented respondents understand the proceedings, establish the record and present information "necessary for a reasoned decision . . . ." *Barragan-Ojeda v. Sessions*, 853 F.3d 374, 381 (7th Cir. 2017). Reading a rote script is not

9

enough; the immigration judge's duty is to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Agyeman v. INS*, 296 F.3d 871, 877 (9th Cir. 2002) (quoting *Jacinto v. INS*, 207 F.3d 725, 733 (9th Cir. 2000)).  As the Fourth Circuit illustratively explained, *pro se* respondents must not be "thrown into removal proceedings and left to sink or swim without adequate assistance from the immigration judge." *Quintero*, 998 F.3d at 628 (citing *Diop*, 807 F.3d at 76).

Nearly every unrepresented respondent struggles to swim in immigration court—the process is unfamiliar (even to most lawyers), the law is complex, and the government is represented by a lawyer in these adversarial proceedings.  But the difference between struggling and drowning can be the assistance of programs like LOP and ICH, which allow the respondent, outside the deep end of immigration court proceedings, to learn about the system, their rights, and their potential claims.  These Programs provide consistent and repeated opportunities to respondents, allowing them to learn in group orientations, individual consultations and self-help workshops.

Given the overwhelming backlog in immigration court—nearly 3.6 million cases at the end of FY 2024[11]—immigration judges have limited time to engage in the intensive assistance required for *pro se* respondents (ndeed, the federal circuit court cases cited above were on appeal only because the immigration judge did not properly execute that function).  When a respondent has spent time with LOP or ICH, the immigration judge is far more likely to be able to successfully engage with the respondent in a meaningful way that meets the requirements of the job.

---

[11] *See* Holly Straut-Eppsteiner, CONG. RSCH. SERV., IN12463, IMMIGRATION COURTS: DECLINE IN NEW CASES AT THE END OF FY2024 2 (2024), https://crsreports.congress.gov/product/pdf/IN/IN12463.

## 2. *The Programs are Efficient*

In our view, LOP and ICH are incredibly efficient programs. They speed immigration court proceedings, reduce detention expenditures, limit *in absentia* orders, and decrease appeals to the Board of Immigration Appeals and the federal courts.

Unrepresented respondents who utilize LOP and ICH are more prepared for court and require less direction (and therefore time) from the immigration judge. When a respondent fully understands the court process and their rights, they are more likely to make an intelligent decision about their case. Often, that decision may be that they have no defense to removal and need to depart the United States without a full evidentiary hearing to contest the charges or to seek relief. Programs like LOP and ICH allow a respondent to come to that conclusion outside of court; it is unlikely that an immigration judge can achieve the same result at a respondent's first hearing in immigration court, often resulting in continuances. Even with continuances, LOP and ICH continue to be useful resources to the respondent as they decide how to proceed. If the respondent is detained, resolving the case at an early hearing also means that their detention at government expense will not be prolonged.

LOP and ICH continue to benefit those who do pursue claims for relief at a full evidentiary hearing. At the most basic level, respondents who receive services from an LOP are more likely to show up for their merits hearings.[12] They are also more likely to present evidence and information that can help the immigration judge complete an efficient and accurate merits hearing. And when the decision is rendered, LOP and ICH help the respondent understand whether they have a basis for appeal. Accordingly, LOP and ICH can limit frivolous appeals and help sharpen

---

[12] *See* VERA INST. OF JUST., *LOP Case Time Analysis, Fiscal Years 2013-2017* at 5 (Sept. 14, 2018), *available at* https://perma.cc/SH8S-KB8J (respondents who have had access to LOP are half as likely to be ordered removed *in absentia*).

11

the arguments in cases that have merit. This benefits both the immigration court system and the federal courts, which are inundated with appeals from the agency.[13]

### 3. The Programs Promote Due Process

Last, but certainly not least, LOP and ICH are essential to providing due process to respondents in immigration court. Due process requires the immigration courts to provide a "full and fair hearing" to those who appear before it. *Quintero*, 998 F.3d at 623–24 (collecting cases).

As discussed above, it is the responsibility of the immigration judge to ensure a fair and full hearing. While the INA accords a right to counsel, at no cost to the government, DHS is almost always represented while a majority of respondents have to appear without counsel as they cannot afford a lawyer or find pro bono assistance. A system like this one needs outside help in order to provide the process that is due to those who appear before it. LOP, ICH, and the other Programs have become essential components of the immigration court system for unrepresented respondents. Terminating these programs will compromise the due process for this vulnerable population, leading to unfairness and inefficiency. Immigration judges need these Programs to deliver the justice that is required for those who appear before us.

## CONCLUSION

As former immigration judges and members of the Board of Immigration Appeals, we are deeply concerned that an overwhelmed immigration court system is being deprived of the resources and structure it needs to function properly. Eliminating the Programs is a step in the wrong direction, burdening immigration judges, reducing efficiency, and limiting due process.

---

[13] BIA appeals accounted for 80% of administrative agency appeals and constituted the largest category of administrative agency appeals filed in each circuit except the DC Circuit. *Federal Judicial Caseload Statistics 2024*, U.S. COURTS, https://www.uscourts.gov/data-news/reports/statistical-reports/federal-judicial-caseload-statistics/federal-judicial-caseload-statistics-2024 (last visited Mar. 10, 2025).

