IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, *et al.*,<br><br>                     Plaintiffs,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>                     Defendants. | Case No. 1:25-cv-00298-RDM<br><br>**SECOND SUPPLEMENTAL DECLARATION OF KELLY ROJAS IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR A TEMPORARY RESTRAINING ORDER** |

**SECOND SUPPLEMENTAL DECLARATION OF KELLY ROJAS**
**CO-DIRECTOR OF DETAINED ADULT PROGRAM FOR AMICA CENTER FOR**
**IMMIGRANT RIGHTS**

*I, Kelly Rojas, make the following statements on behalf of the Amica Center for Immigrant Rights. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) and Supplemental Declaration (Dkt. 53-2) as if fully set forth herein.

2. As explained in my prior declarations, my name is Kelly Rojas, and I am the Co-Director of the Detained Adult Program at the Amica Center for Immigrant Rights. Amica Center operates a Legal Orientation Program.

3. As detailed in my first declaration, after the January 22, 2025 stop work order for the Programs, the LOP team from Amica Center was suddenly ordered to pack up and leave one of the ICE detention facilities in Virginia where they had been offering LOP services during a previously scheduled visit. On the same day—January 23, 2025—Amica Center staff were also informed that all LOP materials, including materials without reference to the official LOP program, were removed from the facilities. Beyond educational materials, the facility staff also removed posters with instructions detailing how to contact Amica Center through our designated detention hotline. Detained individuals who contacted us through our hotline informed us that facility staff had been announcing that Amica Center was no longer permitted into the facilities.

4. After the initial stop work order, we attempted to submit updated written materials and a poster with generic information on how to contact our detention hotline that did not reference LOP, but our poster was not approved by the ICE Acting Field Office Director. We also submitted a request to access the detention facilities in-person outside of LOP under the Performance-Based Detention Standards, which provides for more limited legal access to facilities than LOP, to continue offering educational materials and group presentations, but we did not receive approval to access the facilities before the stop work order was rescinded.

5. We received the most recent termination notice on April 10, 2025. We anticipate that the termination of funding will be accompanied by the same termination of access to all detention facilities and immigration courts as we experienced under the stop work order based on a responsive national directive from ICE (as detailed above and in my first declaration). If Amica Center staff are asked to leave any detention facilities or barred from entering the facilities in the first place, our staff will have no choice but to comply. Since

1

receiving the termination notice, Amica Center staff have had to divert time from pro se intaking and LOP support services to contingency plan for the loss of funding and outreach to ICE and jail staff to try to secure some ongoing legal access to identify individuals eligible for our other program services and continue our mission. Staff must divert time to once again updating and resubmitting already approved educational materials to remove any reference to the word "LOP" and to reviewing practice advisories and other resources to update a group Know Your Rights presentation request under the detention standards should ICE once again require this. We must conduct outreach to facility stakeholders and ICE leadership to try to persuade them to not use the LOP termination to cut off forms of legal access that are wholly unrelated to LOP and negatively impact our direct representation clients, such as group callback requests and electronic legal documents transmissions, as occurred during the prior stop work order.

6. Furthermore, after the termination goes into effect on April 16, 2025, even if we were given access to the detention facilities to offer more limited services, we would be forced to do so completely unfunded. As detailed in my previous declarations, LOP funding comprises 20% of our budget for the Detained Adult Program at Amica Center and Amica Center employs nine staff members dedicated to providing LOP services. Without LOP funding, Amica Center will not be able to reallocate other funding to keep providing LOP services in their entirety.

7. Amica Center's ability to absorb this momentous loss of funding is lessened by the concurrent loss of federal funding for our representation of unaccompanied children, which accounts for 30% of Amica Center's annual budget. As previously noted, the government currently owes us approximately $1.6 million in back payments for two to three months of work for representation of unaccompanied children and other programs, which is funding we cannot use to fund LOP services after the termination of LOP funding. Given our lack of financial resources as a nonprofit, we simply cannot self-fund the same LOP services we were able to offer under the LOP contract. We have limited streams of alternate funding that cannot be utilized for LOP services: for example, we receive funding from the state of Maryland to represent Maryland residents who are detained in ICE custody, but we cannot use that funding for any programs we choose outside of representing Maryland residents. Given our current more precarious financial posture, we anticipate having to lay off LOP staff within the next two months if funding is terminated.

8. The Amica Center operates with limited reserves, as our funding is dedicated to fulfilling its mission and much of our funding is restricted. If we kept operating LOP in its entirety without funding, causing Amica Center as a whole to deplete reserves, we would not be able to fulfill our financial obligations, leading us to be forced to shutter all our programs and close the organization as a whole.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 14th day of April 2025, in Springfield, Virginia.

**Kelly Rojas**