# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>*Defendants.* | Case No. 1:25-cv-00298<br><br>**DECLARATION OF LAUREN CUSITELLO IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF** |

**SUPPLEMENTAL DECLARATION OF LAUREN CUSITELLO**
**DIRECTOR FOR ABA IMMIGRATION JUSTICE PROJECT**

*I, Lauren Cusitello, make the following statements on behalf of the ABA Immigration Justice Project. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) and Supplemental Declaration in Support of Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 51) as if fully set forth herein.

2. As explained in my prior declarations, my name is Lauren Cusitello, and I am the Director of the Immigration Justice Project (IJP), in San Diego, California. IJP is a project of the American Bar Association (ABA), a non-profit entity. IJP is the primary organization dedicated to providing legal services to both detained and non-detained immigrants and asylum-seeking men, women, and children in the San Diego region.

3. IJP's mission is to promote due process and access to justice at all levels of the immigration and appellate court system, through the provision of high-quality legal services for people in immigration proceedings in and around San Diego, California. IJP has four legal programs: legal orientation; direct representation of adults; direct representation of children; and the pro bono program. Legal Orientation comprises the Legal Orientation Program (LOP) and the Immigration Court Helpdesk (ICH), Direct Representation of adults includes the National Qualified Representative Program (NQRP) and IJP's work within San Diego County's Immigrant Rights Legal Defense Program (LDP). Representation of children comprises the Counsel for Children Initiative (CCI) and the Unaccompanied Children's Program (UCP). IJP's Pro Bono Program enlists volunteer attorneys and law firm partnerships to support the other programs' work and runs recurring clinics to assist noncitizens with applications for employment authorization, Temporary Protected Status (TPS), and other immigration benefits.

4. Until the recent termination effective April 16, 2025, IJP's Legal Orientation Program operated at the Otay Mesa Detention Facility in San Diego and serving the San Diego Immigration Court, as well as the Otay Mesa Immigration Court, since 2008. IJP began offering ICH services at the San Diego Immigration Court in 2021. In 2022, IJP began offering services through the Children's Counsel Initiative (CCI), a program designed to guarantee representation to children who had been released from custody but who were facing removal without counsel. IJP is currently representing 25 clients within the CCI program. The annual revenue from these combined programs made up approximately 27% of IJP's budget and sustained approximately 7 full-time equivalent positions.

5. Before the recent termination, IJP had three full-time staff members dedicated to providing LOP services—one law graduate, one Department of Justice-accredited representative, and one senior paralegal. The LOP team travelled 50 miles round-trip, three days each week, to provide legal information presentations and individual orientations to detained noncitizens who lack legal counsel. The ICH team comprised one staff attorney, one DOJ-accredited representative, and one senior paralegal. The ICH

team travelled three days each week to the San Diego Immigration Court to offer legal information and orientation to noncitizens who are not in custody but who are not represented in their removal proceedings. Both the LOP and ICH teams regularly referred participants for placement with attorneys for *pro bono* representation, and these programs were IJP's primary sources of referrals for in-house direct representation. The loss of funding for the LOP program directly affects IJP's work and, more importantly, access to counsel for all the noncitizens who appear in the Otay Mesa and San Diego Immigration Courts.

6. Without warning, on January 22, 2025, the Department of Justice issued a national contract stop work order, pursuant to Section 19 of the January 20, 2025, Executive Order titled "Protecting the American People Against Invasion." The national contract stop work order, which took effect immediately, extended to the following programs: the general LOP program, the ICH, the CCI, and Family Group Legal Orientation Program (FGLOP). The order stated that these programs were being paused so they could undergo an audit.

7. At 12:30 p.m. PST on Wednesday, January 22, our LOP team had just begun its second asylum application self-help workshop of the day at the Otay Mesa Detention Center for detainees who do not speak English and cannot afford lawyers. The ICH team was conducting information sessions with unrepresented immigrant families at the San Diego Immigration Courthouse to explain their obligations and rights before the Court. Our CCI attorneys were busy drafting motions for children who have hearings and filing deadlines scheduled for that week. The IJP office received notice of the stop work order, and communicated it to our teams, while these services were taking place; our LOP and ICH teams had to return from Otay Mesa and from the San Diego court, leaving program participants without assistance to finish asylum applications or receive necessary legal information.

8. The impact on ICH and LOP program participants was immediate. Some of the asylum self-help workshop participants broke down crying, asking how they could complete their applications in English without LOP's assistance. People with hearings at the San Diego court were looking for an ICH team that could no longer come to serve them, and signs describing available services had to be removed from the court's lobby.

9. The impact within IJP was just as immediate. Many members of the IJP team asked if their jobs were secure or whether there would be layoffs. IJP immediately had to re-route calls from detention to another legal program, in the absence of LOP referrals and services. The only recourse for people previously served by ICH and LOP was referral for direct representation within an IJP program not affected by the stop work order or by another legal service provider. This left countless noncitizens facing removal with fear that they would be alone in court and alone during their preparation, with no sense of when the stop work order would end—or if it would end at all.

10. The financial consequences of the stop work order were severe. The loss of LOP and ICH funding represented nearly 40% of IJP's monthly budget. IJP was forced to reallocate the workload and funding for the salaries of all ICH and LOP team members during the stop work, but their work was reallocated to a program that is funded based on services

    performed, not hours worked. Had the stop work order continued for longer, this would have caused a significant financial hardship for IJP at the time.

11. Even the suspension of the stop work order did not reverse the consequences of the order. The CCI attorneys were caught between their ethical obligations to their clients and the need to reallocate much of their time to other programs during the stop work. IJP's entire team, including but not limited to ICH and LOP, was feeling anxiety and fear for their paychecks and their jobs.

12. Then, on April 10, 2025, the Department of Justice terminated the contracts for the Family Group Legal Orientation Program (FGLOP), Legal Orientation Program for Custodians (LOPC), CCI, ICH, and LOP, effective 12:01 a.m. on April 16, 2025. I learned of the termination from an email sent by the Acacia Center for Justice to its subcontracting organizations on April 10, 2025. This has had a very negative impact on our team's morale and has increased anxiety, which was already high because of other immigration policy changes affecting our community and the people we serve.

13. After the termination notice, we were forced to transfer all of our LOP and ICH staff to direct representation casework due to the lack of funding. However, even with the staff transfers, we anticipate that due to the lack of funding, four staff members will be terminated. Without work on these programs, we have lost our primary referral pipeline to our direct representation. Without the resources for interpretation that LOP and ICH were able to access, the increasing population of third-language speakers, such as Russian and Chinese asylum seekers, is less able to access the services of IJP and other legal service providers in San Diego.

14. The termination has impacted our ability to do our work. The San Diego immigration court stopped referring respondents to ICH, no longer hands out our flyers, and took down flyers from the detention facilities. Additionally, court staff advised us that they will not schedule any further liaison meetings.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 2nd of May 2025, in San Diego, California.

/s/ Lauren Cusitello
**Lauren Cusitello**
Director, ABA Immigration Justice Project