# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>*Defendants.* | Case No. 1:25-cv-00298<br><br>**DECLARATION OF AIMEE KOROLEV IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF** |

# DECLARATION OF AIMEE KOROLEV
# DEPUTY DIRECTOR OF THE AMERICAN BAR ASSOCIATION SOUTH TEXAS PRO BONO ASYLUM REPRESENTATION PROJECT (ProBAR)

*I, Aimee Korolev, make the following statements on behalf of the American Bar Association South Texas Pro Bono Asylum Representation Project (ProBAR). I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) and Supplemental Declaration in Support of Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 51) as if fully set forth herein.

2. As explained in my prior declarations, my name is Aimee Korolev, and I am the Deputy Director of the South Texas Pro Bono Asylum Representation Project ("ProBAR"), located in Harlingen, Texas. ProBAR is a project of the American Bar Association ("ABA"), a non-profit corporation. In my role as Deputy Director, I oversee ProBAR's programmatic and legal work. ProBAR is the primary organization dedicated to providing legal services to both detained and non-detained indigent immigrant men, women, and children in the Rio Grande Valley and Houston.

3. The mission of the ABA is to serve its members, the legal profession, and the public by defending liberty and delivering justice as the national representative of the legal profession. Through ProBAR, the ABA pursues fair treatment and full due process rights for immigrants and asylum-seekers within the United States. ProBAR provides legal education, representation, and connections to services for immigrants in the Texas Rio Grande Valley border region with a particular focus on the legal needs of adults and children in federal custody.

4. ProBAR was formed more than 35 years ago in response to a critical need—asylum seekers were being detained in isolated areas at the border without access to information or legal counsel. ProBAR has responded to that need, educating individuals on their legal rights, finding pro bono legal counsel for those eligible for relief, and helping to secure asylum and other forms of relief for qualifying migrants over the past 35 years. That work helped to form the concept for LOP today. The loss of this program represents a loss of significant advancement of ProBAR's work and efficiencies to the immigration court system.

5. In 1998, ProBAR was selected as one of three legal service providers to pilot the legal rights presentation, the concept for the Legal Orientation Program ("LOP"), at the Port Isabel Service Processing Center in Los Fresnos, Texas. After the conclusion of the 90-day pilot, ProBAR continued to provide periodic Know Your Rights presentations at the facility until it began to formally operate the LOP at the renamed Port Isabel Detention Center ("PIDC") in 2003. In 2010, ProBAR was selected as one of the three pilot sites for the Legal Orientation Program for Custodians ("LOPC"). In 2018, ProBAR increased its LOP program to provide services at the El Valle Detention Facility in Raymondville, Texas. In July 2022, ProBAR deepened and expanded its services by launching the

Immigration Court Helpdesk ("ICH") in the Harlingen Immigration Court, expanding its adult orientation services to the greater Rio Grande Valley Community.

6. In addition to ProBAR's LOP, ProBAR is part of the Acacia network of providers offering services under the LOPC contract. LOPC is a program designed to educate children's custodians, also known as sponsors, of their responsibilities in ensuring children appear in immigration court and are protected from mistreatment, trafficking, and exploitation as provided under the Trafficking Victims Protection Reauthorization Act of 2008. Like the other LOP programs, LOPC is limited to legal orientation and limited legal advice versus full direct representation.

7. ProBAR has been operating LOPC since 2010. Under this program, ProBAR provides in-person orientations to sponsors of children who have reunified in the Rio Grande Valley and whose cases are docketed before the Harlingen Immigration Court. ProBAR also provides virtual or telephonic orientations for sponsors throughout the United States, with an emphasis on sponsors in rural locations where there is no other LOPC provider on the ground. ProBAR provides these services Monday through Friday, and this program supports the employment of approximately six full-time staff members.

8. ProBAR provides essential services through these programs. In 2024, ProBAR provided group Know Your Rights orientations to approximately 7,778 individuals and individual orientations to approximately 865 individuals through its LOP program and orientations to 4,220 participants in the courtroom lobby through its ICH program, thereby improving the individuals' understanding of the immigration court process, eligibility requirements for legal relief, and respondents' rights and responsibilities, resulting in enhanced efficiency for the Executive Office for Immigration Review courtroom administration. In the first quarter of 2025, ProBAR provided 486 critical orientations to sponsors.

