# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, <br><br> *Defendants.* | Case No. 1:25-cv-00298 <br><br> **DECLARATION OF CRISTINA CERÓN IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF** |

# DECLARATION OF CRISTINA CERÓN
# FOR CHARLOTTE CENTER FOR LEGAL ADVOCACY

*I, Cristina Cerón, make the following statements on behalf of Charlotte Center for Legal Advocacy. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. My name is Cristina Cerón, and I am the Co-director of the Immigrant Justice Program at Charlotte Center for Legal Advocacy ("Charlotte").

2. Charlotte's mission is to pursue justice for those in need. It seeks to build a just community where all people are treated fairly and have access to legal representation to meet their basic human needs of safety, security, and stability.

3. Charlotte Center for Legal Advocacy has been providing LOPC services for over 8 years. The program team was composed of ten team members, with two overseeing the program, and eight dedicated to providing services such as group and individual orientations, pre-hearing friend of the court services, follow-up referral services to custodians and legal screenings for unaccompanied children.

4. On April 10, 2025, the Department of Justice terminated the contracts for the Family Group Legal Orientation Program (FGLOP), Counsel for Children Initiative (CCI), Immigration Court Helpdesk (ICH), Legal Orientation Program (LOP), and Legal Orientation Program for Custodians (LOPC), effective 12:01 am on April 16, 2025. I was notified of this termination via email. The email was sent by the Acacia Center for Justice. The email contained the Notice of Termination attached to the email.

5. Following the termination and this Court's decision not to grant Plaintiffs' preliminary injunction, Charlotte was forced to lay off one LOPC employee. Additionally, Charlotte was forced to reassign seven employees to work on other programs for all or part of their time. Of those seven, two employees will be laid off in the near future because the reassignment has time-limited funding. These employees speak Spanish, which is crucial to our work. Finding Spanish speakers is a challenge for the organization. As such, losing these specialized employees now will make it hard to hire them in the future if the programs are restored. In addition to the impact on staff providing direct LOPC services, this termination of funding has redirected agency resources to address the abrupt termination of funding. Since the announcement of the termination, the Co-directors of the Immigrant Justice Program, Interim Chief Operating Officer, and Finance team have spent at least 10% of their time reforecasting the program budget, reorganizing operations, and reassigning LOPC staff, taking away time from providing direct legal services and other mission-based services.

6. Before the termination, we received a monthly docket list that included the names and contact information of unaccompanied children scheduled to appear in court that month.

    This list was vital for identifying and reaching out to custodians and children in advance of their hearing. By doing so, our team was able to provide essential orientation services to both the children and their custodians, while also reminding them of their upcoming hearings. This increased the likelihood that they would comply and attend the hearings. Additionally, having access to this information allowed the team to flag high-priority cases, such as children who were at risk of or already victims of trafficking, those eligible for relief, or those at risk of inabsentia orders. This enabled us to begin triaging for legal screenings or referrals. Although the docket typically arrives by the 24th of each month, we have not yet received the report for April as of the date of this filing.

7. Due to the termination and lack of funding, LOPC activities at Charlotte have been paused. Last year, through the LOPC funding Charlotte was able to provide services to approximately 1,187 children in North Carolina and South Carolina. No other legal service provider in North Carolina provides LOPC services. Without this funding in place, custodians and children in North Carolina will no longer be empowered to comply with the court. The growing mistrust of the immigration system will undoubtedly lead to children not appearing for their hearings and contribute to children being ordered removed without at least a legal screening to identify possible forms of relief. For many, this program provides the only available legal orientation services the custodian and children will have in our community. In their desperation to help their children, custodians may turn to unauthorized sources, such as notaries, who may take advantage of the custodian's lack of knowledge, further harming the child's case in the process.

8. Having the LOPC program in place helps strengthen the relationship between the court, our organization, and the custodians and children we serve, while improving court coordination. Without the funding and support of this program, unaccompanied children and their custodians will no longer receive assistance with change of address or change of venue forms from LOPC staff. This situation is likely to place a heavier burden on the judges' docket management and the court staff, ultimately affecting judicial efficiency.

9. Without LOPC services, children and custodians will remain uninformed and will not understand what is at stake in a court hearing. Without knowing what forms of relief their child may be eligible for custodians will unknowingly forfeit important rights that could protect their children's future. Our two LOPC staff attorneys help custodians prepare for the child's upcoming hearing ensuring the custodian and the child are educated on what to expect in court, what documents to bring along, potential forms of relief for the child, and identify any at risk children to make any necessary referrals. Without the funding in place, there will most likely be a higher percentage of unaccompanied children in our community who do not appear for their court hearings due to the custodians' heightened fear of the unknown in court procedures or how to safely and legally navigate the immigration system.

10. Additionally, for custodians and children that do appear before a judge without being adequately prepared, facing a highly trained government attorney on the other side,

without knowing how to advocate for the child's interests will certainly undermine the child's due process leading to unjust outcomes.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 2nd of May 2025, in Charlotte, North Carolina.


_/s/  Cristina Cerón_

Cristina Cerón