# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, <br><br> *Defendants.* | Case No. 1:25-cv-00298 <br><br> **DECLARATION OF MELISSA MARI LOPEZ IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF** |

**DECLARATION OF MELISSA MARI LOPEZ**
**EXECUTIVE DIRECTOR FOR ESTRELLA DEL PASO**

*I, Melissa Mari Lopez, make the following statements on behalf of Estrella del Paso. I certify* under penalty of perjury that the fol*lowing statement is true and correct pursuant to 28* U.S.C. § 1746.

1. I incorporate my Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) and Supplemental Declaration in Support of Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 51) as if fully set forth herein.

2. As explained in my prior declarations, my name is Melissa M. Lopez, and I am the Executive Director at Diocesan Migrant & Refugee Services *doing business as* Estrella del Paso ("Estrella del Paso"). Estrella del Paso is the largest provider of free immigration legal services in West Texas and New Mexico. Estrella del Paso is based out of El Paso, Texas but provides legal services to populations living anywhere in West Texas and the state of New Mexico who have removal proceedings venued in the El Paso, Texas before the non-detained court or who get detained and have court before the El Paso Detained Immigration Court or Otero Immigration Court.

3. Estrella del Paso was founded in 1986 to provide immigration legal services, advocacy, and community outreach to protect the rights of immigrants in West Texas and New Mexico, and advance justice in the spirit of the Gospel because we believe all people are made in the image of God and are welcome in our community. Our organization currently employs 80 people across six legal units, refugee resettlement program, and an administrative unit. Each legal unit is tasked with assisting different migrant populations.

4. In order to carry out our mission, Estrella del Paso has several main work components: (1) through the Legal Orientation Program ("LOP") and Immigration Court Help Desk ("ICH"), we provide educational and pro se services in the form of legal education "know your rights" ("KYR") presentations/orientations, conduct individual consultations/orientations (intakes), and conduct pro se workshops with all unrepresented non-detained noncitizens who have hearings before the El Paso Non-detained Immigration court as well as detained noncitizens in the custody of Immigration and Customs Enforcement ("ICE") at facilities located in El Paso, Texas and Chaparral, New Mexico; (2) We attempt to connect unrepresented noncitizens who cannot afford a lawyer with pro bono attorneys or refer them for in-house representation by Estrella del Paso; (3) Estrella del Paso also provides in-house representation to people in removal proceedings through our Removal Defense and Unaccompanied Minors Programs; (4) Through our affirmative legal services, Estrella del Paso provides representation before United States Citizenship and Immigration Services ("USCIS") and United States Department of State ("DOS"). Within our affirmative legal services program, we have two subunits specifically dedicated to assisting religious workers and survivors of crime and human trafficking.

5. To address the first programmatic focus area, Estrella del Paso has been operating the LOP program at the El Paso Processing Center since 2006. In 2008, our LOP program

expanded to cover services at the Otero County Processing Center located in Chaparral, New Mexico. In December 2024, the combined detention population on average in all facilities served was 1,533 people, this number accounts for about 66 percent of the overall detention capacity both facilities have as currently the El Paso Processing Center has capacity to hold 1,200 people and Otero 1,089 people. This program provides LOP services for the entire immigrant population detained by ICE whose cases are heard in the El Paso Detained Court and Otero Immigration court. In 2021, our program expanded once more and added the Immigration Court Help Desk, (ICH). Through the ICH program non-detained noncitizens in removal proceedings before the El Paso Non-detained Immigration Court have access to legal orientation in the form of KYRs, intakes, pro bono referrals, and pro-se self-help workshops. Given the growing backlog of removal cases and the fact that our non-detained court sits on the US/Mexico border, there are thousands of cases pending at the court that our ICH team assists with on a yearly basis.

