IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>    *Defendants.* | Case No. 1:25-cv-00298<br><br>**DECLARATION OF VANESSA GUTIERREZ IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF** |

## DECLARATION OF VANESSA GUTIERREZ
## DEPUTY DIRECTOR FOR NORTHWEST IMMIGRANT RIGHTS PROJECT

*I, Vanessa Gutierrez, make the following statements on behalf of Northwest Immigrant Rights Project. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) and Supplemental Declaration in Support of Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 51) as if fully set forth herein.

2. Ax explained in my prior declarations, my name is Vanessa Gutierrez, and I am the Deputy Director at Northwest Immigrant Rights Project ("NWIRP") who oversees NWIRP's Tacoma office and its work with detained individuals at the Northwest ICE Processing Center ("NWIPC"), one of the largest immigration detention facilities in the country. NWIRP is the primary organization dedicated to providing legal services to immigrant adults who are detained by the Immigration and Customs Enforcement ("ICE") agency under the Department of Homeland Security ("DHS") throughout Washington State and the surrounding region.

3. NWIRP is a not-for-profit organization in Washington State that promotes justice by defending and advancing the rights of immigrants through direct legal services, systemic advocacy, and community education. Through its staff attorneys, legal advocates, and a network of pro bono attorneys, NWIRP provides free legal education and legal services and representation to immigrants with low or no income, including detained individuals.

4. To carry out its mission, NWIRP provides educational and pro se services in the form of legal education "know your rights" ("KYR") presentations, individual consultations (intakes), and pro se workshops through the Legal Orientation Program ("LOP") to all unrepresented people in removal proceedings who are detained in the custody of ICE at the NWIPC, and we connect unrepresented people who cannot afford a lawyer with pro bono attorneys from our various pro bono firm partners, for cases at both the trial and appellate court levels. Using non-LOP funding, NWIRP also provides in-house representation to a limited number of detained individuals.

5. NWIRP has been operating a LOP since the program's inception in 2003. The combined detained population at the NWIPC is currently approximately 1,300 people at any given time. The NWIPC currently has capacity to detain up to 1,575 people, and given the federal government's stated intentions to conduct mass deportations, we fully expect the NWIPC to be at capacity soon. People detained by ICE at the NWIPC can request NWIRP services, including LOP services.

6. With LOP funding, NWIRP currently has hired 3.83 full-time equivalent staff positions (FTEs) dedicated to providing LOP services. Specifically, the 3.83 FTEs are spread over a unit of nine full-time staff members who dedicate part of their time to LOP services. They include four attorneys, two legal advocates, and two Department of Justice accredited representatives who are fully accredited. Staff under LOP regularly travel to the NWIPC in person, four to five days per week, to provide legal education KYR presentations, individual consultations, and pro se workshops to people who are detained and do not have counsel. NWIRP also provides a dedicated telephone voicemail box for people at the NWIPC to contact LOP staff directly to request an LOP consultation. Through the LOP program, NWIRP was added to the pro bono platform on the Talton tablets located in the detention facility's housing units. The Talton system on the tablets allow the LOP team to have back and forth communication with people who speak a wide variety of languages. The back and forth nature of the tablet conversations in someone's native language and alphabet allows for quick response to general questions or concerns that the voicemail box does not.

7. NWIRP's LOP program is integral to providing education to unrepresented individuals as they navigate removal proceedings. Through LOP, many individuals have a better understanding of their immigration proceedings, receive assistance filling out applications for relief, and are better prepared for their hearings. NWIRP is the only not-for-profit organization providing workshops and presentations to those detained at the NWIPC. Through its LOP work, NWIRP provides crucial services to the vulnerable populations in the NWIPC, including to people who are unable to read or write, speak uncommon languages, and who lack proficiency in English.

8. These services are especially critical because the overwhelming majority of persons detained at the NWIPC are unrepresented and have access to no other legal assistance.

9. During stakeholder meetings between NWIRP's LOP team and the Tacoma Immigration Court, NWIRP received positive feedback about the services provided and a desire for NWIRP LOP to provide more assistance to the detained population at the NWIPC. Similarly, LOP staff have received positive feedback from ICE's Office of the Principal Legal Advisor ("OPLA") staff, appreciating LOP's assistance with filling out applications. OPLA has stated that LOP work allows the court hearings to move more smoothly and they see a difference when the individual has met with NWIRP's LOP staff prior to their hearing. In addition, GEO Group staff members (the corporation that operates the NWIPC on behalf of ICE) and ICE Deportation Officers, who receive many messages and questions from detained individuals on a regular basis, have stated to NWIRP staff that having the LOP team provide group and individual orientations helps keep the individuals detained informed and fewer questions directed to the officers. Multiple stakeholders have referred individuals to NWIRP's LOP to receive services, as a trusted resource for those detained at the NWIPC.

