**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, <br><br> *Defendants.* | Case No. 1:25-cv-00298 <br><br> **DECLARATION OF RYAN BRUNSINK IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF** |

**DECLARATION OF RYAN BRUNSINK**
**MANAGING ATTORNEY OF REMOVAL DEFENSE**
**PROGRAMS FOR PENNSYLVANIA IMMIGRATION**
**RESOURCE CENTER (PIRC)**

*I, Ryan Brunsink, make the following statements on behalf of Pennsylvania Immigration Resource Center ("PIRC"). I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. I incorporate my Declaration in Support of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 2) and Supplemental Declaration in Support of Plaintiffs' Renewed Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 51) as if fully set forth herein.

2. As explained in my prior declarations, my name is Ryan Brunsink, and I am the Managing Attorney for Removal Defense Programs at PIRC. PIRC's office is located in York, Pennsylvania. PIRC provides free legal educational information and representation on immigration matters to noncitizens across the commonwealth of Pennsylvania. PIRC is the primary organization dedicated to providing legal services to indigent immigrant adults detained by Immigration Customs and Enforcement ("ICE") at the Moshannon Valley Processing Center ("Moshannon Valley") and Clinton County Prison ("Clinton").

3. PIRC provides free, high-quality legal services so that vulnerable immigrants and their families have access to justice and a more secure future. PIRC is composed of two service arms: Removal Defense Programs and the Immigrant Survivors Project. Removal Defense focuses primarily on providing legal services, educational information, and direct representation to individuals in removal proceedings, many of whom are detained. The Immigrant Survivors Project focuses primarily on legal services for non-detained immigrant survivors of sexual assault, domestic violence, trafficking, and other crimes.

4. In furtherance of its mission, PIRC's Removal Defense Programs have several main work components: (1) the Legal Orientation Program ("LOP"), providing educational and pro se services in the form of legal education "know your rights" ("KYR") presentations, conducting individual consultations (intakes), and providing pro se assistance to unrepresented detained noncitizens in the custody of ICE at facilities located in Pennsylvania; (2) connecting unrepresented detained noncitizens who cannot afford a lawyer with pro bono attorneys from our various pro bono firm partners, legal service providers, and law school clinics, for cases at both the trial and appellate court levels; and (3) providing in-house representation for indigent individuals who qualify under separate PIRC programming and funding.

5. As to its first programmatic focus area, PIRC has been operating the LOP in Pennsylvania since 2006, previously at the York County Prison and Berks County Residential Facility for immigrant families, and in recent years at Moshannon Valley Processing Center and Clinton County Prison. PIRC is the sole provider of LOP services in the commonwealth. Moshannon Valley is one of the largest ICE facilities in the country. The combined detention population on average in all facilities served is 1200 people. Currently the population at Moshannon is roughly 1500, with a capacity of roughly 1900.

6. With LOP funding, PIRC hired nine staff members dedicated to providing LOP services in some capacity. Specifically, PIRC's LOP employed a fully accredited Department of Justice Representative serving as the program manager, a partially accredited representative, a service-provision associate pending partial accreditation, and one program coordinator, all full time. Additionally, the LOP partially funded a Managing Attorney, two Supervising Attorneys, a Staff Attorney, and a post-grad law clerk (Staff Attorney pending bar admission). Staff under LOP regularly travelled to each detention center in person to provide legal education KYR presentations, individual consultations, and pro se workshops to noncitizens who are detained and do not have counsel. As a large facility, PIRC's LOP team sent two to four staff members to provide services at Moshannon Valley twice monthly, most often on Thursdays and Fridays on consecutive days. At Clinton, PIRC sent one to two staff once per quarter. Additionally, PIRC provided similar services remotely in between in person visits and responded to inquiries from detainees daily through the pro bono telephone platform and through messaging on electronic tablets available to some detainees.

7. LOP services at Moshannon Valley are critical because of both the size and remote location of the facility. Its capacity is nearly 1900, and it serves as a regional hub for ICE detention. Many states surrounding Pennsylvania have legislated ICE detention out of their states, so Moshannon Valley receives many individuals from all over the northeast and mid-Atlantic regions of the U.S. Located in Clearfield County, Pennsylvania, the facility is very remote with very few private immigration practitioners ever visiting in person. Detainees appear remotely via tele-video before the Elizabeth, New Jersey, Immigration Court.

