**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, *et al.*,<br><br>*Defendants*. | Case No. 1:25-cv-00298<br><br>**DECLARATION OF MONIQUE R. SHERMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF** |

## DECLARATION OF MONIQUE R. SHERMAN, DETENTION PROGRAM MANAGING ATTORNEY FOR THE ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK

*I, Monique R. Sherman, make the following statements on behalf of the Rocky Mountain Immigrant Advocacy Network. I certify under penalty of perjury that the following statement is true and correct pursuant to 28 U.S.C. § 1746.*

1. As explained in my prior declarations, my name is Monique Sherman, and I am the Managing Attorney of the Detention Program at the Rocky Mountain Immigrant Advocacy Network ("RMIAN"). RMIAN is the only organization dedicated to providing free legal services to indigent immigrant adults who are detained by the Immigration Customs Enforcement ("ICE") agency under the Department of Homeland Security ("DHS") at the Aurora Contract Detention Facility ("Aurora facility") located in Aurora, Colorado.

2. RMIAN is a Colorado-based nonprofit organization that provides free immigration legal services to individuals in civil immigration detention, as well as to immigrant children who have suffered from abuse, neglect, or violence. Through its staff of over 40 people including attorneys, paralegals, social workers, and a network of over 400 *pro bono* attorneys, RMIAN provides legal education and free legal representation to low-income immigrants who otherwise would not be able to afford an attorney.

3. In order to carry out this mission, RMIAN's Detention Program has several main work components: (1) through the Legal Orientation Program ("LOP"), providing educational and pro se services to all unrepresented detained noncitizen adults in the custody of ICE at the Aurora Contract Detention Facility in Aurora, Colorado in the form of legal education "know your rights" ("KYR") presentations, conducting individual consultations (intakes), and conducting pro se workshops; (2) connecting unrepresented detained noncitizens who cannot afford a lawyer with pro bono attorneys, for cases at both the trial and appellate court levels; and (3) providing in-house representation for a small number of clients.

4. With respect to its first programmatic focus area, RMIAN has been operating a LOP in Colorado since 2003. RMIAN was selected by the Department of Justice in 2003 as one of six pilot programs nationwide to implement the LOP and has been providing services since that time. The Aurora facility has capacity to hold up to 1,532 individuals and in recent months has housed 1100-1200 people each day. Representative Jason Crow, ICE Accountability Report (available at https://crow.house.gov/sites/evo-subsites/crow.house.gov/files/evo-media-document/_4.2.2025-ice-accountability-report.pdf). RMIAN provides LOP services for the entire immigrant population detained by ICE whose cases are heard before the Aurora Immigration Court, the only detained immigration court in Colorado.

5. With LOP funding, RMIAN employs six full-time equivalent staff members dedicated to providing LOP services. Specifically, a supervising attorney and several staff attorneys and legal assistants work together to provide in person KYR presentations 4 days a week, and to provide individualized consultations, in person and over the phone, 5 days a week. Staff also conduct pro se workshops as needed and appear for pro se individuals as friends of the court from time to time as the situation warrants. Most days, at least one RMIAN LOP staff member is at the facility for at least 4 hours. Additionally, RMIAN LOP staff dedicated to referring cases to pro bono attorneys visit pro se individuals regularly to track the continued need for pro bono referral. RMIAN LOP staff also operate a hotline specifically for individuals who are detained to contact us and request services.

6. The LOP is crucial to RMIAN's ability to provide accurate and expert legal information to pro se noncitizens about their options and responsibilities in their removal proceedings. Additionally, the LOP is a vital resource that allows RMIAN to connect individuals in immigration detention who cannot afford an attorney with pro bono counsel.

7. RMIAN is the only nonprofit legal services organization providing free legal services and offering pro bono legal referrals to noncitizens in immigration detention in Colorado. Individuals who are held in detention are unable to work while detained and therefore in most cases are unable to hire paid counsel. Additionally, most detained noncitizens are not fluent in English and are therefore unable to access legal information on their own. RMIAN's LOP offers every individual detained in the Aurora facility access to legal information *without regard to the language they speak*. In addition to information, RMIAN can sometimes offer assistance with translation of legal applications that respondents must submit to the court as well as evidence critical to an individual's legal claims. Without this support, many people in immigration proceedings who do not speak or write fluently in English are unable to meaningfully participate in their immigration proceedings.

8. Immigration judges at the Aurora immigration court consistently refer pro se individuals to RMIAN for pro se assistance, particularly when it appears the person has a hard time understanding the immigration court process, and when the immigration judge identifies a tricky legal issue on which the person could use advice. Historically, RMIAN LOP has worked in tandem with immigration judges to identify gaps in information or misinformation that may be prevalent among people housed in the facility and to provide the appropriate, accurate legal information to many people at one time. Through the LOP, for instance, RMIAN can provide accurate information about eligibility for bond to up to thirty people at a time, when they are confused by court paperwork and incorrect information provided by ICE. Immigration judges have also welcomed LOP friend of the court appearances, as these appearances can help the judge to identify issues that pro se litigants are unable to fully express themselves.

