# Exhibit 1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
 2


 3      AMICA CENTER FOR IMMIGRANT RIGHTS,
        et al,                                     Civil Action
 4                                                 No. 1: 25-298

                    Plaintiff,
 5

              vs.                                  Washington, DC
 6                                                 April 15, 2025

        UNITED STATES DEPARTMENT OF
 7      JUSTICE, et al,                            2:33 p.m.


 8                    Defendant.
        _____/
 9


10                    TRANSCRIPT OF TRO MOTION HEARING
                    BEFORE THE HONORABLE RANDOLPH D. MOSS
11                       UNITED STATES DISTRICT JUDGE


12

        APPEARANCES:
13

        For the Plaintiff:        Laura M. Sturges
14                                GIBSON, DUNN & CRUTCHER, LLP
                                  1900 Lawrence Street
15                                Suite 3000
                                  Denver, CO 80202
16
                                  Amelia Dagen
17                                AMICA CENTER FOR IMMIGRANT RIGHTS
                                  1025 Connecticut Avenue NW
18                                Suite 701
                                  Washington, DC 20006
19
                                  Samantha Hsieh
20                                CAIR COALITION
                                  1025 Connecticut Avenue NW
21                                Suite 701
                                  Washington, DC 20036
22

23                        APPEARANCES CONTINUED ON NEXT PAGE

24

25
```

```
 1                        APPEARANCES CONTINUED

 2    For the Defendant:        Zachary W. Sherwood
                                Andrew Warden
 3                              DEPARTMENT OF JUSTICE
                                Civil Division
 4                              Federal Programs Branch
                                1100 L Street NW
 5                              Washington, DC 20005

 6

 7    Court Reporter:           SHERRY LINDSAY
                                Official Court Reporter
 8                              U.S. District & Bankruptcy Courts
                                333 Constitution Avenue, NW
 9                              Room 6710
                                Washington, DC 20001
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  Civil case number 25-298,

3    *Amica Center for Immigrant Rights, et al, versus United States*

4    *DOJ, et al.*

5          Would counsel please approach the podium, state your

6    name for the record starting with plaintiffs' counsel.

7          MS. STURGES:  Good afternoon, Your Honor.  Laura

8    Sturges on behalf of plaintiffs.

9          THE COURT:  Good afternoon.

10         MS. DAGEN:  Good afternoon, Your Honor.  Amelia Dagen

11   for Amica Center for plaintiffs.

12         THE COURT:  Good afternoon.

13         MS. HSIEH:  Good afternoon.  Samantha Hsieh on behalf

14   of plaintiffs.

15         THE COURT:  Good afternoon.

16         MR. SHERWOOD:  Good afternoon, Your Honor.  Zachary

17   Sherwood for the defendants, the United States.  And I am

18   joined by cocounsel, Andrew Warden.

19         THE COURT:  Good afternoon to both of you.

20         All right.  We are here on the plaintiff's renewed

21   motion for a TRO, so why don't I go ahead and start with

22   Mr. Sturges.

23         MS. STURGES:  Thanks, Your Honor.  We really

24   appreciate the quick attention that you have paid to this

25   matter.  You know, we were here last month talking about a stop

1    work order that defendants then rescinded.  But we

2    acknowledged -- I think everyone agreed that a -- that there

3    was a likely chance that we would be back in front of you.  And

4    Thursday evening we learned of the notice of termination that

5    defendants provided to the prime contractor in this case

6    stopping -- terminating all funding for convenience.  The

7    programs that Congress has recognized for years provide such

8    important and vital services that they have specifically

9    discussed these programs in their appropriations year after

10   year after year.

11          We have just learned this afternoon, in fact, too

12   that accompanying this termination will be an order from ICE to

13   remove posters from all facilities.  And as we have discussed

14   in our briefing and as was the case during the last stop,

15   plaintiffs will be denied access to facilities as LOP and other

16   program providers once funding is terminated.

17          We saw in defendants' brief this morning that there

18   was no indication that that access and those First Amendment

19   violations would not occur, only heard that they thought that

20   was a reasonable act for the government to take here.

21          THE COURT:  Do you know that they will occur?  It was

22   unclear to me -- you say there is an ICE order with respect to

23   posters.  Has there been an order with respect to access?

24          MS. STURGES:  Correct.  My understanding just as we

25   were walking in today actually is that plaintiff Amica learned

1    of an order from ICE that ordered -- will be ordering these

2    program providers to take down LOP and program-related posters.

3    It is not clear whether that takes effect immediately today or

4    at 12:01 a.m. this evening, tomorrow morning.  But that has

5    been issued and we intend to update the Court with a

6    declaration to that effect as soon as we are able this

7    afternoon.

8              THE COURT:  So that strikes me as not surprising if

9    the LOP program is not going to go forward and that you

10   wouldn't want to have posters up saying, meetings for LOP

11   briefings every Thursday at 10:00 in the cafeteria.

12             That is a little bit different from saying though --

13   that is a lot different from saying that the organizational

14   plaintiffs in this case, if and when they show up, saying even

15   if the contract is no longer in place, we have an

16   organizational mission to make sure that people are informed

17   about their rights and we would like the opportunity to enter

18   the facility to inform people of the rights, to give them our

19   own pamphlets that identify the various rights or how to

20   contact counsel if they want to contact counsel, things like

21   that.  Is there any indication that you are aware of that

22   independent of just the termination of the program or

23   termination of the contracts that there will be some separate

24   prohibition on entering the facilities?

25             MS. STURGES:  Yeah.  Fortunately for the relief we

1    seek here, although unfortunately for the activities of our

2    plaintiffs during the last stop work order, they were

3    restricted from communications access posters literature beyond

4    just the programs at issue.  So that the First Amendment harms

5    did go beyond just restricting, for example, LOP meeting at

6    5:00.  They -- there were other programs that were not affected

7    by the previous stop work order that were impacted.  And those

8    are in our declarations and I am happy to pull the --

9             THE COURT:  Yeah.  No.  I have read through the

10   declarations and what they -- I mean, my reaction to them,

11   which you are more than welcome to push back on is that there

12   is some anecdotal evidence that there was difficulty accessing

13   some facilities by some of the plaintiffs at some point in

14   time, but unclear to me whether it was a product of confusion

15   by the people at the facilities about what they were supposed

16   to be doing in light of the decision, whether it was uniform.

17   You know, you probably didn't submit to me the declarations

18   saying oh, by the way, a couple of our plaintiffs were actually

19   still able to get in.  I don't know if that is the case or not.

20            MS. STURGES:  We may have acknowledged that.  I do

21   think we did, but I will have to double check.  I think you're

22   describing it exactly correct that the chaos from the initial

23   stop work order was such that some facilities did not know how

24   to react --

25            THE COURT:  Right.

1          MS. STURGES:  -- or either they barred people

2     immediately, pulled them out of meetings, which was certainly

3     not a function of terminating the programs.  Occasionally I

4     think there was a time when providers were able to get in if

5     for a day or two until access was eventually stopped.  So it

6     was not a uniform cutting off of access, but it was clear that

7     access was going to be denied and was denied.

8          THE COURT:  Okay.  All right.  And what is it that

9     you are actually challenging here?  Because I think a moment

10    ago you referred to me -- or you referred to challenging the

11    stop work orders which ended the program.  And that I think is

12    maybe conflating two different things.

13         MS. STURGES:  Yeah.

14         THE COURT:  And thinking about this and thinking

15    about Tucker Act jurisdiction and so forth, it has occurred to

16    me that there are at least arguably two different things going

17    on here.  And one is just a decision that may or may not have

18    been made just to terminate the program and to say, I don't

19    care whether Congress has appropriated funds for the LOP

20    program, we think it is a bad idea, we are not doing it.  That

21    is one thing.  It is another thing to say, we have questions

22    about this contract and we are going to terminate the contract.

23    The program is not over.  And we are thinking about what to do

24    and how to proceed forward now, but this doesn't mean the

25    program is over, it just means that we have terminated this

1    contract.  And I know both sides -- you have maybe shifted

2    towards this is the end of the program in your analysis.  The

3    government has shifted a little more towards this is just a

4    contract dispute.  And so as the plaintiff in the case and I

5    guess the question for you is, what is it -- what is the agency

6    action that you are challenging?

7         MS. STURGES:  Thank you for giving me a chance to

8    clarify that.  In reference to the stop work order is mostly

9    for purposes of showing that we know the harms or we likely

10   know the harms that are about to occur from the agency action

11   that we are challenging here, which is Thursday's termination

12   notice.  And Thursday's termination notice from the government

13   announced that it was terminating the programs and the

14   contracts authorizing those programs for convenience, without

15   reason, without any indication that it was studying the

16   programs.

17         You know, interestingly I think we agree with a lot

18   of things in the government's brief in terms of the government

19   having an obligation to -- recognizing its obligation under the

20   congressional appropriation, that they do have discretion in

21   how they allocate those funds.  And that it is their right to

22   decide how they would like to see these programs run.  And

23   certainly Congress has specifically recognized that the LOP

24   programs have value and that somebody should be running these

25   LOP programs.  I am here representing plaintiffs who have been

1    very adequately running these programs and providing relief and

2    important work for our Immigration Courts and systems for

3    years.  They are specialized and have this knowledge and

4    ability to do this.  Should defendants have an interest in

5    running the programs another way, we are not asking that it has

6    to be the way it has been done.  We are asking for relief from

7    the illegal arbitrary and capricious violation of

8    appropriations clause and termination that the defendants took

9    on Thursday.  So defendants can -- or Your Honor can remedy the

10   harms from defendants in a variety of ways in terms of the

11   injunctive relief we request.  And it is through requiring

12   defendants to comply with the law, namely appropriations

13   clause, the APA and and the First Amendment.

14           THE COURT:  And what is it consistent with?  What is

15   the injury that you are asserting, the Article III injury you

16   are asserting?

17           MS. STURGES:  Well, we have both a First Amendment

18   harm that has already occurred during the first stoppage in

19   January.  And -- which we have good reason to believe will

20   happen again imminently including as I referenced the order

21   from ICE to remove posters.  So the interruption in First

22   Amendment freedoms to speak to --

23           THE COURT:  Although if those posters are about the

24   LOP or one of the related programs, that is not necessarily the

25   infringement of your First Amendment rights to speak on other

1    topics, it is saying the LOP program isn't taking place now and

2    therefore it would be confusing to people to put up posters

3    about a program that is not actually operating at the moment.

4            MS. STURGES:  That is true, Your Honor.  But I think

5    that allows defendants to sort of bootstrap two constitutional

6    violations on top of each other.  They have illegally stopped

7    the program and now they are illegally violating our First

8    Amendment rights by saying we can't talk about the program that

9    they have illegally stopped.

10           THE COURT:  Is one of the First Amendment injuries

11   you are seeking is independent of the program to be able to

12   speak with people or not?  I mean, is it your -- I guess I am

13   trying to understand the claim.  Is your claim, at least in

14   part, that even without the LOP program or funding or the

15   contractual relationship that we have or the relationship we

16   have as a subcontractor, our organizations are organized for

17   the purposes of making sure, among other things, that people

18   who are in immigration proceedings are informed of their

19   rights.  And precluding us from having those conversations,

20   regardless of whether there is a contract or not, violates the

21   First Amendment rights of the organizations as well as perhaps

22   the listeners?

23           MS. STURGES:  Absolutely.  Our First Amendment rights

24   are independent of the contract.  And that is because they are

25   determined by the congressional determination to fund and

1    allocate funds for this program.  So it is Congress who has

2    determined that this speech is protected and that we are able

3    to engage in it.  And that has given rise to our First

4    Amendment right to speak in otherwise government facilities

5    where they can restrict speech otherwise, but they cannot

6    restrict viewpoint-based speech -- or restrict our viewpoints

7    because they disagree with us because they would like to make a

8    policy change.

9           So our First Amendment rights are beyond the

10   contract, but not beyond the programs necessarily.  And I will

11   caveat that by saying during the first stop work order, I do

12   believe our First Amendment rights and our harms that we allege

13   then and would allege now if they occur did go beyond the

14   programs in that defendants improperly infringed upon our

15   ability to access facilities, put up other information that

16   might have gone beyond the programs improperly.

17          THE COURT:  I had thought that you were arguing that

18   even though these are government buildings, they are in some

19   sense a quasi-public fora or it is the only way to be able to

20   speak with these people is to be able to go to these buildings.

21   And if the only way to speak with them is to go to the

22   building --

23          MS. STURGES:  Access.

24          THE COURT:  -- that you have some First Amendment

25   right to access, at least to see if they have to hear what you

1    have to say and that is independent even of the LOP itself.

2            MS. STURGES:  That is exactly right that it is -- and

3    I am going to refer back to a point I made earlier that during

4    the first stop work order, beyond the LOP programs there are

5    programs that defendants have not yet touched that some of our

6    plaintiff providers provide in these facilities.  And they were

7    restricted from conducting that speech as well.

8            THE COURT:  Do you know whether in the ordinary

9    course there are groups or individuals who are granted access

10   to these facilities or facilities of this type that are not

11   engaged in government-funded speech but privately-funded speech

12   in order to make sure that people are aware of their rights?  I

13   am curious as to the extent to which the facilities have been

14   established historically as a quasi public fora or some analogy

15   to that where people have, in fact, in the past been allowed to

16   come in and set up a table and say, if you want counsel, we are

17   here.

18           MS. STURGES:  We are here.  Well, Your Honor, I am

19   going to defer to my cocounsel on that in terms of whether

20   there are privately funded groups that are allowed access to

21   this.  But I do know for the providers who are plaintiffs here

22   and the programs that they provide, these are often the only

23   facilities -- excuse me -- the only providers and outside

24   government employees who are permitted into the facilities.

25   And they are the only source of information apart from

1      government attorneys in many of these facilities.

2             THE COURT:  Okay.  I would be interested in the

3      question just about whether in facilities of this type there is

4      a history of people being allowed into the facility in order to

5      simply provide counsel of some type, which is not necessarily

6      government sponsored.

7             MS. STURGES:  We saw in defendants' brief, Your

8      Honor, that they do not see that there is any right to access

9      the facilities, that they think that cutting the funding

10     necessarily allows them to cut access.  And we don't agree with

11     that position.

12            THE COURT:  Okay.  That is -- that is what I am

13     trying to get at with this line of questioning here, because if

14     I were to conclude that this is, in essence -- the funding

15     issue piece of this is an issue that should go to the Court of

16     Federal Claims or something of which I don't have jurisdiction,

17     or as -- there is other defect in that argument, I am trying to

18     get my hands around the extent to which there is still

19     something else that is live in front of me or whether all of

20     your arguments flow from the argument that the termination

21     order was unlawful and that stopping funding of this particular

22     contract itself gives rise to all of the injuries in the case

23     or whether there are some injuries that are independent of

24     that.

25            Because if I were to conclude -- and I am not saying

1    that I am, but if I were to conclude or some judge were to

2    conclude that I lack the authority to -- in essence, we

3    reinstate the contract here, that would mean I think, as a

4    logical outgrowth of that, that I also lack the authority to

5    tell any of the defendants that you have to keep up those darn

6    posters about this program, that I can't tell you that you may

7    not stop.  There are too many negatives in that sentence, but

8    you get the point.

9           And so if I lack the authority to say, you have to

10   lift the termination of the contract and this contract comes

11   back to life, if I lack that authority, then does -- does

12   everything else fall away in the case?  Because why in the

13   world would I tell them they have to post posters about a

14   program that I can't tell them they have to have in place.

15          MS. STURGES:  That is a great question.  We do not

16   think anything falls away, if you find that you lack the

17   authority to tell them to reinstate the contract.  In fact, we

18   are not asking you to order them to reinstate the contract.  We

19   are asking you to order them to provide the appropriate funds

20   from Congress to provide for these specific programs.  And the

21   contract is very independent of the existence or should be

22   independent of the existence of the LOP programs.  And I am

23   going to call them LOP, but there is obviously several

24   different programs that we are talking about here.

25          Those programs are provided for by Congress.  And

1   those programs exist independent of this contract, the right to

2   execute these programs, the right to access facilities to talk

3   about the programs, the right to have our posters up are

4   completely independent of the contract.  It just happens to be

5   that the contract is the vehicle.  And as defendants' own

6   language has shown in terminating it, for defendants'

7   convenience in executing these programs.  But it is certainly

8   not the only way to execute --

9            THE COURT:  But if the posters say on them, come meet

10  with the Amica representative on Tuesday to learn about your

11  rights and if you are saying that you are not asking me to

12  compel this particular contract to remain in place, but that

13  the government could say, we want someone else doing this or we

14  want time to think about whether there should be someone else

15  doing this.  And it makes sense to take the posters down,

16  because, in fact, there is not going to be anyone from Amica

17  sitting there.  And you are going to have a bunch of frustrated

18  people saying, I came for the 2:00 meeting from Amica.  They

19  are not here.  What is going on?

20           MS. STURGES:  I think there is a difference between

21  what makes sense there and what is a First Amendment violation.

22  And I think that --

23           THE COURT:  Why is it a First Amendment violation for

24  the government to say that posters that are misleading people

25  in the facilities about a meeting that is not going to take

1    place should come down because we don't want to --

2                MS. STURGES:  They are only misleading though, Your

3    Honor, because the government has illegally terminated the

4    programs.

5                THE COURT:  That is the circle of this.

6                MS. STURGES:  Yeah.  So what we see here is

7    independent of the contract, independent of government's

8    convenience in terminating that contract, the government has an

9    obligation to fund these programs.  They are under obligation

10   by Congress, they are under obligation by the APA to fund these

11   programs.  And whether or not the contract is the vehicle for

12   that, that is still a First Amendment violation to then say, we

13   cannot put up posters about programs that they have illegally

14   terminated.

15               THE COURT:  I have to say, I found the government's

16   argument with respect to the FGLOP and the CCI pretty

17   convincing.  If those programs are being funded out of the

18   general appropriation from EOIR, I am not sure how your

19   argument reaches those programs.

20               MS. STURGES:  You are right on the appropriations

21   piece, but they are not specifically as strong as the other

22   programs in terms of congressional appropriations.  But in

23   terms of termination for convenience under the APA and under

24   our First Amendment rights, we still think we have very strong

25   claims on that that deserve injunctive relief here.

1          If Your Honor is interested, I would be happy to talk

2    about the Tucker Act and the jurisdiction issue.

3          THE COURT:  I am interested in that topic, yes,

4    please.

5          MS. STURGES:  So you specifically asked yesterday

6    about *Department of Education* which we have had, of course,

7    followed and appreciate the opportunity to brief that before

8    you this morning.  We had not included it in our renewed TRO,

9    because we just don't think it applies here at all.  It was

10   both different factually and procedurally.  But the real big

11   difference there is you had plaintiffs who were in specific,

12   for lack of a better word, privity with the government on

13   specific contracts or grants that were not provided for by

14   congressional appropriation, that did not arise outside of that

15   specific grant context.  And so there, the Court in evaluating

16   a stay of an extended TRO found questions that could go to

17   jurisdiction.  Obviously, that is still being litigated.

18   Regardless, it affirms the *Bowen* line of cases that we rely on

19   as to why Tucker Act does not apply here, that our rights do

20   not flow from contract and that our remedy is not contractual

21   in nature.  And both of those things were acknowledged by the

22   Supreme Court in *Department of Education* and we think that --

23          THE COURT:  Where do your rights flow from?

24          MS. STURGES:  They flow from the Appropriations Act.

25   They flow from the APA and they flow from the First Amendment.

1    THE COURT:  Well, put aside the First Amendment for a

2    moment.  It is a little hard to see how you have rights under

3    the Appropriation Act, at least certainly not in the property

4    right type sense of the word.  Because I think as you concede,

5    the Department of Justice would be entirely free to say, we

6    just want different contractors.  Thank you very much for all

7    of your help over the years, but --

8    MS. STURGES:  That is right.

9    THE COURT:  -- we have found some folks who we think

10   are terrific and we are bringing them in.  And you wouldn't be

11   able to say that violated a right.  You are not mentioned in

12   the statute and there is no particular entity that is mentioned

13   in the statute.  It is not like in some of the cases, the

14   Supreme Court has recognized an appropriation might actually

15   create somewhat of a property right, because it mentions

16   funding to a particular entity.

17   MS. STURGES:  Sure.  Here, Your Honor, I think the

18   interests are reliance interests that we have in Congress

19   having recognized that the LOP programs are important, vital

20   and part of the immigration context here and that is how

21   plaintiffs have been created.  They have organized themselves

22   around this authorization by Congress to provide these really

23   important services and that is why they exist.  And so I think

24   you're right that defendants could come in here and say, thank

25   you very much, we have found someone that we think is better.

1     And that may still give rise to an APA claim depending on the

2     circumstances there.  But it likely would not violate the

3     appropriations clause here.  But here they didn't do that and

4     it does violate the appropriations clause to terminate this

5     funding, and leave those funds unspent in contravention of

6     congressional directive.

7               THE COURT:  Yeah.  I think that one of the things

8     that is somewhat complicated here is thinking about this as

9     creating rights.  And I realize that oftentimes that is the way

10    it arises in the Tucker Act context.  I see cases here all of

11    the time where people bring claims under the APA, where the

12    statute doesn't mention them or point to them in particular,

13    but it nonetheless creates an interest that they are allowed to

14    pursue.  And in an environmental context all of the time there

15    may be agency actions which affect the aesthetic interests of

16    members of associates.  And they can come in and they can sue

17    under the APA, saying that this agency action has caused me --

18    its final agency action has caused me some harm, because it

19    affected my, for example, aesthetic interest here.  But it is

20    not like the statute has created some individual right in that

21    person.  And so in the APA context, the notion of rights is a

22    little less focused or different than it is I think in the

23    Tucker Act context where obviously if something is contractual,

24    you are talking about something that is in the nature of

25    property right.

1      MS. STURGES:  Sure.  Well, the reason why this is not

2   a Tucker Act case though here is there are no contract rights

3   that our plaintiffs here have to sue on.  We don't --

4      THE COURT:  I thought -- I can't remember if it was

5   your brief or the government's brief that did say you could go

6   to the prime contractor and request that prime contractor to

7   authorize you then to bring an action in the claims court as

8   the sub.

9      MS. STURGES:  It was in government's brief, Your

10  Honor.  And it is not that the prime contractor could authorize

11  it.  Our understanding of the case law is that the prime

12  contractor would have to be there as well.  And they are not

13  here.  They have not filed in claims court.  And it is not

14  clear that that is an avenue for us at all.  But point being

15  that we are not here seeking damages, which is what the claims

16  court is equipped to provide.  And the only thing the claims

17  court is equipped to provide.  We are looking forward relief to

18  continue the missions of these plaintiff organizations to be

19  able to continue to operate under the understanding that

20  Congress has at least -- as long as Congress has spoken that --

21      THE COURT:  I thought there was some cases that did

22  say, you can't avoid the Tucker Act exclusive jurisdiction by

23  bringing your claim as one for specific performance instead of

24  bringing a claim for damages.

25      MS. STURGES:  That is exactly right.  And we are also

1    not seeking specific performance here.  We are seeking access

2    to facilities.  We are seeking the ability to meet with

3    immigration noncitizens who are in detention in immigration

4    proceedings and seeking to have the funding that Congress has

5    appropriated to be continued to be delivered by defendants

6    however that may be.

7            We don't think we can get around the Tucker Act by

8    seeking specific performance.  We are not doing that here, but

9    we also don't think the government can get around the APA,

10   appropriations clause, violations of separation of powers,

11   et cetera, by simply having a contract in place that gives them

12   the right to terminate for convenience.  They are absolutely

13   able to terminate for convenience and they have to do that

14   while also meeting their obligations under the APA,

15   congressional appropriations, et cetera.

16           THE COURT:  Your argument though I take it as you

17   have framed it there really turns on what is maybe an implied

18   but unstated premise here which is that, in fact, that the

19   Department of Justice has terminated not the contract here, but

20   the LOP program.  And that Congress in the appropriations said,

21   essentially that there shall be an LOP program and that, in

22   your view, what the administration has done is said, we

23   kindly -- respectfully disagree.  And there will not be that

24   program that Congress has said there shall be.  That I think at

25   least as you are framing is what your argument -- your

1    challenge is, but it does turn on this unstated premise which

2    is certainly a question I will then have for government counsel

3    of what, in fact, has happened here.

4            MS. STURGES:  It is -- that is exactly right, Your

5    Honor.  And the February 5th memo from the AG specifically

6    says, we want to stop funding these programs and the

7    termination notice specifically terminates these programs, not

8    just funding.  And it makes clear that it is a policy

9    distinction between what Congress has said and the executive

10   would like to allow.  And the fact that defendants have the

11   right to terminate for convenience is an attempt, really, for

12   them to get around this Court's jurisdiction and try to force

13   their otherwise illegal activity into a contractual right which

14   plaintiffs don't have here.

15           THE COURT:  Although at least in the District Court

16   opinion in the *California versus Department of Education* case

17   it sounds like it was similar in that what the government did

18   there as well is terminated the programs writ large and not

19   simply the individual contracts.

20           MS. STURGES:  I agree.  I don't think there is a

21   difference necessarily in the government's actions there.  I

22   think the difference really lies in the plaintiffs' posture and

23   their ability to seek contractual relief, their ability to

24   avoid irreparable harm which are very different than the

25   plaintiffs here.

1          THE COURT:  Are there any cases that you can point me

2     to where a Court has enforced an appropriations provision in

3     the manner that you are requesting here?

4          MS. STURGES:  Specifically based on appropriations

5     apart from an APA claim or a First Amendment claim?

6          THE COURT:  Yeah.  Where it said under the APA, a

7     plaintiff can bring an action to require the government to

8     continue a program that the Congress has funded with mandatory

9     dollars?

10          MS. STURGES:  Yeah.  I think a few of the cases that

11     we have provided for you in supplemental authority actually do

12     that, but I will ask for a minute when you are questioning

13     defendants if that is okay to --

14          THE COURT:  That is fine.  I do want to know if you

15     want me to go back and read some cases, in particular focus on

16     which of the cases that say that that is, in fact, actionable.

17     I think that may be the Judge Bork opinion from the D.C.

18     Circuit may be one of them.  But that, let's see, I have it

19     here somewhere.

20          Yeah, it is the *Maryland Department of Human*

21     *Resources* case perhaps, but that is a question that I will want

22     to focus in on.

