UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMICA CENTER FOR IMMIGRANT
RIGHTS, *et al.*,

    *Plaintiffs*,

    v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

    *Defendants.*

Civil Action No. 25-298 (RDM)

## ORDER

The parties have diametrically opposed views of what has happened in this APA case. Plaintiffs' complaint concerns five legal orientation programs for non-citizens (the "Programs"). The Programs have historically been administered by non-profit legal services organizations, including Plaintiffs as subcontractors, and funded by the Executive Office for Immigration Review ("EOIR"). Plaintiffs allege in their operative complaint, and argue in their motion for summary judgment, that Defendants "permanently terminated" the Programs when they terminated their contract with Acacia, the only prime contractor that administered the Programs. Dkt. 67 at 9. In Plaintiffs' view, this termination decision violated the APA, the Constitution, and various statutes. Dkt. 62 (Am. Compl.). Defendants, by contrast, maintain that they have not terminated the Programs at all; as they see things, they merely terminated this prime contract for the convenience of the government. Dkt. 70 at 12. In short, Plaintiffs maintain that Defendants terminated the Programs, while Defendants maintain that the Programs remain in place and that they have merely exercised their contractual right to terminate a government contract.

This simple (but critical) factual question should be answered by the administrative record, but it is not. The existing administrative record focuses exclusively on Defendants' decision to suspend or terminate the prime contract, but does not otherwise shed light on Defendants' decisions, if any, regarding the fate of the Programs. When Defendants filed their summary judgment motion this past Friday, however, they attached a declaration from the Acting Director of EOIR, attesting (for the first time) that "EOIR will satisfy its legal orientation services' obligation by providing a consolidated federalized program." Dkt. 70-1 at 3. The Acting Director further attests that EOIR will spend "at least $28 million" on this new federalized program in accordance with the 2024 appropriations. *Id.* at 4. The Acting Director then attests that this federalized program "will include rights advisals provided by the Immigration Judge corp, self-help legal materials, and EIOR's" Immigration Court Online Resource. *Id.* When asked at oral argument what this decision entails, counsel for the Defendants was unable to answer.

Against this backdrop, the Court concludes that the current administrative record does not adequately reflect the full scope of the agency action at issue in this case. On Plaintiffs' telling, the Court should either ignore the Acting Director's declaration or should conclude that the declaration fails, in any event, to counter their showing that Defendants have effectively terminated the Programs, in contravention of the congressional appropriations act and without satisfying the dictates of the APA. They assert, for example, that "Immigration Judges already 'have an affirmative duty to assist and work with' individuals appearing before them" and that, as a result, directing Immigration Judges to inform noncitizens about their rights is not the equivalent of continuing the Programs. Dkt. 72 at 14-15. Defendants, in contrast, maintain that

the Acting Director's declaration demonstrates that, despite terminating the contracts, they intend to meet their statutory obligation to continue to the Programs.

On either telling, the Court is unpersuaded that it can adjudicate Plaintiffs' claims absent a clear understanding of the facts.  Plaintiffs, to be sure, do not challenge the lawfulness of Defendants' decision to replace the existing program with a "federalized" program in their First Amended Complaint or their opening summary judgment brief.  But that is because Defendants did not disclose their intention to "federalize," rather than terminate, the Programs until this past Friday, when they moved for summary judgment.  Plaintiffs have made clear, however, that their claims include an APA challenge to Defendants' failure to provide a "reasonable explanation for their actions, despite the practical consequences that will arise from [those] actions."  Dkt. 62 at 54.  They also make clear that they contend that "this purported new program is woefully insufficient" and that, even after filing the Acting Director's declaration, Defendants still have failed to explain whether and how this new program is reasonable or sufficient.  Dkt. 72 at 14–15.

Although neither party has filed a motion to supplement the administrative record, the Court concludes that the existing administrative record is incomplete because it does not contain any materials—including the Acting Director's declaration, which Defendants themselves assert is not part of the administrative record—that elucidate Defendants' actions.  If Defendants have decided to replace the existing Program with a "federalized program," thus explaining why Defendants terminated the existing Program, they need to include the materials that were before the decisionmaker and any decisional materials.  As the record now stands, however, the Court cannot determine whether Plaintiffs' or Defendants' characterization of the relevant agency

action is correct—that is, whether Defendants have terminated or merely "federalized" the relevant Programs—or whether any such agency action complied with the APA.

Accordingly, Defendants are hereby **ORDERED** to file a supplement to the administrative record on or before May 21, 2025.[1]  Defendants' supplement shall include *all* materials relevant to Defendants' decision to "federalize" or otherwise terminate or alter the Programs, as well as their plan to administer the Programs and to spend the appropriated funds before the end of the fiscal year.  Should Plaintiffs choose to amend their complaint in light of this supplement, they may do so on or before May 23, 2025.  In the event Plaintiffs amend their complaint, the parties may file supplemental briefs on or before May 30, 2025.

The Court understands that the pending motions for summary judgment are consolidated with Plaintiffs' motion for a preliminary injunction and that Plaintiffs have indicated that judicial action is urgent.  It is equally important, however, that the Court reach the correct decision based on an adequate administrative record.

**SO ORDERED**.

    /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 14, 2025

---

[1] The Court recognizes that this is a short period of time, but this is not the first time the Court has ordered Defendants to file a complete administrative record. *See, e.g.*, Min. Order (Apr. 14, 2025); Min. Order (Apr. 19, 2025).