APPEAL,CLOSED,TYPE–D

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:25–cv–00298–RDM</u>
### *Internal Use Only*

AMICA CENTER FOR IMMIGRANT RIGHTS et al v.
UNITED STATES DEPARTMENT OF JUSTICE et al
Assigned to: Judge Randolph D. Moss
Cause: 05:0706 Judicial Review of Agency Actions

Date Filed: 01/31/2025
Date Terminated: 07/07/2025
Jury Demand: None
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**AMICA CENTER FOR IMMIGRANT RIGHTS**

represented by **Alexander Fischer**
811 Main St.
Ste 3000
Houston, TX 77002
346–718–6740
Email: afischer@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Apratim Vidyarthi**
GIBSON, DUNN & CRUTCHER
200 Park Ave.
New York City, NY 10166
332–253–7620
Email: avidyarthi@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arthur Halliday**
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
213–229–7051
Email: ahalliday@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caelin Moriarity Miltko**
GIBSON, DUNN & CRUTCHER, LLP
1900 Lawrence Street
Suite 3000
Denver, CO 80202
303–503–5701

1

Email: cmoriaritymiltko@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mason George Stringer**
GIBSON, DUNN & CRUTCHER, LLP
1900 Lawrence Street
Suite 3000
Denver, CO 80202
303–298–5973
Email: mstringer@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patricia Mercedes Herold**
GIBSON, DUNN & CRUTCHER, LLP
1900 Lawrence Street
Suite 3000
Denver, CO 80202
303–298–5727
Email: pherold@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samantha Hsieh**
AMICA CENTER FOR IMMIGRANT
RIGHTS
1025 Connecticut Avenue NW
Suite 701
Washington, DC 20036
202–908–6902
Email: sam@amicacenter.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timoteo Julian L'Esperance**
GIBSON, DUNN & CRUTCHER, LLP
1900 Lawrence Street
Suite 3000
Denver, CO 80202
303–906–6946
Email: tlesperance@gibsondunn.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adina Bassin Appelbaum**
AMICA CENTER FOR IMMIGRANT

RIGHTS
1025 Connecticut Avenue NW, Suite 701
Washington, DC 20036
202–899–1412
Fax: 202–331–3341
Email: adina@amicacenter.org
*ATTORNEY TO BE NOTICED*

**Amelia Dagen**
AMICA CENTER FOR IMMIGRANT
RIGHTS
1025 Connecticut Avenue NW
Suite 701
Washington, DC 20006
714–396–5954
Email: amelia@amicacenter.org
*ATTORNEY TO BE NOTICED*

**Katherine Michelle Marquart**
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
213–229–7475
Email: kmarquart@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Laura M. Sturges**
GIBSON, DUNN & CRUTCHER, LLP
1900 Lawrence Street
Suite 3000
Denver, CO 80202
303–298–5929
Fax: 303–313–2825
Email: lsturges@gibsondunn.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Naima Lillian Farrell**
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
202–887–3559
Email: nfarrell@gibsondunn.com
*ATTORNEY TO BE NOTICED*

**Richard Mark**
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, NY 10166
212–351–4000
Fax: 212–351–4035
Email: rmark@gibsondunn.com

*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, NY 10166
(212) 351–2427
Email: aahmed@gibsondunn.com
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**AMERICAN GATEWAYS**                    represented by   **Alexander Fischer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Apratim Vidyarthi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arthur Halliday**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caelin Moriarity Miltko**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mason George Stringer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patricia Mercedes Herold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samantha Hsieh**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timoteo Julian L'Esperance**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adina Bassin Appelbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amelia Dagen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Michelle Marquart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura M. Sturges**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Naima Lillian Farrell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Mark**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**ESTRELLA DEL PASO**                    represented by  **Alexander Fischer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Apratim Vidyarthi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arthur Halliday**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caelin Moriarity Miltko**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mason George Stringer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patricia Mercedes Herold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samantha Hsieh**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timoteo Julian L'Esperance**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adina Bassin Appelbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amelia Dagen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Michelle Marquart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura M. Sturges**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Naima Lillian Farrell**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Richard Mark**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**FLORENCE IMMIGRANT AND**                represented by **Alexander Fischer**
**REFUGEE RIGHTS PROJECT**                                (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Apratim Vidyarthi**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Arthur Halliday**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Caelin Moriarity Miltko**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mason George Stringer**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Patricia Mercedes Herold**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Samantha Hsieh**
                                                          (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *PRO HAC VICE*
                                                          *ATTORNEY TO BE NOTICED*

**Timoteo Julian L'Esperance**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adina Bassin Appelbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amelia Dagen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Michelle Marquart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura M. Sturges**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Naima Lillian Farrell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Mark**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**IMMIGRATION SERVICES AND LEGAL ADVOCACY**          represented by **Alexander Fischer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Apratim Vidyarthi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arthur Halliday**
(See above for address)
*LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caelin Moriarity Miltko**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mason George Stringer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patricia Mercedes Herold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samantha Hsieh**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timoteo Julian L'Esperance**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adina Bassin Appelbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amelia Dagen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Michelle Marquart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura M. Sturges**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Naima Lillian Farrell**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Richard Mark**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**NATIONAL IMMIGRANT JUSTICE CENTER**

represented by **Alexander Fischer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Apratim Vidyarthi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arthur Halliday**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caelin Moriarity Miltko**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mason George Stringer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patricia Mercedes Herold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samantha Hsieh**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timoteo Julian L'Esperance**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adina Bassin Appelbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amelia Dagen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Michelle Marquart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura M. Sturges**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Naima Lillian Farrell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Mark**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**NORTHWEST IMMIGRANT**            represented by  **Alexander Fischer**
**RIGHTS PROJECT**                                 (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Apratim Vidyarthi**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *PRO HAC VICE*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **Arthur Halliday**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caelin Moriarity Miltko**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mason George Stringer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patricia Mercedes Herold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samantha Hsieh**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timoteo Julian L'Esperance**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adina Bassin Appelbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amelia Dagen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Michelle Marquart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura M. Sturges**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Naima Lillian Farrell**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Richard Mark**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Plaintiff</u>

**PENNSYLVANIA IMMIGRATION**
**RESOURCE CENTER**

represented by **Alexander Fischer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Apratim Vidyarthi**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Arthur Halliday**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caelin Moriarity Miltko**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mason George Stringer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patricia Mercedes Herold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samantha Hsieh**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timoteo Julian L'Esperance**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adina Bassin Appelbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amelia Dagen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Michelle Marquart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura M. Sturges**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Naima Lillian Farrell**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Richard Mark**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**ROCKY MOUNTAIN IMMIGRANT**        represented by   **Alexander Fischer**
**ADVOCACY NETWORK**                                 (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Apratim Vidyarthi**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*
                                                     *PRO HAC VICE*
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Arthur Halliday**
                                                     (See above for address)
                                                     *LEAD ATTORNEY*

*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Caelin Moriarity Miltko**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Mason George Stringer**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patricia Mercedes Herold**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samantha Hsieh**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Timoteo Julian L'Esperance**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Adina Bassin Appelbaum**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amelia Dagen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Katherine Michelle Marquart**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura M. Sturges**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Naima Lillian Farrell**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Richard Mark**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amer S. Ahmed**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**IMMIGRATION CENTER FOR WOMEN AND CHILDREN**    represented by    **Laura M. Sturges**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**AMERICAN BAR ASSOCIATION**    represented by    **Laura M. Sturges**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**CHARLOTTE CENTER FOR LEGAL ADVOCACY**    represented by    **Laura M. Sturges**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**UNITED STATES DEPARTMENT OF JUSTICE**    represented by    **Andrew I. Warden**
U.S. DEPARTMENT OF JUSTICE
1100 L Street NW
Washington, DC 20005
(202) 616–5084
Fax: (202) 616–8470
Email: andrew.warden@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary W. Sherwood**
DEPARTMENT OF JUSTICE
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202–616–8467
Email: zachary.w.sherwood@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW**

represented by  **Andrew I. Warden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary W. Sherwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**DEPARTMENT OF HOMELAND
SECURITY**

represented by  **Andrew I. Warden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary W. Sherwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**JAMES R. McHENRY III**
*in his official capacity as Acting Attorney
General of the United States*
*TERMINATED: 04/18/2025*

represented by  **Andrew I. Warden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary W. Sherwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SIRCE E. OWEN**
*in her official capacity as Acting Director
of the Executive Office for Immigration
Review*

represented by  **Andrew I. Warden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary W. Sherwood**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**KRISTI NOEM**
*in her official capacity as Secretary of
Homeland Security, Department of
Homeland Security*

represented by  **Andrew I. Warden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary W. Sherwood**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PAMELA J. BONDI**                    represented by  **Zachary W. Sherwood**
*in her official capacity as Attorney*                    (See above for address)
*General of the United States*                    *LEAD ATTORNEY*
                                       *ATTORNEY TO BE NOTICED*

**Amicus**

**FORMER IMMIGRATION JUDGES**          represented by  **John R. Jacob**
**& FORMER MEMBERS OF THE**                           AKIN GUMP STRAUSS HAUER &
**BOARD OF IMMIGRATION**                              FELD LLP
**APPEALS**                                           Robert S. Strauss Tower
                                                      2001 K Street, NW
                                                      Washington, DC 20006
                                                      (202) 887–4582
                                                      Fax: (202) 887–4288
                                                      Email: jjacob@akingump.com
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

**Amicus**

**HARRIS COUNTY, TEXAS**               represented by  **Nina Oishi , I**
                                                      HARRIS COUNTY
                                                      1019 Congress St
                                                      Floor 15
                                                      Houston, TX 77002
                                                      832–596–4809
                                                      Email: noishi@texascivilrightsproject.org
                                                      *LEAD ATTORNEY*
                                                      *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/31/2025 | 1 | COMPLAINT *for Declaratory and Injunctive Relief* against DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, JAMES R. McHENRY III, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE ( Filing fee $ 405 receipt number ADCDC–11448772) filed by NATIONAL IMMIGRANT JUSTICE CENTER, ESTRELLA DEL PASO, NORTHWEST IMMIGRANT RIGHTS PROJECT, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, AMERICAN GATEWAYS, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, AMICA CENTER FOR IMMIGRANT RIGHTS, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY. (Attachments: # 1 Civil Cover Sheet, # 2 Summons – United States Department of Justice, # 3 Summons – Executive Office for Immigration Review, # 4 Summons – Department of Homeland Security, # 5 Summons – James R. McHenry III, # 6 Summons – Sirce E. Owen, # 7 Summons – Kristi Noem, # 8 Summons – Attorney General of the United |

| | | |
|---|---|---|
| | | States, # 9 Summons – U.S. Attorney's Office for the District of Columbia)(Ahmed, Amer) (Entered: 01/31/2025) |
| 01/31/2025 | 2 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Memorandum in Support of Motion for Temporary Restraining Order and Preliminary Injunction, # 2 Declaration of Al Page in Support, # 3 Declaration of Edna Yang in Support, # 4 Declaration of Emily Bachman Brock in Support, # 5 Declaration of Kelly Rojas in Support, # 6 Declaration of Laura St. John in Support, # 7 Declaration of Lisa Koop in Support, # 8 Declaration of Melissa Mari Lopez in Support, # 9 Declaration of Monique R. Sherman in Support, # 10 Declaration of Ryan Brunsink in Support, # 11 Declaration of Vanessa Gutierrez in Support, # 12 Text of Proposed Order – (Proposed) Temporary Restraining Order and Preliminary Injunction, # 13 Certificate of Service)(Ahmed, Amer) (Entered: 01/31/2025) |
| 01/31/2025 | 3 | NOTICE of Appearance by Richard Mark on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Mark, Richard) (Entered: 01/31/2025) |
| 01/31/2025 | 4 | NOTICE of Appearance by Naima Lillian Farrell on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Farrell, Naima) (Entered: 01/31/2025) |
| 01/31/2025 | 5 | NOTICE of Appearance by Amer S. Ahmed on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Ahmed, Amer) (Entered: 01/31/2025) |
| 01/31/2025 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Laura Marie Sturges, Filing fee $ 100, receipt number ADCDC–11449339. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Exhibit A – Declaration of Laura Marie Sturges in Support, # 2 Exhibit – Certificate of Good |

| | | |
|---|---|---|
| | | Standing, # 3 Text of Proposed Order to admit Laura Marie Sturges Pro Hac Vice)(Ahmed, Amer) (Entered: 01/31/2025) |
| 01/31/2025 | 7 | NOTICE of Appearance by Katherine Michelle Marquart on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Marquart, Katherine) (Entered: 01/31/2025) |
| 01/31/2025 | 8 | CERTIFICATE OF SERVICE by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK re 4 Notice of Appearance, 5 Notice of Appearance, 7 Notice of Appearance, 6 MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Laura Marie Sturges, Filing fee $ 100, receipt number ADCDC–11449339. Fee Status: Fee Paid., 3 Notice of Appearance, . (Ahmed, Amer) (Entered: 01/31/2025) |
| 02/03/2025 | | Case Assigned to Judge Randolph D. Moss. (zsl) (Entered: 02/03/2025) |
| 02/03/2025 | 9 | SUMMONS (8) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsl) (Entered: 02/03/2025) |
| 02/03/2025 | | MINUTE ORDER: In light of Plaintiffs' motion for temporary restraining order and motion for preliminary injunction, Dkt. 2 , it is hereby ORDERED that the parties shall appear for a status conference on February 3, 2025, at 2:00 p.m. in Courtroom 8. It is further ORDERED that Plaintiffs shall ensure that Defendants receive actual notice of this order. Signed by Judge Randolph D. Moss on 2/3/2025. (lcrdm3) (Entered: 02/03/2025) |
| 02/03/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motion for Admission *Pro Hac Vice*, Dkt. 6 , it is hereby ORDERED that the motion is GRANTED. Laura Marie Sturges is hereby granted leave to appear *pro hac vice* in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for Instructions**. Signed by Judge Randolph D. Moss on 2/3/2025. (lcrdm3) (Entered: 02/03/2025) |
| 02/03/2025 | 10 | NOTICE of Appearance by Andrew I. Warden on behalf of All Defendants (Warden, Andrew) (Entered: 02/03/2025) |
| 02/03/2025 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Status Conference held on 2/3/2025. Parties inform the status of this action, and a joint status report shall be filed no later than 5pm on 2/10/2025. If parties agree, a joint proposed briefing schedule shall be included for the court's consideration. (Court Reporter: S. Lindsay.) (ztj) (Entered: 02/03/2025) |
| 02/04/2025 | 11 | NOTICE OF SUPPLEMENTAL AUTHORITY by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE |

| | | |
|---|---|---|
| | | CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Attachments: # 1 Exhibit A – Order Granting TRO (D.R.I.), # 2 Exhibit B – Order Granting TRO (D.D.C.))(Ahmed, Amer) (Entered: 02/04/2025) |
| 02/04/2025 | 12 | STANDING ORDER: The parties are hereby ORDERED to comply with the directives set forth in the attached Standing Order. See document for details. Signed by Judge Randolph D. Moss on 2/4/2025. (lcrdm3) (Entered: 02/04/2025) |
| 02/06/2025 | 13 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Patricia M. Herold, Filing fee $ 100, receipt number ADCDC–11462770. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Exhibit A – Declaration of Patricia M. Herold in Support, # 2 Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order to admit Patricia M. Herold Pro Hac Vice)(Ahmed, Amer) (Entered: 02/06/2025) |
| 02/06/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motion for Admission *Pro Hac Vice*, Dkt. 13 , it is hereby ORDERED that the motion is GRANTED. Patricia M. Herold is hereby granted leave to appear *pro hac vice* in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for Instructions**. Signed by Judge Randolph D. Moss on 2/6/2025. (lcrdm3) (Entered: 02/06/2025) |
| 02/07/2025 | 14 | NOTICE of Appearance by Laura M. Sturges on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Sturges, Laura) (Entered: 02/07/2025) |
| 02/10/2025 | 15 | NOTICE of Appearance by Zachary W. Sherwood on behalf of UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, DEPARTMENT OF HOMELAND SECURITY, JAMES R. McHENRY III, SIRCE E. OWEN, KRISTI NOEM (Sherwood, Zachary) (Entered: 02/10/2025) |
| 02/10/2025 | 16 | Joint STATUS REPORT by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Sturges, Laura) (Entered: 02/10/2025) |
| 02/10/2025 | | MINUTE ORDER: Upon consideration of the parties' joint status report, Dkt. 16 , it is hereby ORDERED that the proposed schedule is ADOPTED: |