12

Dated: March 10, 2025                                   Respectfully submitted,

                                                           */s/ John R. Jacob*
                                                           John R. Jacob
                                                           D.C. Bar No. 444412
                                                           AKIN GUMP STRAUSS HAUER & FELD LLP
                                                           2001 K Street, N.W.
                                                           Washington, D.C. 20006
                                                           Tel: (202) 887-4000
                                                           Fax: (202) 887-4288
                                                           Email: jjacob@akingump.com

                                                           *Counsel to Amici Former Immigration*
                                                           *Judges & Former Members of the Board*
                                                           *of Immigration Appeals*

# APPENDIX A

## Former Immigration Judges and Members of the Board of Immigration Appeals

Hon. Steven Abrams, Immigration Judge, New York, Varick St., and Queens Wackenhut, 1997–2013

Hon. Terry A. Bain, Immigration Judge, New York, 1994–2019

Hon. Sarah M. Burr, Assistant Chief Immigration Judge and Immigration Judge, New York, 1994–2012

Hon. Jeffrey S. Chase, Immigration Judge, New York, 1995–2007

Hon. George T. Chew, Immigration Judge, New York, 1995–2017

Hon. Joan V. Churchill, Immigration Judge, Washington, D.C./ Arlington, VA, 1980–2005

Hon. Lisa Dornell, Immigration Judge, Baltimore, 1995–2019

Hon. Bruce J. Einhorn, Immigration Judge, Los Angeles, 1990–2007

Hon. Cecelia M. Espenoza, Appellate Immigration Judge, Board of Immigration Appeals, 2000–2003

Hon. Noel A. Ferris, Immigration Judge, New York, 1994–2013

Hon. James R. Fujimoto, Immigration Judge, Chicago, 1990–2019

Hon. Annie S. Garcy, Immigration Judge, Newark, NJ, and Philadelphia, 1990–2023

Hon. Gilbert Gembacz, Immigration Judge, Los Angeles, 1996–2008

Hon. Jennie Giambastiani, Immigration Judge, Chicago, 2002–2019

Hon. Alberto E. Gonzalez, Immigration Judge, San Francisco, 1995–2005

Hon. John F. Gossart, Jr., Immigration Judge, Baltimore, 1982–2013

Hon. Paul Grussendorf, Immigration Judge, Philadelphia and San Francisco, 1997–2004

Hon. Miriam Hayward, Immigration Judge, San Francisco, 1997–2018

Hon. Sandy Hom, Immigration Judge, New York, 1993–2018

Hon. Charles M. Honeyman, Immigration Judge, New York and Philadelphia, 1995–2020

Hon. Rebecca Jamil, Immigration Judge, San Francisco, 2016–2018

Hon. William P. Joyce, Immigration Judge, Boston, 1996–2002

Hon. Edward F. Kelly, Appellate Immigration Judge, Board of Immigration Appeals, 2017–2021; Deputy Chief Immigration Judge, 2013–2017; Assistant Chief Immigration Judge, EOIR Headquarters, 2011–2013

Hon. Carol King, Immigration Judge, San Francisco, 1995–2017

Hon. Eliza C. Klein, Immigration Judge, Miami, Boston, Chicago, 1994–2015; Senior Immigration Judge, Chicago, 2019–2023

Hon. Christopher M. Kozoll, Immigration Judge, Memphis, 2022–2023

Hon. Elizabeth A. Lamb, Immigration Judge, New York, 1995–2018

Hon. Dana Leigh Marks, Immigration Judge, San Francisco, 1987–2021

Hon. Margaret McManus, Immigration Judge, New York, 1991–2018

Hon. Steven Morley, Immigration Judge, Philadelphia, 2010–2022

Hon. Robin Paulino, Immigration Judge, San Francisco, 2016–2020

Hon. Charles Pazar, Immigration Judge, Memphis, 1998–2017

Hon. George Proctor, Immigration Judge, Los Angeles, San Francisco, 2003–2008

Hon. Laura L. Ramirez, Immigration Judge, San Francisco, 1997–2018

Hon. Lory D. Rosenberg, Appellate Immigration Judge, Board of Immigration Appeals, 1995–2002

Hon. Susan G. Roy, Immigration Judge, Newark, 2008–2010

Hon. Paul W. Schmidt, Chairperson and Appellate Immigration Judge, Board of Immigration Appeals, 1995–2003; Immigration Judge, Arlington, VA, 2003–2016

Hon. Patricia M. B. Sheppard, Immigration Judge, Boston, 1993–2006

Hon. Helen Sichel, Immigration Judge, New York, 1997–2020

Hon. Denise Slavin, Immigration Judge, Miami, Krome, Baltimore, 1995–2019; Senior Immigration Judge, Orlando, 2023–2024

Hon. Andrea Hawkins Sloan, Immigration Judge, Portland, 2010–2017

Hon. A. Ashley Tabaddor, Immigration Judge, Los Angeles, 2005–2021

Hon. Robert D. Vinikoor, Immigration Judge, Chicago, 1984–2017

Hon. Polly A. Webber, Immigration Judge, San Francisco, 1995–2016

Hon. Robert D. Weisel, Assistant Chief Immigration Judge, Immigration Judge, New York, 1989–2016

Hon. Mimi Yam, Immigration Judge, San Francisco, Houston, 1995–2016