9. In order to carry out this mission, ProBAR has several main work components: (1) through LOP, providing educational and pro se services in the form of legal information Know Your Rights ("KYR") presentations, conducting individual orientations, and conducting pro se workshops with unrepresented detained noncitizens in the custody of ICE at Port Isabel Detention Center and El Valle Detention Center; (2) through ICH providing pro se and orientation services at the Harlingen Immigration Court; (3) through LOPC providing individual orientations, pro se workshops and referrals to sponsors of reunified children; (4) connecting unrepresented noncitizens who cannot afford a lawyer with pro bono attorneys from our various pro bono firm partners, for cases at both the immigration court and Board of Immigration Appeals levels; and (5) providing referrals to in-house staff for representation with alternative funding.

10. The combined detention population on average at the two detention facilities ProBAR serves is approximately 2,000 people. ProBAR provided LOP services for the entire immigrant population detained by ICE whose cases are heard at the Port Isabel Immigration Court.

11. With LOP funding, ProBAR had (until the April 16, 2025, termination) 13 full-time staff members who dedicated a portion of their time to providing LOP services. Specifically, the LOP team consisted of one managing attorney, two senior attorneys, two staff attorneys, one supervising paralegal, six paralegals, and a legal assistant. Staff under LOP

    regularly travelled to each detention center in person to provide legal information KYR presentations, individual orientations, and pro se workshops to noncitizens who are detained and do not have counsel. ProBAR also offered the same services virtually to reach more individuals. ProBAR staff regularly returned calls from individuals detained in the facilities and responded to daily requests and questions through the facilities' Talton tablets. Talton tablets allowed individuals in detention to send a message directly to ProBAR staff. ProBAR offers a toll-free phone line for inquiries directly from the housing pods at the facilities.

12. Similarly, ProBAR's ICH program was available to individuals in the community who are in removal proceedings before the Harlingen Immigration Court. It followed the same model for services, providing group orientations in the courtroom lobby, individual orientation sessions, workshops, and referrals for representation both internally and with pro bono attorneys. In 2024, the Harlingen Immigration Court handled approximately 12,600 matters. The same year, ProBAR provided 4,220 orientations in the courtroom lobby and completed 2,074 change of venue and/or change of address services ahead of respondents' master calendar hearings.

13. With ICH funding, ProBAR had (until the April 16, 2025, termination) seven full-time staff members who dedicate a portion of their time to providing ICH services. The team consisted of a supervising attorney, staff attorney, DOJ representative, supervising paralegal, and three paralegals. Staff under the ICH program worked out of the Harlingen Immigration Court lobby three days a week, completing live group KYR orientations, staffing the helpdesk in the lobby, and addressing questions from respondents. The ICH team triaged community callers and completed individual orientations throughout the workweek from the office. Self-help workshops took place in the ProBAR office and at community locations throughout the Rio Grande Valley. From these services, cases were referred internally and externally for direct representation.

14. With LOPC funding, ProBAR had (until April 16, 2025, termination) 10 full-time staff members who dedicated all or a portion of their time to providing LOPC services. The team consisted of a department director, supervising paralegal, staff attorney, senior paralegals, and paralegals. Staff under the LOPC program worked from the Harlingen ProBAR office, providing virtual individual orientations, workshops, and in-person services to local families.

15. The need for LOP, ICH, and LOPC services in the Rio Grande Valley is great. ProBAR is the only legal service organization providing free legal services to detained adults at El Valle and PIDC. The facilities are in a remote area of Texas and are challenging to reach. Even when individuals detained in these facilities have financial resources for counsel, the private bar is stretched thin, taking a small fraction of the cases. Furthermore, the position of the two facilities is often used as a staging ground to effectuate border policies, constantly changing the legal needs and populations of those in the facilities. ProBAR, through its LOP program, is uniquely positioned to adapt to these shifts and continues to provide essential legal information. The judges in the detained court have expressed their appreciation for ProBAR's LOP work, indicating that individuals are more prepared and ready to proceed with their cases after having received ProBAR's

services. The Court, too, will specifically recommend that individuals who need additional assistance contact ProBAR for support.

16. Similarly, ProBAR is the primary legal service provider of free legal education and representation for the Harlingen Court. Other providers in the area are limited in the types of immigration cases they can accept and largely do not provide representation to individuals in removal proceedings. The private bar is limited, and most respondents do not have representation. The Harlingen Immigration Court staff and judges have routinely expressed their gratitude for the efficiency that the ICH program brings to their dockets and caseload management. I have observed judges refer individuals to the helpdesk for support in completing necessary documents and to seek pro bono legal support. When ProBAR recently returned from a stop work order, the court personnel expressed excitement that the program resumed to better support EOIR's daily operations. Similarly, court personnel expressed their regrets when the program was unexpectedly terminated.

17. Under LOPC, ProBAR is the local provider receiving referrals for reunifications in the Rio Grande Valley. There are no other local providers that provide this in person service under the LOPC program. ProBAR would invite sponsors and their families to the office for a full individual orientation and screening, often referring the family for other services, including legal representation and social services.