6. With LOP and ICH funding, Estrella del Paso employed thirteen (13) staff members dedicated to providing LOP and ICH services. Eight (8) of these staff members are employed through our LOP program specifically. Two of our staff members were fully accredited representatives and the other six were in the process of pursuing accreditation. Our ICH program employed five (5) full-time staff members, one of which was a fully accredited representative with the other four also in the process of seeking full accreditation. Staff under LOP regularly travelled to each detention center in person to provide legal education orientations, individual orientations, and pro se workshops to noncitizens who are detained and do not have counsel. Our dedicated LOP staff provided services at the El Paso Processing Center every weekday. Services at the Otero processing Center, which is approximately a 60-mile round trip from our office, were provided 3 times a week. In addition to in-person services, our LOP team ran a hotline for detainees to call in the event they need individualized services. Our equally amazing ICH team could be found providing in person services at the El Paso Immigration Court every weekday, the ICH team like the LOP team also operated a hotline where pro-se litigants can call to seek one on one services.

7. According to the Census Bureau, 18.3 percent of the population of El Paso, Texas and 17.8 percent of the population of New Mexico live in poverty, surpassing the national average of 11.5 percent. El Paso and its surrounding areas are not home to large corporations or law firms. Most attorneys who practice any type of law in this region tend to be solo practitioners who cannot afford and do not have the capacity to take on pro bono matters. Because there are no large law firms or corporations in this region, there is very limited access to attorneys who can provide pro-bono services. Likewise, El Paso is not home to any law schools. The two closest law schools to El Paso are Texas Tech University School of Law based in Lubbock, Texas and the University of New Mexico School of Law based in Albuquerque, New Mexico. Both schools are several hundreds of miles away from the Immigration courts we serve and do not currently have the capacity to take on very many non-detained cases and detained cases. Given that this region is impoverished, it is hard for an organization like ours to rely on local private philanthropy to fund the necessary services LOP and ICH provide.

8. Estrella del Paso has an excellent relationship with our local Immigration Judges and ICE detention facilities. This is in large part because the local judges and ICE officers recognize the benefits from our teams providing litigants with important information and services. For instance, because we are a border city many recently arrived noncitizens are often venued for court in El Paso, Texas despite living in other parts of the country. To increase efficiency, the court developed a dedicated docket for litigants to present their evidence and request a change of venue. Our ICH team played a critical role in the success of that docket as it was our ICH team who would guide pro-se noncitizens in how to fill out their change of venue forms. Likewise, when non-citizens do not speak English or Spanish, which are the predominate languages spoken in our service area, ICH and LOP provided critical services by communicating necessary legal information in a non-citizen's own language through use of LOP and ICH funded language lines. Our ICH and LOP teams did not just provide helpful services to pro-se non-citizens but also to the Court and ICE/ERO. Through the KYRs provided by LOP, non-citizens were made aware of local processes and procedures that lead to a smoother and more efficient use of court and ICE time. For example, as part of the KYR our LOP team does in the detention centers, we educated non-citizens on who is and who is not eligible for a bond hearing. This is important information for litigants to know so that those who are not legally eligible for release on bond do not request bond hearings, thus taking up court time. Likewise LOP and ICH proved useful tools to the court as through our programs we assisted non-citizens by guiding them on how to best present their evidence and how to fill out their relief forms and how to comply with local court rules, again leading to a smoother and more efficient court process that comports with the standards of due process. In the detention centers, ICE appreciated our LOP team immensely as we also explain local processes on how detainees can communicate with ICE and what documents are necessary to present to secure release from detention. Through the individual orientations we provided to pro-se non-citizens, people are made aware of what relief if any they qualify for and are given realistic expectations based on their facts and circumstances of their likelihood for success. This led to more expeditious hearings as non-citizens are empowered to make informed decisions on whether to pursue relief or voluntarily repatriate to their home country. In this past year, our LOP and ICH teams assisted several pro-se respondents with not only securing release from detention but also with winning relief in the forms of asylum, withholding of removal, and protections under the convention against torture.