10. Throughout 2024, NWIRP LOP met with over 1,100 people detained at the NWIPC, including over 800 who were provided individual consultations. From those orientations, NWIRP LOP provided brief pro bono services and placed 97 cases with pro bono attorneys. Without the LOP individual orientations, NWIRP LOP is unable to identify and talk to as many people, and thus unable to refer as many cases for pro bono services for the vulnerable detained population.

11. Without warning, on January 22, 2025, the Department of Justice issued a national contract stop work order, pursuant to Section 19 of the January 20, 2025, Executive Order titled "Protecting the American People Against Invasion." The national contract stop work order, which took effect immediately, extended to the following programs: the general LOP program, the Immigration Court Helpdesk ("ICH"), the Counsel for Children Initiative ("CCI"), and Family Group Legal Orientation Program ("FGLOP") and stated that these programs were being paused while they undergo an audit. NWIRP's LOP program received a brief email from Acacia Center for Justice (the agency who oversees LOP programs nationwide) informing NWIRP of the issuance of the stop work order.

12. After the issuance of the stop work order, NWIRP's LOP team lost access to daily rosters of individuals detained at the NWIPC and bi-weekly reports on upcoming court dates for those individuals. The NWIRP LOP team was informed by detained individuals via phone that ICE issued a message on the Talton tablets that LOP is no longer conducting services. We are unaware of the exact wording of the message; however, this messaging led many detained individuals to panic about how they will get any legal information, whether NWIRP will continue to represent them on pro bono cases, and how to contact NWIRP given the tablets were their main way to contact the LOP team. NWIRP was also informed by detained individuals that posters with NWIRP's contact information were taken down inside the housing pods at the NWIPC. As detained individuals tend to spend a majority of their time in the housing pods, that was the most critical place for people to find our contact information.

13. After receiving the stop work order, NWIRP's LOP team sent emails to ICE and GEO Group staff to clarify whether NWIRP's LOP team could continue to enter the facility for both individual visits and KYR presentations. At that time, NWIRP's LOP team received pushback from GEO Group staff about continuing to meet with people individually. NWIRP's team encountered challenges, including detention center staff being unwilling to call the same number of detained people out to the attorney rooms for intakes and consultations NWIRP LOP previously saw, based on guidance from their superiors.

14. The stop work order immediately impacted NWIRP's ability to advance two of the three critical pillars of its mission of providing direct legal services and community education

in the form of legal education KYR presentations and intakes for individuals detained at the NWIPC. Even a "pause" of LOP work, as the stop work order purported to be, is extremely detrimental to individuals in ICE custody at the NWIPC who are facing removal proceedings unrepresented. Detained removal proceedings at the Tacoma Immigration Court are typically completed at a much faster rate than non-detained removal cases before other immigration courts. Therefore, timely access to KYR presentations is critical to ensuring that those detained individuals have a working understanding of the immigration process, if they qualify for any immigration benefits, and how to apply for any such relief from removal. Increasing information about legal access to detained people in removal proceedings is consistent with ICE's Access to Due Process guidance and its Facility Legal Resource Guide.

15. NWIRP's ability to meet with detained individuals through its LOP team is a critical aspect of ensuring that those in detention receive the legal resources, representation, and rights they are entitled to, particularly when they may not otherwise have access to counsel. In these cases, even a few missed LOP sessions could significantly alter the trajectory of an individual's case. Without timely access to legal counsel, detained individuals might not be informed of their rights, which could lead them to inadvertently waive important legal protections or miss critical opportunities to contest their detention or removal. NWIRP's non-LOP funded attorneys, across all four of its offices, represent detained individuals, and they rely on the LOP intakes and referrals to identify cases for direct representation. The impact of abruptly halting the LOP work has a far-reaching effect on access to legal services beyond the educational and pro se services provided through the LOP.

16. In January, NWIRP's detention defense work, which LOP is a critical part of, could only continue in a limited form through alternative funding sources. In 2024, NWIRP's overall annual budget included approximately 28% federal funding. In addition to restricted federal funding, much of the other funding NWIRP receives is also restricted and cannot be shifted to cover the gaps in services that would result should LOP funding end long-term.