8. Historically, PIRC's orientation program has received praise from EOIR's Immigration Judges, ICE officials, and detention facilities personnel alike, including from: Immigration Judges Kuyomars Golparvar, Alice Hartye, and Jack Weil while they were at the former York Immigration Court; Immigration Judge Brian Palmer of the Richmond Immigration Adjudication Center; Immigration Judges Richard Bailey and Adam Panopolous of the Elizabeth Immigration Court; ICE Assistant Field Office Directors ("AFODs") Joseph Dunn and Joshua Reid; ICE Supervisory Detention and Deportation Officer ("SDDO") David MacPherson; and prison and detention facility officials Leonard Oddo (Moshannon Valley), Clair Doll (York), Adam Ogle (York), Valerie Conway (York), and Diane Edwards (Berks). Such praise primarily included

remarks about increased efficiencies of pro se respondents, decreased levels of anxiety and resultant behavioral issues among detained individuals due to the information shared through the LOP, and help identifying for the Courts respondents who may lack capacity to self-represent through third party notice letters.

9. PIRC serves as the primary referral mechanism for pro bono placement at Moshannon Valley as well. Through the LOP services, individuals were identified as qualifying for additional services, such as in-house PIRC representation under separate funding or referral to other nonprofit legal service organizations based on residence prior to detention.

10. Without warning, on January 22, 2025, the Department of Justice issued a national contract stop work order, pursuant to Section 19 of the January 20, 2025, Executive Order titled "Protecting the American People Against Invasion." The national contract stop work order, which took effect immediately, extended to the following programs: the general LOP program, the Immigration Court Helpdesk ("ICH"), the Counsel for Children Initiative ("CCI"), and Family Group Legal Orientation Program ("FGLOP") and stated that these programs were being paused while they undergo an audit. PIRC was made aware of this stop work order through email from the Acacia Center for Justice, the prime contractor and administrator for the LOP.

11. Upon receipt of this news, PIRC immediately cancelled a planned trip to Moshannon Valley for January 23 and 24, 2025. Subsequently, PIRC cancelled a planned trip to Clinton for January 29.

12. The stop work order severely disrupted PIRC's ability to advance its mission. Without LOP funding, PIRC's staff cannot provide much needed legal information to countless indigent individuals detained and facing removal without the benefit of a lawyer. Some such individuals are subject to expedited removal or have crucial bond hearings. Without any guidance, they risk deportation or unnecessary continued detention.

13. The LOP contract supplies about $500,000 towards PIRC salaries and direct costs on a reimbursement basis, again approximately a quarter of PIRC's annual revenue. Additionally, layoffs could result in hits to additional streams of funding, as other awards are predicated on aggregated full-time-equivalents across the organization.

14. On April 10, 2025, the Department of Justice terminated the contracts for the Family Group Legal Orientation Program (FGLOP), Counsel for Children Initiative (CCI), Immigration Court Helpdesk (ICH), Legal Orientation Program (LOP), and Legal Orientation Program for Custodians (LOPC), effective 12:01 am on April 16, 2025. PIRC received notice of the termination by email from the Acacia Center for Justice at end of business, approximately 5 p.m. Eastern, on April 10, 2025.

15. Our organization's leadership has done significant financial planning, including anticipated layoffs of up to a third of our staff if contract disruptions continue. We do not have reserves to maintain staffing more than a few weeks without the revenues

generated from the LOP work that we have performed for well over a decade. The Removal Defense team's morale has been devastated, as we face significant uncertainty in one of the greatest times of need for our services in our organization's nearly 30-year history.

16. Additionally, PIRC sustained a loss of our Unaccompanied Children's Program (UCP) funding from the federal government in the interim following our first declaration, and most recently a loss of National Qualified Representative Program (NQRP) funding as of April 25th. Those losses left us with a number of existing child-clients and adult clients lacking capacity to self represent whose representation is currently unfunded or has been subject to severely disruptive starts and stops. The termination of all contracts, UCP, NQRP, and LOP, has exacerbated the level of financial strain on our team at PIRC. Together they account for roughly $700,000 of our budgeted revenue, which is nearly three-fourths of PIRC's Removal Defense Programs' total revenue. Tremendous need and work remain, and yet, none of it can be addressed with continued disruptions in funding.