9. Moreover, in individual consultations, RMIAN LOP staff identify potential avenues for relief for participants, *and* situations in which there are not viable options for the participant

to remain in the United States. In many of these cases, participants appreciate being informed about their chances of success because it helps them decide to accept a removal order rather than draw out proceedings over many court hearings.

10. RMIAN has also worked together with ICE Enforcement and Removal Operations ("ERO") to ensure that LOP participants have access to interpretation and appropriate medical and mental healthcare. RMIAN LOP staff often identify gaps in those services among LOP participants, and ICE ERO officials have expressed appreciation for receiving that information in order that they may effectively meet their obligations.

11. As part of LOP, RMIAN partners with and trains volunteer translators to develop and maintain resources for interpretation in any language. These volunteers also provide interpretation to enable us to place cases with pro bono counsel. This creates a more equitable framework that affords people free attorneys, no matter what language they speak. Without the LOP to provide these essential services, access to counsel at the Aurora facility has been severely limited already and will be decimated, particularly for the majority of people who do not speak English.

12. RMIAN's LOP facilitates pro bono referrals for individuals who are detained in two ways: the program funds professional staff who coordinate the referrals, and the group presentations and subsequent consultations are the entry point for detained individuals to be placed on a waiting list for pro bono counsel. LOP presentations and consultations are also the entry point for RMIAN to identify individuals in need of representation by in-house attorneys.

13. Without warning, on January 22, 2025, the Department of Justice issued a national contract stop work order, pursuant to Section 19 of the January 20, 2025, Executive Order titled "Protecting the American People Against Invasion." The national contract stop work order, which took effect immediately, extended to the following programs: the general LOP program, the Immigration Court Helpdesk ("ICH"), the Counsel for Children Initiative ("CCI"), and Family Group Legal Orientation Program ("FGLOP") and stated that these programs were being paused while they undergo an audit. When I received the communication about the stop work order, RMIAN LOP staff were at the Aurora facility, in the middle of providing a group orientation in Spanish. The initial communication did not indicate whether currently ongoing services needed to cease immediately. In any case, cell phone reception is mostly nonexistent in the facility, so it took hours for me to contact LOP staff.

14. Although RMIAN immediately followed the stop work order, we expressed our intention to continue providing KYR and consultation services and requested a group to be seen for that purpose on January 24, 2025. However, we were informed over email by facility staff that they would not bring anyone to our programming. ICE ERO staff confirmed this via telephone the same day. ICE ERO and facility staff informed RMIAN that we would no

longer have access to groups of noncitizens to provide presentations, even non-LOP presentations, and that we also could not provide a list of individuals for individual consultations as we had done for years.

15. On January 29, 2025, RMIAN again requested access to a group for a KYR under the Performance Based National Detention Standards (2011). While this request was not denied outright, we were informed we needed to make a special request for a KYR presentation to ICE ERO, with ten days' notice. The stop-work order was rescinded before we could make that request.

16. During the stop-work order that was in effect from January 22, 2025 until February 2, 2025, access to legal information and counsel at the detention facility in Aurora was severely limited. During the stop-work order (and for at least one day after it was lifted) Immigration and Customs Enforcement (ICE) refused to bring any groups to the group orientation space, so any attempts to provide legal information to pro se individuals detained there had to happen one at a time. In the same amount of time that we could typically meet with up to thirty people to provide legal information about immigration proceedings, their rights, and the relief available (or not) to them, we were able to meet with only 2-4 individuals.

17. Additionally, RMIAN's intake for its pro bono referral system essentially ground to a halt during this time. We were slowly able to reach only a handful of pro se individuals to offer a screening and potential referral to pro bono counsel.

18. Moreover, facility staff made clear to RMIAN staff just before the stop work order was rescinded that all materials, including legal information handouts and the printer that enables RMIAN to efficiently provide pro se information and support, would need to be removed from the facility.

19. On April 10, 2025, the Department of Justice terminated the contracts for the Family Group Legal Orientation Program (FGLOP), Counsel for Children Initiative (CCI), Immigration Court Helpdesk (ICH), Legal Orientation Program (LOP), and Legal Orientation Program for Custodians (LOPC), effective 12:01 am on April 16, 2025. I was notified regarding the termination of the programs via email correspondence from Tania Sawczuk, Managing Director of Technical Compliance at Acacia Center for Justice at 2:57pm Mountain Time on April 10, 2025.

20. On April 16, without notice, the LOP team stopped receiving the dockets of detained individuals from EOIR.

21. Also on April 16, 2025, the LOP team received communications from GEO in response to our typical outreach for our group presentations that "Per instructions received from ICE yesterday, 04/15/2025, there will be no pro-bono presentation moving forward. Should you have any questions regarding these instructions, please reach out to ICE for clarification." This directly impacts our ability to carry on the goals and mission of our organization

regardless of the funding source.