23          MS. STURGES:  And certainly *Aiken County,* Your Honor,

24     is relevant in terms of the limits on the executive under

25     congressional authority.  But I don't recall if there was

```
 1    injunctive relief -- preliminary injunctive relief or at least

 2    temporary injunctive relief.

 3            THE COURT:  I would be interested in that.  And

 4    the --

 5            You know, we are having a problem with the public

 6    line.  Is it still having a problem?

 7            THE COURTROOM DEPUTY:  Yes, Your Honor.

 8            THE COURT:  Yeah.  What I am going to do is pause for

 9    a minute to let the IT folks make sure they can get that

10    working.  And then we will continue as soon as that happens.

11    That will give you a chance to look for the cases.

12            MS. STURGES:  Thanks.  I appreciate it.

13            (Recess taken at 3:06 p.m.)

14            THE COURT:  All right.  We have the public line

15    working now.  I am not going to ask you to go back and repeat

16    everything that you have said.

17            Mr. Sturges, did you get a chance to find your best

18    cases for me?

19            MS. STURGES:  Yes, Your Honor.  I did want to direct

20    your attention to our brief filed this morning actually

21    distinguishing *Department of Education*, but it was the *Maine*

22    *versus United States Department of Agriculture*.  And that case

23    is just recently from the -- you know, within the last couple

24    of weeks since Department of ED.

25            THE COURT:  I'm sorry.  No, the *Maine* case -- *Maine*
```

1   *versus Department of Agriculture.*  Oh, okay.  I have got a

2   different *Maine* case in front of me.

3         MS. STURGES:  There are two *Maine* cases, you are

4   right.

5         THE COURT:  Okay.  I will take a look at that then.

6         MS. STURGES:  Perfect.

7         THE COURT:  That is your best case then.

8         MS. STURGES:  I think best case most recently and on

9   point with all fours in terms of dealing with the Tucker Act

10  issues and also permitting -- requiring funding -- excuse me --

11  to go forward with appropriations requirements there.  And the

12  *Maine* case is under Title 9.

13        I also -- and I would request, Your Honor, you have

14  helpfully asked us to provide you with updates on relevant

15  cases, which I know we did following this hearing a month ago,

16  but we would love the opportunity to do that again if that

17  would be helpful.

18        THE COURT:  Absolutely.  More information is always

19  better as far as I am concerned, yes.

20        MS. STURGES:  Excellent.  And I also had the

21  opportunity to speak with my cocounsel too about your earlier

22  question about private right to access in these facilities.

23        THE COURT:  Oh, yes.

24        MS. STURGES:  We do point out in our renewed motion

25  and in our complaint as well, many of the plaintiffs here

1   started as private or -- well, they are private groups.  The

2   programs in particular, LOP started as a private program before

3   Congress said, this is really great and this is helping our

4   immigration courts and we want to fund this going forward.  So

5   historically, yes, there has been a private right to access to

6   these facilities by organizations like the plaintiffs to

7   provide the very types of services that they are providing

8   here.  And the limitation, the cutoff of access, the removing

9   of posters and the like is in violation of -- historically, the

10  only ability for detained citizens to get information from

11  anybody except for those people representing the government who

12  are potentially trying to deport them or whatever their

13  situation may be.

14          I also wanted to reference too that we mentioned --

15  you asked about the example of an LOP poster that maybe says,

16  meet at 5:00 to hear about LOP.  The posters that were removed

17  last time and the posters that we anticipate will be removed

18  again under the ICE directive that is -- appears to be the same

19  as the one that was issued before went much farther beyond LOP

20  specific or program specific.  And, in fact, in some of our

21  declarations and including paragraph 16 in the initial

22  declaration of Kelly Rojas from Amica, she has now filed three

23  and I think we are about to file a fourth later today.  But

24  paragraph 16 from her initial declaration, she talks about

25  requesting the Washington ICE facility if they could remove

1  reference to LOP and that information to make it palatable to

2  keep the posters up.  And they were denied that information.

3  They were denied ability to keep the posters up.  They were

4  forced to remove them.

5          THE COURT:  I'm sorry.  I just want to make sure I

6  have this one in front of me.  Which declaration was this one?

7          MS. STURGES:  This is the Rojas declaration attached

8  to our initial motion for preliminary injunction.  That is at

9  paragraph 16 on page 6.

10          In addition to --

11          THE COURT:  I'm sorry.  Hold on a second here.  I am

12  looking at what I think was the original Rojas declaration in

13  paragraph 16, you said?  I'm sorry.  My -- I usually go by the

14  ECF pagination.  You are using the other pagination.

15          Okay.  Thank you.

16          MS. STURGES:  Thank you, Your Honor.  We were talking

17  before we stopped also about the Tucker Act and the existence

18  of the contract here.  And I just wanted to go back and revisit

19  the fact that the way that defendants have framed their

20  response, I think, is trying to insert a contract here where

21  none is relevant to the relief that the plaintiffs are

22  requesting, that they are trying to avoid APA review.  They are

23  trying to avoid appropriations clause violations by claiming

24  that this contract should either direct us out of court or that

25  they have the right to either certain contractual rights as the

1    government contractor which we don't disagree with.  But what

2    we do disagree with is the termination of these programs, which

3    they have done by their Thursday notice.  And whether or not

4    they wish to terminate a contract for convenience does not give

5    them the right to or the ability to violate their obligations

6    under the congressional appropriations or the APA or the First

7    Amendment.

8              THE COURT:  Okay.

9              MS. STURGES:  Are there any other questions from

10   yesterday that I haven't addressed?

11             THE COURT:  Well, I have got a long list of questions

12   in mind still, but let me go ahead and hear from Mr. Sherwood

13   and then I will give you a chance to reply.

14             MS. STURGES:  Thank you.

15             MR. SHERWOOD:  All right.  Thank you, Your Honor.

16   Happy to address specific questions that the Court has, but

17   we'll start off I think as explained in defendants' brief that

18   was filed this morning.  For purposes of this TRO motion,

19   this -- the plaintiffs' TRO motion can be resolved on the basis

20   of *Department of Education versus California,* the Supreme

21   Court's recent decision.  The language used in that decision

22   indicates that in that case, it was the government.  And here,

23   obviously, it was defendants are likely to succeed on the claim

24   that there is -- the District Court lacked jurisdiction.  Here

25   plaintiffs have not met their burden of showing that this Court

1    has subject matter jurisdiction.

2         THE COURT:  Although they make a pretty good point

3    that the California case may be distinguishable on the ground

4    that the critical question is whether an alternative remedy is

5    available, which would then implicitly preclude review under

6    the APA.  If you are the grant recipient, you can go to the

7    claims court.  If you are the prime contractor, you can go to

8    the claims court.  But according to you as well, a sub can't go

9    to the claims court without the participation of the prime.

10   And here the prime is not participating and probably has very

11   good reasons not to participate, because the prime may lose

12   whatever other government business the prime contractor has if

13   the prime contractor joins in an action in the claims court or

14   here.  So these plaintiffs are just out of court.  If the

15   Tucker Act remedy is their only remedy and they can only go to

16   the claims court, then they have no remedy is their point.

17        MR. SHERWOOD:  I would disagree, Your Honor.  The

18   critical reason why the prime contractor is not before this

19   Court is because under the Acacia contract, that contract is

20   subject to the contract disputes act, which requires Acacia to

21   first, as a matter of statute, has to first appeal a

22   termination decision to the contracting officer and from there

23   can appeal only to an appeals board or the Court of Federal

24   Claims.  So it is almost beyond dispute that the prime

25   contractor would not be able to come and proceed in District

1    Court.

2              THE COURT:  And then also couldn't join the sub here

3    from raising what you said in a direct action in the claims

4    court under the Tucker Act and that the remedy would have to be

5    to proceed through the Board where you, I believe, go directly

6    to the Federal Circuit and you skip over the claims court

7    entirely is my recollection of how that works.

8              MR. SHERWOOD:  For the Contract Disputes Act remedy

9    specifically?

10             THE COURT:  Yes.

11             MR. SHERWOOD:  My understanding is that you can

12   appeal either to an appeal board or the Court of Federal

13   Claims.

14             THE COURT:  Okay.

15             MR. SHERWOOD:  And then beyond that, it then goes to

16   the Federal --

17             THE COURT:  That is right.  That is right.

18             But either way, the sub here can't themselves go to

19   court.

20             MR. SHERWOOD:  I don't think that plaintiffs have met

21   their burden of showing that is necessarily true for the

22   reasons -- one of the avenues to which they potentially could

23   bring suit in the claims court would be through sponsorship of

24   Acacia.  I don't think there is any evidence in the record

25   before us here that Acacia would disagree to that.  It just

1  hasn't happened here because there is a -- the subcontractors

2  have instead brought suit in District Court.

3         THE COURT:  Could Acacia sponsor the sub going to the

4  claims court where the contract here subjects this contract to

5  the alternative administrative process that you just outlined a

6  moment ago?

7         MR. SHERWOOD:  The Contract Disputes Act.  Under the

8  Contract Disputes Act claims can be pursued through the

9  Contract Disputes Act.  My understanding is anyway -- *Erickson*

10 is a case I think we cite in our brief, explaining that under

11 the FAR and under the -- I guess it is the Contract Disputes

12 Act administrative remedies that are incorporated into the FAR

13 would allow Acacia, the prime contractor here, to sponsor

14 claims brought by the subcontractor.  I am not going to purport

15 to be an expert on the intricacies of that.  But I think

16 importantly for plaintiffs their burden here is to demonstrate

17 that they wouldn't have a remedy, that is one avenue.

18        It is also possible other cases we cite in our brief

19 to indicate --

20        THE COURT:  I am not aware of any case that would

21 ever suggest that APA jurisdiction turns on being able to show,

22 yeah, I don't have my own remedy, but I could get someone else

23 to sponsor me and then I would have a remedy.  I have never

24 heard of case like that.  And, in fact, the -- my understanding

25 of the history of the relevant provision of the APA is just to

1    avoid confusion of having multiple proceedings going at the

2    same time.  But if plaintiffs here can't themselves institute

3    an action, but can only do so through Acacia, that is a step

4    beyond anything that I am aware of or I have ever seen in the

5    Tucker Act federal court jurisdiction context.

6            MR. SHERWOOD:  So we'll just add that my

7    understanding too is that separate from the Contract Disputes

8    Act remedy just described, there is also available passthrough

9    actions through which claims that are otherwise held by a

10   subcontractor can be brought by prime contractor in the Court

11   of Federal Claims.

12            But I think importantly at a high level too, the

13   status of plaintiffs as a subcontractor -- I mean, the Tucker

14   Act reverses the APA 704 waiver of sovereign immunity turns on

15   whether certain claims are impliedly jurisdiction forbidden by

16   other -- here the Tucker Act.  It was a deliberate act by

17   Congress to channel contract-based claims to the Court of

18   Federal Claims.  And it would be -- I think we highlighted this

19   at least at the preliminary injunction stage.  It would be a

20   pretty perverse jurisdictional move whereby claims that are

21   otherwise indisputably available are required to go through the

22   Court of Federal Claims.  Contract-based claims can instead be

23   brought in District Court under the APA simply because the

24   prime contractor steps out and the subcontractor

25   just circumvents that jurisdictional --

1          THE COURT:  That is not quite what -- that is a

2    little bit of a mischaracterization.  This is not a case as far

3    as I am aware where the prime has said, oh, you know, we are

4    stepping out of this and we are going to -- because for

5    jurisdictional reasons or whatever, we want to let the sub do

6    it.  I mean, it sounds to me like it is the sub that is

7    motivated here.  And you can bring it to my attention, but I am

8    not aware that the prime contractor has actually instituted a

9    proceeding under the Contractor Disputes Act.  If they had,

10   that might be a relevant fact.

11         MR. SHERWOOD:  And I am not aware of that either.  I

12   think just importantly as a high level, just by invoking the

13   status as a subcontractor, I didn't think is by any stretch

14   dispositive of the jurisdictional question and it is still

15   under the *Megapulse* test, the *Crowley* test in the D.C. Circuit,

16   the standard is what is the source of a right and the type of

17   relief sought?  And here even though it is a subcontractor, the

18   two -- both of those prongs still transform what plaintiffs

19   label as APA claims.

20         THE COURT:  Although the source of the right here

21   is -- none of the plaintiffs are alleging there has been a

22   breach of the contract or someone has done something wrong

23   under the contract.  They are not saying, you promised us under

24   this contract you would do this and you breached your contract.

25   They are saying, you terminated this program that Congress

1    didn't want terminated and were relying on the statute.  We

2    don't really care about the contract.

3            MR. SHERWOOD:  I think you bring up an important

4    point too which I wanted to address.  That argument rests, as

5    you highlighted, Your Honor, on the premise that the programs

6    have been terminated and that is not the case.

7            THE COURT:  Okay.  Tell me about that.

8            MR. SHERWOOD:  Yes, Your Honor.  So we have been

9    advised by EOIR that the Legal Orientation Program as the term

10   is used in the appropriation statute at issue here has not been

11   terminated.  Instead what is at issue here is the termination

12   of the contracts with these particular vendors.  EOIR needs

13   more time to assess what the LOP program will look like moving

14   forward.  But under the statute --

15           THE COURT:  As an officer of this Court, you are

16   representing to me that this program is continuing, the LOP

17   program?  I am going to hold you to it.

18           MR. SHERWOOD:  That is what the acting director of

19   EOIR advised us on.

20           THE COURT:  Okay.  So I am holding him to it.  And he

21   will be in contempt if that is not true.  Okay?  Pass that

22   along to him.  If I am relying on the representation to me that

23   this program is continuing, I am going to want proof.  I am

24   going to want status reports detailing it to me, because I will

25   not be lied to.

1          Go ahead.

2          In fact, I may need an affidavit from him.

3          MR. SHERWOOD:  We can submit a declaration, Your

4  Honor, to the extent that is needed.  But that is what we have

5  been advised by EOIR.

6          THE COURT:  What is being done to continue it?  Why

7  was this one ended?  What were the problems with this program?

8          MR. SHERWOOD:  Your Honor, it was a termination of

9  convenience for these particular contracts.

10          THE COURT:  Because?

11          MR. SHERWOOD:  We are -- in the short time we have

12  had to assess the basis for the decision, we haven't -- as of

13  right now it is just based on a termination of convenience and

14  EOIR's discretion to allocate and obligate the appropriated

15  funds pursuant to that discretion.

16          THE COURT:  That is gobbledygook.  I mean, that is

17  not an answer to a question.  I mean, I have asked you why it

18  was done.  You said it was done as an exercise of discretion.

19  But why?

20          MR. SHERWOOD:  Your Honor, what we can represent now

21  is that it was -- the programs were terminated under --

22  pursuant to the terms of the contract.  And I think importantly

23  like why that would happen.  I mean, that is -- that can be

24  assessed.  Like there are standards in which to assess the

25  lawfulness of termination for convenience.  Those are assessed

1    by the court of federal claims as a jurisdictional --

2            THE COURT:  I get that perhaps.  But I guess the

3    question I am struggling with here -- and maybe you are just

4    right about this and this is the first time I have heard this

5    today.  And that, in fact, the Department of Justice has

6    decided that, yes, of course, we are continuing the LOP

7    program, we just have a problem with this contract.  And that

8    is why we have stopped it.  But every indicia so far is that

9    the Department just doesn't like the LOP program and has

10   stopped the program.  And where I say, why is it that you have

11   terminated the contract and you can't articulate some reason,

12   it certainly makes me think, well, it is because you don't like

13   the LOP program that you terminated the contract.  If you can't

14   tell me some problem with the contract, why isn't the logical

15   inference you just don't like the LOP program?

16           MR. SHERWOOD:  Your Honor, I don't think that

17   inference is supported by the record here.  So I mean under the

18   Acacia contract, EOIR does have the right to terminate for

19   convenience.  And importantly under the appropriations statute

20   at issue here, EOIR is statutorily obligated to make available

21   a certain amount of money.  How that money is obligated and

22   disbursed to whom, on what timeline is left to the agency's

23   discretion in terms of --

24           THE COURT:  That is true.  But I guess the question

25   is just whether that is going on -- is what is going on here.

```
 1     I have to say, I was surprised that there was no document

 2     whatsoever that reflected any type of agency decision other

 3     than the termination document itself, which was issued by JMD.

 4     I mean, it is possible, but I would be really surprised if

 5     there wasn't an email to the director, the acting director of

 6     EOIR, saying, yes, you know, here is why we are going to

 7     terminate this and this is why we want to terminate it.  And he

 8     says, yes, we are going to do so or under the Bondi memo, the

 9     decision about termination was supposed to be made by the

10     associate attorney general.  Was the associate attorney general

11     just cut out of process here and not included here or did the

12     associate attorney general write a memo, send an email, saying,

13     yes, this is what my decision is.  It is just a little

14     surprising that there is not anything at all to constitute an

15     administrative record about what actually informed this

16     decision and then instead you just stand up here today and say,

17     I was informed by the director that this was not a -- we are

18     not ending the program and the program is going to continue,

19     but there is no record at all one way or the other on that.

20              MR. SHERWOOD:  Well, Your Honor, in the short time

21     that we had in response to your minute order about compiling an

22     administrative record, we were not made aware other than the

23     April 10th notice of termination of any non-privileged

24     decisional documents.

25              THE COURT:  Did anyone ask anyone in the attorney
```

1    general's office whether they made a decision of any type?

2    That is what the Bondi memo says.  That is who is supposed to

3    be the decision maker.

4              MR. SHERWOOD:  I can represent that the decision here

5    was not made pursuant to the Bondi memo.  So the involvement of

6    the acting attorney general, I think, it wasn't made pursuant

7    to those terms as far as --

8              THE COURT:  Presumably is wasn't by JMD.

9              MR. SHERWOOD:  Your Honor, the -- JMD doesn't --

10   importantly JMD is responsible for terminating the contract in

11   terms of --

12             THE COURT:  Right.

13             MR. SHERWOOD:  -- beyond that.  It was just exercise

14   of the right of the --

15             THE COURT:  Someone had to communicate to JMD a

16   decision I assume; right?

17             MR. SHERWOOD:  Your Honor, that is typically how it

18   works.  It would be a programmatic decision that is made, but

19   at this stage what we can represent in the short time we have

20   had since the termination of the contract in consulting with

21   our clients that there was -- notice of termination is the

22   relevant document here for the basis on which these contracts

23   are being terminated.  And, importantly, the arguments that we

24   are making in our brief as well, don't hinge on the contents of

25   the administrative record here.  We are making jurisdictional

1      argument, threshold, APA arguments.

2              THE COURT:  Well, I mean, I think it does turn on

3      what is on the administrative record here, because it turns on

4      what the decision is that is under review.  And if the decision

5      was a decision made, for example, by EOIR to terminate the

6      program, that is one thing.  And I don't see what the Tucker

7      Act would have to do with that decision.  If the only decision

8      that has been made is a decision to terminate the contract and

9      the program is ongoing and there are people who are actually in

10     the process of figuring out what the next steps are, then you

11     are probably right about the Tucker Act and putting aside the

12     First Amendment issues for the time being.  The plaintiffs are

13     probably out of court, so it seems to me a great deal turns on

14     what decision was made here and what the decision is.

15             MR. SHERWOOD:  Well, the decision here is to the

16     termination of the operative task orders pursuant to the

17     termination for convenience clause in the Acacia contract.

18     That is the decision.

19             THE COURT:  I mean, that is what you say, that is not

20     what the plaintiffs say.

21             MR. SHERWOOD:  Well, that is what the record

22     indicates.  There was a notice of termination --

23             THE COURT:  That is because you haven't given me the

24     whole record in the case.  Perhaps there is nothing more in the

25     case, but it would be surprising that JMD, without any

1    direction from anybody, without any reason given would simply

2    terminate a contract and there wouldn't be any internal

3    memoranda or emails reflecting why it was that the decision was

4    made to terminate the contract.

5              MR. SHERWOOD:  Well, Your Honor, I think that is why

6    it speaks to the essence of what the claims are being brought

7    here.  Subcontractors invoke the Appropriations Act.  But I

8    think they do not have a right to those funds in a way that

9    they could seek APA review of a decision involving those funds

10   here for a number of threshold reasons, because the allocation

11   of those funds are left to the agency's discretion.  Here

12   otherwise it just amounts to a generalized grievance from

13   subcontractors who have no personal entitlement to any of those

14   appropriated funds saying, well, the government needs to spend

15   those funds.  The problem here is the only source of legal

16   authority from which the subcontractors can even colorably

17   claim entitlement to those funds of any sort is through the

18   Acacia contract and related subcontracts.  And for that reason,

19   that renders the claims that plaintiff style as APA claims,

20   really just contract-based ones that need to proceed in the

21   Court of federal claims.  I think importantly too to the extent

22   that plaintiffs are lodging a generalized grievance about how

23   EOIR is exercising its discretion to spend these funds.

24             I think the *AIDS Coalition* case that was recently

25   decided, the preliminary decision here in the District of

1    D.D.C.  The judge there, I think it was AliKhan or -- I can't

2    remember off the top of my head.  The remedy that was reached

3    there was, the Court decided that as affirmed by the Supreme

4    Court's recent decision in Department of Education, the remedy

5    that would be available is not ordering that the government

6    continue to specifically perform the contracts at issue here.

7    At most a Court could order just an agency to spend money.

8            That creates a redressability problem for plaintiffs

9    here, because, again, even if the Court were to order the

10   agency to spend money pursuant to an appropriations clause,

11   that doesn't by any stretch require that money be allocated to

12   plaintiffs here.  So there is no redressability to the claim

13   that they are raising.  And I think for that reason to the

14   extent that the Court were to find that sort of legal hook for

15   an APA claim, it cannot be based on the appropriations statutes

16   the plaintiffs are asserting nor can it be the First Amendment

17   for reasons I am happy to discuss.  Really the only legal

18   authority they have to rely on is the Acacia contract and the

19   related subcontracts.  And under those contracts, termination

20   of convenience is allowed and there are standards that the

21   Court of Federal Claims applies in assessing the lawfulness of

22   the termination of convenience.  But that assessment doesn't

23   happen in District Court.

24           THE COURT:  What can you tell me about the First

25   Amendment and the right of access and what is going to happen?

1          MR. SHERWOOD:  Yes, Your Honor.  In response to the

2     questions you raised in yesterday's conference, we consulted

3     with our clients, particularly about the access issues.  And I

4     think really for purposes of -- plaintiffs' First Amendment

5     claim really boils down to two theories of First Amendment

6     injury.  One, do they have a First Amendment right to get

7     subsidized by the government to engage in certain speech.  They

8     do not under *Rust, Regan* and they really don't even address

9     that thoroughly in the most recent briefing.  I think the First

10    Amendment injury the plaintiffs are leaning into here is this

11    access issue.  But even if and when the LOP immigration court

12    help desk programs are terminated, that by no means -- as a

13    result of that, that does not mean that the sub -- the former

14    subcontractors will lack access to immigration courts or ICE

15    detention facilities.  To the contrary, they will have the same

16    rights of access subject to the same protocols as any other

17    attorney or member of the public will have in those particular

18    facilities.

19          THE COURT:  What is that, do you know?

20          MR. SHERWOOD:  So our understanding based on our

21    consultation with our clients, for example, is that starting

22    with immigration courts -- the way it was described to us is

23    not too dissimilar from this Court where there are public

24    spaces, members of the public can access and attend court

25    hearings.  And then for attorneys, a slightly more extensive

1    degree of access where they can meet with clients, I think in

2    some facilities are pro bono rooms where attorneys can meet

3    with their clients in those court facilities.  So this idea

4    that there is going to be absolutely no access.

5            THE COURT:  What about at the detention centers

6    themselves?

7            MR. SHERWOOD:  So the detention centers, it is a

8    different setup.  But it has been represented to us that,

9    similarly, attorneys will be able to access ICE detention

10   facilities subject to the same restrictions and same protocols

11   that any other attorney accesses those.  And, in fact --

12           THE COURT:  Do you need a particular client to do

13   that or can you go in to offer your services as a volunteer to

14   whoever might want an attorney?

15           MR. SHERWOOD:  It was described to us and the way

16   that ICE has described it and I believe it is described in the

17   detention standard is that it is legal access.  So --

18           THE COURT:  I'm sorry.  It is what?

19           MR. SHERWOOD:  Legal access.  It is not an

20   attorney-client relationship strictly.  It can be paralegals.

21           THE COURT:  No.  No.  I know.  But a lot of people,

22   if you take down the signs with respect to who to call and that

23   let you -- direct you to call Amica, for example, and you have

24   people there that are not represented by counsel, they may not

25   have an attorney-client relationship.  And so when someone from

1    Amica shows up and says, I am here to volunteer.  And you say,

2    who do you represent?  I don't represent anybody because they

3    couldn't call me or didn't call me.  And the only way to call

4    me is to pay money with the for-charge hotline.  And,

5    therefore, no one ever got -- the people -- the people who are

6    being detained couldn't get in touch with a lawyer.  And the

7    lawyers are there to try to volunteer to help them, but can't

8    talk to them, so they never establish that relationship to

9    start with.

10         MR. SHERWOOD:  My understanding, Your Honor, is that

11    it -- the access that is provided to ICE facilities expands

12    just beyond the attorney-client relationship, that legal access

13    organizations can also access ICE detention facilities subject

14    to the same security protocols.  It might vary by facility,

15    given that they are ICE detention facilities but they also

16    contract out to state and local facilities and contractors.

17         THE COURT:  Right.

18         MR. SHERWOOD:  But this idea that there is going to

19    be a categorical inability to access ICE detention facilities,

20    at least as a general matter, is not accurate.  It might, as

21    you highlighted some anecdotal examples, perhaps and it will

22    vary by circumstances.  There are certain procedures that have

23    to be complied with in order to gain access like scheduling

24    requirements.  You may not -- I think there might be some

25    limitations on how many attorneys can -- or members of legal

1    access organizations can go at a given time.  But importantly

2    the fact that former subcontractors would have the same access

3    rights as anybody else just demonstrates that the -- such

4    restrictions themselves I think both as a matter of fact and

5    intuition are reasonable, one of the prongs for the First

6    Amendment assessments of a non-public fora.  And there is no

7    evidence whatsoever of any sort of viewpoint discrimination.

8    And I think too, just to reiterate, I know there has been

9    discussions about posters and information there.  I think just

10   as a practical matter, to your point, if there is information

11   about a legal orientation program that is no longer made

12   available, it cannot be a First Amendment violation to take

13   that down.  It is just inaccurate information.  And I think

14   with plaintiffs, the thrust of their First Amendment claim

15   appears to be that -- that they wish to have some sort of

16   special access or the taking away of special access that they

17   have otherwise had as participants in these programs is somehow

18   a First Amendment violation.  And they don't cite any cases for

19   that proposition.

20          To the same extent too, I don't think anybody can

21   just walk into this courthouse and post whatever they want in

22   the hallways or on the boards or have group orientations in the

23   chambers conference room.

24          THE COURT:  Right.  The difference though is -- and

25   the concern that I have is just that if you have people who are

1   being isolated by the government, in other words they are being

2   detained, and if the only way that they can make contact with

3   someone to represent them is through some communication, I

4   would think that at some level the First Amendment would say

5   you can't simply sever those communications in ways in which no

6   one could actually ever obtain the legal services, because you

7   prevent the legal services from actually conveying to the

8   people who are being detained and therefore not actually go out

9   and look for a lawyer, they are denied the information with

10  respect to their access to counsel.  That is the concern I

11  have.

12              MR. SHERWOOD:  Understood.  I think, Your Honor, it

13  is just as a factual matter, sure, accessing representation in

14  a detention facility, that is a concern.  With all due respect,

15  that sounds more, in my view, as like an issue of access to

16  counsel, whether it is a statutory or constitutional matter,

17  like due process and not strictly a First Amendment --

18              THE COURT:  Well, I think there are First Amendment

19  aspects to that as well, particularly where there is not an

20  attorney-client relationship that exists already, it is not a

21  Sixth Amendment context because most of these folk are not

22  facing criminal charges.  And if they were facing criminal

23  charges, then they would have counsel and be entitled counsel.

24  It is people who are not facing criminal charges, so it is not

25  a Sixth Amendment issue.  But they are at least being arguably

1    or theoretically deprived of access to information that may be

2    critical to decisions they have to make on matters of enormous

3    importance.

4        MR. SHERWOOD:  I think also I should highlight in

5    response to that, outside of the legal orientation programs,

6    ICE in detention facilities and EOIR in immigration courts

7    already provide legal access and legal resources for

8    participants in immigration court and detention facilities

9    themselves, like know your rights information.  It was

10   described to us that there are posters throughout ICE detention

11   facilities informing respondents of their rights.  So I think

12   the idea that there is somehow a First Amendment violation

13   because these respondents are given no access whatsoever to

14   information is -- I don't think that could be -- that at least

15   as represented to us is not accurate.  I think here, though,

16   especially the First Amendment rights being asserted are by the

17   subcontractors.  And they will have access to ICE detention

18   facilities and immigration courts to perform either

19   representative capacity or whatever expressive activity is

20   otherwise allowed to members of the general public or

21   attorneys.  It will just be different from the access that they

22   have now.  But I don't think that a First Amendment violation

23   makes.

24        And I think, Your Honor, otherwise, the Tucker Act

25   is, as we explained, both at the preliminary injunction stage,

1    and here in this renewed TRO posture, really once you take out

2    the appropriations clause theory, take out the First Amendment

3    theory.  First Amendment is just not -- fails on the merits.

4    You have the appropriations clause, would fail on the merits.

5    The relief that is available to plaintiffs is not personal such

6    that they would either have standing.  And then all you are

7    left with is just an arbitrary and capricious claim.  And for

8    all of the reasons identified in the various D.C. Circuit cases

9    that we highlight in our brief and also as reflected in the

10   *Department of Education v. California* in the Supreme Court, APA

11   review of such contract-based claims asking for what is

12   effectively specific performance of a contract to pay money is

13   just beyond this Court's jurisdiction and needs to be heard in

14   the Court of Federal Claims.

15            THE COURT:  Okay.  Before you sit down, I do want to

16   apologize.  I perhaps was somewhat overstated in expressing

17   concerns about being lied to.  And that was not the best use of

18   language.  And I apologize for that.  What I really mean though

19   is that it is -- it raises questions where contracts are just

20   terminated, without any reason given whatsoever for the

21   termination of the contracts.  And then I am told that that is

22   not a termination of the program, because EOIR needs additional

23   time to assess what the program will look like going forward.

24   And one would ordinarily think that before you terminate the

25   existing program, you would have some idea of what it ought to

1   look like going forward.  But in any event, I worry that one

2   could end up in a lengthy process of simply deciding what it is

3   going to look like going forward, which is indistinguishable

4   ultimately from a termination.  This wasn't a suspension or a

5   stop work order like the earlier time where you are saying, we

6   are going to pause this for 60 days while we look at it.  We

7   are terminating the contract, period.  It is done.

8           But where there is no record why that was done, no

9   explanation why that was done other than for the convenience

10  and no evidence of indication about what it is that is in mind

11  to replace that.  And I don't mean to -- and didn't mean to

12  cast any aspersions on any individual and I apologize for that.

13  But what I really mean to say is that is a head scratcher if

14  you not only suspend the only way in which the program is being

15  implemented, but you terminate it.  And there is no evidence

16  whatsoever with respect to what else is going to replace it.

17  And it simply said, we are looking at that.  And that leaves

18  you saying, how is that different in any way from simply

19  terminating the program?  But it also leads me to something

20  that I am going to request in a bit, which is going to be an

21  actual administrative record, that does document what the

22  decision was and how it was made, who made it and sort of what

23  the rationale was for the decision.

24          And I separate the decision to terminate the

25  contract, from the decision to at least suspend, if not

1   terminate the program.  And it is fair to say, I think the

2   program doesn't exist as of tonight or tomorrow.  Because there

3   is no one implementing it.  And there is no plan in place to

4   put anything else in that place.  So I think it fair to say

5   that at a minimum, the administration has made a decision to

6   terminate the program or to suspend the program for some period

7   of time perhaps.

8           But if there is no program at this point, it is not

9   as though someone else has stepped in or there is some plan in

10  place of putting somebody else in place to do it.  And that

11  sounds like, at a minimum, a suspension, if not termination of

12  the program.

13          MR. SHERWOOD:  Understood, Your Honor.  I would just

14  say that the agency action that is specifically being

15  challenged in the TRO here is a termination of the contract.  I

16  know plaintiffs want to characterize it as a termination of the

17  programs themselves.  But I think also importantly to the

18  extent there is any concern about, you know, what the basis of

19  the termination for convenience is -- in the Court of Federal

20  Claims, the Court would assess whether termination for

21  convenience was made in bad faith or also abuse of discretion.

22  And some Court of Federal Claims cases --

23          THE COURT:  Would they decide whether it was

24  consistent with the appropriation?  I don't think so.  That is

25  the problem here.  I think what they would do is decide whether

1    there was a contract violation.  But they wouldn't say that the

2    termination violated a congressional appropriation, I don't

3    think.  I am not aware of anything -- of the claims court ever

4    doing that.

5              MR. SHERWOOD:  I wouldn't be able to speak to that.

6    I just know the abuse of discretion standard, one of the prongs

7    that is used by the Court of Federal Claims is whether a

8    termination for convenience amounted to a violation of any

9    applicable statute or regulation.  I don't -- I am not familiar

10   with case law off the top of my head, if that involves

11   appropriations statutes.  But I think too whether -- again, to

12   the extent the Court -- even assuming that the termination for

13   these contracts implicates the appropriations statutes, I don't

14   think the plaintiffs here are the ones who have standing or an

15   interest in asserting that sort of claim as a generalized

16   matter, because their only right that they have here is

17   grounded in contract.  If they just said a generalized

18   grievance about how EOIR is exercising its discretion to spend

19   these program funds -- I mean, I think we highlight this in the

20   brief at the very high level of assuming for the sake of

21   argument, there is a statutory mechanism by which sorts of --

22   what plaintiffs' claim is just like a withholding of funds is.

23   And that is the Impoundment Control Act.  And there is no

24   private right of action under that statute.  So I think that

25   too is like even assuming that there is this generalized

1    grievance about how money is being allocated, it is not

2    plaintiffs here who can assert that right for the Court to

3    decide at least as a matter of an APA claim.

4              THE COURT:  Would you agree though that, in fact, the

5    Justice Department is required by law to expend the funds on

6    the LOP?

7              MR. SHERWOOD:  I would agree with that under the

8    terms of the appropriation statute, if they make available at

9    least $28 million for the two programs.  Also I want to

10   highlight that too.  It is the LOP and immigration court help

11   desk, the two other -- CCI and FGLOP are funded out of lump sum

12   appropriations, so are not triggered in any way or implicated

13   in any way by the Legal Orientation Program as that term is

14   used in the appropriations.

15             THE COURT:  LOP includes the other programs, is that

16   your point?

17             MR. SHERWOOD:  The appropriation statute, the

18   Consolidated Appropriations Act of 2024 uses, in capital

19   letters, Legal Orientation Program.  Based on Senate reports

20   and I think plaintiffs themselves concede that term

21   encompasses, what is unfortunately confusing, Legal Orientation

22   Program, which is the services that are provided in detention

23   facilities; immigration court help desk, which is provided in

24   immigration courts; and then I think the Legal Orientation

25   Program for custodians, which is the program as we highlight in

```
 1    our brief that plaintiffs address for the first time here.  But
 2    Children's Initiative and the Family Group Legal Orientation
 3    program are not under that larger LOP umbrella.
 4              THE COURT:  Okay.  Let me go ahead and give
 5    Ms. Sturges a brief chance to respond.
 6              MR. SHERWOOD:  Thank you, Your Honor.
 7              THE COURT:  And my apologies again.
 8              MR. SHERWOOD:  Just representing what our clients
 9    tell you and I obviously --
10              THE COURT:  And I was unfair to you about that.
11              MR. SHERWOOD:  -- take my duty as an officer of the
12    Court very seriously.
13              THE COURT:  I was unfair to you and I'm sorry for
14    that.
15              MS. STURGES:  Thank you, Your Honor.
16              Just a few points in rebuttal.  I think we have heard
17    or at least would respectfully submit to Your Honor that why a
18    TRO is so important here, especially if it is true that the
19    programs in some way are still live or intended to be
20    continued, but the funding has stopped, the harm that is about
21    to happen as of 12:01 tonight, Wednesday morning, we know it is
22    real.  We know it has happened before.  And it is about to
23    happen again.  And there cannot be any harm to defendants if it
24    is true that they intend to continue these programs.  We also
25    know from the last time we were here that Congress has
```

1    specifically prohibited any pause in funding or pause in

2    programming during any kind of review, that should EOIR be

3    assessing these programs --

4              THE COURT:  I think there was report language that

5    says that, there is not statutory language that says that.

6              MS. STURGES:  Correct, Your Honor, you are exactly

7    right.  Report language saying to continue operation of the

8    programs and funding of the programs pending any review.  Your

9    Honor also asked defendants when we here a month ago to provide

10   a status report as to what evaluation, if any, was happening.

11   And the status report said that they did not know of any

12   evaluation or assessment that was happening.  And despite the,

13   you know, quick turnaround between yesterday's status

14   conference and today, defendants also had from Thursday at

15   least on until today to find out why their client had taken

16   this action or whether there was any review going on.

17             Defendants talked about the other various remedies

18   that they think that plaintiffs have here.  But every single

19   one of those programs are not remedies for the harms that we

20   are raising, that we are suffering or that we are concerned

21   about suffering as of 12:01 a.m. tomorrow morning.  They -- we

22   are here seeking injunctive relief.  We are here seeking the

23   preservation of our missions, the ability to educate detained

24   noncitizens and the ability to continue doing that in a way

25   that has helped immigration courts and helped the immigration

1    judges who, you know, as Amica here have said here is so

2    important.  And there is nothing in our request and plaintiffs

3    are not seeking back pay or damages or some kind of monetary

4    relief.  They want defendants to pay the money that has been

5    appropriated, the money that has been obligated.  Defendants

6    acknowledge in their status report that this money has been

7    obligated.  And you heard it again just now that they agree

8    that the Department of Justice is obligated to spend these

9    funds.  And I recall the hypothetical that we discussed last

10   time about, could they hold all of that money if it was a

11   school lunch program and say, we don't have to pay it every

12   day, we just have to pay it at some point and then finally pay

13   it at the end.

14          Here, if it is the case the program is intended to

15   continue and defendants intend to --

16          Excuse me.  I started talking very fast and whoever

17   the court reporter is probably -- would like me to slow down.

18          Should they choose to hold on to that money, the

19   harms that are going to accrue -- first of all, I think it is a

20   violation -- it is clearly a violation of the appropriations

21   clause and trying to get around separation of powers and in

22   violation of what Congress has directed the executive to do as

23   holding the power of the purse.  But it also means that every

24   day, detained noncitizens are not getting this information, are

25   not hearing the important critical information that they need

1    to understand their rights.  The immigration system is getting

2    bogged down.  Immigration judges are having a more difficult

3    time.  The *Crowley* and *Megapulse* case that defendants' counsel

4    mentioned, I will just remind Your Honor that *Crowley* involved

5    a subcontractor who had a parallel case in claims court at the

6    time.  There was no reason that having the claims court

7    jurisdiction took him away -- took that plaintiff away from

8    having injunctive relief here.  And I think the *Crowley* court

9    said it -- the right that plaintiff was seeking was to be free

10   from arbitrary and capricious agency action.  And that is one

11   of the harms that we are seeking relief from here.  And

12   certainly that is not something that the claims court can

13   provide.

14          We talked about -- defense counsel also talked about

15   discretion.  And we do not disagree that the executive agency

16   has discretion in how it implicates these programs, not if, but

17   how.  And right now what we have seen is there is no how.  They

18   have stopped the funding.  They have provided no other

19   mechanism for these services.  And it sounds like defendants

20   would like that discretion to be unreviewable, which, of

21   course, is not the case under the APA.  And under the APA, that

22   discretion here citing only a letter on Thursday that says, for

23   convenience, is the very definition of arbitrary and

24   capricious.

25          We appreciate the reference to the *AIDS* vax case.

1   But we do not think that brings a redressability problem here.

2   Absolutely plaintiffs want to see the programs continue.  And

3   if plaintiffs are able to see their missions continue, whether

4   it is through funding the particular contract that defendants

5   have used historically or some other method of doing it, their

6   harms -- and I think we make this clear in our brief -- will be

7   redressed by injunctive relief from this court.

8        Defense counsel also mentioned *Rust* on the First

9   Amendment grounds that the defendants don't have the authority

10  or -- excuse me -- the *Rust* allows for restrictions on free

11  speech here, but the difference in *Rust,* Your Honor, is that

12  defendants there had created the program that they tried to

13  limit.  And here, Congress has created this program.  And

14  Congress can define the limits but defense -- the executive

15  cannot infringe upon it in a First Amendment viewpoint

16  discriminatory manner.

17       THE COURT:  It seems to me it is a stretch on the

18  present record to suggest there is a *Rust* problem here because

19  this isn't a case, for example, in which the government has

20  said, if you want to participate in this program, you need to

21  tell every immigrant who is in removal proceedings that their

22  first and best option is to immediately leave the country.

23       So they haven't dictated particular speech like in

24  *Rust.*  And I am not aware of any constitutional principle that

25  says that they have to fund speech as a matter of the First

1    Amendment.  It may be that their appropriation requires them to

2    do so, but that is an appropriation or statutory question

3    rather than a First Amendment question.  It seems to me that

4    your right of access is your much stronger First Amendment

5    argument rather than a *Rust versus Sullivan* argument.

6         MS. STURGES:  Understood.  I was responding to

7    defense counsel's invocation of *Rust* there.  I do think there

8    is a First Amendment problem when Congress does choose to fund

9    certain speech, and here the LOP programs, and then the

10   executive decides to restrict that speech that Congress has

11   determined is both appropriate and worthy of funding and

12   restricted that on the basis of viewpoint that you see in the

13   AG memo from February 5th, that it is this particular speech,

14   speech to detained noncitizens that it wishes to stop.

15        I also wanted to direct Your Honor to a couple of

16   places in the record that talk about the access issues beyond

17   just the LOP programs.  Once again, paragraph 16 of the Rojas

18   declaration to the original preliminary injunction motion.  In

19   addition to the issue of trying to remove references to the

20   specific programs at issue that the ICE detention facility

21   found insufficient, they also took down information generally

22   about how to contact any of these organizations, here in

23   particular Amica for general immigration information.

24        Defense counsel mentioned access to pro bono space in

25   the detention facilities that supposedly would still be

1    accessible.  But if you look at the Page declaration from the

2    immigration services and legal advocacy organization, and that

3    is paragraph 10, they lost access to their pro bono space, all

4    of their fliers were removed, all of their pro se materials

5    were taken away, well beyond the scope of ending the program or

6    terminating or stopping the specific LOP program.  They lost

7    access to the entire pro bono space.  They lost access to their

8    printer and to their box of materials.

9         And the Florence project supplemental declaration.

10   So this was provided -- the second declaration from Laura St.

11   John from the Florence Immigration Rights Project at paragraph

12   10 talks about how she -- the Florence Project tried to go back

13   and forth with ICE regarding access, discussed at great length

14   and ended with the field officer denying access for any

15   programs, any group rights presentations or know your rights

16   presentations beyond those that were at issue under LOP and the

17   other programs.

18        THE COURT:  All right.  Anything else?

19        MS. STURGES:  That is it.

20        THE COURT:  All right.  Give me a few minutes to

21   think about this and I will come back and I will let you all

22   know what I am going to do and how we'll proceed from here.

23        MS. STURGES:  Thank you so much.

24        (Recess taken at 4:03 p.m.)

25        THE COURT:  So pending before the Court, the

1    plaintiffs' motion -- renewed motion for temporary restraining
2    order.  Plaintiffs, as you all know, are nonprofit
3    organizations that receive funding from defendants to operate
4    programs, to educate both detained and nondetained pro se
5    noncitizens in removal proceedings about their rights and
6    obligations in those proceedings.  Plaintiffs seek an emergency
7    order compelling defendants to continue funding their programs
8    in accordance with Congress' 2024 appropriations for the
9    programs, which as we just discussed do impose an obligation on
10   the Department of Justice to actually expend the appropriated
11   funds for purposes of the legal orientation program as defined
12   in the Appropriations Act.  And that obligation continues under
13   the continuing resolution that is currently in effect.  The
14   complaint includes three complaints or three counts all under
15   the APA, that are premised on both the Appropriations Act and
16   treating that as imposing a legally enforceable obligation and
17   under the First Amendment.
18        As you all also are well aware, a TRO is an
19   extraordinary form of relief.  And a TRO is analyzed using the
20   same factors applicable to preliminary injunction injunctive
21   relief and may only be awarded upon a clear showing that the
22   plaintiffs are entitled to such relief.  To obtain a TRO, the
23   movant carries the burden of showing that it is likely to
24   succeed on the merits, that it is likely to suffer irreparable
25   harm in the absence of preliminary relief, the absence of

1     equities tip in its favor and the issuance of a preliminary

2     injunction will serve the public interest.

3          The requirement of a showing of irreparable harm is

4     the sine qua non for issuance of a preliminary injunction.

5     Without irreparable harm, neither a TRO nor a preliminary

6     injunction can issue.  And in making that determination, the

7     court has to do so within the relevant time frame of the relief

8     sought and thus for purposes of a TRO, the Court has to

9     conclude that absent the issuance of a TRO, there would be an

10    immediate irreparable harm, whereas with respect to the

11    preliminary injunction, the requirement is an imminent harm,

12    but the outlook and period at issue is over the course of

13    litigation rather than over the course of the next 14 days.

14         Here, the government opposes plaintiffs' motion both

15    on the merits, but also as a jurisdictional matter.  Government

16    relies upon the Supreme Court's recent per curiam order in

17    *Department of Education versus California*.

18         There, the Supreme Court stayed a TRO that enjoined

19    the government from terminating education related grants.  And

20    it concluded that the government is, quote, likely to succeed

21    in showing the District Court lacked jurisdiction to order the

22    payment of money under the APA.  And the Court explained that

23    the APA's limited waiver of sovereign immunity does not extend

24    to orders to enforce a contractual obligation to pay money.

25    And so claims based on an express or implied contract with the

1    United States must instead go to the Court of Federal Claims.

2        The D.C. Circuit's special panel recently reached a

3    similar conclusion in the *United States Catholic Bishops versus*

4    *United States State Department*.  And in that case, declined to

5    issue an emergency stay.

6        As we have discussed, I think this case presents a

7    whole host of complicated issues, both complicated

8    jurisdictional issues and complicated issues on the merits.  I

9    think the jurisdictional issues are complicated in light of the

10   Supreme Court's order in the *Department of Education versus*

11   *California* case.  And in sorting out whether this is, in

12   essence, a contract dispute that should go to the Court of

13   Federal Claims or whether it is a challenge to a broader agency

14   action which is appropriately brought under the Administrative

15   Procedure Act in this Court, I will note that there are an

16   array of cases that do stress that there is a presumption in

17   favor of reviewability under the APA and otherwise.  And that

18   although there may be questions about whether a case should be

19   reviewed in the Court of Federal Claims in the first instance,

20   and then the Federal Circuit or in this Court and in the D.C.

21   Circuit, in the alternative, whichever one of those applies,

22   the bottom line is that there is a strong presumption in favor

23   of reviewability and that agency action should not evade

24   judicial review.

25        Here, what I am finding difficult about this question

1    is not so much the law and what the statutes say about the

2    jurisdiction of the Court of Federal Claims, but rather what

3    the action is that is at issue here.  And if the action that is

4    at issue here is, in essence, a termination or even extended

5    suspension of a program that Congress has mandated through an

6    appropriation, that seems to stand -- that challenge seems to

7    stand regardless of any contractual provisions and any

8    particular contract.  On the other hand, if what is at issue

9    here is the mere termination of a contract which will promptly

10   be replaced by another contract, then it sure seems like this

11   is the type of case, at least with respect to those issues,

12   that ought to go to the Court of Federal Claims.

13           Putting aside for a moment, what I think is a

14   substantial argument that Amica makes that it may not actually

15   have the ability to raise its arguments in the Court of Federal

16   Claims because it is a subcontractor.  But for present

17   purposes, my greater concern is that it remains unclear to me

18   what the relevant agency action is here.  And with the very,

19   very limited administrative record that is in front of the

20   Court, it is hard to get my hands around which of those two

21   scenarios is at issue here.

22           Under the plaintiff's view, although they are injured

23   indirectly through the termination of the contract, the

24   termination of the contract is simply a byproduct of the

25   suspension or termination of the program itself in violation of

1    the 2024 Appropriations Act.

2            In the government's view, that is where things end.

3    It is simply a termination of a contract case and doesn't

4    extend beyond that.  And I don't think the record, as it is

5    currently framed answers the question one way or the other.  So

6    I have some difficulty at the very outset with respect to a

7    question of jurisdiction.  I do think that there also are

8    questions, if I get over the jurisdictional hurdle, on the

9    merits and the extent to which an Appropriation Act creates an

10   interest that can be enforceable through an APA action.  I will

11   note, however, as I did in some of my questioning, that I don't

12   think that interest has to rise to the level of a property

13   interest, because there are lots and lots of APA cases that

14   simply posit that an agency action was taken in contravention

15   of federal law.  And that that action adversely affected the

16   plaintiffs.

17           And here, the plaintiffs are adversely affected in

18   potentially three different ways, each of which I think goes --

19   circles back to standing.  There is the loss of funding, which

20   is important to these organizations.  And I don't think that

21   for purposes of Article III standing, it has to be a certainty

22   that a decision by the Court would result in their funding

23   being restored, but a likelihood would be sufficient.  And in

24   some of these areas, as I understand it, they are only

25   organizations that actually provide these services.  And so if

1      the program goes forward through private entities, they may be

2      the only ones that are available to do it in any event.

3             A second issue relating to standing is the First

4      Amendment, which I want to talk about a little bit more in a

5      moment.  And then, there also is an issue which is not

6      developed much in the briefs.  And the question of whether

7      there is standing or the plaintiffs have standing under *Havens*

8      *Realty Corporation* and the Supreme Court's more recent decision

9      in *Food and Drug Administration versus Alliance for Hippocratic*

10     *Medicine.*  The standard for *Havens*-type standing is a demanding

11     one.  But as further explicated in the *Alliance for Hippocratic*

12     *Medicine,* this is a case in which it is at least conceivable to

13     me it could be satisfied.  I don't know that you need to go

14     there in any event given the economic consequences.  But it

15     does, to my mind, circle back to the merits as well and the

16     question of what is the agency action here that is being

17     challenged and related to what is the agency action that is

18     being challenged, what is the injury?  And I think that even

19     without the contracts, it is possible that I'd at least want to

20     consider whether there is standing under *Havens* and *Alliance*

21     *for Hippocratic Medicine.*

22            With respect to the First Amendment issue, as I

23     indicated, I am skeptical of the *Rust versus Sullivan* variation

24     of the First Amendment challenge, because at least as far as I

25     have seen at this point, it is not a content-based issue.

1    There is not evidence in the record that the contract is being

2    terminated, because there is some other group that would

3    provide advice to those in immigration proceedings that might

4    be more favorable to the government and therefore they want to

5    tilt the scales toward that different type of speech.  It is

6    possible maybe somewhere down the road that could be developed,

7    but based on what is in front of me, I don't see that type of

8    content-based direction.  And the government is free to simply

9    decide that it is not going to fund speech.

10           Here, the argument is that the government is not free

11   to do that, because Congress has compelled the expenditure but

12   that is a statutory argument rather than a First Amendment

13   argument.

14           The right of access strikes me as a potentially more

15   promising avenue, but that also is a complicated question,

16   which, frankly, is not fully briefed in front of me at this

17   point and also is not terribly well-developed factually in the

18   record.  And I understand that there are some declarations that

19   talk anecdotally about what happened when there was the stop

20   work order several weeks ago, but it is unclear to me exactly

21   what will happen and what direction, if any, that ICE will

22   provide or EOIR will provide with respect to access.

23           Obviously, denying someone a First Amendment right is

24   an irreparable injury, per se.  But as things currently stand,

25   I don't really know what is going to happen come tomorrow with

1   respect to access to facilities, but also it -- the question of

2   whether these facilities are a quasi public fora, whether there

3   is some right of First Amendment access, even if they are not

4   quasi public fora in order to ensure that people who have been

5   detained have the ability to communicate with those who want to

6   share information with respect to their rights with them.

7   Those are hard and interesting questions, hard and important

8   questions.  And it may be that the answer to those questions

9   will differ from facility to facility.  The government in its

10  brief simply says that, well, it has the right to restrict

11  access to sensitive facilities.

12       But there is nothing in the record that indicates

13  that any such decision has been made, much less based on

14  reason, where someone has sat down and said, yes, we do need to

15  restrict access of -- by Amica and their cohorts to particular

16  facilities for some type of security reason.  And that might be

17  a very dubious proposition if Amica and the other plaintiff

18  have actually been accessing these facilities for decades

19  without incident.

20       But, again, there is no record on that.  It may

21  differ from type of facility to type of facility.  And the

22  legal analysis is not terribly well developed at this point.

23       That all leads me to irreparable injury.  And I am

24  going to deny the TRO tonight, because I am not satisfied that

25  plaintiffs have carried their burden on demonstrating there is

1    a need for a TRO to avoid irreparable injury over the next

2    couple of weeks or so.  I have read through the declarations

3    with some care.  And they vary anywhere from saying that loss

4    of the funding could have an adverse impact on the organization

5    that is running a deficit in any event and could interfere with

6    their ability to provide 100 percent free legal services

7    programs and they might have to start charging, at least in

8    some cases, to others that indicate that they be forced to

9    temporarily shift staff.  Some suggest that they may be

10   required to let staff go.

11          And at least one indicates that, along with other

12   recent administrative action, that their existence could be

13   threatened at some point.  But no one says, yes, in the next

14   week or two or three weeks, we are going to be out of business

15   or we are going to have to let a large portion of our staff go

16   as a result of that.

17          The First Amendment presents a different issue,

18   because there, any First Amendment injury is, per se,

19   irreparable.  But even there, what I have are some anecdotal

20   expressions or indications of what happened last time.  I don't

21   really know what is going to happen again this time.  And as I

22   said on the merits, the briefing is underdeveloped with respect

23   to what the right of access is.  And I feel as though I don't

24   have enough in front of me at the moment to conclude that there

25   will be an imminent First Amendment violation or likely will be

1  a First Amendment violation in the next week or two and what

2  the nature of any such violation will be.  So what I am going

3  to do is I am going to deny the motion for a TRO.  But as I

4  have indicated, I think there are a number of substantial and

5  important issues that this case presents.  And what I would

6  like to do is to set a schedule for the production of an

7  administrative record, which includes any and all records

8  reflecting what decision was made, which will certainly help me

9  in focusing the case, and sets forth what, if any, rationale

10 exists for having made that determination.  And I want to be

11 clear, that if the administrative record or the relevant

12 decision encompasses more than simply the decision to terminate

13 this contract, I would expect that to be included.  And if it

14 is a decision with respect to how to proceed forward with

15 respect to the LOP more generally, that should all be included

16 in the administrative record.

17      I also would benefit from a greater record and

18 information with respect to the First Amendment issues and

19 actually what happens over the next week or two and whether

20 people are denied access.  And that can be done in one of two

21 ways.  One is if the plaintiffs can -- within their power to

22 offer me again what might ultimately be deemed or treated as

23 anecdotal in that they will say, well, we were turned away

24 here, we were turned away there.  That obviously would be

25 helpful and I will take that for whatever it is worth.  It

1    would also be helpful to me if there is any guidance whatsoever

2    that the government provides to facilities about what to do to

3    include that in the administrative record so we actually know

4    if there is any guidance.  If there is no guidance at all, that

5    is one thing.  But if there is any type of guidance that is

6    provided to the facilities about what they should be doing

7    about allowing people in or not, we can include that in the

8    administrative record.

9              And then what I would like to do is give you all an

10   opportunity to further brief some of these issues that I

11   explained to you and identified for you today.  And if it is

12   helpful, I am also happy in a minute order to set forth some of

13   the questions that I have in my mind, which may then help you

14   focus your briefing and your research on some of these issues,

15   let you submit those additional briefs.  We could then come

16   back for a hearing on preliminary injunction.  I will leave it

17   up to you as to whether you want to treat your current filings

18   as a motion for preliminary injunction or whether you would

19   actually start fresh with a motion for preliminary injunction

20   and we do it that way.

21             I am also open to and it probably makes sense,

22   frankly, to consolidate the merits with the preliminary

23   injunction and just resolve this as cross-motions for summary

24   judgment and for preliminary relief and doing it all once,

25   rather than doing it twice.  In these cases, it is my

1    experience, frankly, there is not much of a difference between

2    deciding a case on a preliminary injunction or summary

3    judgment.  Because if it is an issue that has any substantial

4    public interest to it, there is going to be an appeal by one

5    side or the other in the case of the PI.  And I am going to

6    say, I might as well wait and see what the Court of Appeals

7    thinks before I do summary judgment.  So I would encourage you

8    to be open to consolidating them.

9         And I am also cognizant of time and the need to

10   pursue these matters quickly.  And I am cognizant of the fact

11   that if, in fact, people are in immigration proceedings in

12   which they are having difficulty obtaining information from the

13   advocates who would like to share that information with them,

14   that is something where there obviously is some urgency, so I

15   am open to whatever type of briefing schedule you all have in

16   mind and schedule for an administrative record.  But I would

17   certainly be open to if this is how the parties want to proceed

18   to coming back in early May, having a hearing or argument on

19   the motion for preliminary injunction and hopefully summary

20   judgment at that time and then getting you a decision

21   relatively promptly that will deal with some of these much

22   harder questions.

23        So with that, I don't know if you want to confer

24   amongst yourselves about a schedule or whether you want to

25   today talk about it.  And I am happy to enter a schedule today.

1          Ms. Sturges, why don't I start with you.

2          MS. STURGES:  Your Honor, we would appreciate the

3    opportunity to come back quickly and early May certainly works.

4    We are in the unenviable position of having to I think incur

5    some harm and show you that harm before we can get relief.  So

6    the less harm we are able to incur and the fewer detained

7    noncitizens that lose out on this important program, the

8    better.  So early May is fine.  And I would reserve the right

9    to discuss with defense counsel and also my client about

10   including this summary judgment portion of it as well, but I

11   appreciate the invitation and it does seem to make sense.

12          THE COURT:  All right.  Mr. Sherwood.

13          MR. SHERWOOD:  Your Honor, I imagine -- can't say

14   definitely so, but defendants would be amenable to combining

15   the briefing to get a decision on this.  And early May is

16   doable.  I would like to confer with plaintiffs, especially

17   given that we will need some time to compile the administrative

18   record you are discussing.  And that will, of course, precede

19   briefing, so --

20          THE COURT:  That is fine with me.  If we want to, we

21   can just pick a date in early May now and then you will have

22   that when you discuss schedule otherwise.  And then you can

23   submit to me a joint status report with the proposed schedule

24   working up to that date.  Does that make sense?

25          MR. SHERWOOD:  A date for the hearing you are

```
 1   envisioning and we backfill it, is that the idea?

 2              THE COURT:  That is what I was suggesting, yes.

 3              I will say that I am supposed to be in trial.  I

 4   don't know exactly how long this trial is going to last.  But I

 5   am currently scheduled to be in trial from the 5th of May

 6   through the 13th of May.  We could come back -- is the 14th too

 7   late -- that will give you a little bit more time.  Is the 14th

 8   okay with everyone to come back on the 14th for a hearing?

 9              MR. SHERWOOD:  That is fine for defendants, Your

10   Honor.

11              MS. STURGES:  We are happy to take the date, Your

12   Honor --

13              THE COURTROOM DEPUTY:  Microphone, please.  I'm so

14   sorry.

15              MS. STURGES:  Not a problem.  Not a problem.

16              -- with the caveat that if -- depending on what does

17   happen starting 12:01 if we are able to come back and seek --

18              THE COURT:  I think that is completely fair.  So why

19   don't we put this down for May 14th.  You are the one who has

20   to travel.  What time works best for you?

21              MS. STURGES:  What day of the week is the 14th?

22              THE COURT:  It is a Wednesday.

23              MS. STURGES:  Actually, morning is probably great.

24              THE COURT:  Okay.  So how about 10 a.m.?

25              MS. STURGES:  Excellent.
```

1        THE COURT:  10:00 a.m. on the 14th work for the

2   government?

3        MR. SHERWOOD:  Sure.

4        THE COURT:  So we'll put it down for 10:00 a.m.  That

5   is without prejudice.  If you find that there is some imminent

6   First Amendment injury that needs to be addressed more quickly,

7   you are free to do whatever you think is appropriate and file

8   whatever you think is appropriate.

9        MS. STURGES:  Thank you, Your Honor.

10        THE COURT:  All right.  Anything else before we

11   adjourn?

12        MR. SHERWOOD:  Not from the defendants, Your Honor.

13        THE COURT:  All right.  Thank you, all.

14        (Proceedings concluded at 4:35 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1           C E R T I F I C A T E

2

3           I, SHERRY LINDSAY, Official Court Reporter, certify

4   that the foregoing constitutes a true and correct transcript of

5   the record of proceedings in the above-entitled matter.

6

7

8

9

10                  Dated this 22nd day of April, 2025.

11

12                  _____

13                  Sherry Lindsay, RPR
                    Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25

**MR. SHERWOOD: [47]**   3/16 28/15
29/17 30/8 30/11 30/15 30/20 31/7
32/6 33/11 34/3 34/8 34/18 35/3
35/8 35/15 35/20 36/16 37/20 38/4
38/9 38/13 38/17 39/15 39/21 40/5
42/1 42/20 43/7 43/15 43/19 44/10
44/18 46/12 47/4 50/13 51/5 52/7
52/17 53/6 53/8 53/11 72/13 72/25
73/9 74/3 74/12
**MS. DAGEN: [1]**   3/10
**MS. HSIEH: [1]**   3/13
**MS. STURGES: [55]**   3/7 3/23 4/24
5/25 6/20 7/1 7/13 8/7 9/17 10/4
10/23 11/23 12/2 12/18 13/7 14/15
15/20 16/2 16/20 17/10 17/5 17/24
18/8 18/17 20/1 20/9 20/25 22/4
22/20 23/4 23/10 23/23 24/12
24/19 25/3 25/6 25/8 25/20 25/24
27/7 27/16 28/9 28/14 53/15 54/6
58/6 59/19 59/23 72/2 73/11 73/15
73/21 73/23 73/25 74/9
**THE COURT: [102]**
**THE COURTROOM DEPUTY: [3]**   3/2
24/7 73/13

## $

**$28 [1]**   52/9
**$28 million [1]**   52/9

## 1

**10 [3]**   59/3 59/12 73/24
**100 [1]**   68/6
**1025 [2]**   1/17 1/20
**10:00 a.m [2]**   74/1 74/4
**10:00 in [1]**   5/11
**10th [1]**   37/23
**1100 [1]**   2/4
**12:01 [2]**   53/21 73/17
**12:01 a.m [2]**   5/4 54/21
**13th [1]**   73/6
**14 [1]**   61/13
**14th [6]**   73/6 73/7 73/8 73/19
73/21 74/1
**15 [1]**   1/6
**16 [5]**   26/21 26/24 27/9 27/13
58/17
**1900 [1]**   1/14

## 2

**20001 [1]**   2/9
**20005 [1]**   2/5
**20006 [1]**   1/18
**20036 [1]**   1/21
**2024 [3]**   52/18 60/8 64/1
**2025 [2]**   1/6 75/10
**22nd [1]**   75/10
**25-298 [2]**   1/4 3/2
**298 [2]**   1/4 3/2
**2:00 [1]**   15/18
**2:33 [1]**   1/7

## 3

**3000 [1]**   1/15
**333 [1]**   2/8
**3:06 [1]**   24/13

## 4

**4:03 [1]**   59/24
**4:35 [1]**   74/14

## 5

**5:00 [2]**   6/6 26/16
**5th [3]**   22/5 58/13 73/5

## 6

**60 [1]**   49/6
**6710 [1]**   2/9

## 7

**701 [2]**   1/18 1/21

**704 [1]**   32/14
**8**
**80202 [1]**   1/15

## A

**a.m [5]**   5/4 54/21 73/24 74/1 74/4
**ability [13]**   9/4 11/15 21/2 22/23
22/23 26/10 27/3 28/5 54/23 54/24
63/15 67/5 68/6
**able [17]**   5/6 6/19 7/4 10/11 11/2
11/19 11/20 18/11 20/19 21/13
29/25 31/21 43/9 51/5 57/3 72/6
73/17
**about [74]**   3/25 5/17 6/15 7/14
7/15 7/22 7/23 8/10 9/23 10/3
10/8 13/3 14/6 14/13 14/24 15/3
15/10 15/14 15/25 16/13 17/2 17/6
19/8 19/24 25/21 25/22 26/15
26/16 26/23 26/24 27/17 34/2 34/7
36/4 37/9 37/15 37/21 39/11 40/22
41/24 42/3 43/5 45/9 45/11 48/17
49/10 50/18 51/18 52/1 53/10
53/20 53/22 54/17 54/21 55/10
56/14 56/14 58/16 58/22 59/12
59/21 60/5 62/18 62/25 63/1 65/4
66/19 70/2 70/6 70/7 71/24 71/25
72/9 73/24
**above [1]**   75/5
**above-entitled [1]**   75/5
**absence [2]**   60/25 60/25
**absent [1]**   61/9
**absolutely [5]**   10/23 21/12 25/18
43/4 57/2
**abuse [2]**   50/21 51/6
**Acacia [11]**   29/19 29/20 30/24
30/25 31/3 31/13 32/3 36/18 39/17
40/18 41/18
**access [62]**   4/15 4/18 4/23 6/3
7/5 7/6 7/7 11/15 11/23 11/25
12/9 12/20 13/8 13/10 15/2 21/1
25/22 26/5 26/8 41/25 42/3 42/11
42/14 42/16 42/24 43/1 43/4 43/9
43/17 43/19 44/11 44/12 44/13
44/19 44/23 45/1 45/2 45/16 45/16
46/10 46/15 47/1 47/7 47/13 47/17
47/21 58/4 58/16 58/24 59/3 59/7
59/7 59/13 59/14 66/14 66/22 67/1
67/3 67/11 67/15 68/23 69/20
**accesses [1]**   43/11
**accessible [1]**   59/1
**accessing [3]**   6/12 46/13 67/18
**accompanying [1]**   4/12
**accordance [1]**   60/8
**according [1]**   29/8
**accrue [1]**   55/19
**accurate [2]**   44/20 47/15
**acknowledge [1]**   55/6
**acknowledged [3]**   4/2 6/20 17/21
**act [38]**   4/20 7/15 17/2 17/19
17/24 18/3 19/10 19/23 20/2 20/22
21/7 25/9 27/17 29/15 29/20 30/4
30/8 31/7 31/8 31/9 31/12 32/5
32/8 32/14 32/16 32/16 33/9 39/7
39/11 40/7 47/24 51/23 52/18
60/12 60/15 62/15 64/6 64/9
**acting [3]**   34/18 37/5 38/6
**action [25]**   1/3 8/6 8/10 19/17
19/18 20/7 23/7 29/13 30/3 32/3
50/14 51/24 54/16 56/10 62/14
62/23 63/3 63/3 63/18 64/10 64/14
64/15 65/16 65/17 68/12
**actionable [1]**   23/16
**actions [3]**   19/15 22/21 32/9
**activities [1]**   6/1
**activity [2]**   22/13 47/19
**actual [1]**   49/21
**actually [21]**   4/25 6/18 7/9 10/3
18/14 23/11 24/20 33/8 37/15 39/9
46/6 46/7 46/8 60/10 63/14 64/25
67/18 69/19 70/3 70/19 73/23
**add [1]**   32/6

**addition [2]**   27/10 58/19
**additional [2]**   52/22 70/15
**address [4]**   28/16 34/4 42/8 53/1
**addressed [2]**   28/10 74/6
**adequately [1]**   9/1
**adjourn [1]**   74/11
**administration [3]**   21/22 50/5
65/9
**administrative [17]**   31/5 31/12
37/15 37/22 38/25 39/3 49/21
62/14 63/19 68/12 69/7 69/11
69/16 70/3 70/8 71/16 72/17
**adverse [1]**   68/4
**adversely [2]**   64/15 64/17
**advice [1]**   66/3
**advised [3]**   34/9 34/19 35/5
**advocacy [1]**   59/2
**advocates [1]**   71/13
**aesthetic [2]**   19/15 19/19
**affect [1]**   19/15
**affected [4]**   6/6 19/19 64/15
64/17
**affidavit [1]**   35/2
**affirmed [1]**   41/3
**affirms [1]**   17/18
**after [2]**   4/9 4/10
**afternoon [10]**   3/7 3/9 3/10 3/12
3/13 3/15 3/16 3/19 4/11 5/7
**AG [2]**   22/5 58/13
**again [12]**   9/20 25/16 26/18 41/9
51/11 53/7 53/23 55/7 58/17 67/20
68/21 69/22
**agency [17]**   8/5 8/10 19/15 19/17
19/18 37/2 41/7 41/10 50/14 56/10
56/15 62/13 62/23 63/18 64/14
65/16 65/17
**agency's [2]**   36/22 40/11
**ago [4]**   7/10 25/15 31/6 54/9
66/20
**agree [6]**   8/17 13/10 22/20 52/4
52/7 55/7
**agreed [1]**   4/2
**Agriculture [2]**   24/22 25/1
**ahead [4]**   3/21 28/12 35/1 53/4
**AIDS [2]**   40/24 56/25
**Aiken [1]**   23/23
**al [4]**   1/3 1/7 3/3 3/4
**AliKhan [1]**   41/1
**all [40]**   3/20 4/6 4/13 7/8 13/19
13/22 17/9 18/6 19/10 19/14 20/14
24/14 25/9 28/15 37/14 37/19
46/14 48/6 48/8 55/10 55/19 59/3
59/4 59/18 59/20 59/21 60/2 60/14
60/18 67/23 69/7 69/15 70/4 70/9
70/24 71/15 72/12 74/10 74/13
74/13
**allege [2]**   11/12 11/13
**alleging [1]**   33/21
**Alliance [3]**   65/9 65/11 65/20
**allocate [3]**   8/21 11/1 35/14
**allocated [2]**   41/11 52/1
**allocation [1]**   40/10
**allow [2]**   22/10 31/13
**allowed [6]**   12/15 12/20 13/4
19/13 41/20 47/20
**allowing [1]**   70/7
**allows [3]**   10/5 13/10 57/10
**almost [1]**   29/24
**along [2]**   34/22 68/11
**already [3]**   9/18 46/20 47/7
**also [41]**   14/4 20/25 21/9 21/14
25/10 25/13 25/20 26/14 27/17
30/2 31/18 32/8 44/13 44/15 47/4
48/9 49/19 50/17 50/21 52/9 53/24
54/9 54/14 55/23 56/14 57/8 58/15
58/21 60/18 61/15 64/7 65/5 66/15
66/17 67/1 69/17 70/1 70/12 70/21
71/9 72/9
**alternative [3]**   29/4 31/5 62/21
**although [7]**   6/1 9/23 22/15 29/2
33/20 62/18 63/22
**always [1]**   25/18

**A**

am [53]   3/1/7 6/8 8/25 10/12 12/3 12/13 12/18 13/12 13/17 13/25 14/1 14/22 16/18 17/3 24/8 24/15 25/19 27/11 31/14 31/20 32/4 33/3 33/7 33/11 34/17 34/20 34/22 34/23 34/23 36/3 41/17 44/1 48/21 49/20 51/3 51/9 57/24 59/22 62/25 65/23 67/23 67/24 69/2 69/3 70/12 70/21 71/5 71/9 71/10 71/15 71/25 73/3 73/5
Amelia [2]   1/16 3/10
amenable [1]   72/14
Amendment [62]   4/18 6/4 9/13 9/17 9/22 9/25 10/8 10/10 10/21 10/23 11/4 11/9 11/12 11/24 15/21 15/23 16/12 16/24 17/25 18/1 23/5 28/7 39/12 41/16 41/25 42/4 42/5 42/6 42/10 45/6 45/12 45/14 45/18 46/4 46/17 46/18 46/21 46/25 47/12 47/16 47/22 48/2 48/3 57/9 57/15 58/1 58/3 58/4 58/8 60/17 65/4 65/22 65/24 66/12 66/23 67/3 68/17 68/18 68/25 69/1 69/18 74/6
AMICA [16]   1/3 1/17 3/3 3/11 4/25 15/10 15/16 15/18 26/22 43/23 44/1 55/1 58/23 63/14 67/15 67/17
among [1]   10/17
amongst [1]   71/24
amount [1]   36/21
amounted [1]   51/8
amounts [1]   40/12
analogy [1]   12/14
analysis [2]   8/2 67/22
analyzed [1]   60/19
Andrew [2]   2/2 3/18
anecdotal [4]   6/12 44/21 68/19 69/23
anecdotally [1]   66/19
announced [1]   8/13
another [3]   7/21 9/5 63/10
answer [2]   35/17 67/8
answers [1]   64/5
anticipate [1]   26/17
any [57]   5/21 8/15 13/8 14/5 23/1 28/9 30/24 31/20 33/13 37/2 37/23 38/1 39/25 40/1 40/2 40/13 40/17 41/11 42/16 43/11 45/7 45/18 48/20 49/1 49/12 49/12 49/18 50/18 51/8 52/12 52/13 53/23 54/1 54/2 54/8 54/10 54/11 54/16 57/24 58/22 59/14 59/15 63/7 63/7 65/2 65/14 66/21 67/13 68/5 68/18 69/2 69/7 69/9 70/1 70/4 70/5 71/3
anybody [5]   26/11 40/1 44/2 45/3 45/20
anyone [3]   15/16 37/25 37/25
anything [7]   14/16 32/4 37/14 50/4 51/3 59/18 74/10
anyway [1]   31/9
anywhere [1]   68/3
APA [33]   9/13 16/10 16/23 17/25 19/1 19/11 19/17 19/21 21/9 21/14 23/5 23/6 27/22 28/6 29/6 31/21 31/25 32/14 32/23 33/19 39/1 40/9 40/19 41/15 48/10 52/3 56/21 56/21 60/15 61/22 62/17 64/10 64/13
APA's [1]   61/23
apart [2]   12/25 23/5
apologies [1]   53/7
apologize [3]   48/16 48/18 49/12
appeal [5]   29/21 29/23 30/12 30/12 71/4
appeals [2]   29/23 71/6
APPEARANCES [3]   1/12 1/23 2/1
appears [2]   26/18 45/15
applicable [2]   51/9 60/20
applies [3]   17/9 41/21 62/21
apply [1]   17/19
appreciate [6]   3/24 17/7 24/12

56/25 72/2 72/11
appropriate [4]   14/19 58/11 74/7 74/8
appropriated [6]   7/19 21/5 35/14 40/14 55/5 60/10
appropriately [1]   62/14
appropriation [14]   8/20 16/18 17/14 18/3 18/14 34/10 50/24 51/2 52/8 52/17 58/1 58/2 63/6 64/9
appropriations [32]   4/9 9/8 9/12 16/20 16/22 17/24 19/3 19/4 21/10 21/15 21/20 23/2 23/4 25/11 27/23 28/6 36/19 40/7 41/10 41/15 48/2 48/4 51/11 51/13 52/12 52/14 52/18 55/20 60/8 60/12 60/15 64/1
April [3]   1/6 37/23 75/10
April 10th [1]   37/23
arbitrary [4]   9/7 48/7 56/10 56/23
are [212]
areas [1]   64/24
arguably [2]   7/16 46/25
arguing [1]   11/17
argument [16]   13/17 13/20 16/16 16/19 21/16 21/25 34/4 39/1 51/21 58/5 58/5 63/14 66/10 66/12 66/13 71/18
arguments [4]   13/20 38/23 39/1 63/15
arise [1]   17/14
arises [1]   19/10
around [7]   13/18 18/22 21/7 21/9 22/12 55/21 63/20
array [1]   62/16
Article [2]   9/15 64/21
articulate [1]   36/11
as [116]
aside [3]   18/1 39/11 63/13
ask [3]   23/12 24/15 37/25
asked [5]   17/5 25/14 26/15 35/17 54/9
asking [6]   9/5 9/6 14/18 14/19 15/11 48/11
aspects [1]   46/19
aspersions [1]   49/12
assert [1]   52/2
asserted [1]   47/16
asserting [4]   9/15 9/16 41/16 51/15
assess [5]   34/13 35/12 35/24 48/23 50/20
assessed [2]   35/24 35/25
assessing [2]   41/21 54/3
assessment [2]   41/22 54/12
assessments [1]   45/6
associate [3]   37/10 37/10 37/12
associates [1]   19/16
assume [1]   38/16
assuming [3]   51/12 51/20 51/25
attached [1]   27/7
attempt [1]   22/11
attend [1]   42/24
attention [3]   3/24 24/20 33/7
attorney [12]   37/10 37/10 37/12 37/25 38/6 42/17 43/11 43/14 43/20 43/25 44/12 46/20
attorney-client [4]   43/20 43/25 44/12 46/20
attorneys [6]   13/1 42/25 43/2 43/9 44/25 47/21
authority [10]   14/2 14/4 14/9 14/11 14/17 23/11 23/25 40/16 41/18 57/9
authorization [1]   18/22
authorize [1]   20/7 20/10
authorizing [1]   8/14
available [9]   29/5 32/8 32/21 36/20 41/5 45/12 48/5 52/8 65/2
avenue [1]   1/17 1/20 2/8 20/14 31/17 66/15
avenues [1]   30/22

avoid [6]   20/22 22/24 27/22 27/23 27/23
awarded [1]   60/21
aware [11]   5/21 12/12 31/20 32/4 33/3 33/8 33/11 37/22 51/3 57/24 60/18
away [8]   14/12 14/16 45/16 56/7 56/7 59/5 69/23 69/24

**B**

back [18]   4/3 6/11 12/3 14/11 23/15 24/15 27/18 55/3 59/12 59/21 64/19 65/15 70/16 71/18 72/3 73/6 73/8 73/17
backfill [1]   73/1
bad [2]   7/20 50/21
Bankruptcy [1]   2/8
barred [1]   7/1
based [15]   11/6 23/4 32/17 32/22 35/13 40/20 41/15 42/20 48/11 52/19 61/25 65/25 66/7 66/8 67/13
basis [5]   28/19 35/12 38/22 50/18 58/12
be [121]
because [42]   7/9 10/24 11/7 11/7 13/13 13/25 14/12 15/16 16/1 16/3 17/9 18/4 18/15 19/18 29/11 29/19 31/1 32/23 33/4 34/24 35/10 36/12 39/3 39/23 40/10 41/9 44/2 46/6 46/21 47/13 48/22 50/2 51/16 57/18 63/16 64/13 65/24 66/2 66/11 67/24 68/18 71/3
been [23]   4/23 5/5 7/18 8/25 9/6 12/13 12/15 18/21 26/5 33/21 34/6 34/8 34/10 35/5 39/8 43/8 45/8 55/4 55/5 55/6 67/4 67/13 67/18
before [14]   1/10 17/7 26/2 26/19 27/17 29/18 30/25 48/15 48/24 53/22 59/25 71/7 72/5 74/10
behalf [2]   3/8 3/13
being [23]   13/4 16/17 17/17 20/14 31/21 35/6 38/23 39/12 40/6 44/6 46/1 46/1 46/8 46/25 47/16 48/17 49/14 50/14 52/1 64/23 65/16 65/18 66/1
believe [4]   9/19 11/12 30/5 43/16
benefit [1]   69/17
best [6]   24/17 25/7 25/8 48/17 57/22 73/20
better [4]   17/12 18/25 25/19 72/8
between [4]   15/20 22/9 54/13 71/1
beyond [6]   6/3 6/5 11/9 11/10 11/13 11/16 12/4 26/19 29/24 30/15 32/4 38/13 44/12 48/13 58/16 59/5 59/16 64/4
big [1]   17/10
Bishops [1]   62/3
bit [5]   5/12 33/2 49/20 65/4 73/7
board [3]   29/23 30/5 30/12
boards [1]   45/22
bogged [1]   56/2
boils [1]   42/5
Bondi [3]   37/8 38/2 38/5
bono [4]   43/2 58/24 59/3 59/7
bootstrap [1]   10/5
Bork [1]   23/17
both [13]   3/19 8/1 9/17 17/10 17/21 33/18 45/4 47/25 58/11 60/4 60/15 61/14 62/7
bottom [1]   62/22
Bowen [1]   17/18
box [1]   59/8
Branch [1]   2/4
breach [1]   33/22
breached [1]   33/24
brief [19]   4/17 8/18 13/7 17/7 20/5 20/5 20/9 24/20 28/17 31/10 31/18 38/24 48/9 51/20 53/1 53/5 57/6 67/10 70/10
briefed [1]   66/16
briefing [7]   4/14 42/9 68/22 70/14 71/15 72/15 72/19

**B**

briefings [1]   5/11
briefs [2]   65/6 70/15
bring [6]   19/11 20/7 23/7 30/23 33/7 34/3
bringing [3]   18/10 20/23 20/24
brings [1]   57/1
broader [1]   62/13
brought [6]   31/2 31/14 32/10 32/23 40/6 62/14
building [1]   11/22
buildings [2]   11/18 11/20
bunch [1]   15/17
burden [5]   28/25 30/21 31/16 60/23 67/25
business [2]   29/12 68/14
byproduct [1]   63/24

**C**

cafeteria [1]   5/11
CAIR [1]   1/20
California [6]   22/16 28/20 29/3 48/10 61/17 62/11
call [6]   14/23 43/22 43/23 44/3 44/3 44/3
came [1]   15/18
can [50]   9/9 9/9 11/5 19/16 19/16 21/7 21/9 23/1 23/7 24/9 28/19 29/6 29/7 29/15 29/23 30/11 31/8 32/3 32/10 32/22 33/7 35/3 35/20 35/23 38/4 38/19 40/16 41/16 41/24 42/24 43/1 43/2 43/13 43/20 44/13 44/25 45/1 45/20 46/2 52/2 56/12 57/14 61/6 64/10 69/20 69/21 70/7 72/5 72/21 72/22
can't [14]   10/8 14/6 14/14 20/4 20/22 29/8 30/18 32/2 36/11 36/13 41/1 44/7 46/5 72/13
cannot [6]   11/5 16/13 41/15 45/12 53/23 57/15
capacity [1]   47/19
capital [1]   52/18
capricious [4]   9/7 48/7 56/10 56/24
care [3]   7/19 34/2 68/3
carried [1]   67/25
carries [1]   60/23
case [46]   3/2 4/5 4/14 5/14 6/19 8/4 13/22 14/12 20/2 20/11 22/16 23/21 24/22 24/25 25/2 25/7 25/8 25/12 28/22 29/3 31/10 31/20 31/24 33/2 34/6 39/24 39/25 40/24 51/10 55/14 56/3 56/5 56/21 56/25 57/19 62/4 62/6 62/11 62/18 63/11 64/3 65/12 69/5 69/9 71/2 71/5
cases [20]   17/18 18/13 19/10 20/21 23/1 23/10 23/15 23/16 24/11 24/18 25/3 25/15 31/18 45/18 48/8 50/22 62/16 64/13 68/8 70/25
cast [1]   49/12
categorical [1]   44/19
Catholic [1]   62/3
caused [2]   19/17 19/18
caveat [2]   11/11 73/16
CCI [2]   16/16 52/11
CENTER [4]   1/3 1/17 3/3 3/11
centers [2]   43/5 43/7
certain [6]   27/25 32/15 36/21 42/7 44/22 58/9
certainly [11]   7/2 8/23 15/7 18/3 22/2 23/23 36/12 56/12 69/8 71/17 72/3
certainty [1]   64/21
certify [1]   75/3
cetera [2]   21/11 21/15
challenge [4]   22/1 62/13 63/6 65/24
challenged [3]   50/15 65/17 65/18
challenging [4]   7/9 7/10 8/6 8/11
chambers [1]   45/23

chance [6]   4/3 8/7 24/11 24/17 24/23
change [1]   11/8
channel [1]   32/17
chaos [1]   6/22
characterize [1]   50/16
charge [1]   44/4
charges [3]   46/22 46/23 46/24
charging [1]   68/7
check [1]   6/21
Children's [1]   53/2
choose [2]   55/18 58/8
circle [2]   16/5 65/15
circles [1]   64/19
Circuit [6]   23/18 30/6 33/15 48/8 62/20 62/21
Circuit's [1]   62/2
circumstances [2]   19/2 44/22
circumvents [1]   32/25
cite [3]   31/10 31/18 45/18
citing [1]   56/22
citizens [1]   26/10
Civil [3]   1/3 2/3 3/2
claim [17]   10/13 10/13 19/1 20/23 20/24 23/5 23/25 28/23 40/17 41/12 41/15 42/5 45/14 48/7 51/15 51/22 52/3
claiming [1]   27/23
claims [51]   13/16 16/25 19/11 20/7 20/13 20/15 20/16 29/7 29/8 29/9 29/13 29/16 29/24 30/3 30/6 30/13 30/23 31/4 31/8 31/14 32/9 32/11 32/15 32/17 32/18 32/20 32/22 32/22 33/19 36/1 40/6 40/19 40/19 40/21 41/21 48/11 48/14 50/20 50/22 51/3 51/7 56/5 56/6 56/12 61/25 62/1 62/13 62/19 63/2 63/12 63/16
clarify [1]   8/8
clause [11]   9/8 9/13 19/3 19/4 21/10 27/23 39/17 41/10 48/2 48/4 55/21
clear [7]   5/3 7/6 20/14 22/8 57/6 60/21 69/11
clearly [1]   55/20
client [7]   43/12 43/20 43/25 44/12 46/20 54/15 72/9
clients [5]   38/21 42/3 42/21 43/1 43/3 53/8
CO [1]   1/15
COALITION [2]   1/20 40/24
cocounsel [3]   3/18 12/19 25/21
cognizant [2]   71/9 71/10
cohorts [1]   67/15
colorably [1]   40/16
COLUMBIA [1]   1/1
combining [1]   72/14
come [14]   12/16 15/9 16/1 18/24 19/16 29/25 59/21 66/25 70/15 72/3 73/6 73/8 73/17
comes [1]   14/10
coming [1]   71/18
communicate [2]   38/15 67/5
communication [1]   46/3
communications [2]   6/3 46/5
compel [1]   15/12
compelled [1]   66/11
compelling [1]   60/7
compile [1]   72/17
compiling [1]   37/21
complaint [2]   25/25 60/14
complaints [1]   60/14
completely [2]   15/4 73/18
complicated [6]   19/8 62/7 62/7 62/8 62/9 66/15
complied [1]   44/23
comply [1]   9/12
concede [2]   18/4 52/20
conceivable [1]   65/12
concern [5]   45/25 46/10 46/14 50/18 63/17
concerned [2]   25/19 54/20

concerns [1]   48/17
conclude [2]   48/20 58/25 14/1 14/2 61/9 68/24
concluded [2]   61/20 74/14
conclusion [1]   62/3
conducting [1]   12/7
confer [2]   71/23 72/16
conference [3]   42/2 45/23 54/14
conflating [1]   7/12
confusing [2]   10/2 52/21
confusion [2]   6/14 32/1
Congress [27]   4/7 7/19 8/23 11/1 14/20 14/25 16/10 18/18 18/22 20/20 20/20 21/4 21/20 21/24 22/9 23/8 26/3 32/17 33/25 53/25 55/22 57/13 57/14 58/8 58/10 63/5 66/11
Congress' [1]   60/8
congressional [9]   8/20 10/25 16/22 17/14 19/6 21/15 23/25 28/6 51/2
Connecticut [2]   1/17 1/20
consequences [1]   65/14
consider [1]   65/20
consistent [2]   9/14 50/24
consolidate [1]   70/22
Consolidated [1]   52/18
consolidating [1]   71/8
constitute [1]   37/14
constitutes [1]   75/4
Constitution [1]   2/8
constitutional [3]   10/5 46/16 57/24
consultation [1]   42/21
consulted [1]   42/2
consulting [1]   38/20
contact [4]   5/20 5/20 46/2 58/22
contempt [1]   34/21
content [2]   65/25 66/8
content-based [2]   65/25 66/8
contents [1]   38/24
context [8]   17/15 18/20 19/10 19/14 19/21 19/23 32/5 46/21
continue [14]   20/18 20/19 23/8 24/10 35/6 37/18 41/6 53/24 54/7 54/24 55/15 57/2 57/3 60/7
continued [4]   1/23 2/1 21/5 53/20
continues [1]   60/12
continuing [4]   34/16 34/23 36/6 60/13
contract [82]
contract-based [4]   32/17 32/22 40/20 48/11
contracting [1]   29/22
contractor [16]   4/5 20/6 20/6 20/10 20/12 28/1 29/7 29/12 29/13 29/18 29/25 31/13 32/10 32/24 33/8 33/9
contractors [2]   18/6 44/16
contracts [13]   5/23 8/14 17/13 22/19 34/12 35/9 38/22 41/6 41/19 48/19 48/21 51/13 65/19
contractual [8]   10/15 17/20 19/23 22/13 22/23 27/25 61/24 63/7
contrary [1]   42/15
contravention [1]   19/5 64/14
Control [1]   51/23
convenience [21]   4/6 8/14 15/7 16/8 16/23 21/12 21/13 22/11 28/4 35/9 35/13 35/25 36/19 39/17 41/20 41/22 49/9 50/19 50/21 51/8 56/23
conversations [1]   10/19
conveying [1]   46/7
convincing [1]   16/17
Corporation [1]   65/8
correct [4]   4/24 6/22 54/6 75/4
could [22]   15/13 17/16 18/24 20/5 20/10 26/25 30/22 31/3 31/22 40/9 41/7 46/6 47/14 49/2 55/10 65/13 66/6 68/4 68/5 68/12 70/15 73/6
couldn't [3]   30/2 44/3 44/6
counsel [17]   3/5 3/6 5/20 5/20

**C**

counsel... **[13]**   12/16 13/5 22/2 43/24 46/10 46/16 46/23 46/23 56/3 56/14 57/8 58/24 72/9
counsel's **[1]**   58/7
country **[1]**   57/22
counts **[1]**   60/14
County **[1]**   23/23
couple **[4]**   6/18 24/23 58/15 68/2
course **[7]**   12/9 17/6 36/6 56/21 61/12 61/13 72/18
court **[91]**
Court's **[7]**   22/12 28/21 41/4 48/13 61/16 62/10 65/8
courthouse **[1]**   45/21
courts **[9]**   2/8 9/2 26/4 42/14 42/22 47/6 47/18 52/24 54/25
create **[1]**   18/15
created **[4]**   18/21 19/20 57/12 57/13
creates **[3]**   19/13 41/8 64/9
creating **[1]**   19/9
criminal **[3]**   46/22 46/22 46/24
critical **[4]**   29/4 29/18 47/2 55/25
cross **[1]**   70/23
cross-motions **[1]**   70/23
Crowley **[4]**   33/15 56/3 56/4 56/8
CRUTCHER **[1]**   1/14
curiam **[1]**   61/16
curious **[1]**   12/13
current **[1]**   70/17
currently **[4]**   60/13 64/5 66/24 73/5
custodians **[1]**   52/25
cut **[2]**   13/10 37/11
cutoff **[1]**   26/8
cutting **[2]**   7/6 13/9

**D**

D.C **[5]**   23/17 33/15 48/8 62/2 62/20
D.D.C **[1]**   41/1
Dagen **[2]**   1/16 3/10
damages **[3]**   20/15 20/24 55/3
darn **[1]**   14/5
date **[4]**   72/21 72/24 72/25 73/11
Dated **[1]**   75/10
day **[5]**   7/5 55/12 55/24 73/21 75/10
days **[2]**   49/6 61/13
DC **[5]**   1/5 1/18 1/21 2/5 2/9
deal **[2]**   39/13 71/21
dealing **[1]**   25/9
decades **[1]**   67/18
decide **[5]**   8/22 50/23 50/25 52/3 66/9
decided **[3]**   36/6 40/25 41/3
decides **[1]**   58/10
deciding **[2]**   49/2 71/2
decision **[43]**   6/16 7/17 28/21 28/21 29/22 35/12 37/2 37/9 37/13 37/16 38/1 38/3 38/4 38/16 38/18 39/4 39/4 39/5 39/7 39/7 39/8 39/14 39/14 39/15 39/18 40/3 40/9 40/25 41/4 49/22 49/23 49/24 49/25 50/5 64/22 65/8 67/13 69/8 69/12 69/12 69/14 71/20 72/15
decisional **[1]**   37/24
decisions **[1]**   47/2
declaration **[11]**   5/6 26/22 26/24 27/6 27/7 27/12 35/3 58/18 59/1 59/9 59/10
declarations **[6]**   6/8 6/10 6/17 26/21 66/18 68/2
declined **[1]**   62/4
deemed **[1]**   69/22
defect **[1]**   13/17
Defendant **[1]**   1/8 2/2
defendants **[34]**   3/17 4/1 4/5 9/4 9/8 9/9 9/10 9/12 10/5 11/14 12/5
14/5 18/24 21/5 22/10 23/13 27/19 24/11 44/24 47/14 51/18 55/20 55/5 55/15 56/13 59/14 57/9 57/12 55/2 60/7 72/14 73/9 74/12
defendants' **[6]**   4/17 13/7 15/5 15/6 28/17 56/3
defense **[6]**   56/14 57/8 57/14 58/7 58/24 72/9
defer **[1]**   12/19
deficit **[1]**   68/5
define **[1]**   57/14
defined **[1]**   60/11
definitely **[1]**   72/14
definition **[1]**   56/23
degree **[1]**   43/1
deliberate **[1]**   32/16
delivered **[1]**   21/5
demanding **[1]**   65/10
demonstrate **[1]**   31/16
demonstrates **[1]**   45/3
demonstrating **[1]**   67/25
denied **[2]**   4/15 7/7 7/7 27/2 27/3 46/9 69/20
Denver **[1]**   1/15
deny **[2]**   67/24 69/3
denying **[2]**   59/14 66/23
DEPARTMENT **[23]**   1/6 2/3 17/6 17/22 18/5 21/19 22/16 23/20 24/21 24/22 24/24 25/1 28/20 36/5 36/9 41/4 48/10 52/5 55/8 60/10 61/17 62/4 62/10
depending **[2]**   19/1 73/16
deport **[1]**   26/12
deprived **[1]**   47/1
described **[6]**   32/8 42/22 43/15 43/16 43/16 47/10
describing **[1]**   6/22
deserve **[1]**   16/25
desk **[3]**   42/12 52/11 52/23
despite **[1]**   54/12
detailing **[1]**   34/24
detained **[10]**   26/10 44/6 46/2 46/8 54/23 55/24 58/14 60/4 67/5 72/6
detention **[17]**   21/3 42/15 43/5 43/7 43/9 43/17 44/13 44/15 44/19 46/14 47/6 47/8 47/10 47/17 52/22 58/20 58/25
determination **[3]**   10/25 61/6 69/10
determined **[3]**   10/25 11/2 58/11
developed **[4]**   65/6 66/6 66/17 67/22
dictated **[1]**   57/23
did **[15]**   6/5 6/21 6/23 11/13 17/14 20/5 20/21 22/17 24/17 24/19 25/15 37/11 37/25 54/11 64/11
didn't **[6]**   6/17 19/3 33/13 34/1 44/3 49/11
differ **[2]**   67/9 67/21
difference **[7]**   15/20 17/11 22/21 22/22 45/24 57/11 71/1
different **[16]**   5/12 5/13 7/12 7/16 14/24 17/10 18/6 19/22 22/24 25/2 43/8 47/21 49/18 64/18 66/5 68/17
difficult **[2]**   56/2 62/25
difficulty **[3]**   6/12 64/6 71/12
direct **[5]**   24/19 27/24 30/3 43/23 58/15
directed **[1]**   55/22
direction **[3]**   40/1 66/8 66/21
directive **[2]**   19/6 26/18
directly **[1]**   30/5
director **[4]**   34/18 37/5 37/5 37/17
disagree **[1]**   71/7 21/23 28/1 28/2 29/17 30/25 56/15
disbursed **[1]**   36/22
discretion **[14]**   8/20 35/14 35/15 35/18 36/23 40/11 40/23 50/21
discrimination **[1]**   45/7
discriminatory **[1]**   57/16
discuss **[3]**   41/17 72/9 72/22
discussed **[6]**   4/9 4/13 55/9 59/13 60/9 62/6
discussing **[1]**   72/18
discussions **[1]**   45/9
dispositive **[1]**   33/14
dispute **[3]**   8/4 29/24 62/12
disputes **[8]**   29/20 30/8 31/7 31/8 31/9 31/11 32/7 33/9
dissimilar **[1]**   42/23
distinction **[1]**   22/9
distinguishable **[1]**   29/3
distinguishing **[1]**   24/21
DISTRICT **[12]**   1/1 1/1 1/11 2/8 22/15 28/24 29/25 31/2 32/23 40/25 41/23 61/21
Division **[1]**   2/3
do **[55]**   4/21 6/20 7/23 8/20 9/4 11/11 12/8 12/21 13/8 14/15 17/19 17/23 19/3 21/13 23/11 23/14 24/8 25/16 25/24 28/2 32/3 33/5 33/24 37/8 39/7 40/8 42/6 42/8 42/19 43/12 43/12 44/2 48/15 50/10 50/25 55/22 56/15 57/1 58/2 58/7 59/22 60/9 61/7 62/16 64/7 65/2 66/11 67/14 69/3 69/6 70/2 70/9 70/20 71/7 74/7
doable **[1]**   72/16
document **[4]**   37/1 37/3 38/22 49/21
documents **[1]**   37/24
does **[16]**   14/11 14/11 17/19 19/4 22/1 28/4 36/18 39/2 42/13 49/21 58/8 61/23 65/15 72/11 72/24 73/16
doesn't **[8]**   7/24 19/12 36/9 38/9 41/11 41/22 50/2 64/3
doing **[11]**   6/16 7/20 15/13 15/15 21/8 51/4 54/24 57/5 70/6 70/24 70/25
DOJ **[1]**   3/4
dollars **[1]**   23/9
don't **[48]**   3/21 6/19 7/18 13/10 13/16 16/1 17/9 20/3 21/7 21/9 22/14 22/20 23/25 28/1 30/20 30/24 31/22 34/2 36/12 36/15 36/16 38/24 39/6 42/8 44/2 45/18 45/20 47/14 47/22 49/11 50/24 51/2 51/9 51/13 55/11 57/9 64/4 64/11 64/20 65/13 66/7 66/25 68/20 68/23 71/23 72/1 73/4 73/19
don't think **[1]**   30/20
done **[11]**   9/6 21/22 28/3 32/22 35/6 35/18 35/18 49/7 49/8 49/9 69/20
double **[1]**   6/21
down **[14]**   5/2 15/15 16/1 42/5 43/22 45/13 48/15 55/17 56/2 58/21 66/6 67/14 73/19 74/4
Drug **[1]**   65/9
dubious **[1]**   67/17
due **[2]**   46/14 46/17
DUNN **[1]**   1/14
during **[6]**   4/14 6/2 9/18 11/11 12/3 54/2
duty **[1]**   53/11

**E**

each **[2]**   10/6 64/18
earlier **[3]**   12/3 25/21 49/5
early **[5]**   71/18 72/3 72/8 72/15 72/21
ECF **[1]**   27/14
economic **[1]**   65/14
ED **[1]**   24/24
educate **[2]**   54/23 60/4
education **[10]**   17/6 17/22 22/16 24/21 28/20 41/4 48/10 61/17

**E**

education... [2]  61/19 62/10
effect [3]  5/3 5/6 60/13
effectively [1]  48/12
either [8]  7/1 27/24 27/25 30/12
  30/18 33/11 47/18 48/6
else [12]  13/19 14/12 15/13 15/14
  31/22 45/3 49/16 50/4 50/9 50/10
  59/18 74/10
email [2]  37/5 37/12
emails [1]  40/3
emergency [2]  60/6 62/5
employees [1]  12/24
encompasses [2]  52/21 69/12
encourage [1]  71/7
end [4]  8/2 49/2 55/13 64/2
ended [3]  7/11 35/7 59/14
ending [2]  37/18 59/5
enforce [1]  61/24
enforceable [2]  60/16 64/10
enforced [1]  23/2
engage [2]  11/3 42/7
engaged [1]  12/11
enjoined [1]  61/18
enormous [1]  47/2
enough [1]  68/24
ensure [1]  67/4
enter [2]  5/17 71/25
entering [1]  5/24
entire [1]  59/7
entirely [2]  18/5 30/7
entities [1]  65/1
entitled [3]  46/23 60/22 75/5
entitlement [2]  40/13 40/17
entity [2]  18/12 18/16
environmental [1]  19/14
envisioning [1]  73/1
EOIR [15]  16/18 34/9 34/12 34/19
  35/5 36/18 36/20 37/6 39/5 40/23
  47/6 48/22 51/18 54/2 66/22
EOIR's [1]  35/14
equipped [2]  20/16 20/17
equities [1]  61/1
Erickson [1]  31/9
especially [3]  47/16 53/18 72/16
essence [5]  13/14 14/2 40/6 62/12
  63/4
essentially [1]  21/21
establish [1]  44/8
established [1]  12/14
et [6]  1/3 1/7 3/3 3/4 21/11
  21/15
et cetera [1]  21/11
evade [1]  62/23
evaluating [1]  17/15
evaluation [2]  54/10 54/12
even [15]  5/14 10/14 11/18 12/1
  33/17 40/16 41/9 42/8 42/11 51/12
  51/25 63/4 65/18 67/3 68/19
evening [2]  4/4 5/4
event [4]  49/1 65/2 65/14 68/5
eventually [1]  7/5
ever [5]  31/21 32/4 44/5 46/6
  51/3
every [6]  5/11 36/8 54/18 55/11
  55/23 57/21
everyone [2]  4/2 73/8
everything [2]  14/12 24/16
evidence [6]  6/12 30/24 45/7
  49/10 49/15 66/1
evidence of [1]  49/10
exactly [7]  6/22 12/2 20/25 22/4
  54/6 66/20 73/4
example [7]  6/5 19/19 26/15 39/5
  42/21 43/23 57/19
examples [1]  44/21
Excellent [2]  25/20 73/25
except [1]  26/11
exclusive [1]  20/22
excuse [4]  12/23 25/10 55/16
  57/10

execute [2]  15/2 15/8
executive... [2]
executive [6]  22/9 23/24 55/22
  56/15 57/14 58/10
exercise [2]  35/18 38/13
exercising [2]  40/23 51/18
exist [3]  15/1 18/23 50/2
existence [4]  14/21 14/22 27/17
  68/12
existing [1]  48/25
exists [2]  46/20 69/10
expands [1]  44/11
expect [1]  69/13
expend [2]  52/5 60/10
expenditure [1]  66/11
experience [1]  71/1
expert [1]  31/15
explained [4]  28/17 47/25 61/22
  70/11
explaining [1]  31/10
explanation [1]  49/9
explicated [1]  65/11
express [1]  61/25
expressing [1]  48/16
expressions [1]  68/20
expressive [1]  47/19
extend [2]  61/23 64/4
extended [2]  17/16 63/4
extensive [1]  42/25
extent [9]  12/13 13/18 35/4 40/21
  41/14 45/20 50/18 51/12 64/9
extraordinary [1]  60/19

**F**

facilities [45]  4/13 4/15 5/24
  6/13 6/15 6/23 11/4 11/15 12/6
  12/10 12/10 12/13 12/23 12/24
  13/1 13/3 13/9 15/2 15/25 21/2
  25/22 26/6 42/15 42/18 43/2 43/3
  43/10 44/11 44/13 44/15 44/16
  44/19 47/6 47/8 47/11 47/18 52/23
  58/25 67/1 67/2 67/11 67/16 67/18
  70/2 70/6
facility [10]  5/18 13/4 26/25
  44/14 46/14 58/20 67/9 67/9 67/21
  67/21
facing [3]  46/22 46/22 46/24
fact [20]  4/11 12/15 14/17 15/16
  21/18 22/3 22/10 23/16 26/20
  27/19 31/24 33/10 35/2 36/5 43/11
  45/2 45/4 52/4 71/10 71/11
factors [1]  60/20
factual [1]  46/13
factually [2]  17/10 66/17
fail [1]  48/4
fails [1]  48/3
fair [3]  50/1 50/4 73/18
faith [1]  50/21
fall [1]  14/12
falls [1]  14/12
familiar [1]  51/9
Family [1]  53/2
far [7]  25/19 31/11 31/12 33/2
  36/8 38/7 65/24
farther [1]  26/19
fast [1]  55/16
favor [3]  61/1 62/17 62/22
favorable [1]  66/4
February [2]  22/5 58/13
February 5th [1]  22/5
federal [25]  2/4 13/16 29/23 30/6
  30/12 30/16 32/5 32/11 32/18
  32/22 36/1 40/21 41/21 48/14
  50/19 50/22 51/7 62/1 62/13 62/19
  62/20 63/2 63/12 63/15 64/15
feel [1]  68/23
few [3]  23/10 53/16 59/20
fewer [1]  72/6
FGLOP [2]  16/16 52/11
field [1]  59/14
figuring [1]  39/10
file [2]  26/23 74/7

filed [4]  20/13 24/20 26/22 28/18
findings... [1]
final [1]  19/18
finally [1]  55/12
find [5]  14/16 24/17 41/14 54/15
  74/5
finding [1]  62/25
fine [4]  23/14 72/8 72/20 73/9
first [70]  4/18 6/4 9/13 9/17
  9/18 9/21 9/25 10/7 10/10 10/21
  10/23 11/3 11/9 11/11 11/12 11/24
  12/4 15/21 15/23 16/12 16/24
  17/25 18/1 23/5 28/6 29/21 29/21
  36/4 39/12 41/16 41/24 42/4 42/5
  42/6 42/9 45/5 45/12 45/14 45/18
  46/4 46/17 46/18 47/12 47/16
  47/22 48/2 48/3 53/1 55/19 57/8
  57/15 57/22 57/25 58/3 58/4 58/8
  60/17 62/19 65/3 65/22 65/24
  66/12 66/23 67/3 68/17 68/18
  68/25 69/1 69/18 74/6
fliers [1]  59/4
Florence [3]  59/9 59/11 59/12
flow [6]  13/20 17/20 17/23 17/24
  17/25 17/25
focus [3]  23/15 23/22 70/14
focused [1]  19/22
focusing [1]  69/9
folk [1]  46/21
folks [2]  18/9 24/9
followed [1]  17/7
following [1]  25/15
Food [1]  65/9
fora [5]  11/19 12/14 45/6 67/2
  67/4
forbidden [1]  32/15
force [1]  22/12
forced [2]  27/4 68/8
foregoing [1]  75/4
form [1]  60/19
former [2]  42/13 45/2
forth [4]  7/15 59/13 69/9 70/12
Fortunately [1]  5/25
forward [11]  5/9 7/24 20/17 25/11
  26/4 34/14 48/23 49/1 49/3 65/1
  69/14
found [5]  16/15 17/16 18/9 18/25
  58/21
fours [1]  25/9
fourth [1]  26/23
frame [1]  61/7
framed [3]  21/17 27/19 64/5
framing [1]  21/25
frankly [3]  66/16 70/22 71/1
free [7]  18/5 56/9 57/10 66/8
  66/10 68/6 74/7
freedoms [1]  9/22
fresh [1]  70/19
front [8]  4/3 13/19 25/2 27/6
  63/19 66/7 66/16 68/24
frustrated [1]  15/17
fully [1]  66/16
function [1]  7/3
fund [7]  10/25 16/9 16/10 26/4
  57/25 58/8 66/9
funded [6]  12/11 12/11 12/20
  16/17 23/8 52/11
funding [23]  4/6 4/16 10/14 13/9
  13/14 13/21 18/16 19/5 21/4 22/6
  22/8 25/10 53/20 54/1 54/8 56/18
  57/4 58/11 60/3 60/7 64/19 64/22
  68/4
funds [18]  7/19 8/21 11/1 14/19
  19/5 35/15 40/8 40/9 40/11 40/14
  40/15 40/17 40/23 51/19 51/22
  52/5 55/9 60/11
further [2]  65/11 70/10

**G**

gain [1]  44/23
general [8]  16/18 37/10 37/10
  37/12 38/6 44/20 47/20 58/23

**G**

**general's [1]** 38/1
**generalized [5]** 40/12 40/22 51/15 51/17 51/25
**generally [2]** 58/12 69/15
**get [20]** 6/19 7/4 13/13 13/18 14/8 21/7 21/9 22/12 24/9 24/17 26/10 31/22 36/2 42/6 44/6 55/21 63/20 64/8 72/5 72/15
**getting [3]** 55/24 56/1 71/20
**GIBSON [1]** 1/14
**give [5]** 5/18 19/1 24/11 28/4 28/13 53/4 59/20 70/9 73/7
**given [9]** 11/3 39/23 40/1 44/15 45/1 47/13 48/20 65/14 72/17
**gives [2]** 13/22 21/11
**giving [1]** 8/7
**go [34]** 3/21 5/9 6/5 11/13 11/20 11/21 13/15 17/16 20/5 23/15 24/15 25/11 27/13 27/18 28/12 29/6 29/7 29/8 29/15 30/5 30/18 32/21 35/1 43/13 45/1 46/8 53/4 59/12 62/1 62/12 63/12 65/13 68/10 68/15
**gobbledygook [1]** 35/16
**goes [3]** 30/15 64/18 65/1
**going [51]** 5/9 7/7 7/16 7/22 12/3 12/19 14/23 15/16 15/17 15/19 15/25 24/8 24/15 26/4 31/3 31/14 32/1 33/4 34/17 34/23 34/24 36/25 36/25 37/6 37/8 37/18 41/25 43/4 44/18 48/23 49/1 49/3 49/3 49/6 49/16 49/20 49/20 54/16 55/19 59/22 66/9 66/25 67/24 68/14 68/15 68/21 69/2 69/3 71/4 71/5 73/4
**gone [1]** 11/16
**good [11]** 3/7 3/9 3/10 3/12 3/13 3/15 3/16 3/19 9/19 29/2 29/11
**got [3]** 25/1 28/11 44/5
**government [38]** 4/20 8/3 8/12 8/18 11/4 11/18 12/11 12/24 13/1 13/6 15/13 15/24 16/3 16/8 17/12 21/9 22/2 22/17 23/7 26/11 28/1 28/22 29/12 40/14 41/5 42/7 46/1 57/19 61/14 61/15 61/19 61/20 66/4 66/8 66/10 67/9 70/2 74/2
**government's [7]** 8/18 16/7 16/15 20/5 20/9 22/21 64/2
**government-funded [1]** 12/11
**grant [2]** 17/15 29/6
**granted [1]** 12/9
**grants [2]** 17/13 61/19
**great [5]** 14/15 26/3 39/13 59/13 73/23
**greater [2]** 63/17 69/17
**grievance [4]** 40/12 40/22 51/18 52/1
**ground [1]** 29/3
**grounded [1]** 51/17
**grounds [1]** 57/9
**group [4]** 45/22 53/2 59/15 66/2
**groups [3]** 12/9 12/20 26/1
**guess [5]** 8/5 10/12 31/11 36/2 36/24
**guidance [4]** 70/1 70/4 70/4 70/5

**H**

**had [15]** 11/17 17/6 17/8 17/11 25/20 33/9 35/12 37/21 38/15 38/20 45/17 54/14 54/15 56/5 57/12
**hallways [1]** 45/22
**hand [1]** 63/8
**hands [2]** 13/18 63/20
**happen [10]** 9/20 35/23 41/23 41/25 53/21 53/23 66/21 66/25 68/21 73/17
**happened [5]** 22/3 31/1 53/22 66/19 68/20
**happening [2]** 54/10 54/12

**happens [3]** 15/4 24/10 69/19
**happy [1]** 72/2
**hard [4]** 18/2 63/20 67/7 67/7 70/12 71/25 73/11
**harder [1]** 71/22
**harm [13]** 9/18 19/18 22/24 53/20 53/23 60/25 61/3 61/5 61/10 61/11 72/5 72/5 72/6
**harms [9]** 6/4 8/9 8/10 9/10 11/12 54/19 55/19 56/11 57/6
**has [72]** 4/7 4/23 5/4 7/15 7/19 8/3 8/23 9/5 9/6 9/18 11/1 11/3 15/6 16/3 16/8 18/14 19/17 19/18 19/20 20/20 20/20 21/4 21/19 21/22 21/24 22/3 22/9 23/2 23/8 26/5 26/22 28/15 29/1 29/10 29/12 29/21 33/3 33/8 33/21 33/22 34/10 36/5 36/9 39/8 43/8 43/16 45/8 50/5 50/9 53/20 53/22 53/25 54/25 55/4 55/5 55/6 55/22 56/16 57/13 57/19 58/10 61/7 61/8 63/5 64/12 64/21 66/11 67/10 67/13 67/14 71/3 73/19
**hasn't [1]** 31/1
**have [147]**
**haven't [4]** 28/10 35/12 39/23 57/23
**Havens [3]** 65/7 65/10 65/20
**Havens-type [1]** 65/10
**having [14]** 8/19 10/19 18/19 21/11 24/5 24/6 32/1 56/2 56/6 56/8 69/10 71/12 71/18 72/4
**he [2]** 34/20 37/7
**head [3]** 41/2 49/13 51/10
**hear [3]** 11/25 26/16 28/12
**heard [6]** 4/19 31/24 36/4 48/13 53/16 55/7
**hearing [7]** 1/10 25/15 55/25 70/16 71/18 72/25 73/8
**hearings [1]** 42/25
**held [1]** 32/9
**help [7]** 18/7 42/12 44/7 52/10 52/23 69/8 70/13
**helped [2]** 54/25 54/25
**helpful [4]** 25/17 69/25 70/1 70/12
**helpfully [1]** 25/14
**helping [1]** 26/3
**her [1]** 26/24
**here [125]**
**high [3]** 32/12 33/12 51/20
**highlight [5]** 47/4 48/9 51/19 52/10 52/25
**highlighted [3]** 32/18 34/5 44/21
**him [4]** 34/20 34/22 35/2 56/7
**hinge [1]** 38/24
**Hippocratic [3]** 65/9 65/11 65/21
**historically [4]** 12/14 26/5 26/9 57/5
**history [2]** 13/4 31/25
**hold [4]** 27/11 34/17 55/10 55/18
**holding [2]** 34/20 55/23
**Honor [49]** 3/7 3/10 3/16 3/23 9/9 10/4 12/18 13/8 16/3 17/1 18/17 20/10 22/5 23/23 24/7 24/19 25/13 25/18 28/15 29/17 34/5 34/8 35/4 35/8 35/20 36/16 37/20 38/9 38/17 40/5 42/1 44/10 46/12 47/24 50/13 53/6 53/15 53/17 54/6 54/9 56/4 57/11 58/15 72/2 72/13 73/10 73/12 74/9 74/12
**HONORABLE [1]** 1/10
**hook [1]** 41/14
**hopefully [1]** 71/19
**host [1]** 62/7
**hotline [1]** 44/4
**how [27]** 5/19 6/23 7/24 8/21 8/22 16/18 18/12 20/30/7 36/21 38/17 40/22 44/25 49/18 49/22 51/18 52/1 56/16 56/17 56/17 58/22 59/12 59/22 69/14 71/17 73/4 73/24

**however [2]** 21/6 64/11
**HssH [2]**
**Human [1]** 23/20
**hurdle [1]** 64/8
**hypothetical [1]** 55/9

**I**

**I'd [1]** 65/19
**I'm [7]** 24/25 27/5 27/11 27/13 43/18 53/13 73/13
**ICE [19]** 4/12 4/22 5/1 9/21 26/18 26/25 42/14 43/9 43/16 44/11 44/13 44/15 44/19 47/6 47/10 47/17 58/20 59/13 66/21
**idea [6]** 7/20 43/3 44/18 47/12 48/25 73/1
**identified [2]** 48/8 70/11
**identify [1]** 5/19
**III [2]** 9/15 64/21
**illegal [2]** 9/7 22/13
**illegally [5]** 10/6 10/7 10/9 16/3 16/13
**imagine [1]** 72/13
**immediate [1]** 61/10
**immediately [3]** 5/3 7/2 57/22
**immigrant [4]** 1/3 1/17 3/3 57/21
**immigration [24]** 9/2 10/18 18/20 21/3 21/3 26/4 42/11 42/14 42/22 47/6 47/8 47/18 52/10 52/23 52/24 54/25 54/25 56/1 56/2 58/23 59/2 59/11 66/3 71/11
**imminent [3]** 61/11 68/25 74/5
**imminently [1]** 9/20
**immunity [2]** 32/14 61/23
**impact [1]** 68/4
**impacted [1]** 6/7
**implemented [1]** 49/15
**implementing [1]** 50/3
**implicated [1]** 52/12
**implicates [2]** 51/13 56/16
**implicitly [1]** 29/5
**implied [2]** 21/17 61/25
**impliedly [1]** 32/15
**importance [1]** 47/3
**important [12]** 4/8 9/2 18/19 18/23 34/3 53/18 55/2 55/25 64/20 67/7 69/5 72/7
**importantly [10]** 31/16 32/12 33/12 35/22 36/19 38/10 38/23 40/21 45/1 50/17
**impose [1]** 60/9
**imposing [1]** 60/16
**Impoundment [1]** 51/23
**improperly [2]** 11/14 11/16
**inability [1]** 44/19
**inaccurate [1]** 45/13
**incident [1]** 67/19
**include [2]** 70/3 70/7
**included [4]** 17/8 37/11 69/13 69/15
**includes [3]** 52/15 60/14 69/7
**including [3]** 9/20 26/21 72/10
**incorporated [1]** 31/12
**incur [2]** 72/4 72/6
**independent [11]** 5/22 10/11 10/24 12/1 13/23 14/21 14/22 15/1 15/4 16/7 16/7
**indicate [2]** 31/19 68/8
**indicated [2]** 65/23 69/4
**indicates [4]** 28/22 39/22 67/12 68/11
**indication [1]** 4/18 5/21 8/15 49/10
**indications [1]** 68/20
**indicia [1]** 36/8
**indirectly [1]** 63/23
**indisputably [1]** 32/21
**indistinguishable [1]** 49/3
**individual [3]** 19/20 22/19 49/12
**individuals [1]** 12/9
**inference [2]** 36/15 36/17
**inform [1]** 5/18

**I**

information [21]  11/15 12/25
25/18 26/10 27/1 27/2 45/9 45/10
45/13 46/9 47/1 47/9 47/14 55/24
55/25 58/21 58/23 67/6 69/18
71/12 71/13
informed [4]  5/16 10/18 37/15
37/17
informing [1]  47/11
infringe [1]  57/15
infringed [1]  11/14
infringement [1]  9/25
initial [4]  6/22 26/21 26/24 27/8
Initiative [1]  53/2
injunction [15]  27/8 32/19 47/25
58/18 60/10 62/1 61/4 61/6 61/11
70/16 70/18 70/19 70/23 71/2
71/19
injunctive [9]  9/11 16/25 24/1
24/1 24/2 54/22 56/8 57/7 60/20
injured [1]  63/22
injuries [3]  10/10 13/22 13/23
injury [10]  9/15 9/15 42/6 42/10
65/18 66/24 67/23 68/1 68/18 74/6
insert [1]  27/20
instance [1]  62/19
instead [6]  20/23 31/2 32/22
34/11 37/16 62/1
institute [1]  32/2
instituted [1]  33/8
insufficient [1]  58/21
intend [3]  5/5 53/24 55/15
intended [2]  53/19 55/14
interest [9]  9/4 19/13 19/19
51/15 61/2 64/10 64/12 64/13 71/4
interested [4]  13/2 17/1 17/3
24/3
interesting [1]  67/7
interestingly [1]  8/17
interests [3]  18/18 18/18 19/15
interfere [1]  68/5
internal [1]  40/2
interruption [1]  9/21
intricacies [1]  31/15
intuition [1]  45/5
invitation [1]  72/11
invocation [1]  58/7
invoke [1]  40/7
invoking [1]  33/12
involved [1]  56/4
involvement [1]  38/5
involves [1]  51/10
involving [1]  40/9
irreparable [9]  22/24 60/24 61/3
61/5 61/10 66/24 67/23 68/1 68/19
is [486]
is still [1]  17/17
is what [1]  36/25
isn't [3]  10/1 36/14 57/19
isolated [1]  46/1
issuance [3]  61/1 61/4 61/9
issue [27]  6/4 13/15 13/15 17/2
34/10 34/11 36/20 41/6 42/11
46/15 46/25 58/19 58/20 59/16
61/6 61/12 62/5 63/3 63/4 63/8
63/21 65/3 65/5 65/22 65/25 68/17
71/3
issued [3]  5/5 26/19 37/3
issues [13]  25/10 39/12 42/3
58/16 62/7 62/8 62/8 62/9 63/11
69/5 69/18 70/10 70/14
it [230]
it affirms [1]  17/18
its [7]  8/19 19/18 40/23 51/18
61/1 63/15 67/9
its discretion [1]  40/23
itself [4]  12/1 13/22 37/3 63/25

**J**

January [1]  9/19
JMD [6]  37/3 38/8 38/9 38/10

38/15 39/25
Job [1]  30/2
join [1]  30/2
joined [1]  3/18
joins [1]  29/13
joint [1]  72/23
judge [4]  1/11 14/1 23/17 41/1
judges [2]  55/1 56/2
judgment [5]  70/24 71/3 71/7
71/20 72/10
judicial [1]  62/24
jurisdiction [16]  7/15 13/16 17/2
17/17 20/22 22/12 28/24 29/1
31/21 32/5 32/15 48/13 56/7 61/21
63/2 64/7
jurisdictional [10]  32/20 32/25
33/5 33/14 36/1 38/25 61/15 62/8
62/9 64/8
just [65]  4/11 4/24 5/22 6/4 6/5
7/17 7/18 7/25 8/3 13/3 15/4 17/9
18/6 22/8 24/23 27/5 27/18 29/14
30/25 31/5 31/25 32/6 32/8 32/25
33/12 33/12 35/13 36/3 36/7 36/9
36/15 36/25 37/11 37/13 37/16
38/13 40/12 40/20 41/7 44/12 45/3
45/8 45/9 45/13 45/21 45/25 46/13
47/21 48/3 48/7 48/13 48/19 50/13
51/6 51/17 51/22 53/8 53/16 55/7
55/12 56/4 58/17 60/9 70/23 72/21
just circumvents [1]  32/25
JUSTICE [8]  1/7 2/3 18/5 21/19
36/5 52/5 55/8 60/10

**K**

keep [3]  14/5 27/2 27/3
Kelly [1]  26/22
kind [2]  54/2 55/3
kindly [1]  21/23
know [39]  3/25 4/21 6/17 6/19
6/23 8/1 8/9 8/10 8/17 12/8 12/21
23/14 24/5 24/23 25/15 33/3 37/6
42/19 43/21 45/8 47/9 50/16 50/18
51/6 53/21 53/22 53/25 54/11
54/13 55/1 59/15 59/22 60/2 65/13
66/25 68/21 70/3 71/23 73/4
knowledge [1]  9/3

**L**

label [1]  33/19
lack [7]  14/2 14/4 14/9 14/11
14/16 17/12 42/14
lacked [2]  28/24 61/21
language [6]  15/6 28/21 48/18
54/4 54/5 54/7
large [2]  22/18 68/15
larger [1]  53/3
last [9]  3/25 4/14 6/2 24/23
26/17 53/25 55/9 68/20 73/4
late [1]  73/7
later [1]  26/23
Laura [3]  1/13 3/7 59/10
law [6]  9/12 20/11 51/10 52/5
63/1 64/15
lawfulness [2]  35/25 41/21
Lawrence [1]  1/14
lawyer [2]  44/6 46/9
lawyers [1]  44/7
leads [1]  49/19 67/23
leaning [1]  42/10
learn [1]  15/10
learned [2]  4/4 4/11 4/25
least [23]  7/16 10/13 11/25 18/3
20/20 21/25 22/15 24/1 32/19
44/20 46/25 47/14 49/25 52/3 52/9
53/17 54/15 63/11 65/12 65/19
65/24 68/7 68/11
leave [3]  19/5 57/22 70/16
leaves [1]  49/17
left [3]  36/22 40/11 48/7
legal [23]  4/9 40/15 41/14 41/17
43/17 43/19 44/12 44/25 45/11
46/6 46/7 47/5 47/7 47/7 52/13

52/19 52/21 52/24 53/2 59/2 60/11
70/22 72/6
legally [1]  60/16
length [1]  59/13
lengthy [1]  49/2
less [3]  19/22 67/13 72/6
let [9]  24/9 28/12 33/5 43/23
53/4 59/21 68/10 68/15 70/15
let's [1]  23/18
letter [1]  56/22
letters [1]  52/19
level [5]  32/12 33/12 46/4 51/20
64/12
lied [2]  34/25 48/17
lies [1]  22/22
life [1]  14/11
lift [1]  14/10
light [2]  6/16 62/9
like [38]  5/17 5/20 8/22 11/7
18/13 19/20 22/10 22/17 26/6 26/9
31/24 33/6 34/13 35/23 35/24 36/9
36/12 36/15 44/23 46/15 46/17
47/9 48/23 49/1 49/3 49/5 50/11
51/22 51/25 55/17 56/19 56/20
57/23 63/10 69/6 70/9 71/13 72/16
likelihood [1]  64/23
likely [8]  4/3 8/9 19/2 28/23
60/23 60/24 61/20 68/25
limit [1]  57/13
limitation [1]  26/8
limitations [1]  44/25
limited [2]  61/23 63/19
limits [2]  23/24 57/14
LINDSAY [3]  2/7 75/3 75/12
line [5]  13/13 17/18 24/6 24/14
62/22
list [1]  28/11
listeners [1]  10/22
literature [1]  6/3
litigated [1]  17/17
litigation [1]  61/13
little [8]  5/12 8/3 18/2 19/22
33/2 37/13 65/4 73/7
live [2]  13/19 53/19
LLP [1]  1/14
local [1]  44/16
lodging [1]  40/22
logical [2]  14/4 36/14
long [3]  20/20 28/11 73/4
longer [2]  5/15 45/11
look [9]  24/11 25/5 34/13 46/9
48/23 49/1 49/3 49/6 59/1
looking [3]  20/17 27/12 49/17
LOP [39]  4/15 5/2 5/9 5/10 6/5
7/19 8/23 8/25 9/24 10/1 10/14
12/1 12/4 14/22 14/23 18/19 21/20
21/21 26/2 26/15 26/16 26/19 27/1
34/13 34/16 36/6 36/9 36/13 36/15
42/11 52/6 52/10 52/15 53/3 58/9
58/17 59/6 59/16 69/15
lose [2]  29/11 72/7
loss [2]  64/19 68/3
lost [3]  59/3 59/6 59/7
lot [3]  5/13 8/17 43/21
lots [2]  64/13 64/13
love [1]  25/16
lump [1]  52/11
lunch [1]  55/11

**M**

made [20]  7/18 12/3 37/9 37/22
38/1 38/5 38/6 38/18 39/5 39/8
39/14 40/4 45/11 49/22 49/22 50/5
50/21 67/13 69/8 69/10
Maine [6]  24/21 24/25 24/25 25/2
25/3 25/12
make [14]  5/16 11/7 12/12 24/9
27/1 27/5 29/2 36/20 46/2 47/2
52/8 57/6 72/11 72/24
maker [1]  38/3
makes [7]  15/15 15/21 22/8 36/12
47/23 63/14 70/21

**M**

**making [4]** 10/17 38/24 38/25 61/6
**mandated [1]** 63/5
**mandatory [1]** 23/8
**manner [2]** 23/3 57/16
**many [4]** 13/1 14/7 25/25 44/25
**Maryland [1]** 23/20
**materials [2]** 59/4 59/8
**matter [13]** 3/25 29/1 29/21 44/20 45/4 45/10 46/13 46/16 51/16 52/3 57/25 61/15 75/5
**matters [2]** 47/2 71/10
**may [33]** 6/20 7/17 7/17 14/6 19/1 19/15 21/6 23/17 23/18 26/13 29/3 29/11 35/2 43/24 44/24 47/1 58/1 60/21 62/18 63/14 65/1 67/8 67/20 68/9 70/13 71/18 72/3 72/8 72/15 72/21 73/5 73/6 73/19
**May 14th [1]** 73/19
**maybe [6]** 7/12 8/1 21/17 26/15 36/3 66/6
**me [54]** 4/22 5/8 6/14 6/17 7/10 7/16 8/7 12/23 13/19 15/11 19/17 19/18 23/1 23/15 24/18 25/2 25/10 27/6 28/12 31/23 33/6 34/7 34/16 34/22 34/24 36/12 36/14 39/13 39/23 41/24 44/3 44/3 44/4 49/19 53/4 55/16 55/17 57/10 57/17 58/3 59/20 63/17 65/13 66/7 66/14 66/16 66/20 67/23 68/24 69/8 69/22 70/1 72/20 72/23
**mean [19]** 6/10 7/24 10/12 14/3 32/13 33/6 35/16 35/17 35/23 36/17 37/4 39/2 39/19 42/13 48/18 49/11 49/11 49/13 51/19
**means [3]** 7/25 42/12 55/23
**mechanism [2]** 51/21 56/19
**Medicine [3]** 65/10 65/12 65/21
**meet [5]** 15/9 21/2 26/16 43/1 43/2
**meeting [4]** 6/5 15/18 15/25 21/14
**meetings [2]** 5/10 7/2
**Megapulse [2]** 33/15 56/3
**member [1]** 42/17
**members [4]** 19/16 42/24 44/25 47/20
**memo [6]** 22/5 37/8 37/12 38/2 38/5 58/13
**memoranda [1]** 40/3
**mention [1]** 19/12
**mentioned [6]** 18/11 18/12 26/14 56/4 57/8 58/24
**mentions [1]** 18/15
**mere [1]** 63/9
**merits [9]** 48/3 48/4 60/24 61/15 62/8 64/9 65/15 68/22 70/22
**met [2]** 28/25 30/20
**method [1]** 57/5
**Microphone [1]** 73/13
**might [12]** 11/16 18/14 33/10 43/14 44/14 44/20 44/24 66/3 67/16 68/7 69/22 71/6
**million [1]** 52/9
**mind [5]** 28/12 49/10 65/15 70/13 71/16
**minimum [2]** 50/5 50/11
**minute [4]** 23/12 24/9 37/21 70/12
**minutes [1]** 19/20
**mischaracterization [1]** 33/2
**misleading [2]** 15/24 16/2
**mission [1]** 5/16
**missions [3]** 20/18 54/23 57/3
**moment [7]** 7/9 10/3 18/2 31/6 63/13 65/5 68/24
**monetary [1]** 55/3
**money [15]** 36/21 36/21 41/7 41/10 41/11 44/4 48/12 52/1 55/4 55/5 55/6 55/10 55/18 61/22 61/24
**month [3]** 3/25 25/15 54/9
**more [16]** 6/11 8/3 25/18 34/13 39/24 42/25 46/15 56/2 65/4 65/8

66/4 66/14 69/12 69/15 73/7 74/6
**morning [4]** 3/3 3/4 24/21 54/4
**moss [5]** 28/18 53/21 54/21 73/23
**MOSS [1]** 1/10
**most [4]** 25/8 41/7 42/9 46/21
**mostly [1]** 8/8
**motion [14]** 1/10 3/21 25/24 27/8 28/18 28/19 58/18 60/1 60/1 61/14 69/3 70/18 70/19 71/19
**motions [1]** 70/23
**motivated [1]** 33/7
**movant [1]** 60/23
**move [1]** 32/20
**moving [1]** 34/13
**Mr [3]** 24/17 28/12 72/12
**Mr. [1]** 3/22
**Mr. Sturges [1]** 3/22
**Ms [1]** 72/1
**Ms. [1]** 53/5
**Ms. Sturges a [1]** 53/5
**much [10]** 18/6 18/25 26/19 58/4 59/23 63/1 65/6 67/13 71/1 71/21
**multiple [1]** 32/1
**must [1]** 62/1
**my [28]** 4/24 6/10 12/19 13/18 19/19 25/21 27/13 30/7 30/11 31/9 31/22 31/24 32/6 33/7 37/13 41/2 44/10 46/15 51/10 53/7 53/11 63/17 63/20 64/11 65/15 70/13 70/25 72/9

**N**

**name [1]** 3/6
**namely [1]** 9/12
**nature [3]** 17/21 19/24 69/2
**necessarily [6]** 9/24 11/10 13/5 13/10 22/21 30/21
**need [10]** 35/2 40/20 43/12 55/25 57/20 65/13 67/14 68/1 71/9 72/17
**needed [1]** 37/1
**needs [5]** 34/12 40/14 48/13 48/22 74/6
**negatives [1]** 14/7
**neither [1]** 61/5
**never [2]** 31/23 44/8
**next [7]** 1/23 39/10 61/13 68/1 68/13 69/1 69/19
**no [35]** 1/4 4/18 5/15 6/9 18/12 20/2 24/25 29/16 37/1 37/19 40/13 41/12 42/12 43/4 43/21 43/21 44/5 45/6 45/11 46/5 47/13 49/8 49/8 49/10 49/15 50/3 50/3 50/8 51/23 56/6 56/17 56/18 67/20 68/13 70/4
**non [3]** 37/23 45/6 61/4
**non-privileged [1]** 37/23
**non-public [1]** 45/6
**noncitizens [6]** 21/3 54/24 55/24 58/14 60/5 72/7
**nondetained [1]** 60/4
**none [2]** 27/21 33/21
**nonetheless [1]** 19/13
**nonprofit [1]** 60/2
**not [146]**
**note [2]** 62/15 64/11
**nothing [3]** 39/24 55/2 67/12
**notice [8]** 4/4 8/12 8/12 22/7 28/3 37/23 38/21 39/22
**notion [1]** 19/20
**now [12]** 7/24 10/1 10/7 11/13 24/15 26/22 35/13 35/20 47/22 55/7 56/17 72/21
**number [3]** 3/2 40/10 69/4
**NW [4]** 1/17 1/20 2/4 2/8

**O**

**obligate [1]** 35/14
**obligated [5]** 36/20 36/21 55/5 55/7 55/8
**obligation [9]** 8/19 8/19 16/9 16/9 16/10 60/9 60/12 60/6 60/6
**obligations [3]** 21/14 28/5 60/6
**obtain [2]** 46/6 60/22

**obtaining [1]** 71/12
**obviously [4]** 16/13 17/17 19/23 28/23 53/9 66/23 69/24 71/14
**Occasionally [1]** 7/3
**occur [4]** 4/19 4/21 8/10 11/13
**occurred [2]** 7/15 9/18
**off [4]** 7/6 28/17 41/2 51/10
**offer [2]** 43/13 69/22
**office [1]** 38/1
**officer [4]** 29/22 34/15 53/11 59/14
**Official [3]** 2/7 75/3 75/13
**often [1]** 12/22
**oftentimes [1]** 19/9
**oh [4]** 6/18 25/1 25/23 33/3
**okay [16]** 7/8 13/2 13/12 23/13 25/1 25/5 27/15 28/8 30/14 34/7 34/20 34/21 48/15 53/4 73/8 73/24
**once [4]** 4/16 48/1 58/17 70/24
**one [35]** 7/17 7/21 9/24 10/10 19/7 20/23 23/18 26/19 27/6 27/6 30/22 31/17 35/7 37/19 39/6 42/6 44/5 45/5 46/6 48/24 49/1 50/3 51/6 54/19 56/10 62/21 64/5 65/11 68/11 68/13 69/20 69/21 70/5 71/4 73/19
**ones [3]** 40/20 51/14 65/2
**ongoing [1]** 39/9
**only [26]** 4/19 11/19 11/21 12/22 12/23 12/25 15/8 16/2 20/16 26/10 29/15 29/15 29/23 32/3 39/7 40/15 41/17 44/3 46/2 49/14 49/14 51/16 56/22 60/21 64/24 65/2
**open [4]** 70/21 71/8 71/15 71/17
**operate [2]** 20/19 60/3
**operating [1]** 10/3
**operation [1]** 54/7
**operative [1]** 39/16
**opinion [2]** 22/16 23/17
**opportunity [6]** 5/17 17/7 25/16 25/21 70/10 72/3
**opposes [1]** 61/14
**option [1]** 57/22
**order [30]** 4/1 4/12 4/22 4/23 5/1 6/2 6/7 6/23 8/8 9/20 11/11 12/4 12/12 13/4 13/21 14/18 14/19 37/21 41/7 41/9 44/23 49/5 60/2 60/7 61/16 61/21 62/10 66/20 67/4 70/12
**ordered [1]** 5/1
**ordering [2]** 5/1 41/5
**orders [3]** 7/11 39/16 61/24
**ordinarily [1]** 48/24
**ordinary [1]** 12/8
**organization [2]** 59/2 68/4
**organizational [2]** 5/13 5/16
**organizations [10]** 10/16 10/21 20/18 26/6 44/13 45/1 58/22 60/3 64/20 64/25
**organized [2]** 10/16 18/21
**orientation [9]** 34/9 45/11 47/5 52/13 52/19 52/21 52/24 53/2 60/11
**orientations [1]** 45/22
**original [2]** 27/12 58/18
**other [32]** 4/15 6/6 9/25 10/6 10/17 11/15 13/17 16/21 27/14 28/9 29/12 31/18 32/16 37/2 37/19 37/22 42/16 43/11 46/1 49/9 52/11 52/15 54/17 56/18 57/5 59/17 63/8 64/5 66/2 67/17 68/11 71/5
**others [1]** 68/8
**otherwise [11]** 11/4 11/5 22/13 32/9 32/21 40/12 45/17 47/20 47/24 62/17 72/22
**ought [2]** 48/25 63/12
**our [44]** 4/14 5/18 6/1 6/8 6/18 9/2 10/7 10/16 10/23 11/3 11/6 11/9 11/12 11/12 11/14 12/5 15/3 16/24 17/9 17/19 17/20 20/3 20/11 24/20 25/24 25/25 26/3 26/20 27/8 31/10 31/18 38/21 38/24 42/3

**O**

our... **[10]**   42/20 42/20 42/21 48/9 53/1 53/8 54/23 55/2 57/6 68/15
out **[19]**   7/2 16/17 25/24 27/4 29/14 32/24 33/4 37/11 39/10 39/13 44/16 46/8 48/1 48/2 52/11 54/15 62/11 68/14 72/7
outgrowth **[1]**   14/4
outlined **[1]**   31/5
outlook **[1]**   61/12
outset **[1]**   64/6
outside **[3]**   12/23 17/14 47/5
over **[9]**   7/23 7/25 18/7 30/6 61/12 61/13 64/8 68/1 69/19
overstated **[1]**   48/16
own **[3]**   5/19 15/5 31/22

**P**

p.m **[4]**   1/7 24/13 59/24 74/14
page **[3]**   1/23 27/9 59/1
pagination **[2]**   27/14 27/14
paid **[1]**   3/24
palatable **[1]**   27/1
pamphlets **[1]**   5/19
panel **[1]**   62/2
paragraph **[7]**   26/21 26/24 27/9 27/13 58/17 59/3 59/11
paralegals **[1]**   43/20
parallel **[1]**   56/5
part **[2]**   10/14 18/20
participants **[2]**   45/17 47/8
participate **[2]**   29/11 57/20
participating **[1]**   29/10
participation **[1]**   29/9
particular **[17]**   13/21 15/12 18/12 18/16 19/12 23/15 26/2 34/12 35/9 42/17 43/12 57/4 57/23 58/13 58/23 63/8 67/15
particularly **[2]**   42/3 46/19
parties **[1]**   71/17
Pass **[1]**   34/21
passthrough **[1]**   32/8
past **[1]**   12/15
pause **[4]**   24/8 49/6 54/1 54/1
pay **[8]**   44/4 48/12 55/3 55/4 55/11 55/12 55/12 61/24
payment **[1]**   61/22
pending **[2]**   54/8 59/25
people **[27]**   5/16 5/18 6/15 7/1 10/2 10/12 10/17 11/20 12/12 12/15 13/4 15/18 15/24 19/11 26/11 39/9 43/21 43/24 44/5 44/5 45/25 46/8 46/24 67/4 69/20 70/7 71/11
per **[3]**   61/16 66/24 68/18
percent **[1]**   68/6
Perfect **[1]**   25/6
perform **[2]**   41/6 47/18
performance **[4]**   20/23 21/1 21/8 48/12
perhaps **[7]**   10/21 23/21 36/2 39/24 44/21 48/16 50/7
period **[3]**   49/7 50/6 61/12
permitted **[1]**   12/24
permitting **[1]**   25/10
person **[1]**   19/21
personal **[2]**   40/13 48/5
perverse **[1]**   32/20
PI **[1]**   71/5
pick **[1]**   72/21
piece **[2]**   13/15 16/21
place **[10]**   5/15 10/1 14/14 15/12 16/1 21/11 50/3 50/4 50/10 50/10
places **[1]**   58/16
plaintiff **[11]**   1/4 1/11 4/25 8/4 12/6 20/18 23/7 40/19 56/7 56/9 67/17
plaintiff's **[2]**   3/20 63/22
plaintiffs **[53]**   3/8 3/11 3/14 4/15 5/14 6/2 6/13 6/18 8/25

12/21 17/11 18/21 20/3 22/14 29/14 30/20 31/16 32/2 32/13 33/18 33/21 39/12 39/20 40/22 41/8 41/12 41/16 42/10 45/14 48/5 50/16 51/14 52/2 52/20 53/1 54/18 55/2 57/2 57/3 60/2 60/6 60/22 64/16 64/17 65/7 67/25 69/21 72/16
plaintiffs' **[7]**   3/6 22/22 28/19 42/4 51/22 60/1 61/14
plan **[2]**   50/3 50/9
please **[3]**   3/5 17/4 73/13
podium **[1]**   3/5
point **[19]**   6/13 12/3 14/8 19/12 20/14 23/1 25/9 25/24 29/2 29/16 34/4 45/10 50/8 52/16 55/12 55/25 66/17 67/22 68/13
points **[1]**   53/16
policy **[2]**   11/8 22/8
portion **[2]**   68/15 72/10
posit **[1]**   64/14
position **[2]**   13/11 72/4
possible **[4]**   31/18 37/4 65/19 66/6
post **[2]**   14/13 45/21
poster **[1]**   26/15
posters **[22]**   4/13 4/23 5/2 5/10 6/3 9/21 9/23 10/2 14/6 14/13 15/3 15/9 15/15 15/24 16/13 26/9 26/16 26/17 27/2 27/3 45/9 47/10
posture **[2]**   22/22 48/1
potentially **[4]**   26/12 30/22 64/18 66/14
power **[2]**   55/23 69/21
powers **[2]**   21/10 55/21
practical **[1]**   45/10
precede **[1]**   72/18
preclude **[1]**   29/5
precluding **[1]**   10/19
prejudice **[1]**   74/5
preliminary **[19]**   24/1 27/8 32/19 40/25 47/25 58/18 60/20 60/25 61/1 61/4 61/5 61/11 70/16 70/18 70/19 70/22 70/24 71/2 71/19
premise **[3]**   21/18 22/1 34/5
premised **[1]**   60/15
present **[2]**   57/18 63/16
presentations **[2]**   59/15 59/16
presents **[3]**   62/6 68/17 69/5
preservation **[1]**   54/23
Presumably **[1]**   38/8
presumption **[2]**   62/16 62/22
pretty **[3]**   16/16 29/2 32/20
prevent **[1]**   46/7
previous **[1]**   6/7
prime **[18]**   4/5 20/6 20/6 20/10 20/11 29/7 29/9 29/10 29/11 29/12 29/13 29/18 29/24 31/13 32/10 32/24 33/3 33/8
principle **[1]**   57/24
printer **[1]**   59/8
private **[7]**   25/22 26/1 26/1 26/2 26/5 51/24 65/1
privately **[2]**   12/11 12/20
privately-funded **[1]**   12/11
privileged **[1]**   37/23
privity **[1]**   17/12
pro **[6]**   43/2 58/24 59/3 59/4 59/7 60/4
probably **[7]**   6/17 29/10 39/11 39/13 55/17 70/21 73/23
problem **[12]**   24/5 24/6 36/7 36/14 40/15 41/8 50/25 57/1 57/18 58/8 73/15 73/15
problems **[1]**   35/7
procedurally **[1]**   17/10
Procedure **[1]**   62/15
procedures **[1]**   44/22
proceed **[7]**   7/24 29/25 30/5 40/20 59/22 69/14 71/17
proceeding **[1]**   33/9

proceedings **[10]**   10/18 21/4 32/1 55/21 72/6 73/24 74/2 74/11 74/14 75/5
process **[5]**   31/5 37/11 39/10 46/17 49/2
product **[1]**   6/14
production **[1]**   69/6
program **[73]**   4/16 5/2 5/2 5/9 5/22 7/11 7/18 7/20 7/23 7/25 8/2 10/1 10/3 10/7 10/8 10/11 10/14 11/1 14/6 14/14 21/20 21/21 21/24 23/8 26/2 26/20 33/25 34/9 34/13 34/16 34/17 34/23 35/7 36/7 36/9 36/10 36/13 36/15 37/18 37/18 39/6 39/9 45/11 48/22 48/23 48/25 49/14 49/19 50/1 50/2 50/6 50/6 50/8 50/12 51/19 52/13 52/19 52/22 52/25 52/25 53/1 55/14 57/12 57/13 57/20 59/5 59/6 60/11 63/5 63/25 65/1 72/7
program-related **[1]**   5/2
programmatic **[1]**   38/18
programming **[1]**   54/2
programs **[67]**   2/4 4/7 4/9 6/4 6/6 7/3 8/13 8/14 8/16 8/22 8/24 8/25 9/1 9/5 9/24 11/10 11/14 11/16 12/4 12/5 12/22 14/20 14/22 14/24 14/25 15/1 15/2 15/3 15/7 16/4 16/9 16/11 16/13 16/17 16/19 16/22 18/19 22/6 22/7 22/18 26/2 28/2 34/5 35/21 42/12 45/17 47/5 50/17 52/9 52/15 53/19 53/24 54/3 54/8 54/8 54/19 56/16 57/2 58/9 58/17 58/20 59/15 59/17 60/4 60/7 60/9 68/7
prohibited **[1]**   54/1
prohibition **[1]**   5/24
project **[3]**   59/9 59/11 59/12
promised **[1]**   33/23
promising **[1]**   66/15
promptly **[2]**   63/9 71/21
prongs **[3]**   33/18 45/5 51/6
proof **[1]**   34/23
property **[4]**   18/3 18/15 19/25 64/12
proposed **[1]**   72/23
proposition **[2]**   45/19 67/17
protected **[1]**   11/2
protocols **[3]**   42/16 43/10 44/14
provide **[19]**   4/7 12/6 12/22 13/5 14/19 14/20 18/22 20/16 20/17 25/14 26/7 47/7 54/9 56/13 64/25 66/3 66/22 66/22 68/6
provided **[10]**   4/5 14/25 17/13 23/11 44/11 52/22 52/23 56/18 59/10 70/6
providers **[6]**   4/16 5/2 7/4 12/6 12/21 12/23
provides **[1]**   70/2
providing **[2]**   9/1 26/7
provision **[2]**   23/2 31/25
provisions **[1]**   63/7
public **[13]**   11/19 12/14 24/5 24/14 42/17 42/23 42/24 45/6 47/20 61/2 67/2 67/4 71/4
pull **[1]**   6/8
pulled **[1]**   7/2
purport **[1]**   31/14
purposes **[8]**   8/9 10/17 28/18 42/4 60/11 61/8 63/17 64/21
purse **[1]**   55/23
pursuant **[6]**   35/15 35/22 38/5 38/6 39/16 41/10
pursue **[2]**   19/14 71/10
pursued **[1]**   31/8
push **[1]**   6/11
put **[7]**   10/2 11/15 16/13 18/1 50/4 73/19 74/4
putting **[3]**   39/11 50/10 63/13

**Q**

qua **[1]**   61/4

## Q

**quasi [4]**  11/19 12/14 67/2 67/4
**quasi-public [1]**  11/19
**question [20]**  8/5 13/3 14/15 22/2
23/21 25/22 29/4 33/14 35/17 36/3
36/24 58/2 58/3 62/25 64/5 64/7
65/6 65/16 66/15 67/1
**questioning [3]**  13/13 23/12 64/11
**questions [14]**  7/21 17/16 28/9
28/11 28/16 42/2 48/19 62/18 64/8
67/7 67/8 67/8 70/13 71/22
**quick [2]**  3/24 54/13
**quickly [3]**  71/10 72/3 74/6
**quite [1]**  33/1
**quote [1]**  61/20

## R

**raise [1]**  63/15
**raised [1]**  42/2
**raises [1]**  48/19
**raising [3]**  30/3 41/13 54/20
**RANDOLPH [1]**  1/10
**rather [6]**  58/3 58/5 61/13 63/2
66/12 70/25
**rationale [2]**  49/23 69/9
**reached [2]**  41/2 62/2
**reaches [1]**  16/19
**react [1]**  6/24
**reaction [1]**  6/10
**read [3]**  6/9 23/15 68/2
**real [2]**  17/10 53/22
**realize [1]**  19/9
**really [18]**  3/23 18/22 21/17
22/11 22/22 26/3 34/2 37/4 40/20
41/17 42/4 42/5 42/8 48/1 48/18
49/13 66/25 68/21
**Realty [1]**  65/8
**reason [12]**  8/15 9/19 20/1 29/18
36/11 40/1 40/18 41/13 48/20 56/6
67/14 67/16
**reasonable [2]**  4/20 45/5
**reasons [6]**  29/11 30/22 33/5
40/10 41/17 48/8
**rebuttal [1]**  53/16
**recall [2]**  23/25 55/9
**receive [1]**  60/3
**recent [6]**  28/21 41/4 42/9 61/16
65/8 68/12
**recently [4]**  24/23 25/8 40/24
62/2
**Recess [2]**  24/13 59/24
**recipient [1]**  29/6
**recognized [4]**  4/7 8/23 18/14
18/19
**recognizing [1]**  8/19
**recollection [1]**  30/7
**record [29]**  3/6 30/24 36/17 37/15
37/19 37/22 38/25 39/3 39/21
39/24 49/8 49/21 57/18 58/16
63/19 64/4 66/1 66/18 67/12 67/20
69/7 69/11 69/16 69/17 70/3 70/8
71/16 72/18 75/5
**records [1]**  69/7
**redressability [3]**  41/8 41/12
57/1
**redressed [1]**  57/7
**refer [1]**  12/3
**reference [4]**  8/8 26/14 27/1
56/25
**referenced [1]**  9/20
**references [1]**  58/19
**referred [2]**  7/10 7/10
**reflected [2]**  37/2 48/9
**reflecting [2]**  40/3 69/8
**Regan [1]**  42/8
**regarding [1]**  59/13
**regardless [3]**  10/20 17/18 63/7
**regulation [1]**  51/9
**reinstate [3]**  14/3 14/17 14/18
**reiterate [1]**  45/8
**related [6]**  5/2 9/24 40/18 41/19

61/19 65/17
**relatedness [1]**  72-2
**relationship [7]**  10/15 10/15
43/20 43/25 44/8 44/12 46/20
**relatively [1]**  71/21
**relevant [9]**  23/24 25/14 27/21
31/25 33/10 38/22 61/7 63/18
69/11
**reliance [1]**  18/18
**relief [25]**  5/25 9/1 9/6 9/11
16/25 20/17 22/23 24/1 24/1 24/2
27/21 33/17 48/5 54/22 55/4 56/8
56/11 57/7 60/19 60/21 60/22
60/25 61/7 70/24 72/5
**relies [1]**  61/16
**rely [2]**  17/18 41/18
**relying [2]**  34/1 34/22
**remain [1]**  15/12
**remains [1]**  63/17
**remedies [3]**  31/12 54/17 54/19
**remedy [14]**  9/9 17/20 29/4 29/15
29/15 29/16 30/4 30/8 31/17 31/22
31/23 32/8 41/2 41/4
**remember [2]**  20/4 41/2
**remind [1]**  56/4
**removal [2]**  57/21 60/5
**remove [5]**  4/13 9/21 26/25 27/4
58/19
**removed [3]**  26/16 26/17 59/4
**removing [1]**  26/8
**renders [1]**  40/19
**renewed [5]**  3/20 17/8 25/24 48/1
60/1
**repeat [1]**  24/15
**replace [2]**  49/11 49/16
**replaced [1]**  63/10
**reply [1]**  28/13
**report [6]**  54/4 54/7 54/10 54/11
55/6 72/23
**reporter [5]**  2/7 2/7 55/17 75/3
75/13
**reports [1]**  34/24 52/19
**represent [6]**  35/20 38/4 38/19
44/2 44/2 46/3
**representation [2]**  34/22 46/13
**representative [2]**  15/10 47/19
**represented [3]**  43/8 43/24 47/15
**representing [4]**  8/25 26/11 34/16
53/8
**request [5]**  9/11 20/6 25/13 49/20
55/2
**requesting [3]**  23/3 26/25 27/22
**require [2]**  23/7 41/11
**required [3]**  32/21 52/5 68/10
**requirement [2]**  61/3 61/11
**requirements [2]**  25/11 44/24
**requires [2]**  29/20 58/1
**requiring [2]**  9/11 25/10
**rescinded [1]**  4/1
**research [1]**  70/14
**reserve [1]**  72/8
**resolution [1]**  60/13
**resolve [1]**  70/23
**resolved [1]**  28/19
**resources [2]**  23/21 47/7
**respect [18]**  4/22 4/23 16/16
43/22 46/10 46/14 49/16 61/10
63/11 64/6 65/22 66/22 67/1 67/6
68/22 69/14 69/15 69/18
**respectfully [2]**  21/23 53/17
**respond [1]**  53/5
**respondents [2]**  47/11 47/13
**responding [1]**  58/6
**response [4]**  27/20 37/21 42/1
47/5
**responsible [1]**  38/10
**restored [1]**  64/23
**restraining [1]**  60/1
**restrict [6]**  11/5 11/6 11/6 58/10
67/10 67/15
**restricted [3]**  6/3 12/7 58/12
**restricting [1]**  6/5

**restrictions [3]**  43/10 45/4 57/10
**rests [1]**  72/11
**result [3]**  42/13 64/22 68/16
**reverses [1]**  32/14
**review [9]**  27/22 29/5 39/4 40/9
48/11 54/2 54/8 54/16 62/24
**reviewability [2]**  62/17 62/23
**reviewed [1]**  62/19
**revisit [1]**  27/18
**right [65]**  3/20 6/25 7/8 8/21
11/4 11/25 12/2 13/8 15/1 15/2
15/3 16/20 18/4 18/8 18/11 18/15
18/24 19/20 19/25 20/25 21/12
22/4 22/11 22/13 24/14 25/4 25/22
26/5 27/25 28/5 28/15 30/17 30/17
33/16 33/20 35/13 36/4 36/18
38/12 38/14 38/16 39/11 40/8
41/25 42/6 44/17 45/24 51/16
51/24 52/2 54/7 56/9 56/17 58/4
59/18 59/20 66/14 66/23 67/3
67/10 68/23 72/8 72/12 74/10
74/13
**rights [34]**  1/3 1/17 3/3 5/17
5/18 5/19 9/25 10/8 10/19 10/21
10/23 11/9 11/12 12/12 15/11
16/24 17/19 17/23 18/2 19/9 19/21
20/2 27/25 42/16 45/3 47/9 47/11
47/16 56/1 59/11 59/15 59/15 60/5
67/6
**rise [4]**  11/3 13/22 19/1 64/12
**road [1]**  66/6
**Rojas [4]**  26/22 27/7 27/12 58/17
**room [2]**  2/9 45/23
**rooms [1]**  43/2
**RPR [1]**  75/12
**run [1]**  8/22
**running [4]**  8/24 9/1 9/5 68/5
**Rust [9]**  42/8 57/8 57/10 57/11
57/18 57/24 58/5 58/7 65/23

## S

**said [19]**  21/20 21/22 21/24 22/9
23/6 24/16 26/3 27/13 30/3 33/3
35/18 49/17 51/17 54/11 55/1 56/9
57/20 67/14 68/22
**sake [1]**  51/20
**Samantha [2]**  1/19 3/13
**same [10]**  26/18 32/2 42/15 42/16
43/10 43/10 44/14 45/2 45/20
60/20
**sat [1]**  67/14
**satisfied [2]**  65/13 67/24
**saw [2]**  4/17 13/7
**say [35]**  4/22 7/18 7/21 12/1
12/16 14/9 15/9 15/13 15/24 16/12
16/15 18/5 18/11 18/24 20/5 20/22
23/16 36/10 37/1 37/16 39/19
39/20 44/1 46/4 49/13 50/1 50/4
50/14 51/1 55/11 63/1 69/23 71/6
72/13 73/3
**saying [21]**  5/10 5/12 5/13 5/14
6/18 10/1 10/8 11/11 13/25 15/11
15/18 19/17 33/23 33/25 37/6
37/12 40/14 49/5 49/18 54/7 68/3
**says [11]**  22/6 26/15 37/8 38/2
44/1 54/5 54/5 56/22 57/25 67/10
68/13
**scales [1]**  66/5
**scenarios [1]**  63/21
**schedule [7]**  69/6 71/15 71/16
71/24 71/25 72/22 72/23
**scheduled [1]**  73/5
**scheduling [1]**  44/23
**school [1]**  55/11
**scope [1]**  59/5
**scratcher [1]**  49/13
**se [4]**  59/4 60/4 66/24 68/18
**second [3]**  27/11 59/10 65/3
**security [2]**  44/14 67/16
**see [13]**  8/22 11/25 13/8 16/6
18/2 19/10 23/18 39/6 57/2 57/3
58/12 66/7 71/6

**S**

seek [5] 6/1 22/23 40/9 60/6 73/17

seeking [12] 10/11 20/15 21/1 21/1 21/2 21/4 21/8 54/22 54/22 55/3 56/9 56/11

seem [1] 72/11

seems [6] 39/13 57/17 58/3 63/6 63/6 63/10

seen [3] 32/4 56/17 65/25

Senate [1] 52/19

send [1] 37/12

sense [7] 11/19 15/15 15/21 18/4 70/21 72/11 72/24

sensitive [1] 67/11

sentence [1] 14/7

separate [3] 5/23 32/7 49/24

separation [2] 21/10 55/21

seriously [1] 53/12

serve [1] 61/2

services [11] 4/8 18/23 26/7 43/13 46/6 46/7 52/22 56/19 59/2 64/25 68/6

set [3] 12/16 69/6 70/12

sets [1] 69/9

setup [1] 43/8

sever [1] 46/5

several [2] 14/23 66/20

shall [2] 21/21 21/24

share [2] 67/6 71/13

she [3] 26/22 26/24 59/12

SHERRY [3] 2/7 73/3 75/12

Sherwood [4] 2/2 3/17 28/12 72/12

shift [1] 68/9

shifted [2] 8/1 8/3

short [3] 35/11 37/20 38/19

should [15] 8/24 9/4 13/15 14/21 15/14 16/1 17/24 47/4 54/2 55/18 62/12 62/18 62/23 69/15 70/6

show [3] 5/14 31/21 72/5

showing [7] 8/9 28/25 30/21 60/21 60/23 61/3 61/21

shown [1] 15/6

shows [1] 44/1

side [1] 71/5

sides [1] 8/1

signs [1] 43/22

similar [2] 22/17 62/3

similarly [1] 43/9

simply [15] 13/5 21/11 22/19 32/23 40/1 46/5 49/2 49/17 49/18 63/24 64/3 64/14 66/8 67/10 69/12

since [2] 24/24 38/20

sine [1] 61/4

single [1] 54/18

sit [1] 48/15

sitting [1] 15/17

situation [1] 26/13

Sixth [2] 46/21 46/25

skeptical [1] 65/23

skip [1] 30/6

slightly [1] 42/25

slow [1] 55/17

so [67] 3/21 5/8 6/4 7/5 7/15 8/4 9/9 9/21 11/1 11/9 14/9 16/6 17/5 17/15 18/23 19/21 26/4 29/14 29/24 32/3 32/6 34/8 34/20 36/8 36/17 37/8 38/5 39/13 41/12 42/20 43/3 43/7 43/17 43/25 44/8 46/24 47/11 50/4 50/24 51/24 52/12 53/18 55/1 57/23 58/2 59/10 59/23 59/25 61/7 61/25 63/1 64/5 64/25 68/2 69/2 70/3 71/7 71/14 71/23 72/5 72/8 72/14 72/19 73/13 73/18 73/24 74/4

some [56] 5/23 6/12 6/13 6/13 6/13 6/23 11/18 11/24 12/5 12/14 13/5 13/23 14/1 18/9 18/13 19/18 19/20 20/21 23/15 26/20 36/11 36/14 43/2 44/21 44/24 45/15 46/3 46/4 48/25 50/6 50/9 50/22 53/19

seek [5] ...

55/3 55/12 57/5 64/6 64/11 64/24 65/17 66/1 66/16 66/24 67/10 67/24 67/25 68/9 68/13 68/19 70/10 70/12 70/14 71/14 71/21 72/5 72/17 74/5

somebody [2] 8/24 50/10

somehow [2] 45/17 47/12

someone [11] 15/13 15/14 18/25 31/22 33/22 38/15 43/25 46/3 50/9 66/23 67/14

something [8] 13/16 13/19 19/23 19/24 33/22 49/19 56/12 71/14

somewhat [8] 18/15 19/8 48/16

somewhere [2] 23/19 66/6

soon [2] 5/6 24/10

sorry [7] 24/25 27/5 27/11 27/13 43/18 53/13 73/14

sort [7] 10/5 40/17 41/14 45/7 45/15 49/22 51/15

sorting [1] 62/11

sorts [1] 51/21

sought [2] 33/17 61/8

sounds [5] 22/17 33/6 46/15 50/11 56/19

source [4] 12/25 33/16 33/20 40/15

sovereign [2] 32/14 61/23

space [3] 58/24 59/3 59/7

spaces [1] 42/24

speak [8] 9/22 9/25 10/12 11/4 11/20 11/21 25/21 51/5

speak to [1] 9/22

speaks [1] 40/6

special [3] 45/16 45/16 62/2

specialized [1] 9/3

specific [13] 14/20 17/11 17/13 17/15 20/23 21/1 21/8 26/20 26/20 28/16 48/12 58/20 59/6

specifically [11] 4/8 8/23 16/21 17/5 22/5 22/7 23/4 30/9 41/6 50/14 54/1

speech [16] 11/2 11/5 11/6 12/7 12/11 12/11 42/7 57/11 57/23 57/25 58/9 58/10 58/13 58/14 66/5 66/9

spend [6] 40/14 40/23 41/7 41/10 51/18 55/8

spoken [1] 20/20

sponsor [3] 31/3 31/13 31/23

sponsored [1] 13/6

sponsorship [1] 30/23

St [1] 59/10

staff [3] 68/9 68/10 68/15

stage [3] 32/19 38/19 47/25

stand [4] 37/16 63/6 63/7 66/24

standard [4] 33/16 43/17 51/6 65/10

standards [2] 35/24 41/20

standing [9] 48/6 51/14 64/19 64/21 65/3 65/7 65/7 65/10 65/20

start [6] 3/21 28/17 44/9 68/7 70/19 72/1

started [3] 26/1 26/2 55/16

starting [3] 3/6 42/21 73/17

state [3] 3/5 44/16 62/4

STATES [9] 1/1 1/6 1/11 3/3 3/17 24/22 62/1 62/3 62/4

status [8] 32/13 33/13 34/24 54/10 54/11 54/13 55/6 72/23

statute [13] 18/12 18/13 19/12 19/20 29/21 34/1 34/10 34/14 36/19 51/9 51/24 52/8 52/17

statutes [4] 41/15 51/11 51/13 63/1

statutorily [1] 36/20

statutory [5] 46/16 51/21 54/5 58/2 66/12

stay [2] 17/16 62/5

stayed [1] 61/18

step [1] 32/3

stepped [1] 50/9

stepping [1] 33/4

steps [2] 32/24 39/10

still [12] 6/19 13/18 16/12 16/24 33/17 33/22 73/17 33/14 33/18 53/19 58/25

stop [14] 3/25 4/14 6/2 6/7 6/23 7/11 8/8 11/11 12/4 14/7 22/6 49/5 58/14 66/19

stoppage [1] 9/18

stopped [8] 7/5 10/6 10/9 27/17 36/8 36/10 53/20 56/18

stopping [3] 4/6 13/21 59/6

Street [2] 1/14 2/4

stress [1] 62/16

stretch [3] 33/13 41/11 57/17

strictly [1] 43/20 46/17

strikes [2] 5/8 66/14

strong [3] 16/21 16/24 62/22

stronger [1] 58/4

struggling [1] 36/3

studying [1] 8/15

Sturges [6] 1/13 3/8 3/22 24/17 53/5 72/1

style [1] 40/19

sub [8] 20/8 29/8 30/2 30/18 31/3 33/5 33/6 42/13

subcontractor [9] 10/16 31/14 32/10 32/13 32/24 33/13 33/17 56/5 63/16

subcontractors [7] 31/1 40/7 40/13 40/16 42/14 45/2 47/17

subcontracts [2] 40/18 41/19

subject [5] 29/1 29/20 42/16 43/10 44/13

subjects [1] 31/4

submit [5] 6/17 35/3 53/17 70/15 72/23

subsidized [1] 42/7

substantial [3] 63/14 69/4 71/3

succeed [3] 28/23 60/24 61/20

such [8] 4/7 6/23 45/3 48/5 48/11 60/22 67/13 69/2

sue [2] 19/16 20/3

suffer [1] 60/24

suffering [2] 54/20 54/21

sufficient [1] 64/23

suggest [3] 31/21 57/18 68/9

suggesting [1] 73/2

suit [2] 30/23 31/2

Suite [1] 1/15 1/18 1/21

Sullivan [2] 58/5 65/23

sum [1] 52/11

summary [5] 70/23 71/2 71/7 71/19 72/10

supplemental [2] 23/11 59/9

supported [1] 36/17

supposed [4] 6/15 37/9 38/2 73/3

supposedly [1] 58/25

Supreme [9] 17/22 18/14 28/20 41/3 48/10 61/16 61/18 62/10 65/8

sure [11] 5/16 10/17 12/12 16/18 18/17 20/1 24/9 27/5 46/13 63/10 74/3

surprised [2] 37/1 37/4

surprising [3] 5/8 37/14 39/25

suspend [3] 49/14 49/25 50/6

suspension [4] 49/4 50/11 63/5 63/25

system [1] 56/1

systems [1] 9/2

**T**

table [1] 12/16

take [13] 4/20 5/2 15/15 15/25 21/16 25/5 43/22 45/12 48/1 48/2 53/11 69/25 73/11

taken [5] 24/13 54/15 59/5 59/24 64/14

takes [1] 5/3

taking [2] 10/1 45/16

talk [8] 10/8 15/2 17/1 44/8 58/16 65/4 66/19 71/25

talked [3] 54/17 56/14 56/14

talking [5] 3/25 14/24 19/24

**talking... [2]**   27/16 55/16
**talks [2]**   26/24 59/12
**task [1]**   39/16
**tell [10]**   14/5 14/6 14/13 14/14
14/17 34/7 36/14 41/24 53/9 57/21
**temporarily [1]**   68/9
**temporary [2]**   24/2 60/1
**term [3]**   34/9 52/13 52/20
**terminate [20]**   7/18 7/22 19/4
21/12 21/13 22/11 28/4 36/18 37/7
37/7 39/5 39/8 40/2 40/4 48/24
49/15 49/24 50/1 50/6 69/12
**terminated [17]**   4/16 7/25 16/3
16/14 21/19 22/18 33/25 34/1 34/6
34/11 35/21 36/11 36/13 38/23
42/12 48/20 66/2
**terminates [1]**   22/7
**terminating [10]**   4/6 7/3 8/13
15/6 16/8 38/10 49/7 49/19 59/6
61/19
**termination [44]**   4/4 4/12 5/22
5/23 8/11 8/12 9/8 13/20 14/10
16/23 22/7 28/2 29/22 34/11 35/8
35/13 35/25 37/3 37/9 37/23 38/20
38/21 39/16 39/17 39/22 41/19
41/22 48/21 48/22 49/4 50/11
50/15 50/16 50/19 50/20 51/2 51/8
51/12 63/4 63/9 63/23 63/24 63/25
64/3
**terms [12]**   8/18 9/10 12/19 16/22
16/23 23/24 25/9 35/22 36/23 38/7
38/11 52/8
**terribly [2]**   66/17 67/22
**terrific [1]**   18/10
**test [2]**   33/15 33/15
**than [12]**   6/11 19/22 22/24 37/3
37/22 49/9 58/3 58/5 61/13 66/12
69/12 70/25
**thank [12]**   8/7 18/6 18/24 27/15
27/16 28/14 28/15 53/6 53/15
59/23 74/9 74/13
**Thanks [2]**   3/23 24/12
**that [646]**
**that strikes [1]**   5/8
**their [44]**   4/9 5/17 8/21 10/18
12/12 21/14 22/13 22/23 22/23
26/12 27/19 28/3 28/5 28/25 29/15
29/16 30/21 31/16 43/3 45/14
46/10 47/11 51/16 54/15 55/6 56/1
57/3 57/5 57/21 58/1 59/3 59/4
59/4 59/7 59/8 60/5 60/7 64/22
67/6 67/15 67/25 68/6 68/12 69/21
**them [28]**   5/18 6/10 7/2 11/21
13/10 14/13 14/14 14/17 14/18
14/19 14/23 15/9 18/10 19/12
19/12 21/11 22/12 23/18 26/12
27/4 28/5 44/7 44/8 46/3 58/1
67/6 71/8 71/13
**themselves [8]**   18/21 30/18 32/2
43/6 45/4 47/9 50/17 52/20
**then [34]**   4/1 11/13 14/11 16/12
20/7 22/2 24/10 25/5 25/7 28/13
29/5 29/16 30/2 30/15 30/15 31/23
37/16 39/10 42/25 46/23 48/6
48/21 52/24 55/12 58/9 62/20
63/10 65/5 70/9 70/13 70/15 71/20
72/21 72/22
**theoretically [1]**   47/1
**theories [1]**   42/5
**theory [2]**   48/2 48/3
**there [139]**
**therefore [4]**   10/2 44/5 46/8 66/4
**these [50]**   4/9 5/1 8/22 8/24 9/1
11/18 11/20 11/20 12/6 12/10
12/22 13/1 14/20 15/2 15/7 16/9
16/10 18/22 20/18 22/6 22/7 25/22
26/6 28/2 29/14 34/12 35/9 38/22
40/23 45/17 46/21 47/13 51/13
51/19 53/24 54/3 55/8 56/16 56/19
58/22 64/20 64/24 64/25 67/2

67/18 70/10 70/14 70/25 71/10
73/15
**they [136]**
**thing [5]**   7/21 7/21 20/16 39/6
70/5
**things [9]**   5/20 7/12 7/16 8/18
10/17 17/21 19/7 64/2 66/24
**think [111]**
**thinking [4]**   7/14 7/14 7/23 19/8
**thinks [1]**   71/7
**this [120]**
**thoroughly [1]**   42/9
**those [39]**   4/18 6/7 8/14 8/21
9/23 10/19 14/5 14/25 15/1 16/17
16/19 17/21 19/5 26/11 33/18
35/25 38/7 40/8 40/9 40/11 40/13
40/15 40/17 41/19 42/17 43/3
43/11 46/5 54/19 59/16 60/6 62/21
63/11 63/20 66/3 67/5 67/7 67/8
70/15
**though [12]**   5/12 11/18 16/2 20/2
21/16 33/17 45/24 47/15 48/18
50/9 52/4 68/23
**thought [4]**   4/19 11/17 20/4 20/21
**threatened [1]**   68/13
**three [5]**   26/22 60/14 60/14 64/18
68/14
**threshold [2]**   39/1 40/10
**through [17]**   6/9 9/11 30/5 30/23
31/8 32/3 32/9 32/21 40/17 46/3
57/4 63/5 63/23 64/10 65/1 68/2
73/6
**throughout [1]**   47/10
**thrust [1]**   45/14
**Thursday [6]**   4/4 5/11 9/9 28/3
54/14 56/22
**Thursday's [2]**   8/11 8/12
**thus [1]**   61/8
**tilt [1]**   66/5
**time [30]**   6/14 7/4 15/14 19/11
19/14 26/17 32/2 34/13 35/11 36/4
37/20 38/19 39/12 45/1 48/23 49/5
50/7 53/1 53/25 55/10 56/3 56/6
61/7 68/20 68/21 71/9 71/20 72/17
73/7 73/20
**timeline [1]**   36/22
**tip [1]**   61/1
**Title [1]**   25/12
**today [10]**   4/25 5/3 26/23 36/5
37/16 54/14 54/15 70/11 71/25
71/25
**told [1]**   48/21
**tomorrow [4]**   5/4 50/2 54/21 66/25
**tonight [3]**   50/2 53/21 67/24
**too [15]**   4/11 14/7 25/21 26/14
32/7 32/12 34/4 40/21 42/23 45/8
45/20 51/11 51/25 52/10 73/6
**took [4]**   9/8 56/7 56/7 58/21
**top [3]**   10/6 41/2 51/10
**topic [1]**   17/3
**topics [1]**   10/1
**touch [1]**   44/6
**touched [1]**   12/5
**toward [1]**   66/5
**towards [2]**   8/2 8/3
**transcript [2]**   1/10 75/4
**transform [1]**   33/18
**travel [1]**   73/20
**treat [1]**   70/17
**treated [1]**   69/22
**treating [1]**   60/16
**trial [3]**   73/3 73/4 73/5
**tried [2]**   57/12 59/12
**triggered [1]**   52/12
**TRO [19]**   1/10 3/21 17/8 17/16
28/18 28/19 48/1 50/15 53/18
60/18 60/19 60/22 61/5 61/8 61/9
61/18 67/24 68/1 68/3
**true [7]**   10/4 30/21 34/21 36/24
51/18 53/24 75/4
**try [2]**   22/12 44/7
**trying [9]**   10/13 13/13 13/17

26/12 27/20 27/22 27/23 55/21
    /19 70/19 74/19
**Tucker [18]**   7/15 17/2 17/19 19/10
19/23 20/2 20/22 21/7 25/9 27/17
29/15 30/4 32/5 32/13 32/16 39/6
39/11 47/24
**Tuesday [1]**   15/10
**turn [2]**   22/1 39/2
**turnaround [1]**   54/13
**turned [2]**   69/23 69/24
**turns [5]**   21/17 31/21 32/14 39/3
39/13
**twice [1]**   70/25
**two [14]**   5/7 7/12 7/16 10/5 25/3
33/18 42/5 52/9 52/11 63/20 68/14
69/1 69/19 69/20
**type [16]**   12/10 13/3 13/5 18/4
33/16 37/2 38/1 63/11 65/10 66/5
66/7 67/16 67/21 67/21 70/5 71/15
**types [1]**   26/7
**typically [1]**   38/17

**U**

**U.S [1]**   2/8
**ultimately [2]**   49/4 69/22
**umbrella [1]**   53/3
**unclear [4]**   4/22 6/14 63/17 66/20
**under [49]**   8/19 16/9 16/10 16/23
16/23 18/2 19/11 19/17 20/19
21/14 23/6 23/24 25/12 26/18 28/6
29/5 29/19 30/4 31/7 31/10 31/11
32/23 33/9 33/15 33/23 33/23
34/14 35/21 36/17 36/19 37/8 39/4
41/19 42/8 52/4 52/7 53/3 56/21
56/21 59/16 60/12 60/14 60/17
61/22 62/14 62/17 63/22 65/7
65/20
**underdeveloped [1]**   68/22
**understand [4]**   10/13 56/1 64/24
66/18
**understanding [9]**   4/24 20/11
20/19 30/11 31/9 31/24 32/7 42/20
44/10
**Understood [3]**   46/12 50/13 58/6
**unenviable [1]**   72/4
**unfair [2]**   53/10 53/13
**unfortunately [2]**   6/1 52/21
**uniform [2]**   6/16 7/6
**UNITED [9]**   1/1 1/6 1/11 3/3 3/17
24/22 62/1 62/3 62/4
**unlawful [1]**   13/21
**unreviewable [1]**   56/20
**unspent [1]**   19/5
**unstated [2]**   21/18 22/1
**until [2]**   7/5 54/15
**up [16]**   5/10 5/14 10/2 11/15
12/16 14/5 15/3 16/13 27/2 27/3
34/3 37/16 44/1 49/2 70/17 72/24
**update [1]**   5/5
**updates [1]**   25/14
**upon [4]**   11/14 57/15 60/21 61/16
**urgency [1]**   71/14
**us [13]**   10/19 11/7 20/14 25/14
27/24 30/25 33/23 34/19 42/22
43/8 43/15 47/10 47/15
**use [1]**   48/17
**used [5]**   28/21 34/10 51/7 52/14
57/5
**uses [1]**   52/18
**using [2]**   27/14 60/19
**usually [1]**   27/13

**V**

**value [1]**   8/24
**variation [1]**   65/23
**variety [1]**   9/10
**various [3]**   5/19 48/8 54/17
**vary [3]**   44/14 44/22 68/3
**vax [1]**   56/25
**vehicle [2]**   15/5 16/11
**vendors [1]**   34/12
**versus [11]**   3/3 22/16 24/22 25/1

## V

versus... **[7]**   28/20 58/5 61/17
62/3 62/10 65/9 65/23
very **[16]**   9/1 14/21 16/24 18/6
18/25 22/24 26/7 29/10 51/20
53/12 55/16 56/23 63/18 63/19
64/6 67/17
view **[4]**   21/22 46/15 63/22 64/2
viewpoint **[4]**   11/6 45/7 57/15
58/12
viewpoint-based **[1]**   11/6
viewpoints **[1]**   11/6
violate **[3]**   19/2 19/4 28/5
violated **[2]**   18/11 51/2
violates **[1]**   10/20
violating **[1]**   10/7
violation **[18]**   9/7 15/21 15/23
16/12 26/9 45/12 45/18 47/12
47/22 51/1 51/8 55/20 55/20 55/22
63/25 68/25 69/1 69/2
violations **[4]**   4/19 10/6 21/10
27/23
vital **[2]**   4/8 18/19
volunteer **[3]**   43/13 44/1 44/7
vs **[1]**   1/5

## W

wait **[1]**   71/6
waiver **[2]**   32/14 61/23
walk **[1]**   45/21
walking **[1]**   4/25
want **[37]**   5/10 5/20 12/16 15/13
15/14 16/1 18/6 22/6 23/14 23/15
23/21 24/19 26/4 27/5 33/5 34/1
34/23 34/24 37/7 43/14 45/21
48/15 50/16 52/9 55/4 57/2 57/20
65/4 65/19 66/4 67/5 69/10 70/17
71/17 71/23 71/24 72/20
wanted **[4]**   26/14 27/18 34/4 58/15
Warden **[2]**   2/2 3/18
was **[86]**
Washington **[6]**   1/5 1/18 1/21 2/5
2/9 26/25
wasn't **[4]**   37/5 38/6 38/8 49/4
way **[23]**   6/18 9/5 9/6 11/19 11/21
15/8 19/9 27/19 30/18 37/19 40/8
42/22 43/15 44/3 46/2 49/14 49/18
52/12 52/13 53/19 54/24 64/5
70/20
ways **[4]**   9/10 46/5 64/18 69/21
we **[173]**
we'll **[4]**   26/17 32/6 59/22 74/4
Wednesday **[2]**   53/21 73/22
week **[4]**   68/14 69/1 69/19 73/21
weeks **[4]**   24/24 66/20 68/2 68/14
welcome **[1]**   6/11
well **[31]**   9/17 10/21 12/7 12/18
18/1 20/1 20/12 22/18 25/25 26/1
28/11 29/8 36/12 37/20 38/24 39/2
39/15 39/21 40/5 40/14 46/18
46/19 59/5 60/18 65/15 66/17
67/10 67/22 69/23 71/6 72/10
well-developed **[1]**   66/17
went **[1]**   26/19
were **[36]**   3/25 4/25 6/2 6/6 6/6
6/7 6/15 6/18 7/4 11/17 12/6
13/14 13/25 14/1 14/1 17/11 17/13
17/21 26/16 27/2 27/3 27/3 27/16
34/1 35/7 35/21 37/22 41/9 41/14
46/22 53/25 59/4 59/5 59/16 69/23
69/24
were talking **[1]**   27/16
what **[108]**
whatever **[9]**   26/12 29/12 33/5
45/21 47/19 69/25 71/15 74/7 74/8
whatsoever **[6]**   37/2 45/7 47/13
48/20 49/16 70/1
when **[9]**   5/14 7/4 23/12 42/11
43/25 54/9 58/8 66/19 72/22
where **[23]**   11/5 12/15 17/23 19/11
19/11 19/23 23/2 23/6 27/20 30/5
31/4 33/3 36/10 42/23 43/1 43/2
43/9 43/25 49/8 49/9 50/9 71/9
71/14
whereas **[1]**   61/10
whereby **[1]**   32/20
whether **[36]**   5/3 6/14 6/16 7/19
10/20 12/8 12/19 13/3 13/19 13/23
15/14 16/11 28/23 29/4 32/15 36/25
38/1 46/16 50/20 50/23 50/25 51/7
51/11 54/16 57/3 62/11 62/13
62/18 65/6 65/20 67/2 67/2 69/19
70/17 70/18 71/6
which **[55]**   6/11 7/2 7/11 8/11
9/19 12/13 13/5 13/16 13/18 17/6
19/15 20/15 21/18 22/1 22/13
22/24 23/16 25/15 27/6 28/1 28/2
29/5 29/20 30/22 32/9 34/4 35/24
37/3 38/22 40/16 46/5 49/3 49/14
49/20 51/21 52/22 52/23 52/25
56/20 57/19 60/9 62/14 63/9 63/20
64/9 64/18 64/19 65/4 65/5 65/12
66/16 69/7 69/8 70/13 71/12
whichever **[1]**   62/21
while **[2]**   21/14 49/6
who **[29]**   8/25 10/18 11/1 12/9
12/21 12/24 17/11 18/9 21/3 26/11
38/2 39/9 40/13 43/22 44/2 44/5
45/25 46/8 46/24 49/22 51/14 52/2
55/1 56/5 57/21 67/4 67/5 71/13
73/19
whoever **[2]**   43/14 55/16
whole **[2]**   39/24 62/7
whom **[1]**   36/22
why **[24]**   3/21 14/12 15/23 17/19
18/23 20/1 29/18 35/6 35/17 35/19
35/23 36/8 36/10 36/14 37/6 37/7
40/3 40/5 49/8 49/9 53/17 54/15
72/1 73/18
will **[53]**   4/12 4/15 4/21 5/1 5/23
6/21 9/19 11/10 21/23 22/2 23/12
23/21 24/10 24/11 25/5 26/17
28/13 34/13 34/21 34/24 42/14
42/15 42/17 43/9 44/21 47/17
47/21 48/23 56/4 57/6 59/21 59/21
61/2 62/15 63/9 64/10 66/21 66/21
66/22 67/9 68/25 68/25 69/2 69/8
69/23 69/25 70/16 71/21 72/17
72/18 72/21 73/3 73/7
wish **[2]**   28/4 45/15
wishes **[1]**   58/14
withholding **[1]**   51/22
within **[3]**   24/23 61/7 69/21
without **[11]**   8/14 8/15 10/14 29/9
39/25 40/1 48/20 61/5 65/19 67/19
74/5
word **[2]**   17/12 18/4
words **[1]**   46/1
work **[12]**   4/1 6/2 6/7 6/23 7/11
8/8 9/2 11/11 12/4 49/5 66/20
74/1
working **[3]**   24/10 24/15 72/24
works **[4]**   30/7 38/18 72/3 73/20
world **[1]**   14/13
worry **[1]**   49/1
worth **[1]**   69/25
worthy **[1]**   58/11
would **[75]**   3/5 4/3 4/19 5/17 8/22
10/2 11/7 11/13 13/2 14/3 14/13
17/1 18/5 19/2 20/12 22/10 24/3
25/13 25/16 27/9 29/5 29/17
29/25 30/4 30/23 30/25 31/13
31/23 32/18 32/19 33/24
35/23 37/4 38/18 39/7 39/25 40/1
41/5 45/2 46/4 46/4 46/23 48/4
48/6 48/24 48/25 50/13 50/20
50/23 50/25 52/4 52/7 53/17 55/17
56/20 58/25 61/9 64/22 64/23 66/2
69/5 69/13 69/17 69/24 70/1 70/9
70/18 71/7 71/13 71/16 72/2 72/8
72/14 72/16
wouldn't **[6]**   5/10 18/10 31/17
40/2 51/1 51/5

## X

writ **[1]**   22/18
wrote **[1]**   9/8
wrong **[1]**   33/22

## Y

yeah **[10]**   5/25 6/9 7/13 16/6 19/7
23/6 23/10 23/20 24/8 31/22
year **[3]**   4/9 4/10 4/10
years **[3]**   4/7 9/3 18/7
yes **[16]**   17/3 24/7 24/19 25/19
25/23 26/5 30/10 34/8 36/6 37/6
37/8 37/13 42/1 67/14 68/13 73/2
yesterday **[2]**   17/5 28/10
yesterday's **[2]**   42/2 54/13
yet **[1]**   12/5
you **[186]**
you and **[1]**   53/9
you're **[2]**   6/21 18/24
your **[81]**
yourselves **[1]**   71/24

## Z

Zachary **[2]**   2/2 3/16