| | | |
|---|---|---|
| | | Defendants shall produce to Plaintiffs the complete administrative record and file with the Court a certified list of the contents of the administrative record pursuant to Local Rule 7(n)(1) on or before February 21, 2025;<br><br>Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction shall be filed on or before February 28, 2025;<br><br>Plaintiffs' Reply in Support of their Motion for a Preliminary Injunction shall be filed on or before March 10, 2025;<br><br>The parties shall appear for a hearing on Plaintiffs' Motion on March 17, 2025, at 2:00 p.m. in Courtroom 8.<br><br>Signed by Judge Randolph D. Moss on 2/10/2025. (lcrdm3) (Entered: 02/10/2025) |
| 02/10/2025 | 17 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Caelin Moriarity Miltko, Filing fee $ 100, receipt number ADCDC–11470730. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration in Support, # 2 Certificate of Good Standing – State of Colorado, # 3 Text of Proposed Order)(Ahmed, Amer) (Entered: 02/10/2025) |
| 02/10/2025 | 18 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Alexander Fischer, Filing fee $ 100, receipt number ADCDC–11470736. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration in Support, # 2 Certificate of Good Standing – State of New York, # 3 Certificate of Good Standing – State of Texas, # 4 Text of Proposed Order)(Ahmed, Amer) (Entered: 02/10/2025) |
| 02/10/2025 | 19 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Mason Stringer, Filing fee $ 100, receipt number ADCDC–11470740. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration in Support, # 2 Certificate of Good Standing – State of Colorado, # 3 Text of Proposed Order)(Ahmed, Amer) (Entered: 02/10/2025) |
| 02/10/2025 | 20 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Timoteo Julian L'Esperance, Filing fee $ 100, receipt number ADCDC–11470743. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND |

| | | |
|---|---|---|
| | | REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration in Support, # 2 Certificate of Good Standing – State of Colorado)(Ahmed, Amer) (Attachment 1 replaced on 2/13/2025) (zjm). (Entered: 02/10/2025) |
| 02/10/2025 | 21 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Apratim Vidyarthi, Filing fee $ 100, receipt number BDCDC–11470747. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration in Support, # 2 Certificate of Good Standing – State of New York, # 3 Text of Proposed Order)(Ahmed, Amer) (Entered: 02/10/2025) |
| 02/10/2025 | | Set/Reset Hearings: Motion Hearing set for 3/17/2025 at 10:00 AM in Courtroom 8– In Person before Judge Randolph D. Moss and by telephone for members of the public. Toll Free Number 833–990–9400; Meeting ID: 043781081. (zglw) (Entered: 02/12/2025) |
| 02/15/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motions for Admission *Pro Hac Vice*, Dkts. 17 , 18 , 19 , 20 , 21 , it is hereby ORDERED that the motions are GRANTED. Caelin Moriarity Miltko, Alexander Fischer, Mason Stringer, Timoteo Julian L'Esperance, and Apratim Vidyarthi are hereby granted leave to appear *pro hac vice* in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for Instructions**. Signed by Judge Randolph D. Moss on 2/15/2025. (lcrdm3) (Entered: 02/15/2025) |
| 02/18/2025 | 22 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Raena Ferrer Calubaquib, Filing fee $ 100, receipt number ADCDC–11486991. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration of Raena Ferrer Calubaquib in Support, # 2 Exhibit – Certificate of Good Standing, # 3 Text of Proposed Order to admit Raena Ferrer Calubaquib Pro Hac Vice)(Ahmed, Amer) (Entered: 02/18/2025) |
| 02/18/2025 | 23 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Arthur M. Halliday, Filing fee $ 100, receipt number ADCDC–11487052. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration of Arthur M. Halliday in Support, # 2 Exhibit – Certificate of Good |

| | | |
|---|---|---|
| | | Standing, # 3 Text of Proposed Order to admit Arthur M. Halliday Pro Hac Vice)(Ahmed, Amer) (Entered: 02/18/2025) |
| 02/18/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motions for Admission *Pro Hac Vice*, Dkts. 22 , 23 , it is hereby ORDERED that the motions are GRANTED. Raena Ferrer Calubaquib and Arthur M. Halliday are hereby granted leave to appear *pro hac vice* in this case. **Counsel should register for e–filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for Instructions**. Signed by Judge Randolph D. Moss on 2/18/2025. (lcrdm3) (Entered: 02/18/2025) |
| 02/19/2025 | 24 | NOTICE of Appearance by Mason George Stringer on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Stringer, Mason) (Entered: 02/19/2025) |
| 02/19/2025 | 25 | NOTICE of Appearance by Caelin Moriarity Miltko on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Miltko, Caelin) (Entered: 02/19/2025) |
| 02/19/2025 | 26 | NOTICE of Appearance by Apratim Vidyarthi on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Vidyarthi, Apratim) (Entered: 02/19/2025) |
| 02/20/2025 | 27 | NOTICE of Appearance by Timoteo Julian L'Esperance on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (L'Esperance, Timoteo) (Entered: 02/20/2025) |
| 02/20/2025 | 28 | NOTICE of Appearance by Patricia Mercedes Herold on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Herold, Patricia) (Entered: 02/20/2025) |
| 02/21/2025 | 29 | NOTICE *of Filing of Certified Index to Administrative Record* by UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, DEPARTMENT OF HOMELAND SECURITY, JAMES R. McHENRY |

| | | |
|---|---|---|
| | | III, SIRCE E. OWEN, KRISTI NOEM (Attachments: # 1 Exhibit Certification and Index)(Sherwood, Zachary) (Entered: 02/21/2025) |
| 02/24/2025 | 30 | MOTION for Leave to File *Supplemental Authority* by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Exhibit A – AG Memo, # 2 Exhibit B – Declaration – Al Otro Lado Bryce Daly, # 3 Exhibit C – Declaration – Catholic Charities Miami Randolph McGrorty, # 4 Exhibit D – Declaration – Catholic Charities New York Margaret Martin, # 5 Exhibit E – Declaration – Galveston Houston Elizabeth Sanchez Kennedy, # 6 Exhibit F – Declaration – Immigration Center for Women and Children Danielle Fritz, # 7 Exhibit G – Declaration – Just Neighbors Dominique Poirier, # 8 Exhibit H – Declaration – Latino Memphis Matthew Orr, # 9 Exhibit I – Declaration – Law Offices of Andrew Nietor, # 10 Exhibit J – Declaration – Law Office of Daniela Hernandez Chong Cuy, # 11 Exhibit K – Declaration – Michigan Immigrant Rights Center Ruby Robinson, # 12 Exhibit L – Declaration – Open Immigration Bonita Gutierrez, # 13 Exhibit M – ABA Immigration Justice Project, # 14 Exhibit N – Declaration – ABA Infoline, # 15 Exhibit O – Declaration – ABA ProBAR)(Sturges, Laura) (Entered: 02/24/2025) |
| 02/24/2025 | 31 | Consent MOTION for Extension of Time to File Response/Reply as to 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction by UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, DEPARTMENT OF HOMELAND SECURITY, JAMES R. McHENRY III, SIRCE E. OWEN, KRISTI NOEM. (Sherwood, Zachary) (Entered: 02/24/2025) |
| 02/25/2025 | | MINUTE ORDER: Upon consideration of Defendants' consent motion for extension of time to file response/reply, Dkt. 31 , it is hereby ORDERED that the motion is GRANTED. Defendants shall respond on or before March 5, 2025, and Plaintiffs shall file any reply on or before March 13, 2025. Signed by Judge Randolph D. Moss on 2/25/2025. (lcrdm3) (Entered: 02/25/2025) |
| 02/28/2025 | 32 | NOTICE of Appearance by Arthur Halliday on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Halliday, Arthur) (Entered: 02/28/2025) |
| 03/05/2025 | 33 | NOTICE of Appearance by Adina Bassin Appelbaum on behalf of All Plaintiffs (Appelbaum, Adina) (Entered: 03/05/2025) |
| 03/05/2025 | 34 | ENTERED IN ERROR.....MOTION for Leave to Appear Motion for Samantha Hsieh's Admission Pro Hac Vice by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY |

| | | |
|---|---|---|
| | | NETWORK. (Attachments: # 1 Declaration Declaration for Pro Hac Vice Admission, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order Proposed Order)(Appelbaum, Adina) Modified on 3/5/2025 (zjm). (Entered: 03/05/2025) |
| 03/05/2025 | | NOTICE OF ERROR regarding 34 MOTION for Leave to Appear Motion for Samantha Hsieh's Admission Pro Hac Vice . The following error(s) need correction: Pro Hac Vice motion must be accompanied by a payment of $100. Please refile using the event Motion to Appear Pro Hac Vice. (zjm) (Entered: 03/05/2025) |
| 03/05/2025 | 35 | Memorandum in opposition to re 2 Motion for TRO,,,,, Motion for Preliminary Injunction,,,, filed by UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, DEPARTMENT OF HOMELAND SECURITY, JAMES R. McHENRY III, SIRCE E. OWEN, KRISTI NOEM. (Attachments: # 1 Text of Proposed Order)(Sherwood, Zachary) (Entered: 03/05/2025) |
| 03/06/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 33 NOTICE of Appearance by Adina Bassin Appelbaum on behalf of All Plaintiffs (Appelbaum, Adina).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney–renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 3/13/2025. (zapb) Modified on 3/7/2025 (zhcn). (Entered: 03/06/2025) |
| 03/06/2025 | 36 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name– Samantha Hsieh, Filing fee $ 100, receipt number ADCDC–11524237. Fee Status: Fee Paid. by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration Declaration for Pro Hac Vice Admission, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order Proposed Order)(Appelbaum, Adina) (Entered: 03/06/2025) |
| 03/06/2025 | 37 | NOTICE of Appearance by Amelia Dagen on behalf of All Plaintiffs (Dagen, Amelia) (Entered: 03/06/2025) |
| 03/07/2025 | 38 | NOTICE of Development in Other Case by UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, DEPARTMENT OF HOMELAND SECURITY, JAMES R. McHENRY III, SIRCE E. OWEN, KRISTI NOEM (Attachments: # 1 Exhibit D.R.I. Memorandum and Order)(Sherwood, Zachary) (Entered: 03/07/2025) |
| 03/10/2025 | 39 | NOTICE of Appearance by Alexander Fischer on behalf of AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, |

| | | |
|---|---|---|
| | | FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Fischer, Alexander) (Entered: 03/10/2025) |
| 03/10/2025 | 40 | NOTICE of Appearance by John Robert Jacob on behalf of FORMER IMMIGRATION JUDGES & FORMER MEMBERS OF THE BOARD OF IMMIGRATION APPEALS (Jacob, John) (Entered: 03/10/2025) |
| 03/10/2025 | 41 | Unopposed MOTION for Leave to File by FORMER IMMIGRATION JUDGES & FORMER MEMBERS OF THE BOARD OF IMMIGRATION APPEALS. (Attachments: # 1 Amicus Curiae Brief, # 2 Text of Proposed Order)(Jacob, John) (Entered: 03/10/2025) |
| 03/10/2025 | | RESOLVED.....NOTICE of Provisional/Government Not Certified Status re 41 Unopposed MOTION for Leave to File by FORMER IMMIGRATION JUDGES & FORMER MEMBERS OF THE BOARD OF IMMIGRATION APPEALS. (Attachments: # 1 Amicus Curiae Brief, # 2 Text of Proposed Order)(Jacob, John).<br><br>Your attorney renewal/government certification has not been received. As a result, your membership with the U.S. District & Bankruptcy Courts for the District of Columbia is not in good standing, and you are not permitted to file. Pursuant to Local Civil Rule 83.9, you must immediately correct your membership status by following the appropriate instructions on this page of our website: https://www.dcd.uscourts.gov/attorney−renewal.<br><br>Please be advised that the presiding judge in this case has been notified that you are currently not in good standing to file in this court. Renewal Due by 3/17/2025. (zhcn) Modified on 3/12/2025 (zhcn). (Entered: 03/11/2025) |
| 03/11/2025 | | MINUTE ORDER: Upon consideration of former Immigration Judges & former Members of the Board of Immigration Appeals' unopposed motion for leave to file amicus curiae brief, Dkt. 41 , it is hereby ORDERED that the motion is GRANTED. Signed by Judge Randolph D. Moss on 3/11/2025. (lcrdm3) (Entered: 03/11/2025) |
| 03/11/2025 | | MINUTE ORDER: Upon consideration of Plaintiffs' Motion for Admission *Pro Hac Vice*, Dkt. 36 , it is hereby ORDERED that the motion is GRANTED. Samantha Hsieh is hereby granted leave to appear *pro hac vice* in this case. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a). Click for Instructions**. Signed by Judge Randolph D. Moss on 3/11/2025. (lcrdm3) (Entered: 03/11/2025) |
| 03/11/2025 | 46 | AMICUS BRIEF by FORMER IMMIGRATION JUDGES & FORMER MEMBERS OF THE BOARD OF IMMIGRATION APPEALS. (zjm) (Entered: 03/24/2025) |
| 03/12/2025 | 42 | NOTICE of Appearance by Samantha Hsieh on behalf of All Plaintiffs (Hsieh, Samantha) (Entered: 03/12/2025) |
| 03/13/2025 | 43 | REPLY to opposition to motion re 2 Motion for TRO,,,,, Motion for Preliminary Injunction,,,, filed by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION |

| | | |
|---|---|---|
| | | RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Exhibit A – AG Memo, # 2 Exhibit B – Dan Duea Decl., # 3 Exhibit C – Iara Rodriguez Decl., # 4 Exhibit D – Katie Annand Decl., # 5 Exhibit E – Jovita Salas Decl., # 6 Exhibit F – Amelia Dagen Decl.)(Sturges, Laura) (Entered: 03/13/2025) |
| 03/14/2025 | 44 | ADMINISTRATIVE RECORD *Appendix of Administrative Record Portions Relied Upon By The Parties* by UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, DEPARTMENT OF HOMELAND SECURITY, JAMES R. McHENRY III, SIRCE E. OWEN, KRISTI NOEM. (Attachments: # 1 Exhibit Appendix of Administrative Record – Part 1, # 2 Exhibit Appendix of Administrative Record – Part 2, # 3 Exhibit Appendix of Administrative Record – Part 3)(Sherwood, Zachary) (Entered: 03/14/2025) |
| 03/14/2025 | | Set/Reset Deadlines: Motion Hearing set for 3/17/2025 at 02:00 PM in Courtroom 8– In Person before Judge Randolph D. Moss as directed in the 2/10/25 Order. (zglw) (Entered: 03/14/2025) |
| 03/17/2025 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Motion Hearing held on 3/17/2025 re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, AMERICAN GATEWAYS, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ESTRELLA DEL PASO, AMICA CENTER FOR IMMIGRANT RIGHTS. Oral argument heard. Matter taken under advisement. Defendant to file a Status Report on or before 3/19/2025. (Court Reporter Sherry Linds.) (zglw) (Entered: 03/17/2025) |
| 03/17/2025 | | MINUTE ORDER: For the reasons stated on the record, it is hereby ORDERED that Defendants shall provide Plaintiffs with at least three business days' notice before suspending or terminating any funding or issuing any further stop–work orders for any of the programs at issue, until otherwise ordered by the Court. Signed by Judge Randolph D. Moss on 3/17/2025. (lcrdm3) (Entered: 03/17/2025) |
| 03/19/2025 | 45 | STATUS REPORT by UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, DEPARTMENT OF HOMELAND SECURITY, JAMES R. McHENRY III, SIRCE E. OWEN, KRISTI NOEM. (Sherwood, Zachary) (Entered: 03/19/2025) |
| 03/24/2025 | 47 | NOTICE *// Joint Submission Noting Status of Other Litigation* by AMICA CENTER FOR IMMIGRANT RIGHTS, AMERICAN GATEWAYS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Sturges, Laura) (Entered: 03/24/2025) |
| 04/08/2025 | 48 | CERTIFICATE OF SERVICE by AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION |

| | | |
|---|---|---|
| | | RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK re 12 Order, 9 Summons Issued Electronically as to AUSA, 1 Complaint,,,, . (Attachments: # 1 Exhibit 1 – Certified Mail Receipts)(Halliday, Arthur) (Entered: 04/08/2025) |
| 04/08/2025 | 52 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 2/12/2025. ( Answer due for ALL FEDERAL DEFENDANTS by 4/13/2025.), RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 2/11/2025., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. DEPARTMENT OF HOMELAND SECURITY served on 2/19/2025; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW served on 2/7/2025; JAMES R. McHENRY III served on 2/11/2025; KRISTI NOEM served on 3/1/2025; SIRCE E. OWEN served on 2/7/2025; UNITED STATES DEPARTMENT OF JUSTICE served on 2/11/2025 (See Docket Entry 48 to view document) (zjm) (Entered: 04/11/2025) |
| 04/09/2025 | 49 | Unopposed MOTION for Extension of Time to File Answer by DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, JAMES R. McHENRY III, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Text of Proposed Order)(Sherwood, Zachary) (Entered: 04/09/2025) |
| 04/09/2025 | 50 | NOTICE OF SUPPLEMENTAL AUTHORITY by DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, JAMES R. McHENRY III, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE (Attachments: # 1 Exhibit)(Sherwood, Zachary) (Entered: 04/09/2025) |
| 04/09/2025 | | MINUTE ORDER: Upon consideration of Defendants' unopposed motion for extension of time to file answer, Dkt. 49 , it is hereby ORDERED that the motion is GRANTED. Defendants shall respond to the complaint on or before May 14, 2025. Signed by Judge Randolph D. Moss on 4/9/2025. (lcrdm3) (Entered: 04/09/2025) |
| 04/10/2025 | 51 | NOTICE of Intent to Renew by AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK re 2 Motion for TRO,,,,, Motion for Preliminary Injunction,,,, (Attachments: # 1 Exhibit 1 – Notice of Termination)(Sturges, Laura) (Entered: 04/10/2025) |
| 04/14/2025 | 53 | MOTION for Temporary Restraining Order // Plaintiffs' Renewed Motion for a Temporary Restraining Order by AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Memorandum in Support, # 2 Declaration // Supplemental Declaration of Kelly Rojas in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 3 Exhibit 1 – 4.3.2025 Termination Letter, # 4 |

| | | |
|---|---|---|
| | | Exhibit 2 – 4.4.2025 Rescission, # 5 Exhibit 3 – Government Emails, # 6 Exhibit 4 – 4.10.2025 Termination Notice, # 7 Declaration // Supplemental Declaration of Melissa Mari Lopez in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 8 Declaration // Supplemental Declaration of Aimee Korolev in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 9 Declaration // Supplemental Declaration of Monique R. Sherman in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 10 Declaration // Supplemental Declaration of Emily Bachman Brock in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 11 Declaration // Supplemental Declaration of Alicia De La O in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 12 Declaration // Supplemental Declaration of Lauren Cusitello in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 13 Declaration // Supplemental Declaration of Ryan Brunsink in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 14 Declaration // Supplemental Declaration of Lisa Koop in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 15 Declaration // Supplemental Declaration of Vanessa Gutierrez in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 16 Declaration // Supplemental Declaration of Laura St. John in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 17 Declaration // Supplemental Declaration of Edna Yang in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order, # 18 Text of Proposed Order // [Proposed] Temporary Restraining Order)(Sturges, Laura) (Entered: 04/14/2025) |
| 04/14/2025 | 54 | NOTICE of Change of Address by Laura M. Sturges (Sturges, Laura) (Entered: 04/14/2025) |
| 04/14/2025 | 55 | NOTICE of Change of Address by Patricia Mercedes Herold (Herold, Patricia) (Entered: 04/14/2025) |
| 04/14/2025 | | MINUTE ORDER: In light of Plaintiffs' renewed motion for a temporary restraining order, Dkt. 53 , it is hereby ORDERED that the parties shall appear for a scheduling conference today, April 14, 2025, at 5:00 p.m. via Zoom. Signed by Judge Randolph D. Moss on 4/14/2025. (lcrdm3) (Entered: 04/14/2025) |
| 04/14/2025 | 56 | NOTICE of Change of Address by Timoteo Julian L'Esperance (L'Esperance, Timoteo) (Entered: 04/14/2025) |
| 04/14/2025 | 57 | NOTICE of Change of Address by Caelin Moriarity Miltko (Miltko, Caelin) (Entered: 04/14/2025) |
| 04/14/2025 | 58 | NOTICE of Change of Address by Mason George Stringer (Stringer, Mason) (Entered: 04/14/2025) |
| 04/14/2025 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Scheduling Conference held on 4/14/25. For the reasons stated on the record defense counsel is directed to file an opposition to the motion and plaintiff is directed to file a brief on or before 10:00 A.M. on April 15, 2025. Preliminary Injunction Hearing set for 4/15/2025 at 02:30 PM in Courtroom 8– In Person before Judge Randolph D. Moss. (Public Line available: Toll Free Number 833–990–9400; Meeting ID: 043781081). (Court Reporter Sherry Lindsay) (zglw) (Entered: 04/14/2025) |
| 04/14/2025 | | MINUTE ORDER: To the extent there are additional documents related to Defendants' new decision to terminate funding or that are otherwise part of the administrative record, Defendants shall file those documents on the docket as a supplement to the administrative record on or before April 15, 2025, at 10:00 a.m. The Court notes, for |

| | | |
|---|---|---|
| | | example, that the memorandum from the Attorney General, Dkt. 43–1 at 2, states that, following a review of various contracts, grants, or other agreements, "the Associate Attorney General, in consultation with the Deputy Attorney General, shall determine which (if any) agreements to terminate." Among any other materials, documents reflecting such a determination, if any, shall be filed as part of the administrative record. Signed by Judge Randolph D. Moss on 4/14/2025. (lcrdm3) (Entered: 04/14/2025) |
| 04/15/2025 | 59 | SUPPLEMENTAL MEMORANDUM to re 53 MOTION for Temporary Restraining Order *// Plaintiffs' Renewed Motion for a Temporary Restraining Order* filed by AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration // Second Supplemental Declaration of Kelly Rojas in Support of Plaintiffs' Renewed Motion for a Temporary Restraining Order)(Sturges, Laura) (Entered: 04/15/2025) |
| 04/15/2025 | 60 | RESPONSE re 53 MOTION for Temporary Restraining Order *// Plaintiffs' Renewed Motion for a Temporary Restraining Order* filed by DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, JAMES R. McHENRY III, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Text of Proposed Order)(Sherwood, Zachary) (Entered: 04/15/2025) |
| 04/15/2025 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Motion Hearing held on 4/15/2025 re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, AMERICAN GATEWAYS, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ESTRELLA DEL PASO, AMICA CENTER FOR IMMIGRANT RIGHTS. <br><br>For the reasons stated on the record the motion for TRO is DENIED. Order to follow. Motion Hearing on Preliminary Injunction set for 5/14/2025 at 10:00 AM in Courtroom 8– In Person before Judge Randolph D. Moss. (Court Reporter Sherry Lindsay) (zglw) (Entered: 04/15/2025) |
| 04/15/2025 | | MINUTE ORDER: For the reasons stated on the record, it is hereby ORDERED that Plaintiffs' renewed motion for a temporary restraining order, Dkt. 53 , is DENIED without prejudice. It is further ORDERED that, on or before April 18, 2025, the parties shall file a joint status report proposing a deadline for filing the administrative record and a briefing schedule. Signed by Judge Randolph D. Moss on 4/15/2025. (lcrdm3) (Entered: 04/15/2025) |
| 04/18/2025 | 61 | Joint STATUS REPORT by AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST |

| | | |
|---|---|---|
| | | IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Sturges, Laura) (Entered: 04/18/2025) |
| 04/18/2025 | 62 | AMENDED COMPLAINT *for Declaratory and Injunctive Relief* against DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE, PAMELA BONDI filed by NORTHWEST IMMIGRANT RIGHTS PROJECT, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, NATIONAL IMMIGRANT JUSTICE CENTER, ESTRELLA DEL PASO, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, AMERICAN BAR ASSOCIATION, CHARLOTTE CENTER FOR LEGAL ADVOCACY.(Sturges, Laura) (Entered: 04/18/2025) |
| 04/19/2025 | | MINUTE ORDER: Upon consideration of the parties' joint status report, Dkt. 61 , it is hereby ORDERED that the parties' proposed schedule is ADOPTED, subject to any further agreement between the parties to modify the schedule to include summary judgment briefing:<br><br>Plaintiffs' motion for a preliminary injunction shall be filed on or before May 2, 2025;<br><br>Defendants' opposition shall be filed on or before May 9, 2025;<br><br>Plaintiffs' reply shall be filed on or before May 12, 2025.<br><br>The parties shall appear for the hearing previously set for May 14, 2025, at 10:00 a.m. in Courtroom 8.<br><br>It is further ORDERED that Defendants shall produce the administrative record on or before April 24, 2025. The administrative record should include, along with any materials reflecting the agency decisions or actions challenged in Plaintiffs' First Amended Complaint, any and all materials that were "before" Defendants, *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), or that they considered "directly or indirectly," *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010), when deciding to issue or whether or how to implement Part II of the February 5, 2025 Bondi memorandum, when deciding to terminate or to suspend any or all of the Programs identified in paragraph 1 of Plaintiffs First Amended Complaint, or when deciding to terminate or to suspend any contract implementing any or all of those Programs. As the D.C. Circuit has observed, a court considering a claim under the Administrative Procedure Act "should have before it neither more nor less information than did the agency when it made its decision." *IMS, P.C. v. Alvarez*, 129 F.3d 618, 623 (D.C. Cir. 1997). Signed by Judge Randolph D. Moss on 4/19/2025. (lcrdm3) (Entered: 04/19/2025) |
| 04/22/2025 | 63 | TRANSCRIPT OF PROCEEDINGS before Judge Randolph D. Moss held on 4/15/25; Page Numbers: 1–88. Date of Issuance:4/22/25. Court Reporter Sherry Lindsay, Email: Sherry_Lindsay@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form |

| | | |
|---|---|---|
| | | For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 5/13/2025. Redacted Transcript Deadline set for 5/23/2025. Release of Transcript Restriction set for 7/21/2025.(stl) (Entered: 04/22/2025) |
| 04/24/2025 | 64 | MOTION to Dismiss , MOTION to Dismiss for Lack of Jurisdiction by PAMELA BONDI, DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, JAMES R. McHENRY III, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Sherwood, Zachary) (Entered: 04/24/2025) |
| 04/24/2025 | 65 | ADMINISTRATIVE RECORD by PAMELA BONDI, DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit)(Sherwood, Zachary) (Entered: 04/24/2025) |
| 04/29/2025 | 66 | Joint STATUS REPORT by AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, CHARLOTTE CENTER FOR LEGAL ADVOCACY, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Sturges, Laura) (Entered: 04/29/2025) |
| 04/29/2025 | | MINUTE ORDER: Upon consideration of the parties' joint status report, Dkt. 66 , it is hereby ORDERED that the parties' proposed schedule is ADOPTED:<br><br>Plaintiffs' Opening Brief in Support of their Motion for Summary Judgment and for a Preliminary Injunction shall be filed on or before May 2, 2025;<br><br>Defendants' Cross–Motion for Summary Judgement and Defendants' Opposition to Plaintiffs' Motion for Summary Judgement and a Preliminary Injunction shall be filed on or before May 9, 2025;<br><br>Plaintiffs' Opposition to Defendants Cross–Motion for Summary Judgment and Plaintiffs' Reply in Support of their Motion for Summary Judgment and for a Preliminary Injunction shall be filed on or before May 12, 2025. |

| | | |
|---|---|---|
| | | It is further ORDERED that the hearing set for 10:00 a.m. on May 14, 2025, is VACATED and RESCHEDULED for 11:00 a.m. on May 14, 2025, in Courtroom 8. Signed by Judge Randolph D. Moss on 4/29/2025. (lcrdm3) (Entered: 04/29/2025) |
| 05/02/2025 | 67 | MOTION for Summary Judgment , MOTION for Preliminary Injunction by AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, CHARLOTTE CENTER FOR LEGAL ADVOCACY, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Memorandum in Support // Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 2 Declaration of Lauren Cusitello in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 3 Declaration of Alicia de la O in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 4 Declaration of Aimee Korolev in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 5 Declaration of Rebecca Lightsey in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 6 Declaration of Atenas Burrola in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 7 Exhibit 1 – April 3 Notice of Termination, # 8 Exhibit 2 – April 3 Rescission, # 9 Exhibit 3 – FOIA Production re Termination, # 10 Exhibit 4 – Self Deport Poster, # 11 Declaration of Cristina Ceron in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 12 Declaration of Melissa Mari Lopez in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 13 Exhibit 1 – Emails Rejecting Access to EOIR Spaces, # 14 Declaration of Laura St. John in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 15 Exhibit 1 – Florence Project Poster, # 16 Exhibit 2 – Self Deport Poster, # 17 Declaration of Suzanne McCormick in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 18 Declaration of Al Page in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 19 Declaration of Lisa Koop in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 20 Declaration of Vanessa Gutierrez in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 21 Declaration of Ryan Brunsink in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 22 Declaration of Emily Bachman Brock in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 23 Declaration of Monique R. Sherman in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 24 Declaration of Kiera Lobreglio in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 25 Declaration of Randolph P. McGrorty in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 26 Declaration of Michael Oropeza in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 27 Declaration of Christopher M. Jones in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 28 Declaration of Erin McKenney in Support of Plaintiffs' Motion for Summary Judgment and Request |

| | | |
|---|---|---|
| | | for Preliminary Injunctive Relief, # <u>29</u> Declaration of David Duea in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # <u>30</u> Declaration of Ruby Robinson in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # <u>31</u> Text of Proposed Order Granting Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief)(Sturges, Laura) (Entered: 05/02/2025) |
| 05/08/2025 | <u>68</u> | Memorandum in opposition to re <u>64</u> MOTION to Dismiss filed by AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, CHARLOTTE CENTER FOR LEGAL ADVOCACY, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Sturges, Laura) (Entered: 05/08/2025) |
| 05/08/2025 | <u>69</u> | Unopposed MOTION for Leave to File Amicus Brief *In Support of Plaintiffs' Motion for Summary Judgment* by HARRIS COUNTY, TEXAS. (Attachments: # <u>1</u> Amicus Curiae Brief, # <u>2</u> Text of Proposed Order)(Oishi, Nina) (Entered: 05/08/2025) |
| 05/09/2025 | | MINUTE ORDER: Upon consideration of Harris County, Texas's unopposed motion for leave to file amicus brief, Dkt. <u>69</u> , it is hereby ORDERED that the motion is GRANTED. Signed by Judge Randolph D. Moss on 5/9/2025. (lcrdm3) (Entered: 05/09/2025) |
| 05/09/2025 | | MINUTE ORDER: The Court has reviewed Plaintiffs' motion for summary judgment, Dkt. <u>67</u> . Both parties are hereby ORDERED to be prepared to address Plaintiffs' standing at the hearing and in their briefs, if applicable. In particular, the parties should address the question of redressability for Plaintiffs' financial injury. The direct cause of Plaintiffs' financial injury appears to be the termination of their contracts by Acacia, a nongovernmental, private entity that is not before the Court as a party to this action. As a result, even if the Court were to grant the relief Plaintiffs seek––"enjoin" Defendants from "terminat[ing]" their "compliance with the mandate in the Department of Justice Appropriations Act, 2024 to fund" the Programs, Dkt. 67–31––the remedy for their financial injury seems to depend on (1) Defendants choosing to reinstate their contract with Acacia and (2) Acacia choosing to reinstate its contracts with Plaintiffs. *See, e.g.*, *U.S. Ecology, Inc. v. United States DOI*, 231 F.3d 20, 2425 (D.C. Cir. 2000) ("When redress depends on the cooperation of a third party, it becomes the burden of the [plaintiff] to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury."); *Emergency Coalition to Defend Educ. Travel v. United States Dep't of the Treasury*, 545 F.3d 4, 10–11 (D.C. Cir. 2008); *Teton Historic Aviation Found. v. U.S. Dep't of Def.*, 785 F.3d 719, 727 (D.C. Cir. 2015). The Court seeks clarification as to whether Plaintiffs have met their evidentiary burden. Signed by Judge Randolph D. Moss on 5/9/2025. (lcrdm3) (Entered: 05/09/2025) |
| 05/09/2025 | <u>70</u> | MOTION for Summary Judgment by PAMELA J. BONDI, DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, JAMES R. McHENRY III, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # <u>1</u> Declaration, # <u>2</u> Declaration, # <u>3</u> Exhibit, # <u>4</u> Text of Proposed Order)(Sherwood, Zachary). Added MOTION for Preliminary Injunction on 5/12/2025 (zjm). (Entered: 05/09/2025) |

| 05/09/2025 | 71 | Memorandum in opposition to re 67 MOTION for Summary Judgment MOTION for Preliminary Injunction filed by PAMELA J. BONDI, DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, JAMES R. McHENRY III, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Declaration, # 2 Declaration, # 3 Exhibit, # 4 Text of Proposed Order)(Sherwood, Zachary) (Entered: 05/09/2025) |
|---|---|---|
| 05/09/2025 | 76 | AMICUS BRIEF by HARRIS COUNTY, TEXAS. (zjm) (Entered: 05/15/2025) |
| 05/12/2025 | | NOTICE of Hearing: Motion Hearing set for 5/14/2025 at 11:00 AM in Courtroom 8– In Person. Public Line shall be available for members of the public: Toll Free Number 833–990–9400; Meeting ID:043781081.(zglw) (Entered: 05/12/2025) |
| 05/12/2025 | 72 | Memorandum in opposition to re 70 MOTION for Summary Judgment MOTION for Preliminary Injunction *Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment* filed by AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, CHARLOTTE CENTER FOR LEGAL ADVOCACY, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration of Amelia Dagen in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 2 Exhibit 1 – April 15, 2024 Hearing Transcript, # 3 Exhibit 2 – ICE Law Library Redline, # 4 Exhibit 3 – ICE Immigration Steps Redline, # 5 Exhibit 4 – ICE Immigration Court.)(Sturges, Laura) (Entered: 05/12/2025) |
| 05/12/2025 | 73 | REPLY to opposition to motion re 67 Motion for Summary Judgment,,,,,,,,,,,,,,,,,, Motion for Preliminary Injunction,,,,,,,,,,,,,,,,,, *Plaintiffs' Reply Brief in Support of Motion for Summary Judgment and Request for Preliminary and Injunctive Relief* filed by AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, CHARLOTTE CENTER FOR LEGAL ADVOCACY, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration of Amelia Dagen in Support of Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief, # 2 Exhibit 1 – April 15, 2024 Hearing Transcript, # 3 Exhibit 2 – ICE Law Library Redline, # 4 Exhibit 3 – ICE Immigration Steps Redline, # 5 Exhibit 4 – ICE Immigration Court.)(Sturges, Laura) (Entered: 05/12/2025) |
| 05/12/2025 | 74 | MOTION for Preliminary Injunction by AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, CHARLOTTE CENTER FOR LEGAL ADVOCACY, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA |

| | | |
|---|---|---|
| | | IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (See Docket Entry 73 to view document) (zjm) (Entered: 05/14/2025) |
| 05/14/2025 | | Minute Entry for proceedings held before Judge Randolph D. Moss: Motion Hearing held on 5/14/2025 re 67 MOTION for Summary Judgment MOTION for Preliminary Injunction filed by IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, CHARLOTTE CENTER FOR LEGAL ADVOCACY, AMERICAN BAR ASSOCIATION, NORTHWEST IMMIGRANT RIGHTS PROJECT, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, AMERICAN GATEWAYS, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ESTRELLA DEL PASO, AMICA CENTER FOR IMMIGRANT RIGHTS and 70 MOTION for Summary Judgment MOTION for Preliminary Injunction filed by EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, UNITED STATES DEPARTMENT OF JUSTICE, KRISTI NOEM, PAMELA J. BONDI, SIRCE E. OWEN, JAMES R. McHENRY III, DEPARTMENT OF HOMELAND SECURITY. <br><br> Oral argument heard. Matter taken under advisement. (Court Reporter Sherry Lindsay). (zglw) (Entered: 05/14/2025) |
| 05/14/2025 | 75 | ORDER: Defendants are hereby ORDERED to file a supplement to the administrative record on or before May 21, 2025. Defendants' supplement shall include all materials relevant to Defendants' decision to "federalize" or otherwise terminate or alter the Programs, as well as their plan to administer the Programs and to spend the appropriated funds before the end of the fiscal year. It is further ORDERED that, should Plaintiffs choose to amend their complaint in light of this supplement, they may do so on or before May 23, 2025. In the event Plaintiffs amend their complaint, the parties may file supplemental briefs on or before May 30, 2025. See document for details. Signed by Judge Randolph D. Moss on 5/14/2025. (lcrdm3) (Entered: 05/14/2025) |
| 05/15/2025 | 77 | TRANSCRIPT OF PROCEEDINGS before Judge Randolph D. Moss held on 5/14/25; Page Numbers: 1–96. Date of Issuance:5/15/25. Court Reporter Sherry Lindsay, Email: Sherry_Lindsay@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form <br><br> For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter. <br><br> **NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. <br><br> Redaction Request due 6/5/2025. Redacted Transcript Deadline set for 6/15/2025. Release of Transcript Restriction set for 8/13/2025.(stl) (Entered: 05/15/2025) |

| 05/21/2025 | 78 | ADMINISTRATIVE RECORD *Supplement* by PAMELA J. BONDI, DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE. (Attachments: # 1 Exhibit)(Sherwood, Zachary) (Entered: 05/21/2025) |
|---|---|---|
| 05/23/2025 | 79 | AMENDED COMPLAINT */ SECOND AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF* against PAMELA J. BONDI, DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE filed by CHARLOTTE CENTER FOR LEGAL ADVOCACY, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, NORTHWEST IMMIGRANT RIGHTS PROJECT, AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, NATIONAL IMMIGRANT JUSTICE CENTER, ESTRELLA DEL PASO, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION SERVICES AND LEGAL ADVOCACY.(Sturges, Laura) (Entered: 05/23/2025) |
| 05/30/2025 | 80 | SUPPLEMENTAL MEMORANDUM re 70 *Defendants' Cross−Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment and Request for Preliminary Injunctive Relief* filed by PAMELA J. BONDI, DEPARTMENT OF HOMELAND SECURITY, EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, JAMES R. McHENRY III, KRISTI NOEM, SIRCE E. OWEN, UNITED STATES DEPARTMENT OF JUSTICE. (Sherwood, Zachary) Modified to add link on 6/6/2025 (zdp). (Entered: 05/30/2025) |
| 05/30/2025 | 81 | SUPPLEMENTAL MEMORANDUM to re 67 MOTION for Summary Judgment MOTION for Preliminary Injunction *// Plaintiffs' Supplemental Brief in Support of their Motion for Summary Judgment and Request for Preliminary Injunctive Relief* filed by AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, CHARLOTTE CENTER FOR LEGAL ADVOCACY, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. (Attachments: # 1 Declaration // Supplemental Declaration of Atenas Burrola in Support of Plaintiffs' Supplemental Brief in Support of their Motion for Preliminary Injunction and Summary Judgment, # 2 Declaration // Supplemental Declaration of Laura St. John in Support of Plaintiffs' Supplemental Brief in Support of their Motion for Preliminary Injunction and Summary Judgment, # 3 Declaration // Supplemental Declaration of Monique R. Sherman in Support of Plaintiffs' Supplemental Brief in Support of their Motion for Preliminary Injunction and Summary Judgment)(Sturges, Laura) (Entered: 05/30/2025) |
| 06/27/2025 | 82 | NOTICE OF SUPPLEMENTAL AUTHORITY by AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, CHARLOTTE CENTER FOR LEGAL ADVOCACY, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION |

| | | |
|---|---|---|
| | | SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK (Attachments: # 1 Exhibit 1 – Decision)(Sturges, Laura) (Entered: 06/27/2025) |
| 07/06/2025 | 83 | MEMORANDUM OPINION: For the reasons stated herein, the Court will DENY Plaintiffs' cross−motion for summary judgment, Dkt. 67; DENY Plaintiffs' motion for a preliminary injunction, Dkt. 74; and GRANT Defendants' motion for summary judgment, Dkt. 70, with respect to (1) Plaintiffs' constitutional and *ultra* vires claims arising from the in−sourcing of LOP and LOPC, and (2) Plaintiffs' claims arising from the termination of ICH, FGLOP, and CCI. The remainder of Plaintiffs' claims will be DISMISSED without prejudice for lack of subject matter jurisdiction. See document for details. A separate Order shall issue. Signed by Judge Randolph D. Moss on 7/6/2025. (lcrdm3) (Entered: 07/06/2025) |
| 07/06/2025 | 84 | ORDER: For the reasons set forth in the Court's Memorandum Opinion, Dkt. 83 , it is hereby ORDERED that Plaintiffs' motion for summary judgment, Dkt. 67 , is DENIED; Plaintiffs' motion for a preliminary injunction, Dkt. 74 , is DENIED; Defendants' motion for summary judgment, Dkt. 70 , is GRANTED with respect to (1) Plaintiffs' constitutional and non−statutory claims arising from the in−sourcing of LOP and LOPC, and (2) Plaintiffs' claims arising from the termination of ICH, FGLOP, and CCI; and the remainder of Plaintiffs' claims are DISMISSED without prejudice for lack of subject matter jurisdiction. See document for details. The Clerk of Court is directed to terminate the case. Signed by Judge Randolph D. Moss on 7/6/2025. (lcrdm3) (Entered: 07/06/2025) |
| 07/14/2025 | 85 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 84 Order on Motion for Summary Judgment,,,,, Order on Motion for Preliminary Injunction,,,,,,,,,, by AMERICAN BAR ASSOCIATION, AMERICAN GATEWAYS, AMICA CENTER FOR IMMIGRANT RIGHTS, CHARLOTTE CENTER FOR LEGAL ADVOCACY, ESTRELLA DEL PASO, FLORENCE IMMIGRANT AND REFUGEE RIGHTS PROJECT, IMMIGRATION CENTER FOR WOMEN AND CHILDREN, IMMIGRATION SERVICES AND LEGAL ADVOCACY, NATIONAL IMMIGRANT JUSTICE CENTER, NORTHWEST IMMIGRANT RIGHTS PROJECT, PENNSYLVANIA IMMIGRATION RESOURCE CENTER, ROCKY MOUNTAIN IMMIGRANT ADVOCACY NETWORK. Filing fee $ 605, receipt number ADCDC−11816983. Fee Status: Fee Paid. Parties have been notified. (Sturges, Laura) (Entered: 07/14/2025) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMICA CENTER FOR IMMIGRANT
RIGHTS, *et al.*,

    *Plaintiffs*,

  v.

U.S. DEPARTMENT OF JUSTICE, *et. al*,

    *Defendants*,

Civil Action No. 1:25-cv-00298-RDM

## <u>NOTICE OF APPEAL</u>

Notice is hereby given this 14th day of July, 2025 that all Plaintiffs in the above-captioned action hereby appeal to the United States Court of Appeals for the District of Columbia Circuit from this Court's Order and final judgment entered in the above-captioned actions on July 6, 2025 (Dkt. 84), which (i) denied Plaintiffs' motion for summary judgment (Dkt. 67), (ii) denied Plaintiffs' motion for a preliminary injunction (Dkt. 74), (iii) granted Defendants' motion for summary judgment (Dkt. 70) with respect to (1) Plaintiffs' constitutional and non-statutory claims arising from the termination of LOP and LOPC, and (2) Plaintiffs' claims arising from the termination of ICH, FGLOP, and CCI, and (iv) dismissed Plaintiffs' remaining claims without prejudice for lack of subject matter jurisdiction.

Respectfully submitted,

Date: July 14, 2025

/s/ Laura M. Sturges

GIBSON, DUNN & CRUTCHER LLP
Laura M. Sturges (C.O. Bar No. 36843)*
1900 Lawrence St., Suite 3000
Denver, CO 80202-2642
(303) 298-5700
lsturges@gibsondunn.com

Amer S. Ahmed (D.C. Bar No. 500630)
Richard W. Mark (D.D.C. Bar No. NY0378)
200 Park Avenue
New York, NY 10166-0193
(212) 351-4000
rmark@gibsondunn.com
aahmed@gibsondunn.com

* admitted pro hac vice

*Attorneys for Plaintiffs*

**CLERK**    Please send copies of the above Notice of Appeal to the following at the addresses indicated:

**Andrew I. Warden**
U.S. DEPARTMENT OF JUSTICE
1100 L Street NW
Washington, DC 20005
(202) 616-5084
Fax: (202) 616-8470
Email: andrew.warden@usdoj.gov

**Zachary W. Sherwood**
DEPARTMENT OF JUSTICE
Civil Division
Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-616-8467
Email: zachary.w.sherwood@usdoj.gov

2

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Local Civil Rule 5.3, I hereby certify that, on July 14, 2025, I caused the foregoing Notice of Appeal to be filed via CM/ECF, providing notice to all registered users.

Dated: July 14, 2025                     */s/ Laura Sturges*

GIBSON, DUNN & CRUTCHER LLP
Laura Sturges (C.O. Bar No. 36843)*
1801 California Street, Suite 4200
Denver, CO 80202-2642
(303) 298-5700
lsturges@gibsondunn.com

\* admitted pro hac vice

3

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| AMICA CENTER FOR IMMIGRANT RIGHTS, *et al.*, |
| *Plaintiffs*, |
| v. |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, |
| *Defendants*. |

Civil Action No. 25-298 (RDM)

## <u>ORDER</u>

For the reasons set forth in the Court's Memorandum Opinion, Dkt. 83, it is hereby

**ORDERED** that Plaintiffs' motion for summary judgment, Dkt. 67, is **DENIED**; it is further

**ORDERED** that Plaintiffs' motion for a preliminary injunction, Dkt. 74, is **DENIED**; it is further

**ORDERED** that Defendants' motion for summary judgment, Dkt. 70, is **GRANTED** with respect to (1) Plaintiffs' constitutional and non-statutory claims arising from the in-sourcing of LOP and LOPC, and (2) Plaintiffs' claims arising from the termination of ICH, FGLOP, and CCI; and it is further

**ORDERED** that the remainder of Plaintiffs' claims are **DISMISSED** without prejudice for lack of subject matter jurisdiction.

This Order constitutes a final, appealable judgment of the Court within the meaning of Rule 58(a) of the Federal Rules of Civil Procedure. The Clerk of Court is directed to terminate the case.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: July 6, 2025

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

AMICA CENTER FOR IMMIGRANT
RIGHTS, *et al*.,

        *Plaintiffs*,

    v.

U.S. DEPARTMENT OF JUSTICE, *et al.*,

        *Defendants.*

Civil Action No. 25-298 (RDM)

---

## MEMORANDUM OPINION

Plaintiffs in this case are twelve non-profit legal services organizations. For many years, Plaintiffs served as government subcontractors for five federal programs that provided legal services to individuals in immigration proceedings (the "Programs"). As subcontractors, Plaintiffs provided free "legal orientations" to non-citizens, advising of them of their rights and duties as they navigated the immigration system, among other services. The Programs were paid for and administered by the Department of Justice's Executive Office of Immigration Review ("EOIR"), pursuant to its annual congressional appropriations, which included an earmark for a portion of the Programs. Rather than provide legal orientation services itself, however, EOIR historically out-sourced the Programs' implementation to one prime contractor, which, in turn, subcontracted with organizations like Plaintiffs.

EOIR recently decided, however, to terminate its prime contract to administer the Programs, leading that prime contractor to terminate its subcontracts with Plaintiffs. EOIR concluded that two of the programs should be in-sourced, rather than run by private contractors, and that the remaining three programs should be discontinued entirely.

Plaintiffs challenge EOIR's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., and the Constitution.  *See* Dkt. 79 (Second Am. Compl.) ("SAC").  The parties cross-move for summary judgment.  Dkts. 67, 70.

For the reasons that follow, the Court will **GRANT** Defendants' motion in part and will **DISMISS** the remainder of Plaintiffs' claims for lack of jurisdiction.

# I.    BACKGROUND

## A.    The Programs

The genesis of the Programs can be traced to 1989, when Plaintiff Florence Project began providing "legal orientation[s]" to individuals in immigration custody in Arizona.  Dkt. 79 at 24 (SAC ¶ 72).  These orientations provided detained immigrants with basic information regarding the immigration court process and their rights, with the goal of ensuring that immigration proceedings were conducted fairly and efficiently.  Upon observing the Florence Project's success, the Senate passed a resolution in 1994, expressing the sense of the Senate that the Attorney General should consider implementing a similar program.  S. Res. 284 103d Cong. (1994), https://perma.cc/QKU7-U5JT.  In response, EOIR initiated a legal orientation pilot program several years later.  Dkt. 79 at 25 (SAC  ¶ 75).  The pilot program proved successful as well, resulting in cost savings through reduced detention times.  News Release, U.S. Dep't of Just. Exec. Off. for Immigr. Rev., *New Legal Orientation Program Underway to Aid Detained Aliens* (Mar. 11, 2003), https://perma.cc/U5CC-7HG5.  The "Legal Orientation Program" ("LOP") was launched in 2003 with a $1 million congressional appropriation.  *Id.* at 2.  To implement LOP, EOIR opted to contract with one prime contractor.  That contractor, in turn, subcontracted with several legal nonprofits to provide legal orientation services at different detention sites across the country.  *Id.*

2

In the ensuing years, as part of its appropriations to EOIR, Congress began earmarking[1] specific sums "for services and activities provided by the Legal Orientation Program" (the "LOP earmark"). *See, e.g.*, Consolidated Appropriations Act, 2019, Pub. L. No. 116-6, 133 Stat. 13, 102. Most recently, in March 2024, Congress appropriated a lump sum of $844 million to EOIR for "expenses necessary for the administration of immigration-related activities" and provided that "not less than" $28 million of that total appropriated amount "shall be available for services and activities provided by the Legal Orientation Program." Consolidated Appropriations Act, 2024, Pub. L. No. 118-42, 138 Stat. 25, 133. Congress subsequently authorized this level of funding to continue through September 30, 2025. *See* Full-Year Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, div. A, tit. I, § 1101, 139 Stat. 9, 10.

EOIR, for its part, has periodically expanded its legal orientation services to include four additional programs. In 2010, EOIR launched the Legal Orientation Program for Custodians ("LOPC") to meet its obligations under the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (the "TVPRA"). Dkt. 79 at 32 (SAC ¶ 92). Specifically, the TVPRA instructs the Secretary of Health and Human Services to "cooperate" with EOIR to "ensure that custodians [of children in immigration proceedings] receive legal orientation presentations." 8 U.S.C. § 1232(c)(4); *see Fact Sheet*, U.S. Dep't of Just. Exec. Off. for Immigr. Rev., EOIR's Office of Legal Access Programs 2 (Aug. 2016), https://perma.cc/8P3W-9NWM. And in 2016, EOIR created the Immigration Court Helpdesk ("ICH"), which provides informational "helpdesks" at immigration courts for non-detained individuals. Dkt. 79 at 22 (SAC ¶ 64). In 2021, EOIR added the Family Group Legal Orientation Program ("FGLOP") and

---

[1] "An earmark refers to the portion of a lump-sum appropriation designated for a particular purpose." 2 U.S. Gov't Accountability Off., *Principles of Federal Appropriations La*w, GAO-06-382SP, at 6-26 (3d ed. 2006) (hereinafter "GAO Redbook").

3

the Counsel for Children Initiative ("CCI").  *Id.* at 23 (SAC ¶¶ 65–66).  FGLOP provides

orientation services to families in expedited removal proceedings, and CCI provides "full-scope,

free legal representation for children who are in removal proceedings."  *Id.* at 34 (SAC ¶¶ 94–

95).  EOIR funded its first three programs—LOP, LOPC, and ICH—through its "Legal

Orientation Program" earmarks, while funding the latter two programs—FGLOP and CCI—

through its lump sum appropriations.

Aside from the "Legal Orientation Program" earmarks in EOIR's annual appropriations,

none of the Programs is governed by statute or regulation, leaving EOIR with substantial

discretion over their content and implementation.  Historically, EOIR has out-sourced

implementation of the Programs by contracting with private parties.  *Id.* at 37 (SAC ¶ 100).

Until recently, EOIR's prime contractor was Acacia Center for Justice, a non-profit entity.  *Id.*

Acacia subcontracted with various non-profit legal organizations to provide services, including

(but not limited to) Plaintiffs in this case.  *Id.* at 23 (SAC ¶ 68).  The services under the Acacia

contract were fulfilled on a "task order basis."[2]  Dkt. 65-3 at 4.  The task orders were limited in

duration, with the most recent set spanning approximately one year and expiring in July or

August 2025, depending on the program.  Dkt. 65-2 at 1.  The contract with Acacia incorporated

numerous provisions from the Federal Acquisition Regulations ("FAR"),[3] including a clause that

---

[2] A "task-order contract" is "[a] contract under which a vendor agrees to render services or
deliver products as ordered from time to time. []Governments use this type of contract when the
quantities that will be needed or the times for performance are uncertain.  The contract may
describe the services or products generally, but it must specify the period of performance, the
number of option periods, and the total minimum and maximum quantity of products or services
that the government will acquire under the contract.  When exercising its contractual rights, the
government issues task orders to specify the product or service requirements, which may vary
with each order."  Task-Order Contract, Black's Law Dictionary (12th ed. 2024).

[3] The FAR "codifi[es] . . . uniform policies and procedures" used by executive agencies when
acquiring supplies and services.  FAR § 1.101.

permits the government to terminate the contract at any time "for the convenience of the Government," Dkt. 65-3 at 41, as well as a "Stop-Work Order" clause, which authorizes the government to "require the Contractor to stop all, or any part, of the work called for by" the contract "for a period of 90 days," *see id.* at 19; FAR 52.242-15(a).

**B.      January 22, 2025 Stop Work Order**

On the day that he took office, President Trump signed an executive order titled "Protecting the American People Against Invasion."  Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025).  The Executive Order directs the Attorney General to "[p]ause distribution of all further funds pursuant to" government contracts that "provid[e] Federal funding to non-governmental organizations supporting or providing services, either directly or indirectly, to removable or illegal aliens" pending a review of those contracts and to "[t]erminate . . . agreements determined to be in violation of law or to be sources of waste, fraud, or abuse."  *Id.* § 19(a)–(c).

Two days later, a contracting officer from the Department of Justice issued a "Stop-Work Order" to Acacia for the Programs, with the exception of LOPC.  Dkt. 44-3 at 2.  Acacia then "informed its subcontractors . . . by email on January 22, 2025 to stop work pursuant to that agency directive."  Dkt. 79 at 47 (SAC ¶ 130).  The subcontractors were "forced to abruptly halt work" related to the Programs.  Dkt. 67-18 at 4 (Page Decl. ¶ 10); Dkt. 67-19 at 2–3 (Koop Decl. ¶¶ 4–5).  That same day, U.S. Immigration and Customs Enforcement ("ICE") leadership informed government personnel that EOIR was "pausing all Legal Orientation Program Services," and ICE advised that "[i]f there are LOP flyers posted in the law library and/or housing units please take them down while there is a pause in services."  Dkt. 70-3 at 5.  Neither EOIR nor ICE publicly addressed whether the subcontractors could continue to access detention

facilities or immigration courts, but some Plaintiffs reached out to local ICE officers "to clarify whether [the] LOP team could continue to enter the [detention] facility for both individual visits and ['Know Your Rights'] presentations." Dkt. 67-20 at 4 (Gutierrez Decl. ¶ 13). These Plaintiffs attest that they "received pushback" from ICE and "encountered challenges," but they were not denied access entirely. *Id.*; *see also* Dkt. 67-23 at 4–5 (Sherman Decl. ¶¶ 13–15) (following the Stop Work Order, ICE permitted Rocky Mountain Immigrant Advocacy Network to perform individual legal orientations, but not group orientations). Some organizations also aver that their "posters regarding [their] education services and other materials relating to [Program] services, how to access free legal assistance, and basic legal information about different forms of relief were removed from tablets used by noncitizen detainees." Dkt. 67-5 at 4 (Lightsey Decl. ¶ 12); Dkt. 67-6 at 5 (Burrola Decl. ¶ 14).

## C.    This Litigation

### 1.    *Plaintiffs' Challenge to the Stop Work Order*

Plaintiffs promptly filed suit to challenge the Stop-Work Order, bringing three counts under the APA. Dkt. 1 at 43–48 (Compl. ¶¶ 133–57). Plaintiffs' claims arose from two consequences of the Stop-Work Order: (1) the funding termination, and (2) Plaintiffs' curtailed access to immigration facilities and the removal of their posters. Plaintiffs' three APA claims were premised on alleged arbitrary and capricious action, violation of the Appropriations Clause, and violation of Plaintiffs' First Amendment rights. *Id.* Plaintiffs concurrently moved for a temporary restraining order, seeking to enjoin Defendants from "terminat[ing] Defendants' compliance with the mandate in the Department of Justice Appropriations Act, 2024 to fund" the Programs (except LOPC); from "den[ying] Plaintiff practitioners access" to detention facilities;

and from removing Plaintiffs' posters and other informational materials from those facilities. Dkt. 2-12 at 3.

Two days later, however, EOIR informed Acacia that "[t]he stop-work order has been rescinded," and it instructed Acacia to "immediately resume funding of all programs." Dkt. 44-3 at 8. The parties appeared for a scheduling hearing the next day and informed the Court that EOIR had resumed funding Acacia through its contract. Feb. 3, 2025 Hrg. Tr. (Rough at 2). The Court directed the parties to file a status report the following week, setting forth a proposed briefing schedule if necessary to resolve any outstanding issues (such as Plaintiffs' access to facilities). *Id.* (Rough at 7). The parties then agreed to brief Plaintiffs' motion for a preliminary injunction and appear for a hearing on March 17, 2025. Min. Order (Feb. 10, 2025). Several days before the hearing, Defendants filed the administrative record for the Stop-Work Order. Dkt. 44.

By the date of the hearing, funds had been flowing for nearly two months, without interruption. Plaintiffs argued, however, that they nonetheless needed preliminary injunctive relief to prevent EOIR from issuing another stop-work order in the future. Dkt. 43 at 2. But because that future stop-work order was, at that point, "hypothetical," the Court took Plaintiffs' motion under advisement, and directed the parties to notify the Court of any change in circumstances. March 17, 2025 Hrg. Tr. (Rough at 50). The Court further directed Defendants to provide Plaintiffs with at least three business days' notice before terminating funding to Acacia for any of the Programs. Min. Order (Mar. 17, 2025).

2.    *April 10, 2025 Termination Notice*

In the weeks following the hearing, the Justice Management Division of the Department of Justice ("JMD"), which handles procurement, "received instructions to freeze all contracts

starting 3/29/25 unless considered 'mission essential.'" Dkt. 65-2 at 1. This instruction apparently came via a call from the Department of Government Efficiency, known as "DOGE." *Id.* at 8. JMD and EOIR began "reviewing the various task orders under the Acacia contract to determine which ones are required by court order and which ones can be wound down." *Id.* at 14. EOIR's Office of Policy sent a recommendation to EOIR Acting Director Sirce Owen, explaining that, pursuant to the Court's prior order, a "[t]hree-day notice to terminate services" was required for LOP, ICH, FGLOP, and it recommended a "60-day wind down period" for CCI. *Id.* at 15. As for LOPC, which was not subject to the Court's order, the Office of Policy recommended a "30-day notice [to] terminate services for LOPC to allow EOIR to continue to meet statutory obligations outlined in the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008," and that "[g]oing forward, obligations would be met under a federalized program." *Id.* According to EOIR, and as explained in more detail below, it generally adopted this recommendation, and it plans to provide LOP and LOPC services through a consolidated "federalized program." Dkt. 78-1 at 18–20 (Supp. Owen Decl. ¶¶ 13–18).

On April 10, 2025, EOIR sent Acacia a "notice of termination" ("Termination Notice"). Dkt. 65-2 at 29. The notice stated that, effective April 16, 2025, the task orders associated with all five of the Programs would be "terminated for the convenience of the government," pursuant to FAR 52.249-2 and FAR 52.249-6. *Id.* at 30. Acacia, in turn, informed its subcontractors (including Plaintiffs) of the Termination Notice via email. *See, e.g.*, 67-2 at 4 (Cusitello Decl. ¶ 12). The day before the termination was set to take effect, ICE sent another internal email explaining that EOIR terminated Acacia's task orders and instructing ICE personnel to "remove any LOP flyers that are posted in the law library and/or housing units." Dkt. 70-3 at 3. ICE

further advised that "authorized entities shall still be permitted to provide legal rights group presentations" in accordance with ICE's detention center policies.  *Id.*

    3.    *Plaintiffs' Challenge to the Termination Notice*

Upon learning of the Termination Notice, Plaintiffs notified the Court and Defendants of their intent to renew their motion for a temporary restraining order, Dkt. 51, and they filed their renewed motion the following week, just prior to the date the termination was set to take effect, Dkt. 53.  Defendants opposed Plaintiffs' motion both on jurisdictional grounds and on the merits. Dkt. 60 at 4.  Relying on an intervening decision from the Supreme Court's emergency docket, *Department of Education v. California*, 145 S. Ct. 966 (2025) (per curiam), Defendants argued that Plaintiffs' claims were, "in essence," contractual claims for monetary relief because they were premised on Defendants' contract with Acacia.  Dkt. 60 at 4, 10–11.  Thus, in Defendants' view, the Court lacked jurisdiction because the Tucker Act requires contractual claims against the government (for more than $10,000, *see* 28 U.S.C. § 1346(a)) to be brought in the Court of Claims, Dkt. 60 at 10–11.  On the merits, Defendants argued that "funding decisions" are unreviewable because they are "committed to agency discretion by law," and that Plaintiffs had failed to state a claim for Appropriations Clause or First Amendment violations.  *Id.* at 18–22 (capitalization altered).

The Court held a hearing on Plaintiffs' renewed motion on April 15, 2025.  After hearing argument from the parties, the Court denied Plaintiffs' motion for a temporary restraining order from the bench.  Min. Order (Apr. 15, 2025).  The Court explained that it was unable to grant provisional, emergency relief because it "remain[ed] unclear . . . what the relevant agency action is here."  Dkt. 63 at 63.  Neither the Plaintiffs' declarations nor the administrative record answered the key factual question in the case:  Did the Termination Notice merely terminate a

9

government contract or was it, as Plaintiffs argued, tantamount to terminating the Programs and impounding the earmarked appropriation?  Without an answer to this threshold question, the Court was unable to determine whether the Tucker Act divested it of jurisdiction.  *Id.* at 62–65.

Even putting the Tucker Act aside, however, there were additional jurisdictional uncertainties.  In particular, there remained the question of whether Plaintiffs had organizational standing—an issue that Plaintiffs failed to address in any of their briefs.  *Id.* at 65; *see* Dkts. 53, 59.  Finally, the Court was unpersuaded that terminating funding gave rise to a First Amendment injury, but it noted that Plaintiffs' allegation that they would be denied access to detention facilities was "potentially more promising."  Dkt. 63 at 66.  At that point, however, there was "nothing in the record" indicating that "any such decision" to limit access had been made, let alone a decision made for the purpose of limiting Plaintiffs' speech.  *Id.* at 67.  The Court, accordingly, concluded that Plaintiffs had failed to show that they would suffer an imminent First Amendment violation absent emergency relief.  *Id.* at 68–69.  Following the Court's ruling, Plaintiffs indicated that they planned to move for a preliminary injunction, and the Court set a hearing for the following month.  *Id.* at 72.

      4.    *Termination of Plaintiffs' Subcontracts with Acacia*

The Termination Notice then went into effect, leading Acacia to terminate its subcontracts with Plaintiffs.  That day, ICE leadership sent a third internal email providing "additional guidance" from EOIR regarding the termination.  EOIR requested "the following actions be implemented at all locations where LOP services were previously provided:"

- Former LOP contractors and service providers are NOT to be categorically prohibited from entering ICE facilities.  Rather, former LOP contractors and service providers may continue to enter ICE facilities, have access to such facilities, and conduct meetings with detained persons in accordance with the same rules and regulations that apply to attorneys and members of the public.  Former LOP contractors and service providers shall be treated no

10

> differently than attorneys or members of the public requesting access to an ICE facility, and shall adhere to the same generally applicable rules and regulations regarding such access.

- As part of the contract termination wind down, you may take appropriate steps to discontinue any special access to ICE facilities that had been provided to LOP contractors and service providers in connection with the now-terminated contract (e.g., terminate ID badges). You may also restrict access by former LOP contractors and service providers to areas of ICE facilities previously utilized for LOP program services, but not otherwise available to visitors, members of the public, or attorneys.

Dkt. 70-3 at 1. Finally, ICE advised that if any "LOP contractors and service providers" had left their property or belongings inside ICE facilities, they should be allowed to retrieve their property "in a reasonably timely manner." *Id.* According to a declaration from Stephanie Gorman, the Acting Assistant Director of Policy for EOIR, Program subcontractors such as Plaintiffs "no longer have special access rights within" immigration court or detention facilities. Dkt. 70-2 at 2–3 (Gorman Decl. ¶ 6). "EOIR facilities" and "hearings before Immigration Judges," however, "are open to the public," and former subcontractors may enter and use those facilities subject to EOIR security screenings, like any other member of the public. *Id.* at 3 (Gorman Decl. ¶¶ 8, 10).

Plaintiffs' experiences are consistent with EOIR's stated policies. Two Plaintiff organizations—ProBAR and Estrella del Paso—attest that they were unable to access certain areas in immigration courts that they had previously used as ICH service providers. According to ProBAR, the "[Harlingen Immigration] Court declined ProBAR's request to provide group orientation in the court lobby via email, stating that 'based on the recent changes in the contracts, we would not be able to support this request.'" Dkt. 67-4 at 6 (Korolev Decl. ¶ 22). Similarly, Estrella asked El Paso Immigration Court administrators whether Estrella "would/could still be given access to EOIR space to conduct Know Your Rights presentations and individual

orientations," "independent of [Estrella's] status as an ICH provider." Dkt. 67-13 at 4. El Paso's Acting Chief Immigration Judge responded that the court "c[ould] not continue to provide Estrella del Paso (independent of its status as an ICH provider) access to EOIR space." *Id.* at 2; Dkt. 67-12 at 6 (Lopez Decl. ¶ 17). Other Plaintiffs attest that their "information posters were removed" from detention facilities. Dkt. 67-1 at 44–46. Plaintiffs' most recent set of declarations similarly attest that, since the Termination Notice, they have "faced increased difficulty in accessing and assisting individuals" at ICE facilities. Dkt. 81-1 at 2 (Burrola Decl. ¶ 4). For example, Plaintiff Amica Center reports "lower attendance" at "know your rights" presentations and that two of its volunteers were turned away from a visit because ICE "need[ed] two weeks for [their] background check[s]." *Id.* at 3, 5–6 (Burrola Decl. ¶¶ 10–11, 21–23); *see also* Dkt. 81-2 at 2 (St. John Decl. ¶ 4); Dkt. 81-3 at 2 (Sherman Decl. ¶ 4).

In addition to its impact on Plaintiffs' level of access to facilities, Acacia's termination of Plaintiffs' subcontracts has had financial consequences. The sudden halt in contractual funds has caused numerous Plaintiffs to lay off, furlough, or transfer staff and curtail their operations. The American Bar Association Immigration Justice Project ("IJP"), for example, was "forced to transfer all of [their] LOP and ICH staff to direct representation casework due to the lack of funding," though "even with the staff transfers," IJP anticipates that "four staff members will be terminated." Dkt. 67-2 at 4 (Cusitello Decl. ¶ 13). Other Plaintiffs have made similar adjustments and cuts to address the terminations. *See, e.g.*, Dkt. 67-5 at 4 (Lightsey Decl. ¶ 15); Dkt. 67-6 at 9 (Burrola Decl. ¶ 32); Dkt. 67-14 at 8 (St. John Decl. ¶ 23); Dkt. 67-19 at 4 (Koop Decl. ¶ 12).

5.    *Plaintiffs' Amended Complaint and Pending Motion for Summary Judgment and a Preliminary Injunction*

Prior to the second preliminary injunction hearing, the parties agreed to consolidate the merits with Plaintiffs' motion for a preliminary injunction pursuant to Rule 65(a).  The parties proposed a summary judgment briefing schedule, with Defendants first filing the administrative record with respect to the Termination Notice.  Dkts. 61, 66.  Plaintiffs also filed an amended complaint, asserting six claims: (1) agency action that is arbitrary and capricious, an abuse of discretion, and not in accordance with law, in violation of the APA, (2) violation of the Appropriations Clause, brought under the APA (on behalf of LOP, LOPC, and ICH providers), (3) violation of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, brought under the APA (on behalf of LOPC providers), (4) violation of the First Amendment, brought under the APA (5) violation of the Separation of Powers, and (6) ultra vires agency action.  Dkt. 62 at 54–62 (Am. Compl. ¶¶ 158–98).  Defendants then filed a motion to dismiss, Dkt. 64, as well as the administrative record for the Termination Notice, Dkt. 65.

Plaintiffs, in turn, filed their motion for summary judgment and a preliminary injunction, Dkt. 67, and Defendants filed their opposition and cross-motion, Dkt. 70.  Defendants attached to their cross-motion a sworn declaration from Sirce Owen, the Acting Director of EOIR.  Dkt. 70-1 at 1 (Owen Decl. ¶ 1).  Owen disclaimed that EOIR canceled Acacia's contract with the intent of terminating the Programs.  Owen attested that, going forward, LOP, LOPC, and ICH services would be provided under "a consolidated federalized program," rather than through a private contractor.  *Id.* at 2–3 (Owen Decl. ¶ 5).  "The federalized program will be administered by a team of EOIR employees," and will include "hard copy and online legal tools such as self-help legal materials and EOIR's Immigration Court Online Resource."  *Id.* at 3 (Owen Decl. ¶¶ 6–7).  Owen explained that CCI and FGLOP—which were "discretionarily funded" through EOIR's

13

lump sum appropriations—would not be continued.  *Id.* at 3–4 (Owen Decl. ¶ 8).  Finally, regarding the status of the appropriated funds, Owen attested that "EOIR will disburse at least $28 million in fiscal year 2024 (FY 2024) funding for legal orientation as required by statutory appropriation" through "a combination of Acacia contract spending and federalized program efforts."  *Id.* at 4 (Owen Decl. ¶ 9).  At the time Owen filed her declaration, "[a]pproximately $20 million remain[ed] unused/undisbursed relating to the LOP/LOPC and ICH task orders associated with Acacia."  *Id.* at 4 (Owen Decl. ¶ 10).  This remainder and the appropriations under the 2025 continuing resolution will be spent on the federalized program.  *Id.* at 4–5 (Owen Decl. ¶¶ 11–12).  Plaintiffs then filed their opposition and reply.  Dkt. 72.

6.    *Hearing on Plaintiffs' Motion for Summary Judgment and a Preliminary Injunction*

The Court held a hearing on Plaintiffs' motions on May 14, 2025.  With respect to the Owen Declaration, Plaintiffs argued that it was not properly before the Court because it was not included in the administrative record.  Dkt. 73 at 11.  Plaintiffs further argued that, even if the Court were to consider the declaration, it nonetheless supported Plaintiffs' position—that is, it showed that Defendants had, in fact, terminated the Programs.  Dkt. 77 at 16–17.  On Plaintiffs' reading, the Owen Declaration merely "describe[ed] . . . activities that already occur" *alongside* the Programs, but it did not describe a *replacement* for the Programs.  *Id.* at 18–19.

Defendants, for their part, conceded that the declaration was not part of the administrative record in the sense that it was not part of the agency's decisional materials, but they argued that it was nonetheless properly before the Court as part of the summary judgment record.  Dkt. 77 at 49.  In Defendants' view, the declaration established that the government had not, in fact, terminated LOP, LOPC, and ICH, but instead decided to in-source them.  This decision, Defendants argued, was not subject to APA review, nor was it challenged in Plaintiffs' operative

complaint (which, Defendants acknowledged, was due to Defendants' own eleventh-hour disclosure of the Owen Declaration). *Id.* at 50.

At the hearing, the Court explained that, notwithstanding the parties' voluminous submissions since the prior hearing, the Court was no closer to understanding the key factual issue in the case: what the relevant agency action is. Dkt. 77 at 52. Defendants insisted that the case concerns nothing more than a contract termination; while Plaintiffs maintained that Defendants had ended the Programs and impounded earmarked funds. *See id.* Although the Owen Declaration purported to answer this question, the parties had not adequately briefed whether it was properly before the Court, and the Declaration left important questions unanswered.

The Court took the motions under advisement. Following the hearing, the Court issued an order directing Defendants to supplement the administrative record with respect to their decision to federalize LOP, LOPC, and ICH and terminate FGLOP and CCI. Dkt. 75. The order explained that supplementation was necessary because, as it stood then, the record revealed only that Defendants had canceled the prime contract for the Programs, and it otherwise shed little light on the Programs' fate. Dkt. 75 at 1–2. The Court ordered Defendants to supplement the record within one week, and it provided Plaintiffs with an opportunity to amend their complaint two days after that to challenge Defendants' actions as set forth in the supplemental administrative record and the Owen Declaration, should Plaintiffs choose to do so. The Court further ordered that, if Plaintiffs opted to amend, the parties would be permitted to file supplemental briefs. *Id.* at 4.

15

7.    *Supplemental Administrative Record*

Defendants filed a supplemental administrative record the following week.  Dkt. 78.  The supplemental record contains an additional declaration from Acting Director Owen ("Supplemental Owen Declaration"), which reiterates, once again under the penalty of perjury, that Defendants decided to terminate their prime contract in favor of an in-sourced program.  Owen also attests that, since her prior declaration, Defendants decided that the federal program will provide LOP and LOPC services, but not ICH services.  Dkt. 78-1 at 19 (Supp. Owen Decl. ¶ 17).  Owen explains that "EOIR recognizes that it is obligated to spend no less than the minimum amount of funding that Congress has specifically appropriated for the 'Legal Orientation Program,'" and "as required by 8 U.S.C. § 1232, EOIR must also provide certain legal orientation services to custodians of unaccompanied alien children."  *Id.* at 18 (Supp. Owen Decl. ¶ 13).  Thus, "[w]hen the operative task orders were terminated on April 16, 2025, EOIR recognized and was prepared to assume those responsibilities itself, *i.e.* for the LOP and LOPC."  *Id.* at 17–18 (Supp. Owen Decl. ¶ 11).  In contrast, "[t]he services that were delivered under FGLOP, ICH, and CCI are not required by any specific statute or regulation," and Owen explained that EOIR has decided to discontinue those services.  *Id.* at 19 (Supp. Owen Decl. ¶ 17).

In addition to the Supplemental Owen Declaration, the supplemental administrative record contains Owen's previous declaration, Gorman's declaration, various studies regarding the efficacy of the Programs, as well as a January 31, 2025 memorandum written by Owen regarding these studies.  *See* Dkt. 78-1.

8. *Plaintiffs' Second Amended Complaint and the Parties' Supplemental Briefs*

Following the supplemental administrative record, Plaintiffs filed a second amended

complaint, Dkt. 79 (SAC), and a supplemental brief, Dkt. 81.  In their complaint, Plaintiffs

reprise their challenge to the termination of ICH, FGLOP, and CCI, but now also challenge two

aspects of LOP and LOPC: (1) Defendants' decision to in-source those programs, and

(2) Defendants' administration of its in-sourced program.  In particular, the complaint alleges

that the decision to in-source was arbitrary, capricious, and not in accordance with law, Dkt. 79

at 50–54, 62–65 (SAC ¶¶ 143–150, 175–85), and it alleges that the in-sourced, consolidated LOP

and LOPC is so inadequate that those programs "have been functionally terminated," *id.* at 9–10

(SAC ¶¶ 21–22); *see also* Dkt. 81 at 7–8.  Plaintiffs otherwise assert the same six counts as

before—four counts under the APA for arbitrary and capricious agency action, violation of the

Appropriations Clause, violation of the TVPRA, and violation of the First Amendment; one

count for violation of the Separation of Powers; and one count for *ultra vires* agency action.

Dkt. 79 at 62–71 (SAC ¶¶ 175–216).  With respect to relief, Plaintiffs seek a declaration that

Defendants' actions violate the APA, the Constitution, and that they are *ultra vires*; they ask the

Court to "[s]et aside" Defendants' "attempts and orders to terminate the Programs"; and they

seek to "[e]njoin Defendants nationwide" from "ceasing to continue LOP, LOPC, FGLOP, ICH

and CCI programs" and from "preventing Plaintiffs from accessing immigration courthouses,

detention centers, and other public forums."  *Id.* at 71–72 (Prayer for Relief).

In response, Defendants reiterate in their supplemental brief that this case is merely a

"contract action" over which the Court lacks jurisdiction pursuant to the Tucker Act.  Dkt. 80 at

5.  But, Defendants argue, even if the Court disagrees that Plaintiffs' claims arise solely under

the Tucker Act, Plaintiffs lacks standing and their claims are unreviewable under the APA.  *Id.* at

8–9.[4]

> The parties' motions are, at last, ripe for decision.

## II.   LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides the standard for summary

judgment.  Summary judgment is appropriate under Rule 56 when the evidence demonstrates

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the

substantive outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  *Id.*  "The rule governing cross-motions for summary judgment . . . is that

neither party waives the right to a full trial on the merits by filing its own motion; each side

concedes that no material facts are at issue only for the purposes of its own motion."  *Sherwood*

*v. Wash. Post*, 871 F.2d 1144, 1147 n.4 (D.C. Cir. 1989).

At the same time, as the case proceeds, "the Court has an 'affirmative obligation to

ensure that it is acting within the scope of its jurisdictional authority,'" *Kean for Cong. Comm. v.*

*Fed. Election Comm'n.*, 398 F. Supp. 2d 26, 31–32 (D.D.C. 2005), and the plaintiff bears the

burden of establishing subject matter jurisdiction "with the manner and degree of evidence

required at the successive stages of the litigation," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561

(1992).  "At the summary judgment stage of the proceedings," Plaintiffs "can no longer rest on

---

[4] Plaintiffs note in their most recent submission, Dkt. 82, that they are preparing to submit
additional evidence regarding their alleged First Amendment harms and loss of funding.  For the
reasons explained below, additional evidence of these harms would not affect the Court's
conclusions.

'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts'" that

establish jurisdiction.  *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015)

(cleaned up) (quoting *Lujan*, 504 U.S. at 561).  If the Court determines at any time that it lacks

jurisdiction over any claim, it must dismiss the claim.  *See Steel Co. v. Citizens for a Better Env.*

523 U.S. 83, 94 (1998) ("Jurisdiction is power to declare the law, and when it ceases to exist, the

only function remaining to the court is that of announcing the fact and dismissing the cause.").

Thus, if the Court finds that it lacks jurisdiction at the summary judgment stage, the proper

course is to dismiss without prejudice, rather than grant summary judgment.  *See Auster v.*

*Ghana Airways Ltd.*, 514 F.3d 44, 48 (D.C. Cir. 2008); Fed. R. Civ. P. 12(h)(3).

## III.   ANALYSIS

Before addressing the parties' principal arguments, the Court pauses to address two

preliminary issues.

The first issue relates to the scope of the Court's review.  Under 5 U.S.C. § 706

(hereinafter "§ 706"), the scope of APA review of agency action is limited to the administrative

record, which consists of only the materials that were "before the [agency] at the time it made its

decision."  *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (internal

quotation marks and citation omitted).  Relying on this record rule, Plaintiffs maintain that the

Court should not consider any submissions from Defendants that "post-date the [Termination

Notice]," including the two Owen Declarations and the Gorman Declaration.  Dkt. 81 at 10.

Plaintiffs observe that those declarations were not "before" Defendants at the time they made

their decisions, and so they are not part of the administrative record.  *Id.*  Defendants, for their

part, maintain that the challenged decisions are not the sort of agency actions that require the

preparation of an administrative record, but, in any event, they are entitled to summary judgment

19

or dismissal regardless of the contents of the records they filed.  Dkt. 80 at 7.  Defendants

explain that the Court either lacks jurisdiction over Plaintiffs' claims or the APA bars judicial

review by depriving Plaintiffs of a cause of action, and the Court's resolution of these threshold

issues is not subject to the APA's record rule.  *See* Dkt. 70 at 17–33; Dkt. 77 at 50.

Defendants are correct that the Court is not limited to the administrative record in

determining whether it has subject matter jurisdiction over Plaintiffs' claims.  *See Lujan*, 504

U.S. at 561.  Nor is the Court limited to the administrative record when extra-record sources are

needed to identify the agency action at issue.  As the Court has previously explained, to the

extent evidence that was not before the decisionmakers is needed to "elucidate what the agency

decided," it is appropriately before the Court "for [that] limited purpose."  *Center for Biological*

*Diversity v. U.S. Army Corps of Engineers*, 2020 WL 5642287, at *8 (D.D.C. Sept. 22. 2020)

(citing *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010));

*see also See Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 386 n.4 (D.C. Cir. 2018)

(explaining the courts may always consider materials "outside of the administrative record" for

the "permissible purpose" of elucidating the agency action).  And, of course, an administrative

record is not usually necessary to decide whether the plaintiff has identified a cognizable "cause

of action for substantive judicial review of the [challenged] decision."  *Make the Rd. N.Y. v.*

*Wolf*, 962 F.3d 612, 634 (D.C. Cir. 2020).  For the reasons explained below, the Court concludes

that Plaintiffs' APA claims fail for lack of subject matter jurisdiction and lack of a cause of

action.[5]  Accordingly, beyond considering Defendants' extra-record declarations for the purpose

---

[5] As explained in more detail below, although Plaintiffs bring their First Amendment and
Appropriations Clause claims under the APA, Dkt. 79 at 65, 67–69 (SAC ¶¶ 186–190, 196–207),
those claims are nonetheless subject to judicial review.  The Court may review constitutional
claims even where they arise from otherwise unreviewable agency action.  *See Lincoln v. Vigil*,

of identifying the relevant agency action, the Court need not address Plaintiffs' arguments regarding the proper contents of the administrative record.

Second, having clarified the scope of the record and the permissible use of extra-record evidence, the Court turns to the nature of the agency actions at issue. Plaintiffs' challenge has evolved over the course of this litigation, as Defendants have taken new actions and then filed subsequent declarations explaining those actions. At this juncture, the evidence in the record and the parties' briefs indicate that the challenged agency actions are the following: (1) Defendants' decision to in-source LOP and LOPC and discontinue ICH, FGLOP, and CCI; and (2) Defendants' ongoing implementation and administration of its new, federalized LOP and LOPC. *See* Dkt. 81 at 14–30; Dkt. 73 at 13–15, 40–52; Dkt. 80 at 10–16.

Each of the six counts Plaintiffs assert in their second amended complaint arise from these two actions. The Court, accordingly, will address each of Defendants' actions in turn.

## A.    Decision to In-source LOP and LOPC and Terminate ICH, FGLOP, and CCI

### 1.    *Standing*

Plaintiffs argue that Defendants' decision to terminate its contract with Acacia, in-source LOP and LOPC, and terminate ICH, FGLOP, and CCI was both arbitrary and capricious and unlawful. In their view, Defendants acted arbitrarily and capriciously by failing to engage with studies showing that the Programs (as implemented by Plaintiffs) were beneficial and cost-effective and by failing to explain their decision to pivot to an in-sourced program for LOP and LOPC. Dkt. 81 at 23–28. And, Plaintiffs say, Defendants' decision was unlawful because

---

508 U.S. 182, 195 (1993). And because these claims are not subject to the APA, the Court concludes that its review of them is similarly not limited to the administrative record. These claims, however, fail on the merits. *See infra* pp. 30–31.

Defendants violated the First Amendment, the Appropriations Clause, the Separation of Powers, and acted *ultra vires*. *Id.* at 19, 30.

Defendants respond that Plaintiffs lack standing to challenge their decision, arguing that Plaintiffs' asserted injuries—financial injuries from loss of their subcontracts and curtailed access to immigration facilities, *see* Dkt. 67-1 at 22–23—are not redressable. Defendants reason that Plaintiffs' injuries can only be redressed by an injunction requiring Defendants to reverse their decision to in-source LOP and LOPC and to reinstate ICH, FGLOP, and CCI, using the prior private-contractor model. But, Defendants observe, the Court lacks the authority to order the government to contract with private parties, let alone contract with any particular private party. Dkt. 80 at 13–14. Moreover, even if the Court were to "merely 'set[] aside'" Defendants' "decision to 'federalize,'" that "would not result in a restoration of Program funding to Plaintiffs specifically, meaning in turn that the various funding-related injuries Plaintiffs assert would go unredressed." *Id.* at 20 (cleaned up).

The Court is unpersuaded. As the D.C. Circuit has repeatedly held, potential contractors have Article III standing to challenge the government's decision to in-source a program or service. In *CC Distributors, Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989), for example, contractors challenged the Air Force's decision to in-source a service that the plaintiff contractors had previously provided. The Air Force argued—as Defendants do here—that the contractors lacked standing because there they had "no right to obtain [the] contract," and so even if the Air Force initiated a reprocurement, there was no guarantee the plaintiff contractors would be awarded the contract. *Id.* at 151. The D.C. Circuit rejected this argument, explaining that "the loss of an *opportunity to pursue a benefit*—such as a [government] contract" is sufficient to establish standing, "even though the plaintiff may not be able to show that it was

*certain to receive* that benefit had it been accorded the lost opportunity." *Id.* at 150 (emphasis in original). The court held, in other words, that standing may be premised on the loss of an opportunity to "compete" for a government contract, regardless of whether the party is ultimately awarded the contract. *Id.*; *accord Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003) ("[A] claim of lost contracting opportunities is ordinarily sufficient to establish injury in fact."); *cf. Regents of the University of California v. Bakke*, 438 U.S. 265, 280 n.14 (1978).

Similarly, Plaintiffs here have lost the opportunity to compete for a contract (or a subcontract) to administer the Programs. Of course, if the Court were to set aside Defendants' decision, there is no guarantee that Defendants would opt to reinstate or out-source the Programs, let alone out-source them to Plaintiffs, but that type of redress is not required to establish standing in this context. *See CC Distributors, Inc.*, 883 F.2d at 150 (explaining that whether a plaintiff is certain to receive the benefit may be "relevant to the merits," but "carries no force against [a] plaintiffs' allegation of injury"). Rather, the lost opportunity may be redressed merely by "requiring the Government to conduct a reprocurement" or reassess its termination decisions. *Id.* at 151. The Court, accordingly, concludes that Plaintiffs have standing to challenge Defendants' termination of ICH, FGLOP, and CCI, as well as their in-sourcing of LOP and LOPC.

2.    *APA Claims*

a.    In-sourcing LOP and LOPC

Although Plaintiffs have Article III standing to challenge Defendants' decision to in-source LOP and LOPC, the Tucker Act provides a second (and insurmountable) jurisdictional

23

hurdle with respect to their challenge to EOIR's in-sourcing decision.  The Tucker Act, 28

U.S.C. § 1491, provides in relevant part:

> Both the United States Court of Federal Claims and the district courts of the
> United States shall have jurisdiction to render judgment on an action by an
> interested party objecting to a solicitation by a Federal agency for bids or
> proposals for a proposed contract or to a proposed award or the award of a
> contract or any alleged violation of statute or regulation in connection with a
> procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1).  In 1996, however, Congress enacted the Administrative Dispute

Resolution Act ("ADRA"), which set an expiration date of January 1, 2001, for district court

jurisdiction under § 1491(b)(1).  Pub. L. No. 104–320, § 12, 110 Stat. 3870, 3874–76, codified at

28 U.S.C. § 1491 note.  As a result, the Tucker Act, as amended by the ADRA, assigns exclusive

jurisdiction to the Court of Federal Claims "to render judgment on an action by an interested

party objecting to . . .  any alleged violation of statute or regulation in connection with a

procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1); *Res. Conservation Grp., LLC

v. United States*, 597 F.3d 1238, 1246 (Fed. Cir. 2010) (explaining that the ADRA gave "the

Court of Federal Claims exclusive jurisdiction over the full range of procurement protest cases

previously subject to review in the federal district courts and the Court of Federal Claims")

(emphasis and citation omitted).

The Tucker Act does not define "procurement," but the relevant definition is provided in

41 U.S.C. § 111, which governs "federal procurement policies, regulations, procedures, and

forms."  *Distributed Solutions, Inc. v. United States*, 539 F.3d 1340, 1345 (Fed. Cir. 2008); *see

Fisher-Cal Indus., Inc. v. United States*, 747 F.3d 899, 901–02 (D.C. Cir. 2014) (relying on 41

U.S.C § 111 to interpret the Tucker Act).  Under § 111, the definition of "procurement" is

"capacious," *Validata Chemical Servs. v. U.S. Dep't of Energy*, 169 F. Supp. 3d 69, 87 (D.D.C.

2016), and "includes all stages of the process of acquiring property or services, beginning with

the process for determining a need for property or services and ending with contract completion and closeout," 41 U.S.C. § 111.

The D.C. Circuit interpreted this provision in *Fisher-Cal Indus., Inc. v. United States*, 747 F.3d 899 (D.C. Cir. 2014). In that case, the plaintiff, a disappointed former contractor, alleged that the Air Force violated the APA when it declined to renew its contract with the plaintiff and decided, instead, to in-source the services. *Id.* at 900. The D.C. Circuit affirmed the district court's conclusion that the Tucker Act divested it of jurisdiction, explaining that the definition of "procurement" "includes the choice to *refrain* from obtaining outside services." *Id.* at 902 (emphasis in original) (quoting *Rothe Development, Inc. v. U.S. Department of Defense*, 666 F.3d 336, 339 (5th Cir. 2011)). Former contractors (or subcontractors) are thus unable to challenge an agency's decision to in-source a program in federal district court under the guise of an APA challenge.

In relevant respects, Plaintiffs' challenge is on all fours with *Fisher-Cal*. By in-sourcing LOP and LOPC, Defendants chose to "*refrain* from obtaining outside services," which is a procurement decision that falls within the Tucker Act's jurisdictional sweep. *Fisher-Cal*, 747 F.3d at 902. Although the plaintiff in *Fisher-Cal* was a former *prime* contractor, rather than a former subcontractor, the court's holding applies here with equal force. Section 1491(b)(1) applies to any "interested party" "objecting" to a procurement. 28 U.S.C. § 1491(b)(1); *Validata Chem. Servs. v. United States Dep't of Energy*, 169 F. Supp. 3d 69, 86 (D.D.C. 2016) (holding that a "disappointed" subcontractor was an "interested party" under § 1491(b)(1)). On their own telling, Plaintiffs have a "direct interest" in Defendants' procurement decisions for LOP and LOPC. *Validata Chem. Servs.*, 169 F. Supp. 3d at 86. They have suffered severe economic injuries from Defendants' decisions to in-source, Dkt. 79 at 56 (SAC ¶ 156), and they claim that

they would certainly be chosen as subcontractors should the out-sourced programs ever be reinstated, Dkt. 67-1 at 26 (explaining that, in some areas, Plaintiffs "are the only organizations that actually provide these services.  And so if the program goes forward through private entities, [Plaintiffs] may be the only ones that are available to do it").  In other words, as organizations "dedicated" to providing services under these programs, Dkt. 67-1 at 50, Plaintiffs have a clear interest in whether Defendants lawfully in-sourced them.  Moreover, limiting *Fisher-Cal* to cases where the plaintiff is a disappointed prime contractor would contravene the purpose of the ADRA—to "promote uniformity" by "vest[ing] a single judicial tribunal with exclusive jurisdiction to review government contract protest actions."  *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079 (Fed. Cir. 2001).  A categorical rule that objecting subcontractors are not "interested parties" would mean that prime contractors' challenges to procurements would be funneled to the Court of Claims, but subcontractors would be permitted to bring identical challenges in the district courts.[6]

The Court, accordingly, concludes that § 1491(b)(1) divests it of jurisdiction over Plaintiffs' claims arising from Defendants' decision to in-source LOP and LOPC.

b.    Termination of ICH, FGLOP, and CCI

i.  *Jurisdiction*

Plaintiffs also challenge Defendants' termination of ICH, FGLOP, and CCI under the APA.  Before turning to the merits of that claim, however, the Court will address Defendants' jurisdictional challenge to the program termination.  Defendants argue that the Court lacks jurisdiction under subsection (a)(1) of the Tucker Act, 28 U.S.C. § 1491(a)(1), which grants

---

[6] As explained further below, the same is not true of subsection (a)(1) of the Tucker Act, which generally bars suits against the United States by subcontractors.  *See infra* p. 27.

exclusive jurisdiction to the Court of Claims for "any claim against the United States founded . . . upon any express or implied contract with the United States." Dkt. 80 at 9. The D.C. Circuit's "longstanding test" for determining whether § 1491(a)(1) applies asks whether the "action against the United States . . . is *at its essence* a contract claim." *Crowley Gov't Servs., Inc. v. General Services Administration*, 38 F.4th 1099, 1106 (D.C. Cir. 2022) (emphasis in original) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982)). Here, the Court is unpersuaded that Plaintiffs' claims regarding the terminations are, in "essence," contractual. *Id.* Instead, "[w]hat matters is what the court must examine to resolve the case: If a plaintiff's claim depends on interpretations of statutes and regulations rather than the terms of an agreement negotiated by the parties, the claim is not in essence contractual." *Widakuswara v. Lake*, 2025 WL 1288817, at *12 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting from grant of stay pending appeal), *stay pending appeal vacated by* 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (en banc) (adopting Judge Pillard's reasoning in substantial part).

Plaintiff's complaint is clear: they are challenging the lawfulness of Defendants' wholesale termination of these programs under the APA. Dkt. 79 at 62 (SAC ¶¶ 173, 177). And to resolve that claim, the Court need not examine any "agreement negotiated by the parties," but it must "interpret[]" the APA and the relevant appropriations statutes. *Widakuswara*, 2025 WL 1288817, at *12. The Court could easily resolve Plaintiffs' challenges to the program terminations without mention of any contract, any subcontract, or the FAR, and the relief sought on this claim does not include the payment of any sum or the enforcement of any contractual provision. The Court, accordingly, concludes that subsection (a)(1) does not divest it of jurisdiction over Plaintiffs' claims.

### ii. Merits

Having "'satisf[ied] itself' of its own jurisdiction," *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012), to consider Plaintiffs' challenge to the program terminations, the Court will address the merits. Plaintiffs contend that Defendants' decision to terminate ICH, FGLOP, and CCI was arbitrary, capricious, and not in accordance with law. Dkt. 79 at 62–66 (SAC ¶¶ 175–90). With respect to ICH in particular, Plaintiffs argue that the termination is unlawful because, on Plaintiffs' reading, the 2024 Appropriations Act requires Defendants to expend funds on ICH as part of the LOP earmark. Dkt. 79 at 65 (SAC ¶ 188); Dkt. 67-1 at 34 (arguing that "[t]ermination of [ICH] violates the mandate in the Spending Bill"). With respect to FGLOP and CCI, Plaintiffs acknowledge that EOIR funded those programs through its lump sum appropriations, rather than through the LOP earmark, but Plaintiffs nonetheless maintain that the termination of these programs violated the APA's reasoned decision-making requirement. Dkt. 79 at 62 (SAC ¶¶ 175–88); *see* Dkt. 67-1 at 34, 37–38.

Turning first to FGLOP and CCI, the Court concludes that the termination of these programs is not subject to judicial review and that Plaintiffs, accordingly, lack a cause of action under the APA. In *Lincoln v. Vigil*, 508 U.S. 182 (1993), the Supreme Court concluded that the same claim Plaintiffs press here was committed to agency discretion by law and therefore unreviewable. In that case, the plaintiffs challenged the Indian Health Service's decision to discontinue a program that provided healthcare to handicapped children. The program was not required by statute, but the agency established and funded it through "a discretionary allocation . . . from a lump-sum appropriation." *Id.* at 192–94, 197. Although the agency had provided the program for many years, it ultimately decided to terminate the program and "reallocat[e] [its] resources" towards other initiatives. *Id.* at 184. The Supreme Court held that the agency's

decision was unreviewable under the APA, explaining that "[t]he allocation of funds from a lump-sum appropriation" is "committed to agency discretion" by law under § 702(a)(2) of the APA. *Id.* at 192. Here, the Court's analysis begins and ends with *Lincoln*. Like the program in *Lincoln*, FGLOP and CCI were discretionarily funded through EOIR's lump sum appropriations. Defendants' decision to discontinue these programs and reallocate their resources is similarly unreviewable.

ICH stands on slightly different footing: it was not funded through EOIR's lump sum appropriations but, rather, through the LOP earmark. Nonetheless, the Court concludes that *Lincoln* renders Defendants' decision to terminate ICH equally unreviewable. *Lincoln* held that agencies have discretion to allocate funds in lump sum appropriations, which, by their nature, are provided to agencies for many potential purposes and programs. A corollary of this principle is that an agency *lacks* discretion to discontinue a program that is funded by an earmarked appropriation (i.e., funds provided for that program specifically). Thus, as both parties in this case agree, Defendants are not authorized to impound the funds earmarked for the "Legal Orientation Program," nor are they authorized to use those funds for some other purpose. *See* Dkt. 70 at 34; Dkt. 77 at 80.

But "the terms 'lump-sum' and ['earmark'] are relative concepts." *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 199 n.10 (2012); *see also* GAO Redbook 6-15. Although an agency is required to use earmarked funds for their specified purpose, an agency may still exercise discretion *within* the earmark. If, for example, Congress earmarks funds for the Navy to build a certain type of ship, the Navy has discretion to use the money to complete construction of two less expensive ships or to spend the money on one more expensive ship. *See In re Newport News Shipbuilding & Dry Dock Co.*, 55 Comp. Gen. 812 (1976). Here, the earmark in question

29

requires only that EOIR expend the funds on the "Legal Orientation Program," but it does not contain any specific requirement that EOIR operate ICH. Because the 2024 Appropriations Act does not appropriate money specifically for ICH, and because "no statute or regulation even mention[s]" ICH, *Lincoln*, 508 U.S. at 190, EOIR has discretion to discontinue its use of the earmarked funds for that specific program.

Plaintiffs' argument to the contrary is unavailing. Plaintiffs rely on the legislative history, observing that the Senate Report states that a portion of the earmark for the "Legal Orientation Program" should be spent on ICH. Dkt. 73 at 38 (citing S. Rep. No. 118-62, at 84–85 (2023)). But as the D.C. Circuit and the Comptroller General have repeatedly recognized, "the text of the appropriation" is controlling. *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Donovan*, 746 F.2d 855, 861, 863–65 (D.C. Cir. 1984). Although comity (and the desire to obtain funding from the interested appropriators in the future) might counsel in favor of doing so, agencies are not legally obliged to follow allocation directions that Congress makes in committee reports but not in the statutory text. *See id.*; GAO Redbook 6-14–6-15.

The Court, accordingly, concludes that Defendants' decision to terminate ICH, FGLOP, and CCI is not subject to judicial review, and that the APA therefore deprives Plaintiffs of a cause of action. *See Make the Rd. N.Y.*, 962 F.3d at 634. Because this is a ruling on the merits, *Sierra Club v. Jackson*, 648 F.3d 848, 853–54, 856–57 (D.C. Cir. 2011), the Court will grant summary judgment to Defendants on these claims.

### 3.    *Constitutional and Non-Statutory* Ultra Vires *Claims*

In addition to their APA claims, Plaintiffs bring several constitutional claims and a non-statutory *ultra vires* claim. As explained above, § 1491(b)(1) divests the Court of jurisdiction

30

over APA claims arising from Defendants' decision to in-source LOP and LOPC, but the same is

not true of Plaintiffs' constitutional and non-statutory claims.  In general, federal courts have

jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United

States," unless a jurisdiction-stripping statute provides otherwise.  28 U.S.C. § 1331.  If Congress

intends to "channel[] judicial review of a constitutional claim to a particular court," such as the

Court of Claims, that intent must be "fairly discernable" from the statute.  *Elgin v. Dep't of

Treasury*, 567 U.S. 1, 9–10 (2012).  Here, however, the relevant text of the Tucker Act evinces

the opposite intention: it applies only to "any alleged violation of *statute or regulation* in

connection with a procurement."  28 U.S.C. § 1491(b)(1) (emphasis added).  In light of this

express limitation, the Court is unable to conclude that § 1491(b)(1) "removes [its] jurisdiction"

over constitutional and *ultra vires* claims arising from procurements.  *Whitman v. Dep't of

Transportation*, 547 U.S. 512, 514 (2006) (per curiam).

 Similarly, although Defendants' decision to discontinue ICH, FGLOP, and CCI is not

subject to APA review, the Court must nonetheless consider constitutional or non-APA claims

arising from that action.  *See Lincoln*, 508 U.S. at 195 (remanding for consideration of

respondents' claim that termination of the program violated the Due Process Clause); *see also

Webster v. Doe*, 486 U.S. 592, 602–03 (1988) (holding that the decision to terminate

respondent's employment was "committed to agency discretion by law," but remanding for

consideration of "constitutional claims arising out of" his discharge); *see also Chamber of Com.

of U.S. v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996) ("The APA's waiver of sovereign

immunity applies to any suit whether under the APA or not.").[7]  The Court, accordingly, will next consider the merits of these claims.

a.    First Amendment

Plaintiffs argue that Defendants' actions were designed to suppress Plaintiffs' speech, in violation of the First Amendment.  Dkt. 67-1 at 43, 46.  Plaintiffs assert two First Amendment injuries: (1) denial of "access" to government funding, and (2) the loss of Plaintiffs' "special access rights" to immigration facilities and the removal of their posters.  Dkt. 73 at 45, 51.

The Court is unpersuaded by either theory.  Beginning with Plaintiffs' access-to-funding claim, it is well-established that the government's "refusal to fund" certain speech does not run afoul of the Constitution.  *Rust v. Sullivan*, 500 U.S. 173, 193 (1991); *Regan v. Tax'n with Representation of Washington*, 461 U.S. 540, 549 (1983) ("We have held in several contexts that a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny.").  Yet that is precisely what Plaintiffs challenge here: a halt in the flow of government money.  To be sure, First Amendment concerns are properly raised where the government "discriminate[s] invidiously in its [funding] in such a way as to 'aim[ ] at the suppression of dangerous ideas.'"  *Regan*, 461 U.S. at 548 (citation omitted).  In other words, the government may not selectively fund speech in a discriminatory manner— that is, with the purpose and effect of enabling favored speech and suppressing disfavored speech.  *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 215 (2013).  But this is not such a case.  There is no evidence that Defendants have "discriminate[d] invidiously" in their funding decisions, *Regan*, 461 U.S. at 548; they have decided to eliminate

---

[7] Defendants maintain that subsection (a)(1) of the Tucker Act divests the Court of jurisdiction over these claims as well, but for the same reasons explained above, Plaintiffs' claims are not "in essence contractual."  *Widakuswara v. Lake*, 2025 WL 1288817, at *12; *supra* pp. 26–27.

funding to private contractors for the Programs entirely and have not reallocated the funds to those who might engage in "favored speech."  In sum, "[a]lthough [Plaintiffs] do[] not have as much money as [they] want[], and thus cannot exercise [their] freedom of speech as much as [they] would like, the Constitution 'does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom.'"  *Id.* at 550 (quoting *Harris v. McRae*, 448 U.S. 297, 318 (1980)).

Plaintiffs' second theory, regarding their access to immigration facilities and the removal of their posters, presents a closer question, but fares no better.  On Plaintiffs' telling, Defendants revoked their access rights and removed their posters to prevent Plaintiffs from speaking to immigrants because Defendants disagree with Plaintiffs' messages.  *See* Dkt. 67-1 at 44–45.  The core principle underlying the First Amendment is, of course, that the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content."  *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).  As a result, "[c]ontent-based" regulations—"those that target speech based on its communicative content—are presumptively unconstitutional."  *Id.*  "The principal inquiry in determining content neutrality, . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys."  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."  *Id.*  Put differently, "[g]overnment regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'"  *Id.* (emphasis in original) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

Here, the principal justification for the revocation of Plaintiffs' "special access rights" is that Plaintiffs are no longer government subcontractors, leading Defendants to reasonably conclude that Plaintiffs should have the same access rights "as any other member of the public." Dkt. 70-2 at 2 (Gorman Decl. ¶ 5). Thus, like any other member of the public, Plaintiffs will "have access to EOIR facility common areas"; they may enter DHS detention facilities, subject to security screening requirements; and they may attend hearings before Immigration Judges. *Id.* at 3–4 (Gorman Decl. ¶¶ 8–10). This justification "has nothing to do with content," *Ward*, 491 U.S. at 792 (alteration omitted), and, accordingly, does not warrant any heightened scrutiny.

Plaintiffs urge that Defendants' actions were not content-neutral, pointing to Executive Order 14159. Plaintiffs observe that the President ordered the Attorney General to review and audit all government contracts with non-governmental organizations to ensure "that they do not promote or facilitate violations of our immigration laws." Exec. Order No. 14159, 90 C.F.R. 8443, 8447 (2025); Dkt. 67-1 at 45–46. "This language," Plaintiffs say, is evidence of Defendants' "intent to cut funding to censor Plaintiffs' speech." Dkt. 67-1 at 46.

This sentence is too thin a reed to support Plaintiffs' theory. On its face, the Executive Order does not purport to censor any parties' speech, and its directive is accompanied by a plainly legitimate justification: the President's direction to halt government funding used by contractors to promote unlawful conduct. *Cf. United States v. Hansen*, 599 U.S. 762, 780–81 (2023) (holding that Congress could criminalize speech "encourag[ing] or induc[ing]" illegal immigration without violating the First Amendment). The Executive Order does not mention any of the programs at issue here but, rather, refers to the promotion of "unlawful conduct." Nor have Plaintiffs adduced any evidence that this facially neutral statement is a mask for Defendants' invidious motive or, indeed, that Defendants have concluded that advising

34

individuals in immigration proceedings of their legal rights falls within the scope of the Executive Order.  Nothing is stopping Plaintiffs, moreover, from speaking to immigrants; they must only comply with the facilities' generally applicable access procedures and are no longer entitled to the special access provided to government subcontractors.

 With respect to their posters, Plaintiffs note that Defendants removed their posters, but are "putting up new, official posters inside immigration courts with messages such as 'Message to Illegal Aliens: A Warning to Self- Deport.'"  Dkt. 67-1 at 45.  Plaintiffs assert that "[s]uch viewpoint-based restrictions and allowances violate the First Amendment."  *Id.*  But, as the Supreme Court has repeatedly explained, "the Free Speech Clause does not regulate government speech."  *Matal v. Tam*, 582 U.S. 218, 234 (2017) (alterations omitted).  "[W]hen the government speaks it is entitled to promote a program, to espouse a policy, or to take a position" without triggering First Amendment concerns.  *Walker v. Texas Div., Sons of Confederate Veterans, Inc.*, 576 U.S. 200, 208 (2015).  Plaintiffs' claim that the government may not promote its *own* views thus finds no purchase in the First Amendment, and Plaintiffs do not otherwise adduce any evidence that Defendants are applying their poster policy in a discriminatory manner (by, for example, allowing favored organizations to hang posters, but denying Plaintiffs the same privilege).

 In short, Plaintiffs' First Amendment claim finds no support in the existing record, and Plaintiffs have not sought discovery or time to engage in further factual development in the hope of presenting a more convincing case.  The Court, accordingly, concludes that Defendants are entitled to summary judgment on Plaintiffs' First Amendment claim.

      b.      <u>Appropriations Clause, Separation of Powers, and *Ultra Vires*</u>

Plaintiffs remaining claims merit only brief discussion.  Although Plaintiffs invoke the

Appropriations Clause and the Separation of Powers, these claims boil down to the contention

that Defendants have violated, and are continuing to violate, the 2024 Appropriations Act and the

2025 Continuing Resolution by in-sourcing LOP and LOPC and discontinuing ICH, FGLOP, and

CCI.  *See* Dkt. 67-1 at 35 ("Defendants have no authority under the Constitution to withhold the

relevant funds because Congress authorized those funds and obligated the funds to be spent on

the Programs."); *id.* at 48 ("Defendants have unlawfully encroached on a power explicitly

granted to Congress by refusing to distribute congressionally mandated appropriations."); Dkt.

81 at 14 ("Defendants could not possibly fulfill their statutory obligations or spend appropriated

funds to provide services via a 'federalized program'" for LOP and LOPC).  But "claims simply

alleging that [an agency] has exceeded [its] statutory authority are not 'constitutional' claims."

*Dalton v. Specter*, 511 U.S. 462, 473 (1994).  Plaintiffs, accordingly, may not circumvent the

Tucker Act or the APA's reviewability bar by reframing an alleged statutory violation as a

constitutional claim.  *See id.; see also Validata*, 169 F. Supp. 3d at 89 (rejecting attempt to

"reframe" an APA claim subject to § 1491(b)(1) "as a constitutional due process challenge" to

evade the Tucker Act).

Plaintiffs' *ultra vires* claim is similarly flawed.  Plaintiffs assert that Defendants'

decisions were *ultra vires* because they were "blatantly lawless" and a "clear departure from

their statutory mandates."  Dkt. 67-1 at 47 (cleaned up) (quoting *Fed. Express Corp. v. Dep't of

Commerce*, 39 F.4th 756, 764 (D.C. Cir. 2022)).  But the text of the appropriations statutes does

not require Defendants to out-source LOP or LOPC, nor do any appropriations statutes even

mention ICH, FGLOP, or CCI.  In light of this statutory silence, Plaintiffs have failed to show

36

that Defendants violated the appropriations laws at all, let alone that their actions were "blatantly

lawless." *Fed. Express Corp.*, 39 F.4th at 764.

The Court concludes that Defendants are entitled to summary judgment on these claims

as well.

**B.      Administration of Federalized LOP and LOPC**

1.      *Standing*

Plaintiffs' next challenge Defendants' new "federalized" version of LOP and LOPC,

arguing that these "new" programs are so inadequate that they amount to a termination of the

programs.  Plaintiffs contend that "Defendants' purported 'federalized program' describes

materials that already exist and services (such as the obligation of immigration judges to explain

proceedings) that are already legally required."  Dkt. 81 at 14.  By way of example, Plaintiffs

fault Defendants for "rely[ing] on online 'self-help materials'" to deliver services, arguing that

"web-based, as opposed to in-person, programming is insufficient."  *Id.* at 16.  In their view, this

in-sourced program "cannot meet Defendants' statutory and constitutional obligations."  *Id.* at

15.

To establish standing, Plaintiffs must show "[1] an injury in fact which is (a) concrete and

particularized, and (b) actual or imminent, not conjectural or hypothetical, [2] a causal

connection between the injury and the conduct complained of, and [3] it must be likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Swanson Group Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (cleaned up).  As

Defendants observe, however, Plaintiffs cannot base their standing on a general desire to have

the government "act in accordance with law" or on the "intensity of the[ir] interest" in ensuring

that immigrants receive adequate legal orientation services.  *FDA v. All. for Hippocratic Med.*,

37

602 U.S. 367, 381, 394 (2024); Dkt. 80 at 14.  "[A] generalized grievance, no matter how

sincere, is insufficient to confer standing."  *Hollingsworth v. Perry*, 570 U.S. 693, 706 (2013).

Thus, "[a] litigant 'raising only a generally available grievance about government—claiming

only harm to his and every citizen's interest in proper application of the Constitution and laws

and seeking relief that no more directly and tangibly benefits him than it does the public at

large—does not state an Article III case or controversy.'"  *Id.* (quoting *Lujan*, 504 U.S. at 573–

74).

      Here, Plaintiffs fail to show that Defendants' allegedly inadequate administration of LOP

and LOPC affects them in a particularized way.  Defendants' use of "online" materials rather

than "in-person" services, for example, does not cause any "perceptible harm" to Plaintiffs in

particular.  *Lujan*, 504 U.S. at 566.  Plaintiffs' interest in the proper provision of LOP and LOPC

services is thus a widely shared interest in seeing the government "act in accordance with law."

*All. for Hippocratic Med.*, 602 U.S. at 381.

      This is not to say, however, that no party would have standing to mount the challenge

Plaintiffs bring here.  A beneficiary of a government program, for example, might have standing

to challenge the government's implementation of that program, especially where its

implementation is so inadequate that the beneficiary is effectively denied benefits.  *See, e.g.*, *City

of Houston v. Dep't of Housing and Urban Dev.*, 24 F.3d 1421, 1430 (D.C. Cir. 1994)

(explaining that a plaintiff who is at risk of being denied a statutory entitlement by the

government has standing to challenge that denial); *cf. Heckler v. Day*, 467 U.S. 104, 107 (1984)

(addressing claims by program beneficiaries that the government engaged in undue delay in

administering disability benefits under the Social Security Act).  But Plaintiffs, as former

government subcontractors, are not the intended beneficiaries of in-sourced LOP and LOPC.

The impact of Defendants' alleged maladministration is, accordingly, too diffuse to support Plaintiffs' standing.

Plaintiffs insist that they have suffered two particularized injuries from Defendants' conduct, but neither suffices. Plaintiffs' first injury is a "loss of funding," Dkt. 67-1 at 23, but this injury was not caused by Defendants' inadequate administration of LOP and LOPC; it was caused by Defendants' decision to terminate the Acacia contract and to in-source LOP and LOPC. And, as explained above, the Tucker Act divests the Court of jurisdiction over claims arising from that decision. Plaintiffs frame their second injury as "direct interference" with their "missions" to "provide services to individuals in removal hearings." Dkt. 67-1 at 23; Dkt. 81 at 21. They assert that their "core business activities" are being impeded because, in their view, "Defendants have fully terminated the Programs without implementing a viable alternative." Dkt. 72 at 16. Plaintiffs reason that "the only way" for them to "fulfill [their] mission" is to "bear the costs of running the Programs" themselves. *Id.* The Court is unpersuaded.

In *Alliance for Hippocratic Medicine*, the Supreme Court recognized that an organization suffers a particularized injury when the defendant's conduct impedes its "core business activities." *Alliance*, 602 U.S. at 395. The Court recently applied this principle in *Refugee and Immigrant Center for Education & Legal Servs. v. Noem*, No. 25-306, 2025 WL 1825431 (D.D.C. July 2, 2025). In that case, the organizational plaintiffs challenged agency action that had the effect of reducing the number of aliens who were applying for asylum. *See id.* at *23. To fund their operations, the organizational plaintiffs depended on grants that were keyed to the number of asylum-seekers they served, and so the loss of potential clients directly impeded their ability to obtain financial support. *Id.* The Court, accordingly, held that the agency's interference with those plaintiffs' "core business activities" constituted an injury-in-fact under

39

*Alliance for Hippocratic Medicine*.  *Id.* at *23–24.  Here, by contrast, Defendants' operation of LOP and LOPC—whether adequate or not—has no effect on Plaintiffs' "core business activities."  Although Defendants may not be providing services in a manner that meets Plaintiffs' standards, Plaintiffs cannot "manufacture [their] own standing" by "spend[ing] 'considerable resources'" to counteract government action that they merely disagree with.  *All. for Hippocratic Med.*, 602 U.S. at 394.  Were the Court to accept Plaintiffs' theory, that would mean "all the organizations in America would have standing to challenge" the alleged maladministration of a government benefit program, "provided they spend a single dollar" to disburse the promised benefits themselves.  *Id.*

The Court, accordingly, concludes that Plaintiffs lack standing to challenge Defendants' administration of a federalized version of LOP and LOPC.

## CONCLUSION

For the foregoing reasons, the Court will **DENY** Plaintiffs' cross-motion for summary judgment, Dkt. 67; **DENY** Plaintiffs' motion for a preliminary injunction, Dkt. 74; and **GRANT** Defendants' motion for summary judgment, Dkt. 70, with respect to (1) Plaintiffs' constitutional and *ultra vires* claims arising from the in-sourcing of LOP and LOPC, and (2) Plaintiffs' claims arising from the termination of ICH, FGLOP, and CCI.  The remainder of Plaintiffs' claims will be **DISMISSED** without prejudice for lack of subject matter jurisdiction.

A separate Order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 6, 2025

40