18. The stop-work orders, termination orders, and other related directives issued by the federal government caused and continue to cause significant negative impacts on ProBAR's mission, staffing, resources, and morale. ProBAR's mission is to provide high-quality legal information, representation, and connections to services. The multiple orders have caused chaos, with work starting and stopping based on government orders and reversals of orders, as well as related litigation. We rely on our talented, highly trained staff and long-standing relationships with government stakeholders. It has been challenging to manage relationships with government stakeholders like the Executive Office for Immigration Review (EOIR), who rely on ProBAR's services for facilitating court processes, during this tumultuous period. ProBAR staff are demoralized and plagued by job insecurity, and non-citizens are not afforded vital services explaining their legal rights and responsibilities in removal proceedings. In the past months, our services have become even more vital as Homeland Security Investigations conducts unannounced, armed "wellness checks" to unaccompanied minor sponsors' homes and the federal government has engaged in sending noncitizens in our region outside of the United States under the Alien Enemies Act.

19. The termination of the LOP and related programs has resulted in serious consequences to staff. Seven LOPC staff members, three LOP staff members, and four ICH staff members were given layoff notices, effective May 19, 2025. A senior attorney resigned, citing the funding instability. Nearly all of the remaining staff from these programs will need to be assigned work and trained in new areas. If these remaining employees cannot be retained, we will lose substantial institutional knowledge. The termination has had a noticeable negative impact on our team and work environment. Staff morale has declined significantly, and many have expressed feelings of sadness, stress, and depression. The office environment has shifted; what was once a supportive and energetic space now feels

heavy, uncomfortable, and emotionally draining. Some staff members shared that they no longer feel the same spark or motivation, and there is a collective sense of loss. Many staff carry anxiety and guilt, especially those who remain while others have left the organization, been reassigned, or received layoff notices. The ProBAR LOP, LOPC, and ICH contracts combined supported approximately 14.20 full-time equivalent positions at ProBAR. The financial loss to ProBAR for the remainder of the contract period on all three programs combined is approximately $636,992.

20. The loss of these employees will result in the loss of institutional legal expertise and knowledge on the team. ProBAR would need to train new team members to support the work in the future if and when the programs resume.

21. The termination notices for LOP and related programs further restrict our ability to provide critical services to families, adults, unaccompanied children, and sponsors. ProBAR has been forced to reduce its LOP services by half (providing only one KYR a day instead of two). Individuals who call from detention are being added to a waitlist and are no longer guaranteed services. Our ability to provide any legal information or services to third-language speakers is now extremely limited because we no longer have access to the LOP-funded interpretation services. The Talton Tablet disabled its legal services section, and ProBAR can no longer communicate with individuals via the tablet. Beginning in May, ProBAR will further reduce its detained legal orientation programming to once a week because of the reduced size of the team.

22. For ICH, ProBAR is no longer permitted to provide group KYR orientations at the Harlingen Immigration Court. The Court declined ProBAR's request to provide group orientation in the court lobby via email, stating that "based on the recent changes in the contracts, we would not be able to support this request." Judges can no longer rely on our staff to complete the necessary change of venue and change of address paperwork for unrepresented respondents. Community callers are also being added to a waitlist for the team to address with the limited resources available.

23. For LOPC, the platform for ORR shelter staff to refer sponsors of reunifying children to ProBAR for orientation services has been dismantled, and thus, ProBAR does not receive referrals for new sponsors needing these critical orientations. Similarly, ProBAR is no longer receiving the Juvenile Docket via the BOX account, which restricts its ability to access local sponsor contact information to contact a sponsor before a child is set for court. Some sponsors, however, continue to reach out to ProBAR. ProBAR addresses calls from sponsors of reunified children as capacity allows.

24. The ending of these programs has restricted ProBAR's stakeholder communications. Throughout April, ProBAR attempted to contact the new Acting Chief Judge for the Harlingen Court. Despite multiple requests for meetings, ProBAR has not received a response from court personnel. The termination of these programs has frustrated all three pillars of our ProBAR mission: high-quality legal information, representation, and connection to services. From group Know Your Rights orientations and pro se workshops to critical referrals to pro bono representation of detained asylum-seekers to connecting sponsors and families to the Office of Trafficking in Persons, every aspect of our mission-driven work has been affected. The contract termination has caused irreparable

>harm to our organization, our mission, our staff, and most importantly, the people we are here to serve.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 2nd of May 2025, in Harlingen, TX.

 /s/ Aimee Korolev

**Aimee Korolev**