9. Our local court and ICE officials are very happy with the work done by our team as we provide answers to many of the questions people have about their proceedings, thus leading to more efficient use of court and ICE officer time. Because our LOP and ICH teams provided people not only with group KYRs but individualized information sessions, time that would normally be spent by an ICE officer or Immigration Judge answering these same questions is saved. The Immigration Judges in particular have expressed gratitude to our LOP and ICH team as it regards not only the running of pro-se workshops but also in assisting the court as Friend of the Court. It is often the staff on our LOP and ICH team which would inform the court of necessary information about respondent's cases such as when a respondent appeared to lack capacity to represent themselves or when a noncitizen requires an interpreter in their language of choice.

10. Both LOP and ICH provided necessary services when it comes to helping people find counsel. As mentioned previously this region is a legal desert which often means there are no private practitioners able to take on matters. As such our team often screen cases for relief with our in-house removal defense unit. Through these screenings our removal defense unit has assisted countless respondents obtain relief before the court. One such example from last year is the case of a non-citizen who had Special Immigrant Juvenile status that had been granted several years prior to their detention. Through consultation with our LOP team and referral of that individual to our removal defense unit, the individual was released from custody and was put on a pathway towards lawful permanent residency. Had it not been for the consultation that the individual had with our LOP team it is likely the individual would have been ordered removed without anyone having realized they were eligible for relief. The services provided by LOP and ICH are essential if due process is to mean anything in immigration proceedings. Because there is a lack of attorneys even for non-citizens affluent enough to afford one, LOP and ICH fill the lack of representation gap so that respondents at the very least can represent themselves. The loss of funding for these two programs, especially in a region like ours, mean the majority of people appearing before the courts would do so not only without counsel but also with no knowledge and understanding of the processes and procedures necessary in order to defend one's self from removal.

11. Without warning, on January 22, 2025, the Department of Justice issued a national contract stop work order, pursuant to Section 19 of the January 20, 2025, Executive Order titled "Protecting the American People Against Invasion." The national contract stop work order, which took effect immediately, extended to the following programs: the general LOP program, the Immigration Court Helpdesk ("ICH"), the Counsel for Children Initiative ("CCI"), and Family Group Legal Orientation Program ("FGLOP") and stated that these programs were being paused while they undergo an audit. The suddenness in the announcement left our organization not only scrambling for what to do with our staff who now had no funding but also with having to immediately comply by recalling all our staff members, most of whom were out in the field working. Our organization received the news via an email which caused staff turmoil as all had been in the process of assisting pro-se respondents in one fashion or another. Despite what it might mean to them personally, our staff was most concerned and worried about how they would get word to the people they were committed to serve about the sudden stoppage. While our LOP and ICH staff worried about the people they were helping, executive management at our organization had to quickly determine how best to keep our thirteen employees from losing their jobs as we awaited word on what was to happen to these programs.

12. The impact of the sudden stop work order received was immediate. We had to communicate to the detention facilities and the courts that we would no longer be providing services under these programs until otherwise notified. The email communication we received did not indicate if the order was temporary or permanent. We later learned through various individuals and conversations that the communication received by the Immigration Courts indicated that the order was a "pause" in the program. Unfortunately, that was not how the news was communicated to us. Although we continued to have some access to detention centers and courts, this access was only in

our capacity as legal representatives, which was far more limited than in our capacity as ICH and LOP staff. We were informed by our removal defense unit that individuals in the detention center received a notification via the Talton tablets available in each housing area that Estrella del Paso was no longer providing services at the detention center. The message did not specify that the suspension of services was related to the LOP and ICH programs and created confusion even for the clients we represent who believed we would not be providing services in any capacity. The only way we could communicate with pro-se noncitizens about the stoppage of these programs was if they called our office or our hotline which had a pre-recorded message stating these programs have been paused.

13. Estrella provided individuals in the detention centers and immigration courts with myriad pro se materials typically bound together in a binder and available in the law library of the facility. These materials are substantive legal documents and forms based on drafts from the Florence Project, designed to explain complex legal concepts to people with no legal knowledge and often limited education (available at https://firrp.org/resources/prose/). If an individual wished to use these materials, they had the option of either making copies from the binder or reaching out to Estrella for paper versions that were sent via US mail. We are unaware at present if these materials remain accessible in the courts and detention centers. Without access to these materials, it is difficult to imagine how these pro se litigants will be able to effectively and persuasively advocate for themselves.

14. As mentioned above, El Paso is in a legal desert and private philanthropy is in short supply. As a result, Estrella del Paso is not able to continue these programs on a volunteer basis without the funding from the Department of Justice.

15. Then on April 10, 2025, the Department of Justice terminated the contracts for the Family Group Legal Orientation Program (FGLOP), Counsel for Children Initiative (CCI), Immigration Court Helpdesk (ICH), Legal Orientation Program (LOP), and Legal Orientation Program for Custodians (LOPC), effective 12:01 am on April 16, 2025. I was notified of this termination via email. The email was sent by the Acacia Center for Justice. The email contained the Notice of Termination attached to the email.

16. The LOP and ICH programs account for about fourteen percent of our overall organizational budget.

17. On April 11, Estrella reached out to local EOIR officials to ask if we would still be able to provide KYR presentations and individual orientations in immigration courthouses. This programming is independent of our status as an ICH provider.  On April 14, 2025, we received a response notifying us that those officials had reached out to the Acting Chief Immigration Judge to find out if EOIR could continue providing the space for this programming.  On April 16, 2025, we were informed that Estrella could no longer access the EOIR space to continue to conduct KYR presentations and individual orientations.  A true and correct copy of these emails is attached to this declaration as **Exhibit 1**.

18. On April 15, 2025, this Court denied Plaintiff's request for a Temporary Restraining Order to reverse the Department of Justice's termination actions while the case proceeds. The same day, as a consequence of the denial with no immediate relief forthcoming, I was forced to furlough eight staff members whose salaries were funded by LOP or ICH.

    We use accredited representatives to run our LOP program. Accredited representatives are individuals approved by the Department of Justice to provide legal advice and representation despite not being licensed attorneys. Accreditation is a lengthy process that can take several years. If these employees are not working or volunteering with the organization, they lose that accreditation upon the termination of the relationship with the agency. Even if they come back to the organization later, they must complete the application process anew. The adjudication of applications for accreditation can take as little as three weeks, but on average takes months to process (we have seen it take as long as nine months). We were preparing accreditation applications for a number of employees under this program. Due to the termination, we are unsure whether we can file these applications. Without our staff working, we have not been able to conduct legal orientations since the termination went into effect.

19. The costs of the LOP and ICH programs are so high that running these programs absent government reimbursement would be fiscally irresponsible. The carrying costs of this program threaten to completely decimate our cash flow if not reimbursed monthly. We had to incur larger spaces, more copy machines, computers, desks, IT support, and a larger server to support the larger team. These costs were largely covered by the programs that have now been terminated as they represent the largest share of our programming. Now, we are stuck with higher expenses and difficulty covering the overhead. As a non-profit organization with limited savings, we are in the precarious position of terminating staff as any prolonged closure of the program or prolonged reimbursement for work done by program staff threatens to leave our organization running at a deficit. This would also impact other programs at our organization as any money depleted from our savings cannot be easily replenished as these programs' sole source of funding comes from this contract. There are no other sources of funding for this team.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 2nd of May 2025, in El Paso, Texas.

*Melissa Mari Lopez*

Melissa M. Lopez
Executive Director/ Attorney At Law
Estrella del Paso
2400 East Yandell Dr.
El Paso, Texas 79903
P: 915.532.2688
E: mlopez@estrella.org