17. On April 10, 2025, the Department of Justice terminated the contracts for the Family Group Legal Orientation Program (FGLOP), Counsel for Children Initiative (CCI), Immigration Court Helpdesk (ICH), Legal Orientation Program (LOP), and Legal Orientation Program for Custodians (LOPC), effective 12:01 am on April 16, 2025. NWIRP learned of the termination via email. The email was sent by the Acacia Center for Justice. The email contained the Notice of Termination attached to the email.

18. The impact of the loss of LOP funding for NWIRP is significantly greater now than it was in January 2025, when we received the initial stop work order. Since then, NWIRP has received a contract termination notice for its Unaccompanied Children Program (UCP), funded by the Office of Refugee Resettlement through Acacia.

19. NWIRP's LOP contract for the current year totals $538,951.95 and supports the work of 3.83 full-time equivalent (FTE) attorneys, Department of Justice accredited representatives, and legal advocates. Loss of this funding is compounded by the recent loss of other federal funding and will inevitably lead to difficult decisions regarding what mission-critical services to continue during a time when our community desperately needs all of these services.

20. Since January 30, 2025, we have continued to see an increase in the detained population at the Northwest ICE Processing Center. Today it is nearly at its capacity of 1575 beds. Given the dramatic increase in the number of people detained, our LOP list for people in need of intakes is over 200 at this time. Although NWIRP may be able to continue limited amounts of intakes and a very limited amount of direct representation using other funding sources, without LOP we will not be able to continue group Know Your Rights presentations at the current scale, meaning many unrepresented people detained at the NWIPC will go into immigration court with little to no knowledge of what to expect and what forms of relief they may be eligible for. This will certainly only further delay the courts' ability to adjudicate cases and protect individuals' due process rights.

21. The loss of both the UCP and LOP funding sources has, thus, placed an increasing burden on NWIRP's financial health. While NWIRP has, thus far, been able to avoid immediate layoffs following the first LOP stop-work order under the current circumstances NWIRP expects a staff reduction in the coming months. As such, NWIRP's leadership team is beginning the managerial and administrative preparation for staff shifts and anticipated decrease in staff.

22. On April 16, 2025, after the contract terminations became effective, NWIRP did not receive the regular COGNOS report, typically shared every Wednesday and Friday. The last such report was received on Friday April 11, 2025. The loss of these reports renders it impractical for NWIRP to be able to offer support and services to individuals who have upcoming court dates.

23. On April 18, 2025, LOP staff at NWIRP emailed the GEO Group staff members a regular update of the one-on-one visitation meetings, typically sent one day prior to the visits. The response from GEO Group was to inform us that "[w]e have been instructed by ICE/ERO that the Legal Orientation Program has been terminated and all services will be officially suspended effective immediately."

24. Despite that April 18, 2025 message from the GEO Group, NWIRP staff were able to conduct one-on-one meetings on April 21, 2025. However, these meetings were met with significant delays that impaired our ability to effectively meet with the detained individuals, because participants were not called to the visit until staff arrived at the facility, out of accordance with the typical prior procedures.

25. On April 23, 2025, NWIRP staff sent a list of individuals to be seen for a group Know Your Rights presentation in the NWIPC multipurpose room the following day. Unlike other times sending the list, NWIRP staff did not receive receipt confirmation. Instead, on April 24, 2025, GEO staff turned away the NWIRP staff member planning on conducting the group presentation.

26. On April 28, 2025, NWIRP staff met with a pro se individual detained at NWIPC who speaks Moroccan Berber/Tamazight. This individual has been detained since September 2024, and was only recently transferred to NWIPC. Due directly to the lack of funding for an interpreter from LOP due to the termination, NWIRP scheduled an interpreter from Voiance, an interpreter company, to assist. This assistance would be at the expense of NWIRP. However, Voiance canceled the day of the appointment, leading to more delays with providing services to the detained individual. The language needed would have been previously available on Maya Bridge, an Acacia approved interpreter vendor. This is but one example of new impacts to our organization and to the people we serve that were not issues prior to the termination.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 2nd day of May 2025, in Wenatchee, Washington.

*Vanessa D. Gutierrez*

Vanessa Gutierrez
Deputy Director
NORTHWEST IMMIGRANT RIGHTS PROJECT