17. On Apr 16, 2025, after the termination of the contracts described in ¶14 above went into effect, PIRC stopped receiving daily roster reports of individuals who have been detained at Moshannon Valley and weekly roster reports from Clinton County. Fernanda Hernandez, our LOP program manager sent an email to GEO Group staff-person Stephen Confer, who oversees programs at Moshannon Valley, on Apr 25, 2025, inquiring as to whether, among other things, PIRC may continue to receive these daily rosters, despite the lack of LOP funding. Stephen replied on Apr 28, 2025, stating that PIRC cannot receive these rosters, as they are only for government contractors. She also sent a similar email to Clinton County staff that has not received a reply to date. These rosters are integral to PIRC's mission, without them, we have no information regarding how many individuals have been detained or any of their A numbers. The loss of our status as a government contractor as a direct result of the canceled contracts has significantly frustrated if not destroyed our ability to help these detained individuals.

18. In addition, Fernanda Hernandez's email to Stephen Confer on Apr 25, 2025 also inquired about (1) access to Moshannon Valley for in-person KYR presentations, outside of LOP funding, (2) whether PIRC's informational posters are still up in the detention facilities, and (3) whether PIRC's pro se materials are still accessible on digital tablets and in the law library. Stephen's response did not answer PIRC's question regarding in-person KYR presentations, instead stating that KYR videos play on loop at intake. Nor did Stephen answer our question about whether PIRC pro se materials remained available, instead stating that some pro se materials are available. Stephen confirmed that the PIRC informational posters were removed in accordance with a leadership directive from ICE. I followed up with Stephen on the same afternoon to ask whether the available pro se materials are those provided by PIRC and whether Moshannon Valley would permit in person KYR visits. We heard back on May 1, 2025 after further

inquiry with ICE that KYR presentations may be possible under separate funding, should we find a source, on a case-by-case basis with ICE's review and approval. No further access for KYR commitments have been made by the facility or ICE.

19. At this time, we are in the dark regarding whether any PIRC materials or posters are available to individuals detained at Moshannon Valley. We remain deeply concerned and frustrated that our voices are being stifled as a direct result of the LOP termination, as facilities slash our ability to carry out our organizational mission, to access facilities, and provide critical KYR and related legal information to detained individuals.

20. The termination of the contracts referenced in ¶14 above have led to significant harms to PIRC. For example, on April 24, 2025, the Executive Director of PIRC determined that it would be necessary to furlough five staff members with responsibilities related to the LOP by the end of the following week, May 2, 2025. Additionally, on the same day, April 24, 2025, the Executive Director of PIRC also determined that the LOP Program Manager at PIRC would need to be reassigned to work on other matters in order to continue employment at PIRC. These members of the PIRC team are vital to the PIRC's LOP and broader removal defense programs. While we hope that a furlough instead of a termination allows for the possibility of obtaining new funding sources, it is not realistic to expect that these employees will wait, unpaid, in the interim, and we understand that they may accept new employment, rendering them unable to return. The loss of their collective wealth of experience and accumulated knowledge in the subject matter, as well as unique language skills including: Croatian, Russian, Spanish, Italian, Arabic, and Haitian Creole, is anticipated to be incredibly difficult to replace. PIRC has invested significant time and resources into each of these staff members to develop their skills and expertise.

21. At the end of the day on May 2, 2025, furloughs will go into effect. As a result of the lost LOP funding, PIRC will furlough five employees, one attorney, one law-graduate pending bar admission, and three of its LOP staff one of whom is a DOJ Accredited Representative. All five were part of an eleven-person removal defense team. These five employees are also a significant portion of our overall staff, as we only have twenty-one employees. The imminent loss of staff and organizational infrastructure will be incredibly harmful to PIRC and our ability to continue our mission.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 2nd day of May 2025, in Lancaster, Pennsylvania.

_____
**Ryan Brunsink**
Managing Attorney for Removal Defense
Programs Pennsylvania Immigration Resource
Center (PIRC) 717.779.1086
rbrunsink@pirclaw.org