22. On April 18, 2025, RMIAN requested the ability to provide know-your-rights presentations under Section 6.4 of the Performance Based National Detention Standards (PBNDS) (2011, revised in 2016). RMIAN included all required information in the request and directed the request, as instructed in the PBNDS, to Field Office Director (FOD) Robert Guadian. To date, RMIAN has received no response to the request. RMIAN followed up on April 23, 2025 and April 28, 2025, this time including Deputy Field Office Director (DFOD) George Valdez and Assistant Field Office Director (AFOD) William Wilkinson III. DFOD Valdez responded with a request for the details that RMIAN had previously provided. RMIAN re-sent the packet that was originally sent on April 18. RMIAN again followed up on the request on May 1, 2025 and as of this writing has received no response.

23. Calling into the facility to offer legal information has become more and more difficult over the last several weeks. For example, this morning when staff attempted to call to offer legal orientation and information services, the phone consistently rang until the recording that the call cannot be placed played, was answered but attorneys were placed on interminably long holds (twenty plus minutes) with no one returning to the phone, or was picked up and hung up without anyone even answering. Combined with the fact that we are not allowed to do group presentations, it makes provision of pro se services almost impossible.

24. RMIAN has been able to meet with a maximum of six individuals in a single day since the termination. Previously, when the LOP contract was in place, RMIAN was able to meet up to thirty people in a single visit. There were roughly *fifty* individuals in detention with master calendar hearings scheduled for April 29, 2025, and RMIAN was only able to see *five* of them before those hearings. The same was true for April 30, 2025. That means that roughly *ninety* individuals held in detention appeared by themselves in court for the first time without having received any orientation or legal information about the process. Absent the stop work order, RMIAN would have invited all one hundred individuals to a group presentation.

25. Even a short lapse in funding under the LOP has devastating effects on our resources and ability to reach any substantial number of people in the facility. Given recent rates of detention of approximately 1100-1200 people per day at the facility, providing legal information on a one-by-one basis is simply untenable. Even if ICE ERO grants our request to provide group KYRs with ten days advance notice, we cannot effectively accomplish our mission using that process. ICE releases, transfers, and deports people from the facility every day, so a group of people who may be in the facility today are likely not to be in the facility in ten days. In addition, we cannot ensure that we are able to see people before their first hearing under this model because we often do not learn about a scheduled hearing ten days in advance. Finally, with the expansion of expedited removal, a ten-day waiting period will likely ensure that many people are deported without ever having access to legal

information.

26. This lack of access to legal information also ensures that many detained individuals will move forward with unmet medical needs affecting their ability to participate in their removal cases and that people who ICE has no legal basis to detain remain in detention. In recent months, RMIAN's LOP has encountered several people with reports of unaddressed medical concerns. RMIAN also has identified at least one person believed to be a US citizen who is being held at the facility. RMIAN has endeavored to refer those individuals who were interested to pro bono counsel, and to provide information to assist those individuals in obtaining needed support.

27. RMIAN and its community partners have recently identified several individuals who were deported from detention in Aurora with little or no due process. The ability to reach people who are detained and to provide legal information quickly is critical to ensuring that individuals who cannot afford an attorney are informed about their rights and empowered to make the decisions that are right for them and to stand up for their rights.

28. Moreover, the LOP, FGLOP, and ICH programs collectively make up approximately 25% of RMIAN's budget. We have had to immediately attempt to find other sources of funding to continue to pay our staff. Even if we did have sufficient funding to bridge this shortfall, much of our other funding cannot be used to provide KYR services. Moreover, many members of our LOP team applied specifically to assist pro se individuals at the detention facility, rather than the other services we offer. They are dedicated to providing KYR and pro se assistance, as it is the only opportunity that the majority of detained individuals have to learn information about the legal process they are in. As a result, morale on the team has been negatively impacted, which in turn may cause staff members to experience mission drift and depart the organization.

29. RMIAN's ability to continue providing these critical services to pro se individuals in detention has been critically limited since LOP funding was erased. First, the access issues described above have drastically reduced the number of people we are able to meet. Furthermore, even if we had funding to replace the LOP funding, it would be inefficient for RMIAN to continue to employ staff to meet with pro se individuals on such small scale relative to the number we can reach through LOP. Second, RMIAN has very limited funding available that can be used to facilitate pro se legal information.

30. On April 16, 2025, RMIAN implemented a hiring freeze, opting not to hire new employees or replace open positions in the organization as a direct result of the termination taking effect.

31. The contract terminations have continued to frustrate RMIAN's mission in myriad ways, many of which go beyond a cut to funding. For example, on April 25, 2025, when RMIAN staff attempted to file two third-party notifications to the Aurora Immigration Court of

indicia of incompetence for two detained pro se individuals, the Clerk would not accept the notifications. After RMIAN staff escalated the issue to the Court Administrator, she called me and the supervisor of our pro se program came to the window. The Court Administrator informed the staff that the court could not take the notifications. The Administrator informed the staff members that "that" was over, ostensibly implying the LOP. After advocacy from all three of us, the Administrator apparently spoke to another person and eventually agreed to accept the third-party notifications.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct.

Executed on the 2nd day of May 2025, in Westminster, Colorado.

Respectfully submitted,

*/s/ Monique R. Sherman*
Monique R. Sherman
Detention Program Managing Attorney
ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK